1   Roderick M. Thompson (State Bar No. 96192)
    rthompson@fbm.com
2   Robert C. Holtzapple (State Bar No. 145954)
    bholtzapple@fbm.com
3   Helen Dutton (State Bar No. 235558)
    hdutton@fbm.com
4   Diego F. Acevedo (State Bar No. 244693)
    dacevedo@fbm.com
5   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
6   San Francisco, CA  94104
    Telephone:  (415) 954-4400
7   Facsimile:  (415) 954-4480

8   Attorneys for Plaintiff
    VISA U.S.A. INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A. INC., | Case No. CV-07-5585 BZ |
| Plaintiff, | **NOTICE OF PETITION AND PETITION TO COMPEL ARBITRATION** |
| vs. | |
| MARITZ INC., d/b/a MARITZ LOYALTY MARKETING, | Date:  January 2, 2008<br>Time:  10:00 a.m.<br>Courtroom:  G (15th Floor)<br>Hon. Bernard Zimmerman, USMJ |
| Defendant. | |

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ

21823\1390215.1

**TABLE OF CONTENTS**

**Page**

NOTICE OF PETITION AND PETITION .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    SUMMARY OF THE FACTS .......................................................................................... 3

III.   ARGUMENT ..................................................................................................................... 4

    A.   Questions Regarding Arbitrability Must Be Submitted To The Arbitrator ............ 5

        1.   The Letter Agreement Incorporates the AAA Rules. Thus, Questions Regarding the Validity of the Letter Agreement Are for the Arbitrator ............................................................................................... 5

        2.   Maritz's Challenge Is to the Entire Letter Agreement, Not Just the Arbitration Provision. Thus, the Arbitrator Must Determine that Issue .......................................................................................................... 7

    B.   The Letter Agreement Is Both Valid and Covers the Disputes between the Parties. Thus, Even Assuming the Court Decides the Issue of Arbitrability, Maritz Should Be Compelled to Arbitrate ............................................................... 7

        1.   The Letter Agreement Is Valid and Enforceable ......................................... 7

        2.   The Letter Agreement Applies to the Parties' "Respective Claims For Damages" and "Related Claims" .......................................................... 8

    C.   This Case Should Be Stayed Pending the Arbitration ........................................... 9

IV.    CONCLUSION .................................................................................................................. 9

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ                         - i -

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
 513 U.S. 265 (1995) .................................................................................................... 4

*Anderson v. Pitney Bowes, Inc.*,
 2005 WL 1048700 (N.D. Cal. 2005) ........................................................................... 5

*Apollo Computer, Inc. v. Berg*,
 886 F.2d 469 (1st Cir. 1989) ....................................................................................... 6

*Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc.*,
 2004 WL 2931284 (N.D. Ill. Dec. 9, 2004) ................................................................ 6

*Bell v. Cendant Corp.*,
 293 F.3d 563 (2d Cir. 2002) ........................................................................................ 5

*Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*,
 203 F.R.D. 677 (S.D. Fla. 2001), *aff'd on other grounds*,
 312 F.3d 1349 (11th Cir. 2002) ................................................................................... 6

*Buckeye Check Cashing, Inc. v. Cardegna*,
 546 U.S. 440 (2006) ................................................................................................ 2, 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ................................................................................. 2, 7

*Circuit City Stores, Inc. v. Najd*,
 294 F.3d 1104 (9th Cir. 2002) ..................................................................................... 8

*Contec Corp. v. Remote Solution Co., Ltd.*,
 398 F.3d 205 (2d Cir. 2005) .................................................................................... 2, 6

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985) ............................................................................................ 4, 5, 7

*Green Tree Fin. Corp.-Alabama v. Randolph*,
 531 U.S. 79 (2000) ...................................................................................................... 4

*Homestake Lead Co. of Mo. v. Doe Run Resources Corp.*,
 282 F. Supp. 2d 1131 (N.D. Cal. 2003) ...................................................................... 9

*Lloyd v. Hovensa, LLC*,
 369 F.3d 263 (3d Cir. 2004) ........................................................................................ 9

*Mediterranean Enter., Inc. v. Ssangyong Corp.*,
 708 F.2d 1458 (9th Cir. 1983) ................................................................................. 8, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985) .................................................................................................... 9

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ

- ii -

21823\1390215.1

## TABLE OF AUTHORITIES
(continued)

Page

*Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*,
  460 U.S. 1 (1983) .................................................................................................... 4, 8

*Poponin v. Virtual Pro, Inc.*,
  2006 WL 2691418 (N.D. Cal. 2006) ..................................................................... 2, 5, 6

