# Exhibit A

**APPENDIX OF NON-FEDERAL AND UNPUBLISHED FEDERAL AUTHORITIES
CITED IN VISA USA INC.'S PETITION TO COMPEL ARBITRATION**

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

▷Anderson v. Pitney Bowes, Inc.
N.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Kendricks ANDERSON, Plaintiff,
v.
PITNEY BOWES, INC., Pitney Bowes Management Services, Inc., and Does 1 through 10, inclusive, Defendants.
No. C 04-4808 SBA.

May 4, 2005.

Richard E. Levine, San Francisco, CA, for Plaintiff.
Eric A. Grover, Paul R. Lynd, San Francisco, CA, for Defendants.

ORDER
ARMSTRONG, J.
*1 This matter comes before the Court on Defendant Pitney Bowes' ("PB") [FN1] motion to compel arbitration and stay the action pending arbitration. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Defendant's motion to compel binding arbitration and stay the action pending arbitration.

FN1. Defendants include Pitney Bowes, Inc., Pitney Bowes Management Services, Inc., and Does 1 through 10. For the purposes of this motion, the Court will refer to Defendants collectively as "PB" or "Defendant."

I. BACKGROUND

Plaintiff Kendricks Anderson ("Anderson") filed suit in San Francisco Superior Court, alleging, *inter alia,* that Defendant PB illegally terminated his employment because of his race. PB removed the case to federal court on diversity grounds.

On September 29, 2003, Plaintiff applied for employment with PB. (Mot. to Compel at 1.) As part of the application process, Plaintiff signed a Statement of Terms and Conditions ("Statement"),[FN2] which provides that:

FN2. The Statement is dated September 29, 2003. (Pyle Decl., Ex. A at 1.) However, Plaintiff contends that he did not sign the Statement, or the PB Resolve Agreement (*see infra,* p. 2), until January 2004. (Anderson Decl. at ¶ 4.) Plaintiff alleges that he was instructed to back-date these documents by a human resources representative. (*Id.*) This factual dispute is irrelevant to the Court's decision, as Plaintiff's five causes of action all stem from wrongful termination, which allegedly occurred in June 2004, at least six months after Plaintiff alleges he signed the documents. (*See, e.g.,* Compl. at ¶¶ 20-40.)

As a condition of your employment, you will be required to sign and comply with a PB Resolve Agreement. The PB Resolve Agreement requires, among other provisions, that all covered disputes you may have with the Company and the Company may have with you, be submitted to the Company's alternate dispute resolution process ["PB Resolve"] which includes full and final resolution of disputes through a four-step process, ending with binding arbitration.
(Pyle Decl., Ex. A at ¶ 1(c).) Plaintiff also signed the PB Resolve Agreement ("Agreement"), which requires the parties to submit any claims related to termination, violation of public policy, and discrimination to binding arbitration.[FN3] (*See id.,* Ex. B at 1.) On the first page, in bold font, the Agreement states that, "By signing the Agreement You are specifically acknowledging that you have had an opportunity to review the PB Resolve Program Manual and agree to abide by its terms."(*Id.* (capitalization and emphasis in original).) The Agreement further provides that:

FN3. For the purposes of this motion, Plaintiff does not dispute that the Agreement, if valid and binding, covers all claims raised in his complaint.

The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this

Not Reported in F.Supp.2d                                                                                               Page 2
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.... The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes....
(*Id.* at 2.) The last paragraph of the Agreement reads as follows:
*Voluntary Agreement*
I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

(*Id.* at 4 (capitalization and emphasis in original).) Directly underneath the "Voluntary Agreement" section is a separate line for an employee to initial acknowledgment of this paragraph. *Id.* Neither party disputes that Plaintiff did not place his initials on this separate line. The parties also do not dispute, however, that Plaintiff signed on the signature line at the end of the Agreement.

*2 Defendant now seeks to compel arbitration based on the executed Statement and Agreement. Defendant contends that the Court must order arbitration on all issues, including the gateway issues of arbitrability. In opposition, Plaintiff argues that the Court, as opposed to the arbitrator, must determine arbitrability. Plaintiff further alleges that his conscious refusal to initial the "Voluntary Agreement" paragraph shows that Plaintiff did not agree to arbitrate his claims against PB. Finally, Plaintiff argues that the Agreement is unenforceable because it is both substantively and procedurally unconscionable.[FN4] Because the Agreement clearly and unmistakably provides an arbitrator with exclusive jurisdiction to decide issues of arbitrability, the Court GRANTS Defendant's motion to compel and stay the action pending arbitration.

