MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (California Bar No. 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Attorneys for Defendant and Counterclaimant
MARITZ, INC.

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VISA U.S.A. INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARITZ INC., d/b/a MARITZ LOYALTY MARKETING,<br><br>                    Defendant,<br><br>────────────────────────<br><br>MARITZ INC., d/b/a MARITZ LOYALTY MARKETING,<br><br>                    Counterclaimant,<br><br>          v.<br><br>VISA U.S.A. INC. and CARLSON MARKETING GROUP, INC.<br><br>                    Counterclaim Respondents. | Civil Action No. C 07-05585 JSW<br><br>**ANSWER AND COUNTERCLAIM OF MARITZ INC.**<br><br>**<u>JURY</u> <u>TRIAL</u> <u>DEMANDED</u>** |

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

Maritz Inc. ("Maritz"), for its Answer to the Complaint of Visa U.S.A. Inc. ("Visa") and Counterclaim, against Visa and Carlson Marketing Group, Inc. ("Carlson"), states as follows:

## MARITZ'S ANSWER

1.     The introductory paragraph of Visa's Complaint contains no allegations against Maritz that require any answer by Maritz but, instead, merely sets forth the relief requested by Visa.  If and to the extent any answer is required, Maritz denies each and every allegation contained in Visa's introductory paragraph, denies that Visa is entitled to any relief, and denies there is any basis for arbitration in light of, inter alia, Visa's bad faith, deceit, fraudulent inducement and intentional concealment of material facts in connection with the arbitration-related discussions.

2.     In response to paragraph 1 of Visa's Complaint, Maritz admits that Maritz and Visa have certain disputes relating to certain contracts that the parties entered into in 2006 and that Visa terminated the Master Services Agreement between Visa and Maritz dated April 17, 2006 (the "MSA") in April 2007.  In further response, Maritz states that it lacks information sufficient to form a belief as to precisely what Visa means by the term "underlying contract," and Maritz therefore denies each allegation in Visa's Complaint that uses such term.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 1 of Visa's Complaint.

3.     In response to paragraph 2 of Visa's Complaint, Maritz admits that Exhibit A to the Complaint is a copy of a letter dated July 9, 2007 (the "Letter").  Maritz denies that the arbitration provision in the Letter binds or commits Maritz to resolve its disputes with Visa through arbitration because of, among other things, Visa's bad faith, fraudulent and deceitful conduct and concealment in connection therewith.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 2 of Visa's Complaint.

4.     In response to paragraph 3 of the Complaint, Maritz states that the Letter speaks for itself, but Maritz denies that it is obligated to arbitrate any of its claims or disagreements with Visa.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 3 of the Complaint.

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

5.      In response to paragraph 4 of the Complaint, Maritz admits that direct negotiations between it and Visa were not successful.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 4 of the Complaint.

6.      In response to paragraph 5 of the Complaint, Maritz admits that Visa has asked Maritz to discuss the procedures through which the parties' disputes might be arbitrated.  Further answering, Maritz states that it has made clear to Visa that Maritz is not obligated to arbitrate any of the parties' claims because of, among other things, Visa's bad faith, fraudulent and deceitful conduct.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 5 of the Complaint.

7.      In response to the first sentence of paragraph 6 of the Complaint, Maritz admits that Visa is requesting the order that is referenced in the first sentence of paragraph 6 of the Complaint but denies that Visa is entitled to any such order.  Maritz lacks knowledge or information sufficient to form a belief as to the truth of the second sentence in paragraph 6 of the Complaint and therefore denies the same.

8.      In response to paragraph 7 of the Complaint, Maritz states that paragraph 7 appears to describe what Visa is or will be seeking rather than containing allegations directed against Maritz and that therefore no answer is required.  If and to the extent an answer is required, Maritz denies the allegations contained in paragraph 7 of the Complaint and specifically denies that Visa is entitled to any damages or relief.

9.      In response to paragraph 8 of the Complaint, Maritz admits that it does business as Maritz Loyalty Marketing, that Maritz is a Missouri corporation with its principal place in Fenton, Missouri, and that the amount in controversy exceeds $75,000 exclusive of interests and costs.  Except to the extent expressly admitted herein, Maritz lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8 of the Complaint and therefore denies each such allegation.

10.     In response to paragraph 9 of the Complaint, Maritz admits that Visa has filed an arbitration demand with AAA in San Francisco, but denies that Visa's arbitration demand is

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

1  proper and further denies that the AAA has any jurisdiction over Visa's alleged claims against

2  Maritz.  Except to the extent expressly admitted herein, Maritz denies the allegations in

3  paragraph 9 of the Complaint.

4        11.     In response to paragraph 10 of the Complaint, Maritz admits that Visa has filed an

5  arbitration demand with AAA in San Francisco, California seeking to arbitrate Visa's claims.

6  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 10 of the

7  Complaint.

8        12.     In response to paragraph 11 of the Complaint, Maritz admits that Visa is seeking

9  injunctive relief but denies that Visa is entitled to any such relief.  Except to the extent expressly

10  admitted herein, Maritz denies the allegations in paragraph 11 of the Visa's Complaint.

11        13.     In response to paragraph 12 of the Complaint, Maritz admits that it is subject to the

12  personal jurisdiction of this Court, is licensed to do business in the State of California, and has

13  appointed an agent for service of process in California.  Maritz lacks information sufficient to

14  form a belief regarding Visa's allegation that Maritz "has engaged in general and specific acts"

15  and therefore denies such allegation.  Except to the extent expressly admitted herein, Maritz denies

16  the allegations in paragraph 12 of the Complaint.

17        14.     Maritz lacks information sufficient to form a belief as to the truth of the allegations

18  in paragraph 13 of the Complaint and therefore denies such allegations.

19        15.     Maritz admits in response to paragraph 14 of the Complaint that it provides

20  customer loyalty programs intended to increase customer retention and satisfaction; that Maritz

21  markets itself as a provider in customer loyalty programs; and that it provides and/or assists in

22  providing the development, design, implementation and operation of customized customer

23  retention programs designed, among other things, to help develop long-term relationships with an

24  entity's customers.  Except to the extent expressly admitted herein, Maritz denies the allegations in

25  paragraph 14 of the Complaint.

26        16.     In response to paragraph 15 of the Complaint, Maritz admits that it and Visa

27  entered into certain agreements in April 2006.  In further response, Maritz states that such

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

agreements speak for themselves.  In further response, Maritz states that the term "underlying contract" is unclear and therefore Maritz lacks knowledge or information sufficient to form a belief as to the truth of Visa's allegations relating to such term.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 15 of the Compliant.

17.     In response to paragraph 16 of the Complaint, Maritz admits that there were various milestones contained in certain agreements between it and Visa, and that one of these milestones was the Phase I-A Launch Date.  In further response, Maritz states that the agreements speak for themselves.  Except to the extent expressly admitted herein, Maritz denies the remaining allegations in paragraph 16 of the Complaint.

18.     Maritz denies the allegations in paragraph 17 of Visa's Complaint.  Further answering, Maritz states that the agreements between Maritz and Visa speak for themselves. Except as expressly admitted herein, Maritz denies the allegations in paragraph 17 of the Complaint.

19.     Maritz denies the allegations in paragraph 18 of the Complaint.  In further response, Maritz states that the launch in the Fall of 2006 was dependent upon a  number of factors, including the timely provision of accurate and complete information from (among others) Visa to Maritz.  The launch efforts were not successful due to problems and delays caused by Visa and its vendor, Carlson (i.e., Carlson Marketing Group).  Further, Visa's changes, interference and conduct caused the launch date to be delayed.  Additionally, Visa agreed to waive the launch date and to proceed on a best efforts basis and the parties did not establish a new launch date until February 23, 2007, when the parties agreed to a new target date of July 2, 2007.  Further, Visa is estopped from claiming any damages due to any alleged failure to meet a launch date.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 18 of the Complaint.

20.     In response to paragraph 19 of the Complaint, Maritz admits that on April 20, 2007, Visa terminated the MSA with Maritz, effective on or about May 20, 2007.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 19 of the Complaint.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

21.    In response to paragraph 20 of the Complaint, Maritz admits that after April 20, 2007, Maritz and Visa discussed, inter alia, how to resolve Maritz's claims arising from and relating to the MSA.  Except to the extent expressly admitted, Maritz denies the allegations in paragraph 20 of the Complaint.

