MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (California Bar No. 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Attorneys for Defendant and Counter-Claimant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VISA U.S.A. INC. | CIVIL ACTION NO. C07-5585 JSW |
| Plaintiff | DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ARBITRATION PENDING DETERMINATION OF ARBITRABILITY |
| vs. | |
| MARITZ INC. d/b/a MARITZ LOYALTY MARKETING, | DATE: Friday, February 8, 2007<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 2, 17th Floor<br>JUDGE: Hon. Jeffrey S. White |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

TO PLAINTIFF AND COUNTER-CLAIM DEFENDANT VISA U.S.A. INC. ("VISA") AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, February 8, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-referenced Court, Defendant Maritz Inc. d/b/a Maritz Loyalty Marketing ("Maritz") will move the Court to stay arbitration proceedings initiated by Plaintiff Visa U.S.A. Inc. ("Visa") before the American Arbitration Association ("AAA") pending the Court's determination of threshold issues including arbitrability.

This Motion is based on the accompanying Memorandum of Points and Authorities, the pleadings in this matter, and on such further evidence and argument as may be presented at the hearing on this motion.

Dated:    December 20, 2007            MANATT, PHELPS & PHILLIPS, LLP

By:  /s/ Ronald S. Katz
     Ronald S. Katz (SBN 085713)
     Ryan S. Hilbert (SBN 210549)
     MANATT, PHELPS & PHILLIPS, LLP
     1001 Page Mill Road, Building 2
     Palo Alto, CA  94304-1006
     Telephone:      (650) 812-1300
     Facsimile:      (650) 213-0260
     *Attorneys for Defendant and Counter-Claimant*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

## SUMMARY OF ARGUMENT

On November 2, 2007, Plaintiff Visa USA Inc. ("Visa") filed a demand for arbitration with the American Arbitration Association ("AAA"). That same day, Visa commenced this action against Defendant Maritz Inc. ("Maritz") seeking tens of millions of dollars in damages as a result of Maritz's alleged breach of the parties' April 2006 Master Services Agreement ("MSA"), and related claims. This motion arises from Visa's insistence that the parties arbitrate their respective claims despite the fact that Maritz was fraudulently induced to agree to arbitrate in the first place.

As explained in the accompanying Memorandum of Points and Authorities, overwhelming precedent – including the recent Supreme Court case of *Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 445 (2006) – requires that the Court first adjudicate Maritz's fraud claim regarding the arbitration before this matter can proceed to arbitration. In fact, only after the Court makes this threshold determination can it (not the arbitrator) determine whether there exists "clear and unmistakable" evidence that the parties intended for the arbitrator to determine arbitrability. Because the American Arbitration Association – at Visa's urging and over Maritz's protest – is depriving this Court of jurisdiction by moving forward with the arbitration, Maritz brings this motion, respectfully requesting that the Court stay the arbitration until at least the Court can make the threshold determinations required by law.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ............................................................................................ 1

4   II.     THE CONTROLLING LAW ......................................................................... 2

    III.    FACTUAL BACKGROUND .......................................................................... 3

5           A.    Maritz's Relationship With Visa ........................................................ 3

6           B.    Visa Abruptly and Unexpectedly Terminates Its Relationship With Maritz .......... 4

7           C.    Visa Fraudulently Induces Maritz to Arbitrate Claims By Visa Worth Tens
                  of Millions of Dollars ......................................................................... 5

8           D.    The Parties Attempt to Resolve Their Differences ............................. 7

9           E.    At Visa's Urging, the AAA Has Taken the Position That It Will Proceed
                  With Arbitration Notwithstanding Maritz's Claims and Overwhelming
10                Precedent to the Contrary ..................................................................... 7

    IV.     ARGUMENT ................................................................................................... 9

11          A.    Supreme Court Precedent Mandates That the Court Stay Visa's Arbitration
                  Proceeding Pending Resolution of Arbitrability ................................ 10

12
            B.    The Court Need Not Consider Whether There Is "Clear and Unmistakable"
13                Evidence That The Parties Intended to Arbitrate This Dispute ........... 11