*PowerAgent Inc. v. Electric Data System Corp.*,
  358 F.3d 1187 (9th Cir. 2004) .................................................................................... 5

*Shearson/American Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ................................................................................................... 4

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ...................................................................................... 9

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ....................................................................................................... 4

*Warehousemen's Union Local No. 206 v. Continental Can Co., Inc.*,
  821 F.2d 1348 (9th Cir. 1987) .................................................................................... 8

### STATE CASES

*Dream Theater, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004) ..................................................................................... 5

*Higgins v. Super. Ct.*,
  140 Cal. App. 4th 1238 (2006) ................................................................................... 8

*Lagatree v. Luce, Forward, Hamilton & Scripps, LLP*,
  74 Cal. App. 4th 1105 (1999) ..................................................................................... 8

*Segal v. Silberstein,*
  67 Cal.Rptr.3d 426 (Cal. App. 2d October 29, 2007) ................................................. 8

### FEDERAL STATUTES

9 U.S.C.
  § 1 *et seq* ................................................................................................................... 4
  § 2 ............................................................................................................................... 4
  § 3 ............................................................................................................................... 9
  § 4 ........................................................................................................................ 2, 4, 7

### RULES

AAA Commercial Rules
  Rule R-7(a) .......................................................................................................... 2, 5, 6

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ

- iii -

21823\1390215.1

# NOTICE OF PETITION AND PETITION

PLEASE TAKE NOTICE that, on January 2, 2008, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom G, 15th Floor, before the Honorable Bernard Zimmerman, Visa U.S.A. Inc. ("Visa") shall and hereby does move the Court, pursuant to the Federal Arbitration Act, for an order staying this action and compelling Maritz Inc. d/b/a Maritz Loyalty Marketing ("Maritz") to arbitrate in accordance with the arbitration term of the parties' agreement. This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Roderick M. Thompson filed herewith, all files and records in this action and such additional matters as may be judicially noticed or may come before the Court prior to or at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to an Agreement dated April 17, 2006 (the "April 17 Agreement"), Maritz, Inc. d/b/a Maritz Loyalty Marketing ("Maritz") was obligated to provide for Visa U.S.A. Inc. ("Visa") and its Members a points-based rewards program for Visa cardholders. The April 17 Agreement was terminated in April 2007, and disputes regarding the parties' respective performance under that contract arose.

In July 2007, Visa and Maritz entered a written agreement (the "Letter Agreement") that set out a procedure through which the parties would resolve their disputes. The Letter Agreement provided that the parties' "respective claims for damages resulting from alleged breaches of the [April 17, 2006] Agreement and related claims" would all be resolved outside of court. (*See* Declaration of Roderick M. Thompson ("Thompson Decl."), Ex. D.) The Letter Agreement set forth a three-stage "resolution framework" culminating in "binding arbitration pursuant to AAA Commercial Rules." (*Id*.) On November 2, 2007, Visa filed an arbitration demand with the AAA. Despite the undeniable facts that Maritz executed the Letter Agreement and that the Letter Agreement unambiguously calls for binding arbitration, Maritz now claims that "there is no valid and enforceable arbitration agreement between Visa and Maritz, and that the AAA has no jurisdiction in this matter." (*See* Thompson Decl., Ex. G.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ

- 1 -

21823\1390215.1

1    Maritz is wrong. Preliminarily, the Letter Agreement's terms require that questions regarding its enforceability go to the arbitrator, and not the Court. The Letter Agreement twice incorporates the AAA Commercial Rules. In relevant part, the AAA Commercial Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Rule R-7(a). As a number of cases have held, incorporation by reference of the AAA Rules manifests a "clear and unmistakable" intent that the issue of arbitrability, including validity challenges, must proceed to the arbitrator. *See, e.g.*, *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 207 (2d Cir. 2005) (whether non-signatory required to arbitrate issue for arbitrator where arbitration agreement incorporated AAA rules by reference); *see also Poponin v. Virtual Pro*, *Inc.*, 2006 WL 2691418, *1, 9 (N.D. Cal. 2006) (because arbitration agreement incorporated "particular set of arbitration rules," issue of arbitrability for arbitrator, not court).

Moreover, Maritz's "position that there is no valid and enforceable" agreement indicates that Maritz contends that the entire Letter Agreement is invalid. As the Supreme Court recently explained in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006), "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator[,]" not the Court.