FN4. Plaintiff contends that the Agreement is unconscionable because it was (1) offered to him on a "sign-it-or-lose-your-job" basis; (2) lacking in mutuality, and (3) unduly restrictive in its discovery limitations. (Opp. to Def's Mot. to Compel ("Opp.") at 13-17 (citing *Fitz v. NCR Corp.,* 118 Cal.App.4th 702, 13 Cal.Rptr.3d 88 (2004))). Plaintiff does not, however, contend that the paragraph arguably giving the arbitrator the power to decide arbitrability is unconscionable.

II. DISCUSSION

A. Legal Standard

The dispositive issue is who should decide arbitrability: the Court or an arbitrator. A dispute is arbitrable if: (1) there was an agreement to arbitrate between the parties; and (2) the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83-4, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)."Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."*Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The question whether parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability," is generally an issue for judicial determination. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Parties are free, however, to contract around this default rule by assigning the determination of arbitrability to an arbitrator. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

The issue of who should decide arbitrability turns on what the parties agreed to in their contract. *Id.* at 943."When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state law principles that govern the formation of contracts."[FN5] *Id.* at 944.There is a presumption that the parties did not agree to submit questions regarding the arbitrator's jurisdiction to that same arbitrator.[FN6] Consequently, if the contract is silent or ambiguous, the Court decides arbitrability. *Id.* at 944-45;*Dream Theater,* 124 Cal.App.4th at 553, 21 Cal.Rptr.3d 322. However, if the parties "clearly and unmistakably" empowered an arbitrator to determine arbitrability, the Court must compel arbitration of the gateway issues as well. *AT & T Technologies,* 475

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW   Document 6-2   Filed 11/28/2007   Page 4 of 11

Not Reported in F.Supp.2d                                                                                   Page 3
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

U.S. at 649;*Dream Theater*, 124 Cal.App.4th at 553, 21 Cal.Rptr.3d 322;*Parker v. Twentieth Century-Fox Film Corp.*, 118 Cal.App.3d 895, 901-04, 173 Cal.Rptr. 639 (Ct.App.1981) (parties did not expressly provide arbitrator with authority to decide his or her own jurisdiction). Even then, the Court must examine the underlying contract to determine whether the parties have in fact agreed to commit the question of arbitrability to the arbitrator. *Freeman v. State Farm Mut. Auto. Ins. Co.*, 14 Cal.3d 473, 480, 121 Cal.Rptr. 477, 535 P.2d 341 (1975); *Dream Theater*, 124 Cal.App.4th at 553, 21 Cal.Rptr.3d 322;*Airline Pilots Ass'n, Int'l v. Midwest Airlines Express, Inc.*, 279 F.3d 553, 555 (7th Cir.2002) ("[T]he parties to a contract can if they wish assign the determination of arbitrability of a dispute to an arbitrator-but then the question whether they have done that is for the court.")."If the issues in a case are within the reach of the Agreement," the court must, upon request by either party, grant a stay of the action pending arbitration. *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir.1993) (internal quotations omitted).

FN5. Both parties agree that California law governs this aspect of the dispute. In any event, California courts often look to federal law in deciding arbitration issues and "California law is consistent with federal law on the question of who decides disputes over arbitrability."*Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 553, 21 Cal.Rptr.3d 322 (Ct.App.2004).

FN6. The general presumption favoring arbitration is reversed when deciding *who* primarily should decide arbitrability, as opposed to *"whether* a particular merits related-dispute is arbitrable because it is within the scope of a valid arbitration agreement."*First Options*, 514 U.S. at 944;*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (general presumption concerning the scope of arbitrable issues in favor of arbitration). The presumption is reversed because the question of who decides whether a dispute is arbitrable is "rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers."*First Options*, 514 U.S. at 945.