22.    In response to paragraph 21 of the Complaint, Maritz admits that on July 9, 2007, Visa's counsel discussed with Maritz's counsel the use of a staged alternative dispute resolution process.  In further response to paragraph 21, Maritz states that the Letter speaks for itself.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 21 of the Complaint.  Maritz further specifically denies that it has any obligation to arbitrate with Visa.

23.    In response to paragraph 22 of the Complaint, Maritz admits that it signed the Letter, but Maritz denies that it has any obligation to arbitrate with Visa.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 22 of the Complaint.

24.    Maritz denies the allegations of paragraph 23 of the Complaint.

25.    In response to paragraph 24 of the Complaint, Maritz admits that Visa has filed a demand with the American Arbitration Association in San Francisco.  Except as expressly admitted herein, Maritz denies the allegations in paragraph 24 of the Complaint.

26.    In response to Paragraph 25 of the Complaint, Maritz admits that paragraph 25 alleges what Visa claims.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 25 of the Complaint, and further denies that Visa is entitled to any of the relief that it seeks.

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

## MARITZ'S ANSWER TO VISA'S

## **FIRST CAUSE OF ACTION**

27.     In response to paragraph 26 of the Complaint, Maritz incorporates herein by reference, as if fully set forth herein, its answers to the Complaint contained in paragraphs 1-25 above.

28.     In response to paragraph 27 of the Complaint, Maritz states that the first sentence of paragraph 27 of the Complaint contains a legal conclusion to which no answer is required. Maritz denies the allegations in the second sentence of paragraph 27.

29.     In response to paragraph 28 of the Complaint, Maritz states that the Letter speaks for itself.  Except to the extent specifically admitted herein, Maritz denies the allegations contained in paragraph 28 of the Complaint.  In further response, Maritz specifically denies it has any obligation to arbitrate with Visa.

30.     Maritz admits in response to paragraph 29 of the Complaint that Maritz has made clear to Visa that Maritz has no obligation to arbitrate in light of, inter alia, Visa's bad faith, fraudulent and deceitful conduct relating to the arbitration provisions of the Letter.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 29 of the Complaint.

31.     Maritz admits in response to paragraph 30 of the Complaint that Visa has submitted a demand for arbitration with the American Arbitration Association in San Francisco requesting that the disputes regarding both the validity of the alleged "Letter Agreement" and the procedures for the arbitration be resolved by binding arbitration.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 30 of the Complaint, and Maritz further specifically denies that it has any obligation to arbitrate any such disputes.  Maritz further states that the arbitration provision of the Letter is invalid and unenforceable as it is the consequence of bad faith, fraudulent and deceitful conduct in connection with such provision.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

**MARITZ'S ANSWER TO THE**

**SECOND CAUSE OF ACTION**

32.     In response to paragraph 31 of the Complaint, Maritz incorporates herein by reference its answers contained in paragraphs 1-30 above.  In further response to paragraph 31 of the Complaint, Maritz admits that Visa alleges that Visa is bringing its claim for alleged breach of contract alternatively and only if Visa's request that the alleged "Letter Agreement" be enforced is denied.  Except to the extent expressly admitted, Maritz denies the allegations in paragraph 31 of the Complaint.

33.     In response to paragraph 32 of the Complaint, Maritz admits that it entered into certain agreements with Visa on or about April 17, 2006.  Except as expressly admitted herein, Maritz denies the allegations in paragraph 32 of the Complaint.

34.     Maritz denies the allegation in paragraph 33 of the Complaint.

35.     Maritz denies the allegations in paragraph 34 of the Complaint.  Further answering, Maritz states that the delays with respect to various launch dates were caused by Visa and/or its vendor Carlson.  Further answering, Maritz states that Visa itself changed the launch dates and waived and is estopped from claiming any damages with respect to any such launch dates.

36.     Maritz denies the allegations contained in paragraph 35 of the Complaint.

37.     Maritz denies the allegations in paragraph 36 of the Complaint.

38.     Maritz denies the allegations in paragraph 37 of the Complaint.

**MARITZ'S ANSWER TO THE**

**THIRD CAUSE OF ACTION**

39.     In response to paragraph 38 of the Complaint, Maritz incorporates herein by reference its answers contained in paragraphs 1-37 above.  In further response to paragraph 38 of the Complaint, Maritz admits that Visa has alleged that it is bringing its claim for negligence alternatively and only if Visa's request that the alleged "Letter Agreement" be enforced is denied.  Except to the extent admitted herein, Maritz denies the allegations in paragraph 38 of the Complaint.

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

40.    In response to paragraph 39 of the Complaint, Maritz is without information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint in that Visa has failed to define the standard of care to which it is referring, and Visa therefore denies the allegations in paragraph 39 of the Complaint.

41.    Maritz denies the allegations in paragraph 40 of the Complaint.

42.    Maritz denies the allegations in paragraph 41 of the Complaint.

**MARITZ'S ANSWER TO VISA'S**

**FOURTH CAUSE OF ACTION**

43.    In response to paragraph 42 of the Complaint, Maritz incorporates by reference herein its answers in paragraphs 1-41 above as though fully set forth herein.

44.    In response to paragraph 43 of the Complaint, Maritz states that its agreements with Visa speak for themselves.  Except as expressly admitted herein, Maritz denies the allegations in paragraph 43 of the Complaint.

45.    In response to paragraph 44 of the Complaint, Maritz admits that Visa has requested that Maritz archive, purge and escrow certain data.  Except to the extent expressly admitted herein, Maritz denies the allegations in paragraph 44 of the Complaint.

46.    Maritz denies the allegations in paragraph 45 of the Complaint.

47.    Maritz denies the allegations in paragraph 46 of the Complaint.

48.    Maritz denies the allegations in paragraph 47 of the Complaint.

49.    Maritz denies the allegations in paragraph 48 of the Complaint.

**ADDITIONAL RESPONSES AND AFFIRMATIVE DEFENSES**

1.    Except to the extent expressly admitted above, Maritz denies each allegation of the Complaint.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

### FIRST AFFIRMATIVE DEFENSE

2.    Visa's Complaint, and each Cause of Action thereof, fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

3.    Visa's claims contained in its Second, Third and Fourth Causes of Action are barred, in whole or in part, based upon Visa's laches.

### THIRD AFFIRMATIVE DEFENSE

4.    Visa's claims in its First, Second, Third and Fourth Causes of Action are barred, in whole or in part, on grounds of estoppel and/or waiver.

### FOURTH AFFIRMATIVE DEFENSE

5.    Visa's claims in its Second, Third and Fourth Causes of Action are barred, in whole or in part, because Visa ratified, consented to or acquiesced in the conduct of which it now complains.

### FIFTH AFFIRMATIVE DEFENSE

6.    Visa's claims in the Second, Third and Fourth Causes of Action are barred, in whole or in part, because any injury, damage or loss allegedly sustained by Visa was proximately and actually caused by and contributed to by (a) the breaches of contract, negligence, carelessness and/or other conduct of Visa, and/or (b) the negligence, carelessness or other fault of Carlson or other third parties over whom Maritz had no control.

### SIXTH AFFIRMATIVE DEFENSE

7.    Visa's claims are barred, in whole or in part, because none of the alleged acts or omissions of Maritz were the proximate cause of Visa's purported damages.

### SEVENTH AFFIRMATIVE DEFENSE

8.    Visa is not entitled to any injunctive or other equitable relief because of Visa's unclean hands and other inequitable conduct.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

**EIGHTH AFFIRMATIVE DEFENSE**

9.      Visa's claims are barred, in whole or in part, because if Visa sustained injury or damage, said injury or damage was caused wholly or in part by the conduct, negligent acts or omissions, and/or fault of third parties or entities other than Maritz, which conduct, acts or omissions, or fault were the proximate causes or intervening or superseding causes of any injury or damage to Visa.

**NINTH AFFIRMATIVE DEFENSE**

10.     Any delays in, or failures to meet, any of the launch dates, as well as any damages allegedly resulting therefrom, were caused in whole or in part by Visa, Carlson and/or others rather than Maritz.

**TENTH AFFIRMATIVE DEFENSE**

11.     Any alleged breach of any contract by Maritz was excused by Visa's prior breaches and/or Visa's agreement, consent, acquiescence and/or waiver.

**ELEVENTH AFFIRMATIVE DEFENSE**

12.     Maritz satisfied its obligations, both contractual and otherwise, in all material respects.

**TWELFTH AFFIRMATIVE DEFENSE**

13.     Visa's Fourth Cause of Action, which purports to be "Injunctive Relief," fails to state a claim upon which relief can be granted. Visa's alleged "Breach of Contract" claim is in the Second Cause of Action. There is no separate Cause of Action for "Injunctive Relief."