    V.      CONCLUSION ............................................................................................. 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alascom, Inc. v. ITT North Elec. Co.*,
 727 F. Supp. 2d 1419 (9th Cir. 1984) .................................................................... 9

*Applera Corp – Applied Biosystems Group v. Illumina, Inc.*,
 282 F. Supp. 2d 1120 (N.D. Cal. 2003) ................................................................. 9

*AT&T Technologies, Inc. v. Communications Workers of America*,
 475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ............................. 3, 10, 12

*Buckeye Check Cashing Inc. v. Cardegna*,
 546 U.S. 440 (2006) ................................................................................ 1, 2, 11

*Certain Underwriters at Lloyd's, London v. Simon*,
 Slip. Op., 2007 WL 3047128 (S.D. Ind. 2007) ................................................... 3, 9

*Doctor's Associates, Inc. v. Distajo*,
 66 F.3d 438 (2d Cir. 1995) ............................................................................ 3, 11

*Downer v. Siegel*,
 489 F.3d 623 (5th Cir. 2007) ........................................................................... 2, 11

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995) ...................................................................................... 3, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002) ............................................................................................. 3

*Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*,
 501 U.S. 190 (1991) ........................................................................................... 10

*Moseley v. Electronic & Missile Facilities*,
 374 U.S. 167 (1963) ............................................................................ 2, 3, 11, 12

*Nagrampa v. Mailcoups, Inc.*,
 469 F.3d 1257 (9th Cir. 2006) .......................................................................... 2, 11

*Oblix, Inc. v. Winiecki*,
 374 F.3d 488 (7th Cir. 2004) ............................................................................... 12

*Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground
 Contractors Ass'n of Northern Cal.*,
 835 F.2d 1275 (9th Cir. 1987) ............................................................................. 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
 388 U.S. 395 (1967) ....................................................................................... 2, 11

*Republic of Nicaragua v. Standard Fruit Co.*,
 937 F.2d 469 (9th Cir. 1991) ............................................................................... 10

*Sheet Metal Workers Int'l. Ass'n, Local No. 252 v. Standard Sheet Metal, Inc.*,
 699 F.2d 481 (9th Cir. 1983) ................................................................................. 9

*United Steelworkers of America v. Warrior & Gulf Nav. Co.*,
 363 U.S. 574 (U.S. 1960) .................................................................................... 10

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

ii

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    This motion arises as a result of Visa's insistence on arbitrating a claim for tens of

4 millions of dollars against Maritz that Visa fraudulently induced Maritz to agree to arbitrate.

5 Overwhelming precedent – including the recent Supreme Court case of *Buckeye Check Cashing*

6 *Inc. v. Cardegna,* 546 U.S. 440, 445 (2006) – requires, however, that the Court first adjudicate

7 Maritz's fraud claim regarding the arbitration before this matter can proceed to arbitration. In

8 fact, only after the Court makes this threshold determination can it (not the arbitrator) determine

9 whether there exists "clear and unmistakable" evidence that the parties intended for the arbitrator

10 to determine arbitrability. Because the American Arbitration Association – at Visa's urging

11 and over Maritz's protest – is depriving this Court of jurisdiction by moving forward with the

12 arbitration, Maritz respectfully moves the Court to stay the arbitration until at least the Court can

13 make the threshold determinations required by law.

14    As explained in the attached Answer and Counterclaim ("Counterclaim"), which was

15 filed concurrently with this motion, Visa intentionally concealed its anticipated claim for tens of

16 millions of dollars from Maritz because Visa knew that if Maritz was aware of Visa's claim –

17 which necessarily includes Visa's vendor, Carlson Marketing Group ("Carlson"), as a

18 counterclaim defendant, and which requires crucial discovery from third parties over whom an

19 arbitrator's jurisdiction is uncertain – Maritz never would have agreed to arbitrate. Indeed, given

20 the circumstances surrounding Visa's termination of the parties' Master Services Agreement

21 ("MSA"), it is clear that Visa's material omissions were intended to and did cause Maritz to agree

22 to an arbitration that it would have rejected out of hand had it known the truth. Prior to Visa

23 disclosing to Maritz for the first time on July 23, 2007 that it was seeking between $10 million