Even assuming, however, that the Court is to determine the issue of arbitrability, the two requisite criteria for granting a petition to compel arbitration are met. It is well settled that, on a petition to compel arbitration, the Court need determine only (1) whether an enforceable arbitration agreement exists between the parties; and (2) whether the purported claims at issue are covered by the arbitration agreement. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both of these criteria are satisfied; after the disputes between the parties arose, the parties entered into an arms-length, written agreement providing that their "respective claims for damages arising from the [April 17, 2006] Agreement and related claims will all be resolved outside of court" through "binding arbitration pursuant to AAA Commercial Rules." There can be no realistic dispute either that the Letter Agreement is unenforceable, or that it does not cover the existing claims.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ                - 2 -                                   21823\1390215.1

1    Visa respectfully requests that Maritz be ordered to arbitrate all disputes, including the
2    issue of arbitrability itself, as required by the parties' binding, valid and enforceable agreement.

## II.  SUMMARY OF THE FACTS

Pursuant to the April 17 Agreement, Maritz agreed to develop, deploy, operate and maintain a points-based rewards program for Visa cardholders.  The April 17 Agreement required that Maritz launch the rewards program no later than September 30, 2006.  Maritz, however, failed to meet that deadline.  Indeed, despite continuing to work on the project, Maritz did not launch the rewards program during the following months.  Finally, pursuant to a letter dated April 20, 2007, Visa terminated the April 17 Agreement.  In its April 20, 2007 letter, Visa expressly "reserve[d] all rights relating to or arising out of the [April 17, 2006] Agreement and any Related Agreement, including, without limitation, claims Visa has against Maritz for Maritz's breaches of the Agreement (including any Related Agreement), Maritz's non performance or delay in performing any obligations due under the Agreement (including any Related Agreement), and Visa's right to liquidated damages pursuant to section XXIII.R of the Agreement."  (*See* Thompson Decl., Ex. A.)

Maritz responded in a letter dated May 7, 2007, claiming that Maritz was owed more than $5 million.  In that letter, Maritz wrote: "As Visa has reserved all of its rights relating to or arising out of the Agreement or any Related Agreement, Maritz does the same."  (*See* Thompson Decl., Ex. B.)  By letter dated June 5, 2007, Visa responded, stating that it would provide additional information to Maritz as to the nature and amount of Visa's claims after transition to the new vendor was complete.  Visa's June 2007 response also suggested that the parties discuss "a process for resolving" their claims.  (Thompson Decl., Ex. C.)

In early July 2007, Maritz's Associate General Counsel contacted Visa's outside counsel to negotiate a dispute resolution process.  Following that discussion, Visa and Maritz agreed to memorialize a three-step dispute resolution process.

Visa's outside counsel sent the Letter Agreement to Maritz's Associate General Counsel on July 9, 2007. (Thompson Decl., Ex. D.)  On July 10, 2007 Maritz's Associate General Counsel sent an e-mail returning a fully executed copy of the Letter Agreement and stating, in

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ
- 3 -
21823\1390215.1

part, that "attached is an executed agreement outlining the procedures *for resolving any differences that may exist between Visa and Maritz*." (Thompson Decl., Ex. E, ¶ 6.)

On November 2, 2007, Visa submitted an arbitration demand to the AAA. (Thompson Decl., Ex. F.) Maritz responded to the AAA on November 16, 2007 that it disputes the validity of the Letter Agreement and refuses to submit to the jurisdiction of the AAA. (Thompson Decl., Ex. G.) Visa's petition to compel Maritz to submit to arbitration under the terms of the Letter Agreement now follows.

## III. ARGUMENT

The Federal Arbitration Act ("FAA") governs the Letter Agreement. 9 U.S.C. § 1 *et seq*. The present agreement involves "commerce" within the meaning of the FAA, where the underlying dispute relates to a contractual dispute regarding Maritz's development, deployment, operation and maintenance of a points-based rewards program.

Under the FAA, a written provision "in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was enacted to overcome the reluctance of some courts to enforce arbitration agreements. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995). The FAA establishes a federal policy in favor of arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

The United States Supreme Court has directed federal courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A court must compel arbitration if the parties have in fact agreed in writing to arbitrate the claims pending before it. 9 U.S.C. § 4; *Dean Witter Reynolds*, 470 U.S. at 218 (district court had no discretion once it determined that written agreement to arbitrate existed).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ
- 4 -
21823\1390215.1

### A. Questions Regarding Arbitrability Must Be Submitted To The Arbitrator

#### 1. The Letter Agreement Incorporates the AAA Rules. Thus, Questions Regarding the Validity of the Letter Agreement Are for the Arbitrator.