B. Analysis

*3 Defendant contends that the parties' Agreement expressly and exclusively assigned questions of arbitrability to an arbitrator. In response, Plaintiff contends that the Court must decide: (1) whether the Agreement is unconscionable; and (2) the significance of Plaintiff's failure to initial the "Voluntary Agreement" paragraph. However, Plaintiff does not cite a single case in support of his proposition that the Court may determine arbitrability when the underlying contract unquestionably empowers an arbitrator with this authority. (See, e.g., Opp. at 7-11.) Instead, Plaintiff attempts to distinguish the four cases upon which Defendant relies and makes a policy argument: if the Court compels arbitration, it will lose all authority to decide the enforceability of an unconscionable agreement simply because an employer has so provided in the text of a contract. (*Id.* at 8.)

The Agreement "clearly and unmistakably" provides an arbitrator with the exclusive authority to determine whether the Agreement is unenforceable. *AT & T Technologies*, 475 U.S. at 649;*First Options*, 514 U.S. at 944-45. The Agreement mandates that "the Arbitrator shall have *exclusive authority* to resolve any dispute relating to the *interpretation,applicability*, or *enforceability* or *formation* of this Agreement, including ... any claim that all or any part of this Agreement is *void or voidable."*(Pyle Decl., Ex. B at 2 (emphasis added).) Neither a court nor an arbitrator is free to ignore this provision in the Agreement. The parties unambiguously expressed their intent to submit the question of unconscionability to an arbitrator by giving him or her the exclusive power to decide the Agreement's formation, enforceability, applicability and whether all or any part of it is void or voidable. *See, e.g., Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal.4th 83, 113-14, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000) (unconscionability renders a contract unenforceable); *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir.1991) ("If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute."). This language also evidences a clear intent that an arbitrator would decide the significance, if any, of Plaintiff's failure to initial one of the Agreement's paragraphs.[FN7]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW    Document 6-2    Filed 11/28/2007    Page 5 of 11

Not Reported in F.Supp.2d                                                              Page 4
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

FN7. Plaintiff contends that no agreement to arbitrate *exists* because of his failure to initial the "Voluntary Agreement" paragraph. However, Plaintiff fully admits that he signed two documents, the Statement and the Agreement, both of which unambiguously evidence the parties intent to submit certain disputes exclusively to arbitration. Further, the "Voluntary Agreement" paragraph states that: "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL."(Pyle Decl., Ex. B at 4 (emphasis in original).) Consequently, a PB employee forfeits his right to a jury trial *when he signs the Agreement,* not when he places his initials by the "Voluntary Agreement" paragraph. (*See id.*)Although Plaintiff states in his declaration that he did not initial this paragraph because he never intended to agree to arbitrate (Anderson Decl. at ¶ 8), a party's hidden intentions are immaterial to the determination of mutual assent. *See, e.g., Horacek v. Smith,* 33 Cal.2d 186, 193, 199 P.2d 929 (1948) (undisclosed intentions irrelevant); 1 WITKIN SUM. CAL. LAW CONTRACTS S § 119 (9th ed.2004) (mutual assent is determined by the parties' overt acts, not their hidden intentions); *Zurich General Acc. & Liability Assur. Co. v. Industrial Acc. Com.,* 132 Cal.App. 101, 104, 22 P.2d 572 (1933) ("The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from the language employed by them ... It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on the subject."). Plaintiff's execution of both the Statement and the Agreement objectively manifest his intent to agree to arbitrate certain disputes, including arbitrability. (*See* Pyle Decl., Ex. B at 2 ("The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.").) Whatever significance his failure to initial may have on the arbitrator's decision regarding the Agreement's enforceability, it does not impact the Court's determination that a contract to arbitrate between the parties exists.

Courts have found agreements to submit arbitrability to arbitrators with similar contractual language. *See, e.g., Airline Pilots,* 279 F.3d at 556 ("[W]hen an arbitration clause is so broadly worded that it encompasses disputes over the scope or validity of the contract in which it is embedded, issues of the contract's scope or validity are for the arbitrators."). In fact, courts have found agreements to commit arbitrability to the arbitrator with contractual language that is much less "clear and unmistakable." In *Dream Theater,* for example, the sellers of a multimedia and entertainment business contended that the arbitration clause in their contract of sale did not apply to them because it was limited to third party indemnity claims. 124 Cal.App.4th at 550, 21 Cal.Rptr.3d 322. The arbitration clause only specified that arbitration would be "in accordance with the AAA Commercial Arbitration Rules."*Id.* The AAA Rules, in turn, provided "that the arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'"*Id.* However, this language was not actually present in the agreement; a contracting party needed extrinsic materials to understand that they were forfeiting their right to have a court determine arbitrability.*Id.* Despite this, the *Dream Theater* court held that the contractual language was "clear and unmistakable" evidence that the parties intended an arbitrator, rather than the court, to decide whether their dispute was subject to arbitration. *Id.* at 549, 21 Cal.Rptr.3d 322. Here, the Agreement's arbitration clause facially gives an arbitrator the exclusive authority to determine his or her own jurisdiction; one need not reference extrinsic materials, such as the AAA Rules, to determine whether the parties intended an arbitrator to decide arbitrability. Because the parties clearly and unmistakably committed the issue of arbitrability to the arbitrator, the Court compels arbitration.