**THIRTEENTH AFFIRMATIVE DEFENSE**

14.     Visa's Third Cause of Action fails to state a claim upon which relief can be granted because Visa is improperly attempting to transform a contract claim into a claim of negligence.

**FOURTEENTH AFFIRMATIVE DEFENSE**

15.     Visa is not entitled to recover any liquidated damages. Visa waived and/or is estopped from pursuing any such damages, and any such damages would amount to an impermissible penalty.

11

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

## FIFTEENTH AFFIRMATIVE DEFENSE

16.    Visa is not entitled to any order compelling arbitration because of Visa's bad faith, deceit and fraudulent concealment in failing to disclose material information relating to the proposed arbitration.  Visa intentionally concealed the fact that it had an alleged claim for tens of millions of dollars against Maritz, knowing that if Visa disclosed such claim Maritz would not have agreed to arbitrate the claim.

## SIXTEENTH AFFIRMATIVE DEFENSE

17.    Visa is not entitled to recover any liquidated damages because Visa caused and/or substantially contributed to the delays and problems of which it complains.

## SEVENTEENTH AFFIRMATIVE DEFENSE

18.    Visa is not entitled to recover any damages relating to its decision to terminate the MSA and/or Visa's decision to implement the Rewards Program through Carlson because Visa did not terminate the MSA due to any alleged breach by Maritz, nor did Visa provide the notice and opportunity to cure that would have been required had Visa attempted to do so.

## EIGHTEENTH AFFIRMATIVE DEFENSE

19.    Visa's claims for damages are barred, in whole or in part, by the MSA, including Section XVIII.B thereof.

## NINETEENTH AFFIRMATIVE DEFENSE

20.    Visa's First Cause of Action, which seeks to compel arbitration, fails because the parties did not agree to submit the issue of arbitrability to arbitration, and under applicable law, the issue of arbitrability should be decided by the Court.

## TWENTIETH AFFIRMATIVE DEFENSE

21.    Visa's First Cause of Action, which seeks to compel arbitration, fails because, under applicable law, the parties did not mutually agree upon the scope of that which was to be arbitrated, and it would be unconscionable to force Maritz to arbitrate under the circumstances (including specifically Visa's deceitful conduct).

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

## TWENTY-FIRST AFFIRMATIVE DEFENSE

22.     Visa is not entitled to any relief or damages because of its breaches of the implied covenant of good faith and fair dealing.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

23.     Visa is not entitled to recover any damages relating to its decision to terminate the MSA and/or Visa's decision to implement the Rewards Program through Carlson because Visa did not terminate because of any alleged failure by Maritz to deliver any critical Milestone, nor could Visa have done so.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

24.     Any alleged failures or alleged negligence of Maritz relating to any of its obligations of which Visa complains were made in compliance with instructions of Visa.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

25.     Maritz performed in accordance with, and consistent with, its obligations under the MSA.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

26.     Visa's claims are in violation of, and are barred, in whole or in part, by Section XXII of the MSA.

WHEREFORE, Maritz prays for judgment in its favor and against Visa on each of Visa's Causes of Action and:

1.     that Visa take nothing by its Complaint and that the same be dismissed with prejudice;

2.     that Maritz have judgment entered in its favor;

3.     that Maritz be awarded its costs of suit, including attorneys' fees; and

4.     for such other and further relief as this court deems proper.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

## MARITZ'S COUNTERCLAIM AGAINST VISA AND CARLSON

Defendant/Counterclaimant Maritz Inc. ("Maritz"), d/b/a Maritz Loyalty Marketing ("MLM"), for its counterclaim against Visa U.S.A. Inc. ("Visa") and Carlson Marketing Group, Inc. ("Carlson"), states as follows:

### INTRODUCTION

1.      This Counterclaim arises out of (among other things) (a) Visa's breaches of its contractual obligations to Maritz in connection with a contract made as of April 17, 2006 (the "Master Services Agreement" or "MSA") and certain Related Agreements (as defined in the MSA) (collectively, with the MSA, the "Agreement"), (b) Visa's fraudulent inducement and/or negligent misrepresentations relating to the Agreement, (c) Visa's bad faith and breaches of the implied covenant of good faith and fair dealing relating to the Agreement, (d) Visa's misleading Maritz into continuing to invest time, money and effort in the development of the Visa Rewards Program even though Visa, on information and belief, was actively considering, negotiating and/or planning to terminate its arrangement with Maritz so that Visa could continue its relationship with its existing vendor Carlson, and (e) Visa's bad faith and fraudulent concealment and inducement in connection with Visa's efforts to deceive Maritz into arbitrating certain claims.

2.      This Counterclaim also arises out of the failure of Carlson – Visa's vendor and a direct competitor to Maritz – to provide timely, complete and proper information that Visa and/or Maritz needed in connection with efforts to convert and transition Visa's then-existing points-based rewards program (the "Existing Rewards Program") to a new Visa points-based rewards program that was being developed and was to be deployed and run by Maritz (the "Rewards Program").  These failures by Carlson caused and/or contributed to problems and delays relating to the Rewards Program project.

3.      As a result of the unlawful, fraudulent and other tortious misconduct of Visa and/or Carlson, Maritz has, inter alia, incurred millions of dollars in damages.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
                                                      CASE NO. C 07-05585 JSW

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

**PARTIES**

4.      Maritz is, and at all times pertinent hereto was, a Missouri corporation, having its principal place of business at 1375 N. Highway Drive, Fenton, MO 63099.

5.      Maritz is engaged in the business of (among other things) providing and assisting in the providing of incentive reward programs and services, including with respect to customer rewards and communications-based loyalty programs.

6.      Visa is, and at all times pertinent hereto was, a Delaware corporation, having its principal place of business at 900 Metro Center Boulevard, Foster City, California 94404.

7.      Visa is involved in the electronics payments industry.  Visa, among other things, administers Visa payment and rewards programs in the United States, including a points-based reward program sometimes referred to as Visa Extras.

8.      On information and belief, Carlson is, and at all times pertinent hereto was, a New Jersey corporation having its principal place of business in Minnesota.  Carlson is engaged in the business of (among other things) providing and assisting in the providing of incentive reward programs and services, including with respect to customer rewards and communications-based loyalty programs.  Carlson is a direct competitor of Maritz.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201.  There is complete diversity of citizenship between Maritz, Carlson and Visa, and Maritz is seeking damages in excess of $75,000, exclusive of interest and costs.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this Counterclaim occurred in this district.

**BACKGROUND**

A.      **The Master Services Agreement.**

11.     In April 2006, Visa entered the MSA with Maritz, made as of April 17, 2006, and also agreed to certain Related Agreements, under which Maritz, among other things, was to

15

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

develop, deploy and operate for Visa and its members the "Rewards Program (i.e., a points-based rewards program.

12.     Visa's Existing Rewards Program (i.e., then-existing rewards program) was being developed, operated and maintained by Carlson.  Like Maritz, Carlson is engaged in the business of (among other things) providing and assisting in the providing of incentive reward programs and services, including with respect to customer rewards and communication-based loyalty programs.

13.     Visa's agreement in mid-April of 2006 with Maritz reflected Visa's decision to switch the Existing Rewards Program from Carlson to Maritz, essentially keeping the functionality of the Existing Rewards Program but increasing and improving its capabilities.

14.     Visa and Maritz agreed in the MSA to a Phase I-A Launch Date for the Rewards Program of September 30, 2006, or such later date as Visa might approve.

15.     As reflected in Section XXIII.R. of the MSA, the time for Maritz to release the Phase I-A Software, migrate existing Cardholder accounts from Visa's Existing Rewards Program to the new Rewards Platform, and commence commercial operations of the new Rewards Program was on or before the Phase I-A Launch Date.

16.     However, Maritz and Visa knew that the deadlines under the MSA and the Related Agreements were extremely tight and that various factors could cause problems or delays with respect to the Rewards Program, including with respect to the Phase I-A Launch Date as well as other launch dates referenced in the MSA.  As a result, there were a number of terms, conditions and protections built into the MSA.