24 and $110 million in damages from Maritz, Maritz knew for certain only the following:

25    • Visa terminated the MSA solely under the "convenience" provision of the

26        agreement so that it could implement the Rewards Program through Carlson

27        instead of Maritz;

28    • Visa did *not* terminate the MSA because of any material breach by Maritz because

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1    that would have required that Maritz be given an opportunity to cure, which Visa

2    never provided;

3    • Visa's own technology consultant, John McCarthy of Inovant, LLC ("Inovant")

4    complimented the Maritz team on its outstanding performance and told Maritz that

5    technology did not play a part in Visa's decision to terminate;

6    • The MSA expressly limits Maritz's potential liability by excluding all "special,

7    indirect, incidental or consequential damages, whether in contract or tort

8    (including negligence), arising out of or related to [the MSA]."

9    Against this backdrop, Maritz vehemently disputes both the validity of the arbitration

10   provision and whether the claims at issue are even arbitrable. Maritz therefore respectfully

11   requests this Court to preserve its well-established jurisdiction by staying the arbitration at least

12   until the Court can make the determinations that black letter law requires. These arguments will

13   be detailed further below.

## II.    THE CONTROLLING LAW

15   When, as here, a claim of fraud in the inducement of the arbitration clause itself is at

16   issue, the need for an interim stay is especially compelling. *See, e.g., Buckeye Check Cashing*

17   *Inc. v. Cardegna,* 546 U.S. 440, 445 (2006). In such circumstances, the Court, not an arbitrator,

18   must first adjudicate whether the arbitration provision is valid or enforceable. *Id.* (quoting and

19   approving *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)) ("[I]f

20   the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the

21   'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it."); *see also*

22   *Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 170-71 (1963) (holding that a court

23   must determine whether there was fraud in the inducement on the arbitration clause); *Nagrampa*

24   *v. Mailcoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) ("When the crux of the complaint is not

25   the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal

26   courts must determine whether the arbitration provision is invalid and unenforceable"); *Downer v.*

27   *Siegel*, 489 F.3d 623, 627 (5th Cir. 2007) ("[T]he arbitration clause is enforceable unless the

28   plaintiffs were fraudulently induced into agreeing to the arbitration clause itself"); *Doctor's*

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

2

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1  *Associates, Inc. v. Distajo*, 66 F.3d 438, 457 (2d Cir. 1995) (if the arbitration clause was induced

2  by fraud, there can be no arbitration).   This is precisely the claim that Maritz is making – *i.e.*, that

3  Visa fraudulently induced Maritz to agree to arbitrate.

4        Only after the court resolves such issues can it then, if necessary, turn to the issue of

5  arbitrability, including whether the parties "clearly and unmistakably" intended that an arbitrator,

6  and not the court, resolve the threshold question of arbitrability. *See, e.g., First Options of*

7  *Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995) (a "court should not assume that the parties agreed

8  to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." );

9  *see also Moseley*, 374 U.S. at 170-71 (court cannot determine whether there is "clear and

10  unmistakable" evidence that the parties intended to arbitrate the question of arbitrability until it

11  first determines whether there was fraud in the inducement on the arbitration clause).  Even as to

12  the "clear and unmistakable" evidence issue, it is again the role of the Court – in accord with

13  overwhelming precedent – and not the arbitrator, to determine whether there is "clear and

14  unmistakable" evidence that the parties intended to arbitrate arbitrability. *AT&T Technologies,*

15  *Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d

16  648 (1986) (indicating that it is the Court's role to determine whether "clear and unmistakable"

17  evidence exists).

18        To hold otherwise would needlessly multiply the proceedings, invite the possibility of

19  inconsistent rulings on the issues such as validity or arbitrability, and most importantly, would

20  effectively cede the Court's jurisdiction over gateway issues of law to the arbitrator.  *See, e.g.,*

21  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (questions of arbitrability and/or

22  validity of arbitration clause are gateway matters properly resolved by the courts); *see also*

23  *Simon*, 2007 WL 3047128 at *3-4 (parallel proceedings invite the possibility of inconsistent

24  rulings by the Court and the arbitrator on the question of arbitrability, thereby effectively placing

25  the arbitration in a state of limbo).