There is a general presumption under the FAA that the parties' agreement to arbitrate should be enforced as written. This includes that where the parties have agreed to arbitrate any questions regarding arbitrability, such questions are reserved for the arbitrator. Thus, where "there is clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, the court will compel the parties to honor that agreement. *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1191 (9th Cir. 2004); *see also Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002). It is well-settled that "where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules—such as the ICC Rules—that provide for the arbitrator to decide arbitrability," issues regarding arbitrability are decided by the arbitrator. *Poponin*, 2006 WL 2691418 at *9 (arbitration agreement incorporating ICC rules; issues regarding arbitrability reserved for arbitrator); *see also Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, *1, 2-4 (N.D. Cal. 2005) (citing with approval *Dream Theater, Inc. v. Dream Theater,* 124 Cal. App. 4th 547, 557 (2004) (holding clause specifying that arbitration would be "in accordance with the AAA Commercial Arbitration Rules" constituted clear and unmistakable evidence that parties intended arbitrator rather than court determine arbitrability)).

Although Maritz contends that "there is no arbitration agreement that would empower arbitrators to determine the validity or enforceability of any arbitration agreement" (Thompson Decl., Ex. G), Maritz is wrong. The Letter Agreement unequivocally provides that the parties' disputes shall be resolved through "[b]inding arbitration pursuant to the AAA Commercial Rules." (Thompson, Decl., Ex. D.) The Letter Agreement also provides that "[t]o the extent [the parties] are unable to agree on any aspect of the procedure, such disagreement will be resolved by the applicable rules and procedures of the American Arbitration Association ('AAA')." (Thompson Decl., Ex. D.) In relevant part, the AAA Commercial Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Rule R-7(a).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ      - 5 -                            21823\1390215.1

Thus, by incorporating AAA's Commercial Rules—including Rule R-7(a)—the parties "clearly and unmistakably" agreed to reserve to the *arbitrator* the power to rule on any objection Maritz may have as to the validity or enforceability of the Letter Agreement. Several courts have reached this conclusion. *See, e.g.*, *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) ("when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC . . . , Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned."); *Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc.*, 2004 WL 2931284, at *4 (N.D. Ill. Dec. 9, 2004) ("The inclusion of the phrase '[t]he arbitration shall be conducted ... in accordance with the prevailing commercial arbitration rules of [AAA]' . . . is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator."); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001) (holding agreement's incorporation of AAA rules "provide[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"), *aff'd on other grounds,* 312 F.3d 1349 (11th Cir. 2002).

Here, there can be no dispute that the Letter Agreement incorporated the AAA Commercial Rules and that Rule R-7(a) provides that any question regarding the validity of the arbitration agreement is reserved for the arbitrator. Based on the same facts, Judge Hamilton found in *Poponin*: "[T]his court has no subject matter jurisdiction to determine arbitrability. By agreeing to arbitration under the ICC Rules, Dr. Poponin and Virtual Pro clearly and unmistakably agreed that questions of arbitrability would be submitted to arbitration." 2006 WL 2691418 at *9. The same result is required here: because Maritz undeniably agreed to arbitration under the AAA's rules, questions of arbitrability must be submitted to the AAA.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ
- 6 -
21823\1390215.1

### 2. Maritz's Challenge Is to the Entire Letter Agreement, Not Just the Arbitration Provision. Thus, the Arbitrator Must Determine that Issue.

In its November 16 letter to AAA, Maritz contends "that there is no enforceable arbitration agreement." (*See* Thompson Decl., Ex. G.) Maritz appears to be arguing that the entire Letter Agreement is invalid. Yet, as the Supreme Court recently explained in *Buckeye Check Cashing Inc.*, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46. Here, Maritz appears to challenge the validity of the entire Letter Agreement, not just the arbitration clause itself. For this reason as well, Maritz's challenge must be made to the arbitrator, not this Court.

### B. The Letter Agreement Is Both Valid and Covers the Disputes between the Parties. Thus, Even Assuming the Court Decides the Issue of Arbitrability, Maritz Should Be Compelled to Arbitrate.

Even assuming that the issue of the Letter Agreement's validity is not reserved for the arbitrator, Maritz should be compelled to arbitrate. In ruling on a petition to compel arbitration the Court considers only two questions: (1) whether an enforceable arbitration agreement exists between the parties; and (2) whether the claims at issue are covered by the arbitration agreement. *See* 9 U.S.C. § 4; *Chiron Corp.*, 207 F.3d at 1130. Once the Court determines that there is an arbitration agreement that applies to the dispute, the Court's work ends. *See Dean Witter Reynolds*, 470 U.S. at 218. Here, both requirements are met.