*4 Plaintiff argues that *Dream Theater* is inapplicable

Case 3:07-cv-05585-JSW    Document 6-2    Filed 11/28/2007    Page 6 of 11

Not Reported in F.Supp.2d                                                                                       Page 5
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

because the court dealt with an indemnity issue, as opposed to an unconscionability argument. However, the *Dream Theater* court evaluated the same issue as this Court faces. The issue is not indemnity or unconscionability, but rather *who* decides whether an arbitration clause actually binds a party to arbitrate their claima court, or an arbitrator. 124 Cal.App.4th at 551-52, 21 Cal.Rptr.3d 322. Further, Plaintiff makes no effort to explain why this distinction, even if correct, would compel an opposite result.

Plaintiff also contends that the Court must decide the unconscionability and "failure to initial" arguments because the "*Dream Theater* court, while ultimately holding that the arbitrator did have the authority ... to arbitrate the claim in question, construed and interpreted the agreement, examined the evidence of the parties intentions, and made its decision."(Opp. at 11.) Plaintiff misunderstands the scope of a court's review under these circumstances. The Court, by conducting a *facial and limited review* of the contract, must only decide whether the parties have in fact clearly and unmistakably agreed to commit the question of arbitrability to the arbitrator. *See, e.g., United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567-68 (1960); *Airline Pilots,* 279 F.3d at 555;*Dream Theater,* 124 Cal.App.4th at 553, 21 Cal.Rptr.3d 322 (determining who decides arbitrability "necessarily requires the courts to examine and, *to a limited extent,* construe the underlying agreement"); *Johnston Boiler Co. v. Local Lodge No. 893,* 753 F.2d 40, 43 (6th Cir.1985). The Supreme Court explained in *United Steelworkers* that:

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*United Steelworkers of America,* 363 U.S. at 567-68.It would be error for the Court to determine the merits of Plaintiff's argument, i.e. whether the Agreement is unenforceable, when the parties clearly submitted that question to an arbitrator. *See id.*

Plaintiff conflates two separate issues: 1) *who* decides arbitrability; and 2) *whether* a dispute is actually arbitrable. If there is a dispute over *who* decides, a court must determine if the parties unambiguously vested this authority with an arbitrator. When a court concludes that the parties clearly empowered an arbitrator with this decision, however, it would defy logic, tread on the prerogative of the arbitrator, and deprive the parties of their contract if a court were then to turn around and decide this very issue itself. *See, e.g., id.;AT & T Technologies,* 475 U.S. at 649-50. The *Dream Theater* court recognized this problem, and did not exceed the scope of its authority in conducting a limited review to determine solely whether the parties in fact agreed to submit arbitrability issues to an arbitrator. *Dream Theater,* 124 Cal.App.4th at 552-55, 21 Cal.Rptr.3d 322.

*5 Plaintiff erroneously contends that the Supreme Court's decisions in *AT & T* and *First Options*"absolutely reject[ ] the position argued for by Pitney Bowes here."(Opp. at 9 (emphasis in original).) In *AT & T Technologies v. Communications Workers,* the Court reaffirmed the basic principles of arbitration. As quoted above, the first principle is that " 'arbitration is a matter of contract.' "*AT & T Technologies,* 475 U.S. at 648 (citing *Warrior & Gulf,* 363 U.S. at 582 & *United Steelworkers of America,* 363 U.S. at 570-71 (1960) (Brennan, J., concurring)). The second rule, which Plaintiff partially quotes, is that the question of arbitrability is generally for a court. Plaintiff's quotation, however, leaves out the very next sentence of the Court's decision: "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."*Id.* at 649 (emphasis added). Here, the parties did in fact "clearly and unmistakably" contract around the default rule established by the *AT & T* Court. *See supra* at 5-8.