(a)     For example, in order to develop and provide the functionality that Visa desired in connection with the Rewards Program, Maritz needed timely, detailed and accurate information from Visa describing (among other things) how Visa's Existing Rewards Program worked and the conditions and logic relating thereto.  Accordingly, Visa was obligated under Section VI.N. of the MSA to

"**provide to Maritz**, to the extent permitted by law and existing contractual obligations, **information relating to the existing Visa Extras rewards program** (the "Existing Program") to the extent **reasonably necessary for Maritz to carry out the Development**

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

16

**Services and to ensure the migration** of the Existing Program to the Rewards Platform. From and after the Phase I-A Launch Date **and prior thereto to the extent necessary for testing of the Rewards Platform** Visa will provide on a daily basis a data feed containing daily Cardholder transaction information, which shall be the primary basis for allocation of points in the Rewards Program, in addition to the other methods of points allocation set forth in the Business Requirements." (emphasis added)

(b)    Similarly, under Section XXIII.I. of the MSA, Maritz was not to be responsible, or in breach of the MSA, if Maritz's performance was delayed, or if Maritz failed in its performance of its obligations under the MSA, as a result of any cause beyond its control.

(c)    Similarly, Section XXIII.R. of the MSA provided for certain relief from the liquidated damage provisions of the MSA if Maritz's performance was delayed for various reasons, including due to (1) delays beyond Maritz's control and/or (2) delays caused in whole or in part by a failure by Visa, or a third party with respect to which Visa exercised control, or Visa's existing service provider (i.e., Carlson) to perform its obligations under the MSA or the Related Agreements.

(d)    In addition, Section XVIII of the MSA expressly limited Maritz's potential liability by precluding "special, indirect, incidental or consequential damages, whether in contract or tort (including negligence), arising out of or related to [the MSA]."

17.    Visa also had an implied obligation under the MSA to deal with Maritz in good faith and fairly and not to do anything that would delay, interfere with or prevent Maritz's performance under the MSA.

18.    On information and belief, Carlson and Visa had one or more agreements pursuant to which Carlson was to provide information and files that were needed by Maritz in connection with the Rewards Program project. Maritz, on information and belief, was a third party beneficiary of the agreement(s) between Carlson and Visa.

19.    Both Carlson and Visa knew, _inter alia_, that the information and files Carlson was supposed to provide were needed by Maritz with respect to the Rewards Program project. Visa

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

told and indicated to Maritz that Visa could and would provide information and/or files from Carlson, and/or that Carlson could and would provide such information and/or files to Maritz.

20.    Compliance by Visa with its obligations under Section VI.N. and the other sections of the MSA and the Related Agreements was critical if Maritz was to be able to meet its deadlines under the MSA, including with respect to the Phase I-A Launch Date.

**B.    Maritz Was Not Provided the Timely, Complete and Accurate Information That Was Required In Connection With the Rewards Program.**

21.    Visa failed numerous times to provide Maritz with the timely, complete and accurate information that Visa expressly and impliedly was contractually obligated to provide pursuant to the MSA.  Visa also breached its obligations of good faith and fair dealing by impeding, delaying, interfering with and delaying Maritz's performance.

22.    Carlson, on information and belief, also failed to provide that which it was supposed to provide, when it was supposed to provide it, in violation of Carlson's agreement(s) with Visa.  For example, Carlson provided incomplete information, corrupt files and/or files that contained "bugs," and failed to provide information in a timely fashion.  As a result of Carlson's failures, Maritz – the third-party beneficiary of Carlson's agreement(s) with Visa – has been, and is continuing to be, damaged and harmed.

23.    Visa's failures to provide timely, complete and accurate information to Maritz, as required by the MSA and as required by Visa's implied obligations, breached Visa's express and implied obligations under the MSA and caused numerous problems, disruptions and delays in connection with the development and deployment of the Rewards Program, including with respect to the target launch dates.

24.    Carlson's failures to provide timely, complete, accurate and uncorrupted information that Maritz needed and was supposed to receive in connection with the Rewards Program project caused problems, disruptions and delays with respect to the Rewards Program project, including delays of the target launch dates.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

25.     In addition, delays caused by Visa and/or other factors beyond Maritz's control – including, but not limited to, Visa changing and/or adding new requirements, Carlson failing to provide information in a timely fashion, and Carlson and/or Visa providing inaccurate, incomplete and/or corrupt files and/or information – delayed and hindered Maritz's performance of its obligations under the Agreement, including with respect to meeting the target launch dates.

26.     As a result of the above problems and delays caused by Visa and/or Carlson, the original Phase 1-A Launch Date of September 30, 2006 was postponed by Visa several times, from September 30, 2006 until mid-October 2006, then to the first part of November 2006.  As a result of problems and delays caused by Visa and/or Carlson, the attempted conversion and launch with respect to the Rewards Program in the first part of November 2006 were unsuccessful, ultimately leading in late February of 2007 to a new target launch date of July 2, 2007.

27.     Visa's failures to provide timely, complete and accurate information in violation of Visa's contractual obligations and/or other factors beyond Maritz's control, and Carlson's failures to provide timely, complete, accurate and uncorrupted information and files, hindered, delayed and excused Maritz's performance of certain of its obligations under the Agreement and caused Maritz to incur substantial costs and expenses in excess of the contract price.  These failures included, but are not limited to, the following:

(a)     Visa was required to provide certain agreed-upon "Web Creative" and Web Creative assets to Maritz by May 30 and June 15, 2006, so that Maritz would be in a position to deliver a Rewards Program web site, under an aggressive time line, consistent with the Carlson version of the existing Rewards Program web site.  Visa, however, failed to do so and, on information and belief, Visa's failures were caused at least in part by Carlson's failure to provide the necessary information.   As a result, Maritz was forced to attempt to reverse-engineer the Carlson version of the Rewards Program web site.  Visa's failures to provide the necessary Web Creative information resulted in additional expense, delays and disruptions with respect to the development and deployment of the Rewards Program, including with respect the Phase 1-A Launch Date.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

(b)    In order to reverse-engineer the Carlson version of the Existing Rewards Program web site, Maritz needed complete and current Content Guides from Visa to code the site. Visa failed to provide complete and current Content Guides until approximately February or March of 2007 – long after they were required to have been provided.  On information and belief, Visa's failure to provide complete and current Content Guides to Maritz in a timely fashion were caused in part by Carlson.

(c)    Visa failed to provide Maritz with the complete and correct final conversion requirements in a timely fashion.  This failure was caused, at least in part, by Carlson.

(d)    In late July and early August of 2006, Visa twice missed deadlines for delivering the first set of files to Maritz for conversion (the "Mock Conversion Files").   On information and belief, these failures were caused, at least in part, by Carlson.

(e)    Visa failed to provide proper and sufficient User Acceptance Testing ("UAT") data to allow Maritz to test the software it was developing for the Rewards Program. Visa's failure to provide adequate UAT data resulted in software coding assumptions relating to the conversion data that was to be provided in connection with the Rewards Program not being able to be fully tested until the actual production data was sent to Maritz.  This, in turn, led to last-minute problems and contributed to delays in the Phase I-A Launch Date.

(f)    In September of 2006, Maritz learned that Visa had provided Maritz with incorrect information relating to the file layouts for the Daily Balance File, Daily Enrollment File, and Monthly Enrollment File, resulting in software coding problems.

(g)    In September of 2006, Maritz learned that certain information relating to the Integrated Billing File – information that Visa had approved in April 2006 when it approved the Technical Statement of Work (the "TSOW") for the Rewards Program project – had to be changed because Visa had failed to gain a necessary approval.

(h)    In approximately September and October of 2006, Visa and its testers (including certain Visa issuers) used test cases that were different than those used by Maritz in order to test the functionality of the Maritz software.  This use of different test cases by Visa and

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

its testers was contrary to Section 4 of the TSOW that Visa itself had approved, and which provided that "Maritz and Visa will utilize the same test cases to test all Maritz-delivered functionality" (emphasis added). The use of different test cases by Visa and its testers created problems, delays and disruptions that adversely effected the launch and conversion efforts.

   (i) Visa often provided Maritz – both directly and also indirectly through Carlson and/or the Visa member financial institutions – with files and information containing the wrong sequence numbers. On information and belief, this problem was caused, at least in part, by Carlson.

   (j) Visa failed to tell Maritz that Maritz needed to include a "Tier 0" category in the Rewards Program software that Maritz was developing. As a result, problems surfaced in the October/November 2006 timeframe as Maritz was trying to process the production data that it had received from Carlson in connection with the conversion and launch efforts.

   (k) In November 2006, during the conversion/migration process, Visa and/or Carlson provided Maritz with information and files containing various mistakes, defects and problems. For example, Maritz was provided with parameter files that contained duplicate entries for the same account range. In addition, the information provided to Maritz with respect to the issuer non-group parameters was not sufficient to enable Maritz to configure the parameters properly.