26  **III.    FACTUAL BACKGROUND**

27        **A.    Maritz's Relationship With Visa**

28        Maritz's relationship with Visa is explained in great detail in Maritz's attached

3

Counterclaim ¶¶ 11-20.  Briefly, in April 2006, Maritz and Visa entered into the MSA, pursuant to which Maritz agreed, among other things, to develop, deploy and operate for Visa and its members the Rewards Program.

Visa's then-existing rewards program (the "Existing Rewards Program") was being developed, operated and maintained by Carlson, a direct competitor of Maritz.  Visa's agreement to partner with Maritz in April 2006 reflected Visa's decision to switch the Existing Rewards Program from Carlson to Maritz, essentially keeping the functionality of the Existing Rewards Program but increasing and improving its capabilities. Counterclaim ¶ 13.

The MSA required Maritz to provide certain aspects of the Rewards Program at certain times.  Maritz performed its obligations under the MSA in all material respects, except for those obligations excused (for example) by Visa or that Visa and/or Carlson prevented Maritz from performing.  Counterclaim ¶¶ 14-17, 27.

Maritz and Visa knew that the deadlines under the MSA and related agreements were extremely tight and that various factors could cause problems or delays with respect to the Rewards Program, including the failure of Visa or its vendor, Carlson, to supply what was necessary in a timely fashion.  As a result, there were a number of terms, conditions and protections built into the MSA.  For example, Section XVIII of the MSA expressly limited Maritz's potential liability by precluding "special, indirect, incidental or consequential damages, whether in contract or tort (including negligence), arising out of or related to [the MSA]."  Counterclaim ¶ 16.

There is no provision in the MSA that requires the parties to arbitrate any potential disputes between them.  Instead, Section XXII of the MSA provides that "[t]he Parties [i.e., Visa and Maritz] shall act in good faith and reasonably in interpreting this Agreement and the Related Agreements and resolving any disputes that arise thereunder."  Counterclaim ¶ 68.  As set forth in the Counterclaim, Visa has breached this provision of the MSA by deceiving Maritz into agreeing to arbitrate.  *Id.*

### B.    Visa Abruptly and Unexpectedly Terminates Its Relationship With Maritz

Visa, without any warning, abruptly and unexpectedly terminated the MSA on April 20,

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

4

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1    2007.  A copy of Visa's letter is attached as <u>Exhibit A</u> to the to the Declaration of Ryan S. Hilbert

2    ("Hilbert Declaration"), filed concurrently herewith.  Visa did not terminate the MSA because of

3    any alleged material breach by Maritz, nor could it because Maritz was not in default and Visa

4    did not give Maritz the contractually-required 30-day opportunity to cure.  Nor did Visa terminate

5    the MSA because of any alleged failure by Maritz to deliver any critical milestone.  Indeed,

6    Visa's own technology consultant – John McCarthy of Inovant – told Maritz on or about April 20,

7    2007 that technology was not an issue and did not play a part in the decision to terminate Maritz.

8    He also complimented the Maritz team for its outstanding performance.  Counterclaim ¶¶ 59-62.

9    Instead, despite the assurances that Visa had provided to Maritz in December 2006, Visa

10   terminated the MSA as a matter of convenience because Visa had decided to implement the

11   Rewards Program through Carlson instead of Maritz. Counterclaim ¶ 61.

12   **C.    <u>Visa Fraudulently Induces Maritz to Arbitrate Claims By Visa Worth Tens of</u>**
     **<u>Millions of Dollars</u>**

13

14   The purpose of the present motion is to stay the underlying arbitration proceeding so that

15   the parties and the Court can consider the factually intensive issue of arbitrability without the risk

16   of duplicative proceedings.  Although that is a pure question of law, this section provides a

17   crucial factual context.

18   Following Visa's termination of the MSA, Maritz exercised its post-termination rights

19   under the MSA and informed Visa that Visa owed certain monies for work and services Maritz

20   performed in connection with the Rewards Program and the MSA prior to Visa's termination.  A

21   copy of this letter, dated May 7, 2007, is attached as <u>Exhibit B</u> to the Hilbert Declaration filed in

22   support of this Motion.  Counterclaim ¶ 67.