#### 1. The Letter Agreement Is Valid and Enforceable

Maritz claims that the Letter Agreement is neither valid nor enforceable. (*See* Thompson Decl., Ex. G.) Maritz's unspecified objections to the Letter Agreement are without merit.

Importantly, the parties negotiated, drafted and entered the Letter Agreement *after* the disputes between the parties had arisen. (*See* Thompson Decl., Ex. A, April 20 letter; Ex. B, May 7 letter; and Ex. C, June 5 letter.) Both parties were represented by counsel during the bargaining process, and there can be no allegation by Maritz that the negotiation was anything but arms-length. When Maritz's Associate General Counsel signed and returned the Letter Agreement, Maritz undeniably indicated that there had been a meeting of the minds with respect to the Letter

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ

- 7 -

21823\1390215.1

Agreement, no matter what Maritz may now claim its subjective intent was. *See, e.g.*, *Warehousemen's Union Local No. 206 v. Continental Can Co., Inc.*, 821 F.2d 1348, 1350 (9th Cir. 1987) ("where there are objective manifestations of the parties' intent to create a contract, the court need look no further").

Nor can Maritz demonstrate that the Letter Agreement is somehow procedurally and substantively unconscionable and thus unenforceable. Preliminarily, as to any possible unconscionability contention, Maritz bears the burden of proving both procedural as well as substantive unconscionability. *See Higgins v. Super. Ct.*, 140 Cal. App. 4th 1238, 1249 (2006). This is a burden Maritz cannot carry. At no time did Visa demand that Maritz "take it or leave it." In fact, the Letter Agreement was a uniquely negotiated document, unlike the standardized contracts of adhesion that typically give rise to a finding of procedural unconscionability. *See Lagatree v. Luce, Forward, Hamilton & Scripps*, *LLP*, 74 Cal. App. 4th 1105, 1125 (1999). Moreover, Martitz undeniably had the right to veto the Letter Agreement; this opportunity to reject the Letter Agreement or any of its terms—including the arbitration and release provisions—by itself defeats any claim of procedural unconscionability. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106, 1108 (9th Cir. 2002).

### 2.     The Letter Agreement Applies to the Parties' "Respective Claims For Damages" and "Related Claims"

Maritz may contend that the Letter Agreement does not cover the disputes raised by Visa's arbitration demand. Any such contention would be baseless.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). California law also has a strong "preference for arbitration, and the concomitant rule that arbitration should be upheld unless it can be said with assurance that an arbitration clause cannot reasonably be interpreted to cover a dispute." *Segal v. Silberstein,* 67 Cal.Rptr.3d 426, 432-433 (Cal. App. 2d October 29, 2007) (reversing trial court's denial of petition to compel arbitration even though arbitration clause was deemed "poorly worded"); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (agreement requiring arbitration of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ
- 8 -
21823\1390215.1

disputes "arising out of or related to" the contract is "broad"). Where, as here, an arbitration clause is broad, "the preference for arbitration is particularly strong." *Homestake Lead Co. of Mo. v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003). Broad arbitration clauses, such as the one here, apply so long as the factual allegations underlying a claim "touch matters" covered by the contract. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Here, the plain and unambiguous language of the Letter Agreement provides: "We agree[] that [Visa's and Maritz's] ***respective claims for damages*** resulting from alleged breaches of the April 17 Agreement ***and related claims*** will ***all*** be resolved outside of court." (Thompson Decl., Ex. D, Letter Agreement (emphasis added).) The inclusion of the word "respective" demonstrates that the scope of the Letter Agreement applies to both parties' claims. Maritz simply cannot credibly claim that the Letter Agreement does not cover the parties' respective disputes surrounding the performance of the April 17 Agreement.

### C.  This Case Should Be Stayed Pending the Arbitration.

Section 3 of the FAA provides that a district court "upon being satisfied that the issue involved in [a] suit or proceeding is referable" to arbitration, shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See Lloyd v. Hovensa, LLC,* 369 F.3d 263, 269 (3d Cir. 2004) (stay mandatory once court compels arbitration). For the reasons discussed above, this matter is referable to arbitration. This case, therefore, must be stayed until the arbitration has been had.

### IV.  CONCLUSION

For the foregoing reasons, Visa respectfully requests that the Court issue an Order (a) compelling Maritz to submit to arbitration, in accordance with the Letter Agreement, and (b) staying this action.

DATED: November 28, 2007

FARELLA BRAUN & MARTEL LLP

By:/s/ _____
Robert C. Holtzapple
Attorneys for Plaintiff VISA U.S.A. INC.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PETITION TO COMPEL ARBITRATION
Case No. CV-07-5585 BZ
- 9 -
21823\1390215.1