Similarly, Plaintiff misconstrues the Supreme Court's analysis in *First Options.* As stated by the Court:
We believe the answer to the "who" question [ ] is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute [ ], so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration?

*First Options,* 514 U.S. at 943. The Supreme Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW    Document 6-2    Filed 11/28/2007    Page 7 of 11

Not Reported in F.Supp.2d                                                                                                                Page 6
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

then affirmed the Court of Appeals finding that the dispute was subject to independent review by the courts "because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration." *Id. at 947.* Here, conversely, the Agreement unquestionably provides an arbitrator with exclusive jurisdiction over arbitrability issues.

Finally, Plaintiff argues that compelling arbitration in this case will divest a court of jurisdiction to decide an arbitration agreement's enforceability, including a clearly adhesive one. The Court is not free, however, to ignore the clear intent of the parties' contract. The basic objective is to ensure that arbitration agreements, just like all contracts, "are enforced according to their terms." *First Options, 514 U.S. at 947* (internal quotations omitted). Further, arbitration, and other forms of alternate dispute resolution, frequently divest courts of cases and issues which they would normally adjudicate. Finally, Plaintiff's argument that the Court will retain no power after compelling arbitration is incorrect. If the arbitrator determines that the Agreement is unconscionable and consequently unenforceable, the Court will then decide Plaintiff's employment dispute. The parties can also return to the Court and request that it either vacate or confirm the arbitrator's final award. Plaintiff's policy argument, without any legal authority, simply does not compel a different result. Because arbitration is a matter of contract, and the Agreement is unmistakably clear, the Court GRANTS Defendant's motion to compel arbitration.

*6 Defendant also requests that this Court stay proceedings pending the arbitrator's determination. Plaintiff does not address this point in his opposition. The Federal Arbitration Act provides that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The stay provision is mandatory: "If the issues in a case are within the reach of the Agreement, the district court has no discretion under section 3 to deny the stay." *Hornbeck Offshore Corp.,*
981 F.2d at 754 (5th Cir.1993) (internal quotations omitted). Because the parties agreed to arbitrate the issue of arbitrability, the Court GRANTS Defendant's motion for a stay as a matter of course.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendant's Motion to compel arbitration and stay the action pending arbitration [Docket No. 8] is GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2005.
Anderson v. Pitney Bowes, Inc.
Not Reported in F.Supp.2d, 2005 WL 1048700 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

**APPENDIX OF NON-FEDERAL AND UNPUBLISHED FEDERAL AUTHORITIES CITED IN VISA USA INC.'S PETITION TO COMPEL ARBITRATION**

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2004 WL 2931284 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

CBayer CropScience, Inc. v. Limagrain Genetics Corp., Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
BAYER CROPSCIENCE, INC. Plaintiff,
v.
LIMAGRAIN GENETICS CORPORATION, INC., Defendant.
No. 04 C 5829.

Dec. 9, 2004.

James A. White, Gregory Steven Otsuka, Carrie Elizabeth Bassi, Jones Day, Chicago, IL, for Plaintiff.
Timothy John Miller, Novack & Macey, Chicago, IL, Jay L. Alexander, Ryan E. Bull, Baker Botts LLP, Washington, DC, for Defendant.

*MEMORANDUM OPINION AND ORDER*
DARRAH, J.
*1 Bayer CropScience, Inc. filed a complaint against Limagrain Genetics Corporation, Inc., seeking declaratory (count I) and injunctive (count II) relief with respect to Limagrain's demand for arbitration. Presently before the Court is Limagrain's Motion to Dismiss and/or Compel Arbitration, and Bayer's Cross-Motion to Enjoin Arbitration.

BACKGROUND

A reading of Bayer's Complaint supports the following summary of the alleged operative conduct of the parties.

In 1988, Rhone-Poulenc, Inc. acquired Callahan Enterprises, Inc. ("CEI"). Bayer is the successor-in-interest to Rhone-Poulenc. On June 30, 1994, Limagrain and Rhone-Poulenc executed an Asset Purchase Agreement, in which Limagrain assumed all CEI rights and obligations, including those under a 1986 contract that CEI had with Midwest Oilseeds, Inc. ("MOI"). The Agreement also contained provisions regarding indemnification (Section 11) and arbitration (Section 9.1).