   (l) During the November 2006 conversion process, thousands of the accounts that Maritz received from Carlson were in an inactive account range that had not been supplied to Maritz. This problem resulted from errors by Visa and/or Carlson.

   (m) In November 2006, Visa and Carlson twice provided Maritz, in connection with the conversion efforts, with files relating to the Carlson MoveIt site (i.e., Carlson's file transfer tool) that were corrupt.

   (n) In November 2006, Visa told Maritz for the first time that Maritz had to develop and use a full Consolidated Enrollment File ("CEF") comparison validation in connection with the November 2006 conversion and launch efforts.

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

21

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

(o)    In November 2006, during the failed conversion/launch efforts, Carlson provided Maritz with conversion data that contained earning tier identifiers that were supposed to be unique but which in fact were duplicated many times. Maritz subsequently learned that the problem was caused by a bug in Carlson's software.

(p)    In November 2006, Maritz learned that certain default consumer earning tiers that Visa had previously reviewed and approved were incorrect.

(q)    During the November 2006 conversion/launch efforts, Carlson provided bad earning data to Maritz.

(r)    Contrary to what Maritz had been told by Visa, child points were not supposed to be rolled up into parent accounts.

(s)    Maritz was provided, in connection with the November 2006 conversion efforts, with misinformation by Visa relating to how the Carlson system handled expired points.

28.    Visa further impeded, interfered with, hindered and prevented Maritz's performance with respect to the Rewards Program by imposing upon Maritz new, stringent and onerous Visa security requirements, including Visa's Key Controls, that were substantially over and above the requirements set forth in the MSA. Maritz would not have agreed in the MSA to the original Phase I-A Launch Date of September 30, 2006, if Visa had revealed that Maritz was going to have to comply with the Key Controls and the magnitude of what would be involved in attempting to do so.

29.    Maritz also had been led to believe by Visa that Maritz did not have to actually be compliant with certain of Visa's security requirements prior to the Phase I-A Launch Date, but instead only had to have a plan in place by that date to become compliant. Visa subsequently changed its position and, as a result, Maritz was prevented from obtaining production data in a timely manner, which in turn caused testing issues and problems.

30.    Maritz's efforts to meet the target launch dates were made even more difficult by Visa's constantly adding to and changing of its requirements relating to the Rewards Program.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

31.     Visa approved the specifications contained in the TSOW in mid-April of 2006. The initial deadline for requirements changes was the end of April 2006.  By May 9, 2006, however, Visa had already provided Maritz with a list of TSOW changes and updates.  Visa continued to propose changes relating to the TSOW through the Spring and Summer 2006.  In early August 2006, Visa requested approximately 171 of what Visa termed "clarifications" to the TSOW.

32.     In addition, Visa personnel, during the Spring and Summer, and continuing into the Fall, of 2006, made numerous informal requests for changes to the Rewards Program system Maritz was developing.

33.     Visa's numerous requests for changes in 2006, both formal and informal, long after the MSA was signed contributed to the problems in meeting the target launch dates in 2006.

34.     All of the above-described problems adversely impacted Maritz's efforts to meet the target launch dates in 2006.  Visa's missing of deadlines, its additions of new requirements, its changes in the existing requirements, its and/or Carlson's failures to provide timely, complete and accurate information, and its other conduct that impeded Maritz's performance had cumulative and ripple effects ultimately resulting in the launch dates being delayed and postponed and the November 2006 conversion/launch attempt being unsuccessful.

## C.    The Delays and Problems Led to an Agreement to Proceed on a Best Efforts Basis and to Waive Liquidated Damages.

35.     Maritz and Visa recognized early on that the problems and delays caused by Visa and/or that were beyond Maritz's control made meeting the targeted launch dates in 2006 problematic.  As early as June 2006, Maritz was expressing its concerns to Visa, and Visa was agreeing that a launch date in 2006 was problematic.

36.     By June 23, 2006, Maritz had told Tad Fordyce, Visa's Program Manager for the project, that Maritz had doubts whether the September 30, 2006 Phase I-A Launch Date could be met.  Maritz also told Visa's Fordyce that any plan to meet the September 30 Launch Date put risk on Maritz from a penalty standpoint and that Maritz therefore would need relief from any consequences of a flawed launch.  Fordyce agreed and made clear he understood that the delays

23

had not been caused by Maritz.  Fordyce further agreed, however, that Visa and Maritz should use their "best efforts" toward trying to find a way to meet the September 30 target.

37.    The discussions between Maritz and Visa relating to the difficulties and problems in trying to meet the Fall 2006 launch targets continued throughout the Summer and into the Fall of 2006.

38.    By mid-July of 2006, the consensus of the Visa team, according to Visa's Program Manager Fordyce, was that they needed to move the conversion/launch date to January 2007. Fordyce anticipated that his recommendation for a January 2007 launch would be approved within a couple of days.  In the meantime, Fordyce indicated that Maritz should proceed as if it were trying to meet an October 21, 2006 target date.

39.    Despite the consensus of the Visa team that the conversion and launch with respect to the Rewards Program should be moved to January 2007, they were not.  Instead, on July 31, 2006, Visa delayed the launch date, but only for two weeks, i.e., until mid-October 2006.

40.    In August 2006, Visa's Fordyce made clear that Visa agreed fully on waiving launch penalties and that he understood that everyone was in a "best efforts" type of situation.

41.    In late September 2006, Visa told Maritz that Visa had decided to push the launch date back two more weeks, until November 1, 2006.

42.    On or about October 22, 2006, Visa's Fordyce told Maritz he was going to recommend pushing the launch date back to November 13, 2006.

43.    Both Maritz and Visa anticipated problems in connection with a Fall 2006 launch, including with respect to the November 13 launch date.  Neither party expected an error-free launch.  The parties agreed to a "SWAT" team approach to try to deal with launch-related issues and problems as they developed.

44.    Visa and Maritz in November 2006 were proceeding on a "best effort" basis and with the understanding and agreement that penalties would not be imposed "as mutually agreed." Their discussions were summarized in an agreement confirmed by emails on November 8 and 9, 2006, between Visa's Program Manager Fordyce and Maritz's Chief Operating Officer, Doris

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

Lyons, in which they agreed, without setting a new launch date, to proceed on a "best efforts"

basis and to waive liquidated damages.

45.    In this agreement reflected in the November 8 and 9, 2006 emails, Visa and Maritz

agreed that they would "move forward with the best effort spirit . . . and know that we both will

work to get the job done and agree not to impose the penalty clause as mutually agreed." Maritz's

Lyons specifically asked Visa's Fordyce to let his boss, Tim Attinger, know, because Ms. Lyons

believed that Mr. Attinger agreed with the plan.  On November 9, 2006, Mr. Fordyce responded,

agreeing with the approach described in Ms. Lyon's November 8 email.  Under Section VI.J. of

the MSA, Maritz was entitled to rely on this email from Fordyce, Visa's Program Manager.

**D.    Visa Assured Maritz, After the November 2006 Launch Effort, That Visa Was Committed to Maritz.**

46.    Due largely to the Visa- and/or Carlson-caused problems described above, the

conversion of data and launch in November 2006 were unsuccessful.

47.    In December 2006, Visa decided to have Carlson re-start its website relating to the

Existing Rewards Program.  In light of (among other things) the time, money and effort that

Maritz had invested in the Rewards Program project, Maritz needed to know what Visa's

intentions were with respect to Maritz and the project, especially if Maritz was going to be asked

to devote even more time, money and effort to the project.

48.    Visa assured Maritz in December 2006 that the arrangement with Carlson was only

an interim approach and that Visa was committed to continuing with Maritz.  Visa also did not

advise Maritz that it was claiming that Maritz was default or in material breach of the MSA and/or

that Visa was going to claim that Maritz was responsible for paying for Carlson's restart of its

website and for continuing to operate the website while Maritz continued to perform under the

MSA.

49.    As a result of Visa's assurances, Maritz continued to invest time, money and effort

with respect to the Rewards Program project.  Had Maritz known or been advised that Visa

claimed Maritz was in default and that Visa intended to claim that Maritz was responsible for

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

paying for Carlson's work and for the alleged damages that Visa failed to disclose, Maritz would not have continued to work and expend substantial effort, time and money on the project through Visa's abrupt and unexpected termination in April 2006.