23   In a pair of letters dated June 5, 2007, and July 2, 2007, Visa stated that it would follow up

24   with Maritz later concerning the parties' respective claims and a suitable procedure for resolving

25   those claims.    Visa's June 5 and July 2 letters are collectively attached as <u>Exhibit C</u> to the

26   Hilbert Declaration.  Nowhere in these letters did Visa state that it would be seeking tens of

27   millions of dollars from Maritz, even though Visa had to have known about this claim because it

28   is seeking damages going back to the Fall of 2006.  Nor did Visa indicate that it would be

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1  seeking relief from Maritz based on claims that necessarily will involve third parties like

2  Carlson.  Maritz would have considered this material information crucial to its decision to agree

3  to an appropriate procedure. Counterclaim ¶¶ 117-19.

4      In early July, Steve Gallant, VP and Associate General Counsel of Maritz, contacted Rod

5  Thompson, outside counsel to Visa, to discuss Visa's suggested procedures for resolving this

6  dispute.  As a result of this call, the parties agreed to a three-step process: negotiation followed by

7  mediation followed by arbitration.  As with Visa's June 5 letter, at no time during the call did Mr.

8  Thompson indicate that Visa was seeking tens of millions of dollars from Maritz, even though

9  Visa had to have known of this claim.  Maritz would have considered this information highly

10  material.  Counterclaim ¶¶ 117-19.

11      On July 9, Mr. Thompson sent Mr. Gallant a proposed letter agreement based on their

12  recent phone call.  This letter agreement, which is attached as <u>Exhibit D</u> to the Hilbert

13  Declaration, acknowledged that the parties had agreed to the general framework for a dispute

14  resolution procedure and provided that additional *procedural* details (e.g., the number of

15  arbitrators, certain deadlines, etc.) would be governed by the AAA Commercial Rules.  For

16  example, Footnote 1 to the letter agreement states:

17  
18  
19  
20  
> <u>While we both understand that further details on the dispute resolution process will need to be worked out between us</u> if the dispute is not resolved in the first stage, our clients intend to be bound by this agreement to resolve all disputes out of court.  <u>To the extent they are unable to agree to any aspect of the procedure</u>, such disagreement will be resolved by the applicable rules and procedures of the American Arbitration Association ("AAA").

21      Mr. Gallant signed the letter agreement on July 10 and returned it to counsel for Visa.  On

22  July 23, 2007, Mr. Gallant received a letter – attached as <u>Exhibit E</u> to the Hilbert Declaration –

23  dated July 19 from Mr. Thompson attaching a detailed Dispute Resolution Protocol that stated,

24  among other things, "Each Party claims the other should make a payment to resolve the dispute."

25  This was the first time Maritz had any idea that Visa would be seeking damages rather than

26  offsets to Maritz's damages.  That same day, July 23, 2007, Mr. Gallant contacted Mr. Thompson

27  and inquired about his July 19 letter.  Mr. Gallant was shocked to discover that Visa's claim was

28  "considerable, in the range of tens of millions of dollars."  Upon being advised of the claim, Mr.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1   Gallant immediately informed counsel for Visa that Maritz had never agreed to arbitrate such a

2   claim.

3          Prior to July 23, Visa never indicated it was bringing claims of this magnitude, and Maritz

4   had no reason even to suspect such claims given (1) the manner in which Visa terminated the

5   MSA; (2) the fact that Visa did not and could not allege Maritz was in default because Visa did

6   not give Maritz the contractually-required 30-day opportunity to cure; and (3) the fact that Maritz

7   could not be liable for "special, indirect, incidental or consequential damages, whether in contract

8   or tort (including negligence), arising out of or related to [the MSA]."  Counterclaim ¶¶ 16, 59-

9   62.