MOI sued Limigrain, in its capacity as successor in interest to CEI, and at the conclusion of the trial, Limigrain was found liable to MOI for damages over $40 million resulting from Limiagrain's breach of the 1986 contract. On or about June 28, 2004, after the judgment against Limagrain, Limagrain filed its Notice of Arbitration ("Notice") with the American Arbitration Association ("AAA") and served Bayer with the Notice.

In the Notice, Limagrain makes three claims against Bayer. First, Limagrain claims Bayer must indemnify Limagrain for some or all of Limagrain's liability in the lawsuit brought by MOI against Limagrain, pursuant to indemnification provision (Section 11.2) of the Agreement. Secondly, Limagrain claims that Bayer is liable for its predecessor's (Rhone-Poulenc) intentional or negligent failure to disclose certain information related to the 1986 contract between CEI and MOI to Limagrain prior to entering the Agreement ("wrongful inducement claim"). Lastly, Limagrain claims that Bayer is liable for damages to Limagrain's "reputation in the industry as a result of its dispute with MOI," and damages for the costs Limagrain will incur "in reconstituting its stock of unencumbered genetic material," because Limagrain's " 'ownership' rights in germplasm and genetic material derived from MOI germplasm are, in effect, worthless."

Bayer claims that the arbitration provision of the Agreement does not cover Limagrain's wrongful inducement claim, nor does it cover the remaining claims for damages. Specifically, Bayer claims that Section 9.1 of the Agreement requiring arbitration, only applies to "any controversy or dispute under this Agreement."Accordingly, Bayer argues that Limagrain does not allege that its wrongful inducement and damages claims arise "under th[e] Agreement." [FN1]

> FN1. Bayer alleges that Limagrain lays out four claims for indemnification in the Notice, although the Notice only lists three: 1. Indemnification; 2. Failure to Disclose ("wrongful inducment"); 3. Other Damages. Contrarily, Limagrain claims to only have alleged the first two claims. The Court will address the damages claims as a part of the wrongful inducement claims since the 'other

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 2931284 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

damages' claim is merely the manifestation of the harm caused by the wrongful inducement.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court considers all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. See _Marshall-Mosby v. Corporate Receivables, Inc._, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." _Conley v. Gibson_, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." _Graehling v. Vill. Of Lombard, Ill._, 58 F.3d 295, 297 (7th Cir.1995).

*2 Federal law favors arbitration as a means of resolving disputes. The Federal Arbitration Act ("FAA") provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that the FAA embodies a broad federal policy favoring arbitration. _Shearson/American Express, Inc. v. McMahon_, 482 U.S. 220, 225-226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Section 4 of the FAA directs the court to issue an order compelling arbitration if either party fails, neglects, or refuses to comply with the arbitration agreement. 9 U.S.C. § 4. The FAA further "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay or a like defense to arbitrability."

## ANALYSIS

Bayer first argues that Limagrain's claims for wrongful inducement and for the other damages are outside of the scope of the arbitration provision of the Agreement. Limagrain contends that they are within the scope of the Agreement because the claims arise "under the Agreement."

"In deciding whether a particular claim comes within the scope of an arbitration agreement, the focus is on the factual allegations of the complaint." _Goldberg v. Focus Affiliates, Inc._, 152 F.Supp.2d 978, 980 (N.D.Ill.2001) (quoting _Schacht v. Hartford Fire Insurance Co._, 1991 WL 171377 (N.D.Ill.1991.). Generally speaking, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." _Welborn Clinic v. Medquist Incorporated_, 301 F.3d 634, 639 (7th Cir.2002)(quoting _United Steelworkers of Am. v. Warrior & Gulf Navigation Co._, 363 U.S. 574, 582-583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Indeed, "once it is clear the parties have a contract that provides for arbitration of some issue between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." _Miller v. Flume_, 139 F.3d 1130, 1135 (7th Cir.1998).

Claims of fraudulent or false inducement can be subject to arbitration under mandatory arbitration provisions. See _Melborn Clinic_, 301 F.3d at 641; _Goldberg_, 152 F.Supp.2d at 981. A court must look to the wording of the arbitration provision and determine if it is broad enough to include the particular claim. _Prima Paint Corp. v. Flood & Conklin Mfg. Co._, 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). For example, in _Goldberg_, the Court held that because the arbitration provision contained the phrase "under the terms of this Agreement," the provision was broad enough to include claims of fraudulent inducement.