**E.    The New Migration Timeline.**

50.    In January 2007, Visa, Maritz and Inovant – a company majority-owned by Visa – met to discuss the status of the Rewards Program project.  In view of the numerous formal and informal changes that Visa had requested during 2006, Visa and Maritz agreed in January 2007, inter alia, to re-baseline the TSOW.  Visa and Maritz also agreed that the re-baselining would not be a re-opening of requirements, but instead was intended to reflect what had actually been built.

51.    Visa nonetheless used the re-baselining process to introduce a number of new requirements and also to re-visit changes that it had suggested during 2006 but which had not been implemented due to the time constraints.

52.    In connection with the re-baselining process, Visa and Maritz agreed on or about February 23, 2007, to a new "Migration Timeline" which included a new target launch date of July 2, 2007.

53.    Prior to agreeing to the February 23, 2007 Migration Timeline, Visa was not claiming to Maritz that Maritz had breached the MSA, or that Visa was or would be claiming that Maritz was liable for damages as the result of supposedly breaching the MSA, or that damages would continue to accrue through a new launch date.  If Visa had been asserting such claims, Maritz would not have agreed to the July 2, 2007 target launch date, nor would Maritz have agreed to invest the time, money and resources that were going to be required under the February 23, 2007 Migration Timeline.

54.    Visa, Maritz and Inovant all recognized the importance in early 2007 of freezing the requirements relating to the Rewards Program project.  As a result, the February 23, 2007 Migration Timeline specifically provided that "[r]equirements will be frozen and under strict change control through launch."  Despite the agreement to freeze requirements, Visa continued to request and/or pursue changes to the requirements.

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

55.     Under the February 23, 2007 Migration Timeline, both Maritz and Carlson had certain milestones to meet.  Maritz met its milestones in all material respects; Carlson did not. Carlson failed to provide in a timely fashion, for example, files needed for what was known as "Mini Conversion 2."  Carlson also failed to meet its deadline with respect to data-mapping.

56.     Carlson's failures and delays in 2007 relating to the Rewards Program project created potential problems and concerns relating to the target launch date of July 2, 2007.

57.     Despite the problems caused by Visa and Carlson, Maritz continued to do what it was supposed to do under the February 23, 2007 Migration Timeline.

**F.      Visa Unexpectedly and Abruptly Terminates the MSA.**

58.     On April 20, 2007, without any warning, and despite the assurances that Visa had provided to Maritz in December 2006, Visa abruptly terminated the MSA.

59.     Visa did not terminate the MSA under Section XXII.1 of the MSA due to any alleged material breach by Maritz, nor could Visa have done so since Maritz was not in default and since Visa did not give Maritz the 30-day opportunity to cure under Section XXII.1.

60.     Nor did Visa terminate the MSA under Section XXII.2.(a) of the MSA based upon any alleged failure by Maritz to deliver any "critical Milestone," nor could Visa have done so under such Section because Maritz met its obligations with respect to the critical Milestones.

61.     Instead, Visa terminated the MSA under Section XXII.2.(b) because Visa had decided to implement the Rewards Program through a different outside vendor, i.e., Carlson, Visa's existing provider.

62.     On or about April 20, 2007, John McCarthy of Inovant – Visa's own technology consultant -- told Maritz that technology was not an issue and did not play a part in the decision to terminate Maritz.  He also complimented the Maritz team for its outstanding performance.

63.     On information and belief, prior to April 20, 2007, Visa had been having discussions and/or negotiations with Carlson relating to Visa terminating the MSA with Maritz so that Visa could enter into a long-term arrangement with Carlson.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

64.    Maritz would not have continued to invest as much time, money and effort into the Rewards Program had it known that Visa was negotiating with Carlson and planning to terminate the MSA.

65.    Visa owes Maritz millions of dollars for Maritz's work and services in connection with the Rewards Program and the MSA.

66.    Visa claims that it does not have to pay the millions of dollars that it owes to Maritz, and that, instead, Visa is entitled to recover millions of dollars from Maritz due to the delays, problems and failures relating to the Rewards Program.  Maritz denies Visa's claims, but alleges, in the alternative, that the delays, problems, failures and any related damages allegedly incurred by Visa were caused by Visa itself and (among others) Carlson.

67.    After Visa terminated the MSA on April 20, 2007, Maritz attempted to collect what was due from Visa.  Visa disputed the amount it owed and, in connection therewith, acted in bad faith in attempting to resolve the dispute.  Visa attempted to deceive Maritz into an arbitration by intentionally concealing material information about Visa's claims and about what would be arbitrated.

68.    Section XXII of the MSA provides that "[t]he Parties [i.e., Visa and Maritz] shall act in good faith and reasonably in interpreting this Agreement and the Related Agreements and resolving any disputes that arise thereunder."  Visa has breached its obligations under Section XXII of the MSA.

**COUNT I**

**(Breach of Contract)**

**(Against Visa)**

69.    Maritz realleges and incorporates herein the allegations in paragraphs 1 through 68 of its Counterclaim above.

70.    As described above, Visa breached its express obligations under the MSA, as well as its implied covenant of good faith and fair dealing.

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

71.     Maritz complied with its obligations under the MSA in all material respects.  Any material noncompliance by Maritz with the MSA was due to Visa's conduct and breaches of the MSA, including but not limited to Visa's breaches of its obligations to timely provide Maritz with all accurate and correct information reasonably necessary for Maritz to carry out the Development Services under the MSA and/or to ensure migration of the existing Rewards Program from Carlson to Maritz.

72.     Visa has failed to pay Maritz what Visa owes for Maritz's services in breach of Visa's obligations under the MSA.

73.     Visa has acted in bad faith and unreasonably in interpreting the MSA and the Related Agreements and with respect to disputes arising thereunder, all in violation of Visa's obligations under the MSA.

74.     Maritz has been damaged and harmed in an amount well in excess of $75,000, exclusive of interest and costs, as the result of Visa's breaches of its express and implied obligations under the MSA.

WHEREFORE, Maritz prays for judgment in its favor and against defendant Visa on Count I of Maritz's Counterclaim, and that:

A.   Maritz be awarded compensatory damages in an amount based upon the evidence presented at trial;

B.   Maritz be awarded its costs and expenses, including attorneys fees;

C.   Maritz be awarded interest, including pre-judgment interest, in accordance with applicable law; and

D.   Maritz be awarded such other and further relief as is just and proper.

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

## COUNT II

### (Quantum Meruit)

### (Against Visa)

75. Maritz realleges and incorporates herein the allegations in paragraphs 1 through 68 of its Counterclaim above.

76. Maritz provided Visa with a number of services that Visa requested relating to the Rewards Program project and for which Visa has not paid Maritz.

77. Maritz expected that it would be compensated by Visa for services that Visa requested.

78. Visa has failed to pay Maritz for such services.

79. Maritz has been damaged well in excess of $75,000, exclusive of interest and costs, by Visa's failure to pay Maritz for the services that Visa requested.

WHEREFORE, Maritz prays for judgment in its favor and against defendant Visa on Count II of its Counterclaim, and that:

A. Maritz be awarded compensatory damages in an amount based upon the evidence presented at trial;

B. Maritz be awarded its costs and expenses, including attorneys fees;

C. Maritz be awarded interest, including pre-judgment interest, in accordance with applicable law; and

D. Maritz be awarded such other and further relief as is just and proper.

## COUNT III

### (Fraud)

### (Against Visa)

80. Maritz re-alleges and incorporates herein the allegations in paragraphs 1 through 68 above.

81. Visa fraudulently misled Maritz in connection with the Rewards Program and/or the MSA.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

82.     Visa, for example, knew that the deadlines under the MSA and the Related Agreements were very tight, including with respect to the original Phase 1-A Launch Date of September 30, 2007.

83.     Despite this knowledge, Visa fraudulently failed to disclose to Maritz the full scope of what would be involved with respect to the Rewards Plan project.  Prior to awarding the MSA, Visa failed to disclose, for example, that Maritz was going to have to comply with Visa's Key Controls security requirements.  This was a material fact that Visa should have disclosed to Maritz prior to awarding the contract but failed to do so. Visa's failure to disclose this material fact fraudulently induced Maritz to enter into the MSA.

84.     The time, cost, burdens and disruptions associated with Maritz having to review, analyze and implement Visa's Key Controls were very significant.

85.     Visa should have fully disclosed to Maritz, before the MSA and Related Agreements were finalized, that Maritz was going to have to comply with the Key Controls and precisely what that entailed.