10         As explained above, Visa had to have known about this claim because it now seeks

11  damages going back to the Fall of 2006.  Visa also knew that if Maritz was aware of its

12  staggering claim and the necessary involvement of Carlson as a party and Inovant as a witness,

13  Maritz never would have even contemplated arbitration in the first place.  As a result, Visa

14  intentionally withheld this material information from Maritz in the hope of getting Maritz to agree

15  to arbitrate.  Ironically, Visa now relies on the same arbitration provision it fraudulently induced

16  Maritz to sign as the basis for its argument that this dispute must be arbitrated.

17  Counterclaim ¶¶ 125-28.

18         **D.      The Parties Attempt to Resolve Their Differences**

19         Maritz does not allege that the July 9, 2007 letter agreement as a whole is void and

20  unenforceable, but rather that the arbitration provision in that letter agreement is void and

21  unenforceable.  Accordingly, on October 15, 2007, Maritz and Visa, pursuant to other provisions

22  of the July 9, 2007 letter, participated in face-to-face negotiations.  When these efforts were

23  unsuccessful, the parties engaged in the second step identified in the July 9, 2007 letter

24  agreement, mediation.  This mediation occurred in Chicago on November 7-8, 2007.

25         **E.      At Visa's Urging, the AAA Has Taken the Position That It Will Proceed With
            Arbitration Notwithstanding Maritz's Claims and Overwhelming  Precedent
26          to the Contrary**

27         Approximately one week before the mediation, on November 2, 2007, Visa filed a

28  demand for arbitration with the American Arbitration Association ("AAA").  That same day, Visa

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1   commenced this action seeking a full adjudication of its rights, but, in a letter dated that same

2   day, told Maritz that it would not serve its complaint. A copy of this letter is attached as <u>Exhibit</u>

3   <u>F</u> to the Hilbert Declaration. Visa knew that Maritz did not want – and never would have agreed

4   – to arbitrate a claim for tens of millions of dollars in a tribunal that did not include Carlson and

5   that might not have subpoena power over Inovant and thus took these actions in an effort to gain

6   leverage for the upcoming mediation. Counterclaim ¶ 122.

7       On November 16, 2007, counsel for Maritz informed the AAA what it had been telling

8   Visa for weeks; namely, that "It is Maritz's position that there is no valid and enforceable

9   arbitration agreement between Visa and Maritz, and that the AAA has no jurisdiction in this

10  matter." A copy of this letter is attached as <u>Exhibit G</u> to the Hilbert Declaration.  On November

11  20, 2007, counsel for Visa responded to Maritz's letter and instructed the AAA to move forward

12  with the arbitration "with or without participation of respondent Maritz." A copy of this letter is

13  attached as <u>Exhibit H</u> to the Hilbert Declaration. Counterclaim ¶ 124.

14      In the two-week period between November 26, 2007 and December 10, 2007, Maritz sent

15  a total of four letters to the AAA – including one to the AAA's general counsel – urging it to

16  suspend the arbitration until this Court has had an opportunity to determine the threshold issue of

17  arbitrability. These four letters, dated November 26, December 7 (two) and December 10, are

18  collectively attached as <u>Exhibit I</u> to the Hilbert Declaration. In these letters, Maritz informed the

19  AAA of the fraudulent behavior of Visa and its attorney, Mr. Thompson, in inducing Maritz to

20  agree to arbitrate. Maritz also provided the AAA with black letter law making clear that, where

21  there is a challenge to the arbitration provision on the grounds that it was fraudulently induced,

22  the threshold issue of arbitrability must be adjudicated by the courts, not by the AAA.

23  Counterclaim ¶ 124-25.

24      Visa responded to Maritz's letters with three letters of its own. These letters, dated

25  December 4 and December 10 (two), are collectively attached as <u>Exhibit J</u> to the Hilbert

26  Declaration. In each of its letters, Visa incorrectly informed the AAA that the parties had agreed

27  to have the issue of arbitrability decided by the arbitrator, not the courts. As explained below,

28  this argument directly contravenes a long line of Supreme Court cases, and conveniently ignores

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1    the fact that an arbitrator does not have jurisdiction to rule on this issue until the court determines

2    whether the arbitration provision is valid and enforceable in the first place.  In each of its letters,

3    Visa urged the AAA to move forward and proceed with arbitration.  Counterclaim ¶ 126.

4            Notwithstanding Maritz's numerous letters, the AAA wrote to the parties on December

5    13, 2007 and informed them that "in the absence [of] the agreement of the parties or a court order

6    staying this matter, the Association will proceed with administration pursuant to the Rules [of the

7    AAA]."  This letter is attached as <u>Exhibit K</u>.  In the event the AAA moves forward with the

8    arbitration, it risks needlessly multiplying the proceedings and, more importantly, creating

9    inconsistent rulings on gateway issues that the Supreme Court has said must be decided by the

10   courts.  Counterclaim ¶ 126.