*3 Limagrain's wrongful inducement claim is within the scope of the arbitration clause. This issue was addressed in _Goldberg._ Limagrain is alleging a fraudulent or negligent failure to disclose information, causing inducement into a contract with Bayer. Furthermore, Limagrain's damages claims in the Notice of Arbitration are results of the alleged wrongful inducement, and therefore also fall within the scope of the arbitration clause. In short, all of Limagrain's claims are within the scope of the arbitration agreement.

Next, Bayer claims that even if the wrongful inducement and damages claims are within the scope of the arbitration provision, the parties intended to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW   Document 6-2   Filed 11/28/2007   Page 11 of 11

Not Reported in F.Supp.2d                                                                                        Page 3
Not Reported in F.Supp.2d, 2004 WL 2931284 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

exclude the issue of arbitrability from being submitted to arbitration, thus requiring the Court to decide the issue. Specifically, Bayer contends that the Agreement contained an integration provision at Section 12.10 that preempts the arbitration provision regarding any understanding or representation made prior to the Agreement. Accordingly, Bayer claims that this is sufficient evidence to indicate an intent of the parties to not arbitrate the wrongful inducement claims, and accordingly, the issue of its arbitrability is a question for the Court to answer. Contrarily, Limagrain argues that the issue of arbitrability of an issue is for the arbitrator to decide, pursuant to the rules of the AAA, which include Rule 7(a) of the Commercial Arbitration Rules and Mediation Procedures of the AAA. Rule 7(a) states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

Whether an issue is subject to arbitration is a matter of contract interpretation under state law. *Welborn Clinic*, 301 F.3d at 639. In Illinois, state law requires the court to determine whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration. *See Estate of Jesmer v. Rohlev*, 241 Ill.App.3d 798, 803, 182 Ill.Dec. 282, 609 N.E.2d 816 (1993). Despite a strong por-arbitration tilt, agreements must not be construed so broadly as to force arbitration of claims that the parties never agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Accordingly, courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so. *First Options*, 514 U.S. at 944. Evidence of the parties intent to arbitrate the issue of arbitrability can be found in the terms of the contract, such as in an integration clause. *See Bidlack v. Wheelabrator Corporation*, 993 F.2d 603, 608 (7th Cir.1993) ("[T]he presence of such a clause is some indication of the parties' desire to limit a free-ranging judicial discretion to interpolate terms.")."It is a rule universally recognized that a written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs it."*Bunge Corporation v. Williams*, 45 Ill.App.3d 359, 364, 4 Ill.Dec. 11, 359 N.E.2d 844 (Ill.App. 5th Dist.1977). Finally, if evidence of intent does not exist, it is the Court's job to address arbitrability issues. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Reliance Insurance Co. v. Raybestos Products Co.*, 382 F.3d 676, 678-679 (7th Cir.2004).

*4 The inclusion of the phrase "[t]he arbitration shall be conducted ... in accordance with the prevailing commercial arbitration rules of the American Arbitration Association" in the arbitration provision of the Agreement is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator. To explain, Rule 7(a) of the Rules of the AAA state that the arbitrator shall determine his or her own jurisdiction over an issue. Furthermore, the parties are responsible for and bound by all terms they put into a contract. *Bunge Corporation*, 45 Ill.App.3d at 364, 4 Ill.Dec. 11, 359 N.E.2d 844. Accordingly, if Bayer did not intend to be bound by Rule 7(a) of the AAA, it should have stated such an exception in the Agreement.

Alternatively, even if the evidence was not clear and unmistakable in favor of an arbitrator determining issues of arbitrability, the Court cannot say with positive assurance that the provision is not susceptible to an interpretation that a wrongful inducement claim is subject to mandatory arbitration. Accordingly, the broad scope of the arbitration provision of the Agreement embodies the issue of arbitrability for the same reasons as stated above. Therefore, the issue of arbitrability is to be determined by the arbitrator.

CONCLUSION

For the reasons stated above, the Defendant's Motions to Dismiss and Compel Arbitration is granted, and the Plaintiff's Cross-Motion to Enjoin Arbitration is denied.

N.D.Ill.,2004.
Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc.
Not Reported in F.Supp.2d, 2004 WL 2931284 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.