86.     If Visa had properly disclosed this information to Maritz in a timely fashion, Maritz would not have agreed to the terms in the MSA.

87.     Maritz reasonably and justifiably relied on the information that Visa had provided to Maritz prior to Maritz entering into the MSA.  Visa's failure to make a full, proper and timely disclosure of the Key Controls requirements was material.

88.     Maritz has been damaged and harmed as the result of Visa's fraudulent concealment.

89.     Visa's fraudulent concealment was done with a willful and conscious disregard, and in reckless disregard, of Maritz's rights.

90.     Visa further misled Maritz with respect to whether Visa was going to continue the Rewards Program project with Maritz or whether Visa instead was going to continue using Carlson.

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

91.     In December 2006, Visa assured Maritz that Visa was going to continue the Rewards Program project with Maritz.  For example, during a December 7, 2006 telephone conference that included Mr. Fordyce of Visa, Visa re-affirmed its commitment to move forward with Maritz.  Similarly, in mid-December of 2006, Visa's Fordyce met with Maritz's Mark Peterman and Kelvin Taylor in Denver and made clear that Visa was committed to Maritz with respect to the Rewards Program and that the arrangement with Carlson was only for the short-term.

92.     Visa's assurances to Maritz were critical to Maritz.  Maritz was concerned that it would be asked to invest substantial additional time, money and effort into the Rewards Program project and to provide additional services to Visa but that Visa would then continue its arrangement with Carlson and terminate its MSA with Maritz.  Maritz sought and was given assurances by Visa that the arrangement with Carlson was only temporary and that Visa was committed to Maritz in the long-term with respect to the Rewards Program.

93.     Maritz reasonably relied on Visa's representations in this regard, and Visa on information and belief intended for Maritz to rely on Visa's representations.

94.     Based upon Visa's assurances, Maritz continued to invest substantial time, money and effort into the Rewards Program project and to provide substantial services to Visa.

95.     Subsequently, the parties agreed on a re-baselined TSOW and a new target launch date of July 2, 2007, along with various milestones leading to the July 2 launch date.  Maritz met all of its milestones under the agreed timeline and was not in material breach or default of the MSA, yet Visa, without warning and without giving Maritz the opportunity to perform under the agreed timeline, prematurely terminated the MSA for Visa's own convenience, i.e., to continue with Carlson.

96.     On information and belief, Visa was not as committed to Maritz as Visa led Maritz to believe.

97.     Maritz was damaged and harmed well in excess of $75,000, exclusive of interest and costs, as a result of Visa's fraudulent misrepresentations.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

WHEREFORE, Maritz prays for judgment in its favor and against defendant Visa on Count III of Maritz's Counterclaim, and that:

A. Maritz be awarded compensatory damages in an amount based upon the evidence presented at trial;

B. Maritz be awarded punitive damages;

C. Maritz be awarded its costs and expenses, including attorneys fees;

D. Maritz be awarded interest, including pre-judgment interest, in accordance with applicable law; and

E. Maritz be awarded such other and further relief as is just and proper.

## COUNT IV

### (Negligent Misrepresentation)

### (Against Visa)

98.     Maritz re-alleges and incorporates herein the allegations in paragraphs 1 through 68 of its Counterclaim above.

99.     Visa made negligent misrepresentations to Maritz relating to the Rewards Program and/or the MSA.

100.    Visa, for example, knew that the deadlines under the MSA and the Related Agreements were very tight, including with respect to the original Phase 1-A Launch Date of September 30, 2007.

101.    Despite this knowledge, Visa negligently failed to disclose to Maritz the full scope of what would be involved with respect to the Rewards Plan project.  Prior to awarding the MSA, Visa failed to disclose, for example, that Maritz was going to have to comply with Visa's Key Controls security requirements.  This was a material fact that Visa should have disclosed to Maritz but negligently failed to do so.  Visa's negligent failure induced Maritz to enter into the MSA.

102.    The time, cost, burdens and disruptions associated with Maritz having to review, analyze and implement Visa's Key Controls were very significant.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

103.    Visa should have fully disclosed to Maritz, before the MSA and Related Agreements were finalized, that Maritz was going to have to comply with the Key Controls and precisely what that entailed. Visa's failure to do so was, at a minimum, grossly negligent and in reckless disregard of Maritz's rights.

104.    If Visa had properly disclosed this information to Maritz in a timely fashion, Maritz would not have agreed to the terms in the MSA.

105.    Maritz reasonably and justifiably relied on the information that Visa provided to Maritz prior to Maritz entering into the MSA. Visa's failure to make a full, proper and timely disclosure of the Key Controls requirements was material.

106.    Similarly, in December 2006, Visa assured Maritz that Visa was going to continue the Rewards Program project with Maritz. For example, during a December 7, 2006 telephone conference that included Mr. Fordyce of Visa, Visa re-affirmed its commitment to move forward with Maritz. Similarly, in mid-December of 2006, Visa's Fordyce met with Maritz's Mark Peterman and Kelvin Taylor in Denver and made clear that Visa was committed to Maritz with respect to the Rewards Program and that the arrangement with Carlson was only for the short-term.

107.    Visa's assurances to Maritz were critical to Maritz. Maritz was concerned that it would be asked to invest substantial additional time, money and effort into the Rewards Program project and to provide additional services to Visa but that Visa would then continue its arrangement with Carlson and terminate its MSA with Maritz. Maritz sought and was given assurances by Visa that the arrangement with Carlson was only temporary and that Visa was committed to Maritz in the long-term with respect to the Rewards Program.

108.    Maritz reasonably relied on Visa's representations in this regard, and Visa on information and belief intended for Maritz to rely on Visa's representations.

109.    Based upon Visa's assurances, Maritz continued to invest substantial time, money and effort into the Rewards Program project and to provide substantial services to Visa.

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

110. Subsequently, the parties agreed on a re-baselined TSOW and a new target launch date of July 2, 2007, along with various milestones leading to the July 2 launch date. Maritz met all of its milestones under the agreed timeline and was not in material breach or default of the MSA, yet Visa, without warning and without giving Maritz the opportunity to perform under the agreed timeline, prematurely terminated the MSA for Visa's own convenience, i.e., to continue with Carlson.

111. On information and belief, Visa was not as committed to Maritz as Visa led Maritz to believe. Visa's misrepresentations were, at a minimum, negligent and in reckless disregard of Maritz's rights.

112. Maritz was damaged and harmed well in excess of $75,000, exclusive of interest and costs, as a result of Visa's negligent misrepresentations.

WHEREFORE, Maritz prays for judgment in its favor and against defendant Visa on Count IV of Maritz's Counterclaim, and that:

A. Maritz be awarded compensatory damages in an amount based upon the evidence presented at trial;

B. Maritz be awarded punitive damages;

C. Maritz be awarded its costs and expenses, including attorneys fees;

D. Maritz be awarded interest, including pre-judgment interest, in accordance with applicable law; and

E. Maritz be awarded such other and further relief as is just and proper.

## COUNT V

### (Fraud Related to Arbitration)

### (Against Visa)

113. Maritz re-alleges and incorporates herein the allegations in paragraphs 1 through 68 of the Counterclaim above.

114. Under Section XII of the MSA, Visa was obligated to act in good faith in resolving any disputes arising under the MSA and the Related Agreements.

115.    After Visa terminated the MSA, Maritz sought to collect monies due and owing from Visa.

116.    Under the guise of attempting to resolve with Maritz the issue of how much Maritz would be paid, Visa attempted to deceive Maritz into agreeing to an arbitration of Visa's claims, the extent and nature of which Visa intentionally failed to disclose to Maritz.

117.    Visa failed to disclose to Maritz that Visa was planning to assert that Maritz had defaulted and Visa was entitled to receive tens of millions of dollars from Maritz for Maritz's alleged breaches of the MSA.

118.    Visa's failure to disclose the nature and magnitude of its alleged claims in order to try to deceive Maritz into agreeing to an arbitration was intentional, deceitful, misleading, in bad faith, and also in breach of Visa's obligations under Section XII of the MSA.

119.    Visa's failure to disclose this information was material in that Maritz would not have agreed to the arbitration provision in the July 9, 207 letter sent by Visa's outside counsel to Maritz (the "Letter") had Visa been honest, forthright and acted in good faith.

120.    In addition, in light of Visa's bad faith and deceit relating to its attempt to deceive Maritz into arbitrating Visa's undisclosed claims for tens of millions of dollars, there was no agreement on the essential terms with respect to any such arbitration.