11           Visa does not appear to be concerned with these issues; clearly, Visa would rather have

12   the AAA move forward with arbitration so that Maritz either has to participate or risk waiving

13   certain rights.  Unlike Visa, however, Maritz is extremely concerned about the potential for waste

14   and inconsistency and thus had no choice but to file the present motion seeking a stay of the

15   arbitration pending resolution of questions of arbitrability.

16   **IV.    ARGUMENT**

17           Once arbitration proceedings have commenced, the Court has the discretion to stay those

18   proceedings pending its resolution of questions of arbitrability.  *See, e.g., Applera Corp – Applied*

19   *Biosystems Group v. Illumina, Inc.*, 282 F. Supp. 2d 1120, 1123 (N.D. Cal. 2003) (district court

20   stayed arbitration proceedings pending resolution of arbitrability); *Alascom, Inc. v. ITT North*

21   *Elec. Co.*, 727 F. Supp. 2d 1419, 1420 (9th Cir. 1984) (court exercised discretion to stay

22   arbitration proceeding pending determination of whether claims were arbitrable); *see also Sheet*

23   *Metal Workers Int'l. Ass'n, Local No. 252 v. Standard Sheet Metal, Inc*., 699 F.2d 481, 483 (9th

24   Cir. 1983) (decision to stay arbitration proceeding is committed to the discretion of the district

25   court); *Certain Underwriters at Lloyd's, London v. Simon*, Slip. Op., 2007 WL 3047128, *3-4

26   (S.D. Ind. 2007) (court stayed arbitration pending resolution of arbitrability).

27           Indeed, precisely because the Court, *not* an arbitrator, must resolve these threshold issues,

28   a stay of arbitration is required as a matter of law.  *See, e.g., United Steelworkers of America v.*

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

9

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

*Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583, fn. 7 (U.S. 1960) ("[T]he question of arbitrability is for the courts to decide."); *Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.*, 835 F.2d 1275, 1278 (9th Cir. 1987) ("[T]he district court has the duty to 'interpret the agreement' and to determine 'in the first instance whether the dispute [should] be resolved through arbitration.' [citation omitted.]  The arbitrator should not determine his or her own jurisdiction."); *see also Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 208-209 (1991) (citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651 (1986)) (Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court, and a party cannot be forced to "arbitrate the arbitrability question.").

A.    **Supreme Court Precedent Mandates That the Court Stay Visa's Arbitration Proceeding Pending Resolution of Arbitrability**

As explained in Section II above, the issue of whether parties have agreed to arbitrate a particular dispute is for the Court to decide, not an arbitrator.  *See United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583, fn. 7 (U.S. 1960) ("[T]he question of arbitrability is for the courts to decide.");  *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 208-209 (1991) (citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651 (1986)) (whether a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court, and a party cannot be forced to "arbitrate the arbitrability question."); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir. 1991) (question of whether a subsidiary of a corporation which signed a "Memorandum of Intent" regarding production and sale of bananas was bound by arbitration clause was for court rather than arbitrator); *Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.*, 835 F.2d 1275, 1278 (9th Cir. 1987) ("[T]he district court has the duty to 'interpret the agreement' and to determine 'in the first instance whether the dispute [should] be resolved through arbitration.' [citation omitted.]  The arbitrator should not determine his or her own jurisdiction.").