121.    Despite Visa's deceitful conduct and concealment, Visa contends that Maritz is obligated to arbitrate both Maritz and Visa's claims for damages resulting from alleged breaches of the MSA.  Maritz strongly disagrees that it is obligated to arbitrate Visa's claims which were intentionally concealed by Visa.

122.    On or about November 2, 2007, Visa filed a demand for arbitration with the American Arbitration Association ("AAA") in which Visa is seeking to determine by arbitration "the validity of agreement to arbitrate dispute over software contract and related claims, and determination of procedures to be used in arbitration."  Maritz, however, has never agreed to arbitrate the issue of the validity of the so-called "agreement to arbitrate dispute over software

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

contract and related claims," and Maritz is not bound to arbitrate any claims in light of Visa's misconduct and its breach of Section XII of the MSA.

123.    Visa is also asking this Court to order Maritz to arbitrate, effectively depriving Maritz of its right to a jury trial.

124.    Maritz has objected to any arbitration, and has sent letters to the AAA stating its objections, including letters from Maritz's counsel dated December 7 and December 10, 2007.

125.    Maritz has, in particular, advised the AAA that Maritz believes it was fraudulently induced into agreeing to the arbitration provision and the provision therefore is unenforceable. Maritz has also advised the AAA that the question of whether the arbitration provision is unenforceable due to Visa's fraudulent inducement is an issue that must be decided by the Court, and not the AAA.

126.    Despite Maritz's objections, the AAA apparently intends to proceed with the arbitration anyway. According to a letter dated December 13, 2007 from Norma Cantu, the AAA case manager, absent an "agreement of the parties or a court ruling staying this matter, the [AAA] will proceed with administration pursuant to the [AAA] Rules." The AAA's decision to forge ahead is improper since the issue of arbitrability is a threshold issue that needs to be decided by the Court, not the AAA, in light of Maritz's claim that it was fraudulently deceived and induced into agreeing to the arbitration provision.

127.    Maritz would be irreparably harmed if it is required to arbitrate where Visa failed to disclose, prior to inducing Maritz into agreeing to an arbitration, that Visa was going to claim it is owed tens of millions of dollars. Monetary damages cannot fully or adequately compensate Maritz for the harm it may suffer if it is required to arbitrate claims that Visa failed to disclose would be arbitrated. Discovery may be limited in arbitration; Maritz would be deprived of a jury trial; and Maritz's right to appeal would be severely circumscribed.

128.    There is a real and justifiable controversy between Maritz and Visa that is ripe for determination. Maritz should not be forced to arbitration as the result of Visa's deceitful conduct.

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

WHEREFORE, Maritz asks the Court for a declaratory judgment, in Maritz's favor and against Visa on Count V of Maritz's Counterclaim, and that the Court:

    A.  declare that Maritz is not obligated to arbitrate any disputes under or relating to the MSA and stay and enjoin any such arbitration;

    B.  declare that Maritz is not obligated to arbitrate either the validity of the so-called agreement to arbitrate or any other topic referenced in Visa's November 2, 2007 demand for arbitration and stay and enjoin any such arbitration;

    C.  award Maritz its costs and expenses, including attorneys' fees; and

    D.  order such other and further relief in Maritz's favor as is just and proper.

## COUNT VI

### (Unfair Competition Under Business & Professions Code Section 17200, et seq.)

### (Against Visa)

129.    Maritz realleges and incorporates herein the allegations in paragraphs 1 through 68 of its Counterclaim above.

130.    Visa's acts and omissions alleged above constitute unlawful business practices in violation of Section 17200, et seq., of the California Business and Professions Code.

131.    These wrongful acts have proximately caused and will continue to cause substantial injury to Maritz, including, but not limited to, loss of money and loss and/or diminution of its business reputation and goodwill.

132.    Maritz has already suffered immediate and irreparable harm as a result of Visa's conduct, and will continue to suffer irreparable harm, until Visa's actions are enjoined by this Court.

133.    Maritz also is entitled to restitution of those benefits that it conferred on Visa in an amount that, on information and belief, exceeds $75,000.

WHEREFORE, Maritz prays for judgment in its favor and against defendant Visa on Count VI of its Counterclaim, and that:

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

A. Maritz be awarded a preliminary injunction and permanent injunction enjoining Visa and all directors, officers, agents, servants, and employees, and all persons acting under or in active concert or privity with them, from engaging in further acts which constitute unlawful, unfair and fraudulent business acts and practices;

B. Maritz be awarded restitutionary relief in an amount to be determined at trial;

C. Maritz be awarded its costs and expenses, including attorneys fees;

D. Maritz be awarded such other and further relief as is just and proper.

## COUNT VII

### (Breach of Contract; Third-Party Beneficiary)

### (Against Carlson)

134.    Maritz realleges and incorporates herein the allegations in paragraphs 1 through 68 of its Counterclaim above.

135.    As described above, on information and belief Carlson and Visa had one or more agreements under which Carlson was supposed to provide information and files that were necessary for Maritz to perform its work with respect to the Rewards Program project; Maritz was a third party beneficiary of the agreement(s) between Carlson and Visa; Carlson failed to provide the information and files that it was supposed to provide in a timely and proper fashion in breach of its obligations under one or more of such agreements; and Maritz has been and is being damaged as a result, in an amount far in excess of $75,000, exclusive of interests and costs.

WHEREFORE, Maritz prays for judgment in its favor and against defendant Carlson on Count VII of Maritz's Counterclaim, and that Maritz be awarded:

A. compensatory damages based upon the evidence presented at trial;

B. its costs and expenses, including attorneys fees;

C. interest, including pre-judgment interest, in accordance with applicable law; and

D. such other and further relief as is just and proper.

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304

Manatt, Phelps & Phillips, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304

## COUNT VIII

### (Contribution)

### (Against Carlson)

136.    Maritz realleges and incorporates herein the allegations in paragraphs 1-68 of the Counterclaim above.

137.    Visa claims in the alternative in the Third Cause of Action in its Complaint against Maritz that Maritz was negligent with respect to the Rewards Program.  Maritz denies Visa's claims, denies that it (Maritz) was negligent, and denies that Visa is entitled to any recovery based upon Visa's negligence claims.

138.    Nevertheless, to the extent that Maritz is determined to have been negligent with respect to the Rewards Program project, Carlson was contributorily negligent and at fault, and is liable in whole or in part, for any resulting damages.

139.    Carlson breached its duty of care in failing to provide timely, complete, accurate and uncorrupted files and information that Visa and/or Maritz needed in connection with the Rewards Program project.  Carlson's negligence and fault were superseding and intervening causes of Visa's alleged damages, and Carlson's negligence and fault caused, in whole or in part, Visa's alleged damages.

140.    If Maritz is determined to owe any damages as a result of Visa's negligence claims, then Maritz is entitled to contribution and/or indemnification from Carlson and/or any damages that were caused, in whole or in part, by Carlson's negligence and fault.

141.    The above-mentioned facts form a justiciable controversy between Maritz and Carlson.

WHEREFORE, Maritz prays for judgment in its favor and against defendant Carlson on Count VIII of Maritz's Counterclaim, and that Maritz be awarded:

A.  a declaration that Maritz is entitled to contribution and/or indemnification from Carlson and/or any damages that were caused, in whole or in part, by Carlson's negligence and fault;

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

B.  compensatory damages in an amount based upon the evidence presented at trial;

C.  its costs and expenses, including attorneys fees;

D.  interest, including pre-judgment interest, in accordance with applicable law; and

E.  such other and further relief as is just and proper.

### JURY DEMAND

Maritz demands a trial by jury of all issues triable of right by a jury with respect to Visa's Complaint and/or Maritz's Counterclaim.

Dated:    December 20, 2007.                  Respectfully submitted,


MANATT, PHELPS & PHILLIPS, LLP



By:     /s/ Ronald S. Katz
    Ronald S. Katz (SBN 085713)
    Ryan S. Hilbert (SBN 210549)
    MANATT, PHELPS & PHILLIPS, LLP
    1001 Page Mill Road, Building 2
    Palo Alto, CA  94304-1006
    Telephone:         (650) 812-1300
    Facsimile: (650) 213-0260
    *Attorneys for Defendant and Counter-Claimant*
    *Maritz Inc.*

ANSWER AND COUNTERCLAIM OF MARITZ INC.
CASE NO. C 07-05585 JSW

MANATT, PHELPS & PHILLIPS, LLP
1001 PAGE MILL ROAD, BUILDING 2
PALO ALTO, CALIFORNIA 94304