This is especially the case where, as here, the party resisting arbitration claims fraud in the

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

10

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

inducement of the arbitration clause itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it."); *Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 170-71 (1963) (holding that a court must determine whether there was fraud in the inducement on the arbitration clause); *see also Buckeye Check Cashing,* 546 U.S. at 445 (quoting and approving *Prima Paint*); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) ("When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must determine whether the arbitration provision is invalid and unenforceable"); *Downer v. Siegel*, 489 F.3d 623, 627 (5th Cir. 2007) ("[T]he arbitration clause is enforceable unless the plaintiffs were fraudulently induced into agreeing to the arbitration clause itself"); *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 457 (2d Cir. 1995) (if the arbitration clause was induced by fraud, there can be no arbitration).

As explained above and in Maritz's Counterclaim, Maritz alleges that the arbitration provision in its July 9, 2007 letter agreement is invalid and unenforceable because Visa intentionally failed to disclose its claim for tens of millions of dollars in the hope of getting Maritz to arbitrate. Indeed, had Maritz known that Visa would be seeking between $10 million and $100 million from Maritz based on a claim that necessarily involves both Carlson and Inovant, Maritz never would have even contemplated arbitration in the first place. The Supreme Court has mandated that claims such as these, which go to the heart of whether the parties agreed to arbitrate in the first place, must be decided by the Court, not the AAA. *See Prima Paint*, 388 U.S. at 403-04; *Moseley*, 374 U.S. at 170-71. Maritz respectfully requests that the Court stay the underlying arbitration proceeding at least until this determination can be made.

## B.    The Court Need Not Consider Whether There Is "Clear and Unmistakable" Evidence That The Parties Intended to Arbitrate This Dispute

Even though irrelevant to the present motion to stay, in response to Maritz's claim that this Court must determine arbitrability, Visa has repeatedly and falsely stated – including to the AAA – that the parties have agreed to have the issue of arbitrability decided by the arbitrator, not

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

the courts. Specifically, Visa claims that because the parties' arbitration provision refers to the AAA Commercial Rules with respect to *procedural* matters, there exists "clear and unmistakable" evidence that the parties intended for the arbitrator to determine arbitrability. Visa is wrong. As our Supreme Court has instructed, a "court should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995). No such evidence exists here. In fact, when faced with even more expansive language than the language at issue here, courts still have been reticent to find "clear and unmistakable" evidence of an intent to arbitrate arbitrability. *See, e.g., Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004) (finding the following arbitration provision insufficient to deprive the court of its authority to determine arbitrability: "'any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be resolved exclusively by binding arbitration . . . in accordance with the rules then in effect of the [AAA].'").

More importantly, the Court need not even consider this issue until it determines whether the underlying provision purporting to grant such authority was the product of fraud. *See Moseley*, 374 U.S. at 170-71 (holding that a court must determine whether there was fraud in the inducement on the arbitration clause). Even then, it is the role of the Court, not the arbitrator, to determine whether there is "clear and unmistakable" evidence that the parties intended to arbitrate arbitrability. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (indicating that it is the Court's role to determine whether "clear and unmistakable" evidence exists). Prior to this time, the AAA does not have the jurisdiction to make such a determination on its own. This is yet one more reason why the Court should stay Visa's arbitration proceeding pending resolution of arbitrability.

## V.    **CONCLUSION**

For the reasons set forth above, Maritz respectfully moves the Court to preserve its jurisdiction and prevent the multiplication of proceedings by staying the arbitration proceeding initiated by Visa pending resolution of arbitrability.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

12

MARITZ'S NOTICE OF MOTION
AND MOTION TO STAY
CASE NO. C07-5585 JSW

1   Dated:    December 20, 2007            MANATT, PHELPS & PHILLIPS, LLP

2
                                          By:  /s/ Ronald S. Katz
3                                              Ronald S. Katz (SBN 085713)
                                               Ryan S. Hilbert (SBN 210549)
4                                              MANATT, PHELPS & PHILLIPS, LLP
                                               1001 Page Mill Road, Building 2
5                                              Palo Alto, CA  94304-1006
                                               Telephone:      (650) 812-1300
6                                              Facsimile:      (650) 213-0260
                                               *Attorneys for Defendant and Counter-Claimant*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP                                              MARITZ'S NOTICE OF MOTION
ATTORNEYS AT LAW                 13                        AND MOTION TO STAY
PALO ALTO                                                  CASE NO. C07-5585 JSW