**Exhibit J
to the
Declaration of Ryan S. Hilbert In Support Of
Maritz's Motion To Stay Arbitration Pending
Determination Of Arbitrability**

# FARELLA BRAUN + MARTEL LLP
Attorneys At Law

Russ Building / 235 Montgomery Street
San Francisco / CA 94104

T 415.954.4400 / F 415.954.4480
www.fbm.com

RODERICK M. THOMPSON
rthompson@fbm.com
D 415.954.4445

December 4, 2007

*Via AAA Webfile, E-mail and Facsimile*
cantun@adr.org (559-490-1919)

Norma Cantu
American Arbitration Association
6795 North Palm Ave., 2nd Floor
Fresno, CA 93704

    Re: 74 117 01325 07 NOCA *Visa USA v. Maritz*

Dear Ms. Cantu:

    This responds to Mr. Weiss' letter to you dated November 26, 2007 but apparently not sent (and then only by email) until December 3, 2007 concerning the above-captioned arbitration.

    Mr. Weiss repeats the incorrect assertion made in his letter dated November 16--that by filing a lawsuit to compel arbitration in U.S. district court in San Francisco, Visa "has elected" to have the Court determine arbitrability. As explained previously in my letter of November 20, Visa's complaint requests the Court to compel respondent Maritz Inc. to participate in the arbitration. Mr. Weiss' letter does not respond to the controlling case law holding that where as here the parties agreed to resolve their disputes under the "applicable rules and procedures of the American Arbitration Association," they agreed that the arbitrator would determine all questions of arbitrability. *See e.g., Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (finding incorporation of American Arbitration Association Rules "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

    Instead, Mr. Weiss' letter launches into an unfortunate (and entirely inaccurate) attack on me and my client. Preliminarily, Visa (and I) vehemently deny Mr. Weiss' allegations – what happened here was nothing more than two sophisticated parties negotiating a binding arbitration agreement through their respective counsel. More importantly, however, the allegations made in Mr. Weiss' letter that "the July 9 letter is invalid and unenforceable" are precisely the types of questions that the parties expressly agreed to present to the arbitrator when they signed the July 9 Letter Agreement; that Letter Agreement states both that the parties' disputes shall be resolved



Norma Cantu
December 4, 2007
Page 2

through "[b]inding arbitration pursuant to the AAA Commercial Rules," and that "[t]o the extent [the parties] are unable to agree on any aspect of the procedure, such disagreement will be resolved by the applicable rules and procedures of the American Arbitration Association ('AAA')." July 9 Letter Agreement. In relevant part, the AAA Commercial Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or *validity* of the arbitration agreement." AAA Commercial Rule R-7(a) (emphasis added). As you correctly concluded in your letter to the parties of November 30, Maritz may raise any alleged "fraud" in the inducement arguments to the Panel. Maritz may not unilaterally stop the arbitration process pursuant to a contract undeniably entered by its Assistant General Counsel.

Most unfortunate is the letter's violation of California Evidence Code 1119, by repeated reliance on assertions made by Visa under the protections of the mediation privilege (e.g., a "___ million claim" by Visa). On July 24, Maritz, also through Mr. Gallant, entered a separate letter agreement stipulating that the mediation process had them commenced. (A copy of that July 24 letter is attached.) Thereafter, the parties participated in a structured negotiation and mediation (before Bill Hartgering of JAMS in Chicago) all expressly pursuant to the protections of section 1119. During that process Visa revealed the specifics of its damages claims cited by Mr. Weiss in his letter. Section 1119 explicitly states both that "no evidence of anything said or any admission made for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation is admissible" for any purpose and that "all communications, negotiations or settlement discussions by and between participants in the course of a mediation or mediation consultation shall remain confidential." Maritz's blatant misuse of the information provided under the protections of Section 1119 is regrettable and entirely inappropriate.

Mr. Weiss' final argument is that AAA does not have jurisdiction over this dispute because Visa paid an initial filing fee of $3,250. Not only is this argument predicated on statements Visa made during the mediation (and thus entirely inappropriate), but it also is predicated on a misunderstanding of Visa's arbitration demand. Visa's arbitration demand states that Visa is seeking:

> "Determination of the validity of agreement to arbitrate dispute over software contract and related claims, and determination of procedures to be used in arbitration. Once arbitration procedures are established, Visa will submit its amount of claim on the merits to be arbitrated."

Visa's demand did not specify any amount of damages claimed, because Visa is currently seeking only the relief described in its demand. Said differently, Visa has paid the appropriate filing fee, and the AAA has properly concluded that "claimant has met the filing requirements of the rules." November 30 Letter. Even assuming arguendo, however, that Visa had not paid the appropriate fee, that would not mean that AAA does not have jurisdiction over the arbitration



Norma Cantu
December 4, 2007
Page 3

demand. AAA Commercial Rule R-54 provides, in part, "If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment." No such notice has been provided by AAA.

We therefore respectfully request that the American Arbitration Association reiterate its decision set forth in your November 30 letter and proceed with the process of appointing a panel in accordance with its rules.

We appreciate your courtesy and attention. Please let me know should you have any questions.

Very truly yours,

Roderick M. Thompson

RMT:avd
21823\1397659.1
Enclosure

cc:     Charles A. Weiss

RODERICK M. THOMPSON
rthompson@fbm.com
D 415.954.4445

July 24, 2007

*Via E-Mail*

Steven M. Gallant
Associate General Counsel
Maritz Inc.
1375 N. Highway Dr.
Fenton, MO 63099

    Re:    Master Services Agreement dated April 17, 2006 (the "Agreement") between Visa U.S.A. Inc. and Maritz Inc., d/b/a Maritz Loyalty Marketing

Dear Steve:

    This confirms our telephone discussion of today. Our clients agree that the direct business negotiations, which will today by teleconference, are the beginning of the mediation process so that both sides will have the confidentiality protections of California Evidence Code section 1115 *et seq.* Please have this letter counter-signed and emailed (or faxed) back to me. Thank you

Very truly yours,

Roderick M. Thompson

SO AGREED.
By: [signature]
On behalf of Maritz Inc.

Dated: July 24, 2007

RMT:avd
cc: Jonathan Lemberg
21823\1303103.1

# FARELLA BRAUN + MARTEL LLP
Attorneys At Law

Russ Building / 235 Montgomery Street
San Francisco / CA 94104

T 415.954.4400 / F 415.954.4480
www.fbm.com

RODERICK M. THOMPSON
rthompson@fbm.com
D 415.954.4445

December 10, 2007

*Via E-mail and Facsimile*
*cantun@adr.org; (559-490-1919)*

Norma Cantu
American Arbitration Association
6795 North Palm Ave., 2nd Floor
Fresno, CA 93704

    Re: <u>74 117 01325 07 NOCA *Visa USA v. Maritz*</u>

Dear Ms. Cantu:

    Claimant Visa U.S.A. Inc. ("Visa") submits its contentions on locale, as requested in your letter of December 3, 2007.

    **Background and Limited Nature of the Arbitration.** Visa and Respondent Maritz entered an April 17, 2006 Agreement (the "April 17 Agreement") under which Maritz was obligated to provide for Visa a points-based rewards program for Visa cardholders on or before September 30, 2006. No such program was delivered. Having lost confidence in Maritz's ability to ever deliver the required product, in April 2007 Visa terminated the April 17 Agreement; the parties each asserted claims regarding the other's performance under that contract.

    In July 2007, lawyers for Visa and Maritz discussed and agreed on a binding procedure to resolve these disputes. Visa and Maritz entered a Letter Agreement, providing that the parties' "respective claims for damages resulting from alleged breaches of the [April 17] Agreement and related claims" would all be resolved outside of court. The Letter Agreement set forth a streamlined, three-stage "resolution framework:" (1) "Direct negotiations for a period of 30 days," (2) mediation to be conducted within "60 days thereafter" and (3) "binding arbitration pursuant to AAA Commercial Rules." (*Id.*)

    Shortly after entering the Letter Agreement, however, Maritz changed course, contending that it did not realize the magnitude of the damages suffered by Visa and no longer desired binding AAA arbitration. When negotiation and mediation failed, Visa asked Maritz to discuss the finalization of the arbitration procedures. Maritz refused to discuss the details of the procedure to be used. The Letter Agreement expressly provided that if the parties were unable to agree upon the arbitration procedures, such procedures would be determined by the AAA:

Norma Cantu
December 10, 2007
Page 2

> While we both understand that further details on the dispute
> resolution process will need to be worked out . . . our clients intend
> to be bound by this agreement to resolve all disputes outside of
> court. **To the extent they are unable to agree on any aspect of
> the procedure, such disagreement will be resolved by the
> applicable rules and procedures of the American Arbitration
> Association ("AAA").**

Letter Agreement, n.1 (emphasis added.)

On November 2, 2007, Visa filed an arbitration demand with the AAA, seeking:

> **Determination of the validity of agreement to arbitrate dispute
> over software contract and related claims, and determination
> of procedures to be used in arbitration.** Once arbitration
> procedures are established, Visa will submit its amount of claim on
> the merits to be arbitrated.

11/2/07 AAA Demand (emphasis added.)

The issues to be arbitrated are 1) whether the Letter Agreement is valid and enforceable, and 2) the procedures to be used to arbitrate the parties' disputes regarding the April 17 Agreement. This arbitration is thus limited to determining whether the parties will arbitrate their disputes arising from or related to the April 17 Agreement and, if so, what the applicable procedures (including the proper locale) will be for that arbitration. In other words, this arbitration over the Letter Agreement dispute will determine, among other things, the locale of the arbitration over the April 17 Agreement. Only the locale of the Letter Agreement arbitration is at issue here.

**Analysis of AAA's factors regarding locale of arbitration.** We address separately below the factors the AAA considers in deciding upon the appropriate locale for this arbitration.[1] Collectively, these factors weigh in favor of San Francisco.

**1. Parties And Their Counsel Are Located Predominantly In The San Francisco Bay Area.** Visa's headquarters are in San Francisco and Foster City, California. Visa's counsel is located only in the Bay Area. Maritz, on the other hand, is represented by Bryan Cave LLP, which in addition to its St. Louis office, has had an office in Los Angeles since 1979 that currently has over 70 attorneys. Maritz has also retained Manatt, Phelps and Philips, LLP, and specifically lawyers in its San Francisco and Palo Alto offices. Its San Francisco office is located at 111 Sutter Street in San Francisco, a block away from the AAA's San Francisco office. Both parties' have representatives in San Francisco. By contrast, neither Visa nor its

---

[1] Two of the factors listed in your December 3 letter--"location of site or place of materials" and "necessity of on-site inspection of project"-- are not applicable to the determination of the validity of the Letter Agreement or the appropriate arbitration procedures.



counsel has any offices in St. Louis. For these reasons, this factor weighs in favor of Visa's San Francisco choice of locale.

**2. The location of witnesses and documents is a neutral factor.** The arbitration regarding the Letter Agreement should be extremely limited. Other than the Letter Agreement itself, there are few, if any, relevant documents, and copies of them are in the parties' possession. Although it is currently unclear to Visa what disputed facts Martiz believes exist regarding the validity of the Letter Agreement, Maritz has attacked my conduct as Visa's outside counsel.[2] Presumably Maritz will seek my testimony and also offer testimony from its Associate General Counsel, Steven Gallant, who negotiated and signed the Letter Agreement on behalf of Maritz. Visa believes that Mr. Gallant works near St. Louis; I work in San Francisco. Accordingly, this factor appears to be neutral in determining the locale for this arbitration.

**3. Partial Negotiation and Performance of the Letter Agreement Were Completed in San Francisco, While No Performance of the Letter Agreement Has Occurred in St. Louis.** The Letter Agreement does not provide for a place of performance. Maritz did agree, however, to participate in business discussions in San Francisco. Indeed, Martiz sent a large team to San Francisco – including two outside counsel, one in-house attorney and 4 other Maritz representatives – to attend meetings in October 2007. Although admittedly Maritz contended that the Letter Agreement was invalid and that it had no obligation to participate in such business discussions (or the subsequent mediation), Visa contends that the business discussions were the "First Stage" of the process described in the Letter Agreement. Thus, this factor weighs in favor of a San Francisco locale.

**4. The Relative Difficulty In Traveling And Cost Presents Little To No Burden To Maritz, Particularly Where It Has Bay Area Representation.** Given the limited scope of the arbitration, this factor weighs very little, if at all in the locale analysis. As noted above, Maritz already voluntarily sent a large team to San Francisco to participate in the "First Stage" described in the Letter Agreement. Maritz has not explained why sending a significantly smaller team for the hearing on the validity of the Letter Agreement and to determine the appropriate arbitration procedures would be unduly burdensome. Given that Maritz has now retained counsel in the Bay Area, it likely would need to send only its in-house counsel to such a hearing.

In any event, both parties are substantial companies. According to Maritz's website, its revenues for fiscal 2007 were $1.45 billion. (See http://www.maritz.com/maritz-about-us.html.) Given its size, Maritz cannot realistically claim that participating in a 2-day arbitration proceeding in San Francisco would be unduly burdensome, especially when Maritz has already engaged counsel to litigate in the Northern District of California, as discussed below.

---

[2] Maritz has also baldly accused "Visa" of misconduct in the creation of the Letter Agreement. Although Visa assumes this is also a reference to Mr. Thompson, in the unlikely event that Maritz believes it needs testimony from other Visa representatives, those unidentified witnesses are also likely located in the Bay Area, as Visa's headquarters are in San Francisco.



Norma Cantu
December 10, 2007
Page 4

**5. The Parties Have Applied California Law to the Letter Agreement.** Although the Letter Agreement does not contain an express choice of law provision, the parties subsequently agreed on July 24 "that the direct business negotiations of Stage One are the beginning of the mediation process and that both sides will have the confidentiality protections of California Evidence Code section 1115 *et seq.*" (A copy of the July 23, 2007 letter is attached to this letter.) The express incorporation of California law in the July 23 Agreement is relevant to the arbitration regarding the Letter Agreement: to support its contention that the Letter Agreement is invalid, Martiz has already improperly relied, and will likely continue to attempt to rely, upon evidence of statements and writings that are inadmissible pursuant to California's mediation law.

That the parties have a course of conduct of applying California law is also demonstrated by a review of the underlying April 17 Agreement. The April 17 Agreement both expressly adopts California law and provides for California as the forum for seeking injunctive relief. As discussed below, Visa has filed a complaint not only to compel Maritz to submit to arbitration regarding the validity of the Letter Agreement but also to seek injunctive relief, as expressly provided by the underlying April 17 Agreement.

**6. There is Pending Litigation In San Francisco Between the Parties.** Visa has filed a complaint in the Northern District of California seeking the Court to compel Maritz to submit to the AAA's jurisdiction or in the alternative to have the Northern District of California adjudicate the merits of the underlying dispute. Although Visa contends that the AAA is the appropriate venue for resolving the issue of the validity of the Letter Agreement, in the event that the Court disagrees (or in the event that the AAA or the Court determine the Letter Agreement is invalid) Maritz will be forced to litigate with Visa in San Francisco.

In its complaint, Visa also seeks injunctive relief to compel Maritz to archive and escrow data as required by regulators. In the April 17 Agreement, the parties expressly selected the Northern District of California as the exclusive forum for any requests for injunctive relief related to that agreement. Although Visa believes that this claim, too, should properly be addressed first to the AAA, in the event that it is determined this claim must be first presented to the Court or if after the arbitration Visa needs to enforce such an injunction, Visa's claim for injunctive relief will remain within the exclusive jurisdiction of the district court per the parties April 17 Agreement.

**Other Factors.** There are two additional factors that weigh heavily in favor of San Francisco as the appropriate venue. First, the claimant, Visa's choice of locale is entitled to deference.[3]

---

[3] The Supreme Court has observed "that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Here, Visa initiated this arbitration in San Francisco; accordingly, Visa's choice of forum should not lightly be rejected. *See Batson Yarn v. Saurer-Allma*, 311 F. Supp. 68, 75 (D.S.C. 1970) (holding that "first in time, first in right" rule applied to party seeking arbitration in its chosen forum).



Norma Cantu
December 10, 2007
Page 5

Second, and perhaps more importantly, a change in locale at this late date would further frustrate the obvious purpose of the Letter Agreement to facilitate a prompt and efficient adjudication of the underlying dispute. In July 2007 the parties agreed to a streamlined framework for dispute resolution—30 days for negotiation, 60 for mediation and 90 for binding arbitration -- a process envisioned to last no longer than 180 days or six months. For whatever tactical reasons, since entering the Letter Agreement, Maritz has sought to derail and delay the arbitration process at every turn.

Maritz refused to discuss finalization of the procedures, necessitating this arbitration. Then, after Visa filed its arbitration demand, Maritz ignored the process, declining even to participate in the initial conference call with the Case Manager. In its November 16 letter, Martiz argued that the AAA had "no jurisdiction in this matter" and stated only that it objected to the "locale requested by Visa"; Maritz did not suggest any other locale. The AAA flatly rejected Maritz's argument in your November 30 letter and explained that "in the absence of an agreement by the parties or a court order staying this matter" the arbitration would proceed.

On December 3, the AAA contacted Maritz to inquire "about the location where Maritz desired to have the arbitration conducted." (See Weiss 12/3/07 email to Norma Cantu.) In an email response to that inquiry, Maritz, for the first time, suggested St. Louis as the locale for the arbitration.[4] Thereafter, despite the fact that the AAA has definitively rejected its position in your November 30 letter, Maritz has persisted in sending more lengthy letters repeating its failed arguments. See December 7, 2007 Weiss Letter (to the AAA's General Counsel forwarding a copy of his letter of the same date to you). Maritz's belated and meritless objection to locale must be seen in this larger context of its pattern of delay, designed to add burden and expense to what should have been an efficient and expedited process. Any change in locale away from San Francisco, would exacerbate the harm, causing the AAA to start the procedure all over again.

For these reasons, the AAA should retain San Francisco as the locale for this arbitration.

Very truly yours,

Roderick M. Thompson

RMT:avd
Enclosure
cc:    Charles A. Weiss

21823\1402688.1

---

[4] The December 3 email enclosed an unsigned letter dated November 26 in which Maritz again argued that the AAA "has no jurisdiction over this dispute." Although Maritz contends that this letter was in fact sent to the AAA and Visa on November 26, to date, Visa has received no copy of this letter other than that which was attached to the December 3 email.

 **FARELLA BRAUN + MARTEL** LLP

Attorneys At Law

Russ Building / 235 Montgomery Street
San Francisco / CA 94104

T 415.954.4400 / F 415.954.4480
www.fbm.com

RODERICK M. THOMPSON
rthompson@fbm.com
D 415.954.4445

July 24, 2007

*Via E-Mail*

Steven M. Gallant
Associate General Counsel
Maritz Inc.
1375 N. Highway Dr.
Fenton, MO 63099

Re: Master Services Agreement dated April 17, 2006 (the "Agreement") between Visa U.S.A. Inc. and Maritz Inc., d/b/a Maritz Loyalty Marketing

Dear Steve:

This confirms our telephone discussion of today. Our clients agree that the direct business negotiations, which will today by teleconference, are the beginning of the mediation process so that both sides will have the confidentiality protections of California Evidence Code section 1115 *et seq.* Please have this letter counter-signed and emailed (or faxed) back to me. Thank you

Very truly yours,

Roderick M. Thompson

SO AGREED.
By: _____
On behalf of Maritz Inc.

Dated: July 24, 2007

RMT:avd
cc: Jonathan Lemberg
21823\1303103.1



Charles A. Weiss
Direct: 314-259-2215
cweiss@bryancave.com

VIA EMAIL AND FACSIMILE

December 10, 2007

Ms. Norma Cantu
American Arbitration Association
6795 North Palm Ave., 2nd Floor
Fresno, CA 93704

Re:  74 117 01325 07 NOCA *Visa USA v. Maritz*

Dear Ms. Cantu:

This responds to your letter to the parties dated December 3, 2007, asking for input as to where the arbitration should take place. Preliminarily, and as you know, Maritz objects to any arbitration and believes that the arbitration provision in issue is unenforceable due to Visa's bad faith, deceitful and fraudulent inducement in connection with the arbitration provision. By responding to your letter, Maritz is not waiving its objections to the arbitration, and Maritz reserves all rights with respect to its position. We are responding to your letter, subject to Maritz's objections, only because you thus far appear to have ignored Maritz's objections, and we are concerned that you may continue to do so and, in the process, purport to determine a location for the arbitration without Maritz's input, even though Maritz believes that the AAA has no jurisdiction to proceed.

If an arbitration were to be held, it should be in St. Louis, Missouri. The great majority of the witnesses and documents are located in St. Louis; Maritz's work on the contract was done in St. Louis; the work site is located in St. Louis; the cost considerations strongly favor proceeding in St. Louis; Missouri law will be relevant with respect to certain claims expected to be in issue (e.g., as to Maritz's fraud and misrepresentation claims against Visa, and Maritz's waiver and estoppel claims); and an on-site inspection of the work site in St. Louis will be helpful in order to put certain issues in perspective. In addition, the most critical witnesses – the people who were intimately involved in the project for many months, who are most knowledgeable regarding the key issues, and whose reputations are now being tarnished unfairly by Visa – are located in St. Louis.

Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel (314) 259-2000
Fax (314) 259-2020
www.bryancave.com

Chicago
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
Los Angeles
New York
Phoenix
Shanghai
St. Louis
Washington, DC

And Bryan Cave,
A Multinational Partnership.

London

2750917

Ms. Norma Cantu                                                                              Bryan Cave LLP
December 10, 2007
Page 2

1. <u>Location of the parties</u>. Maritz's corporate headquarters and principal place of business are located in St. Louis. Approximately 75% of Maritz's employees are located in St. Louis.

2. <u>Location of witnesses and documents</u>. All the Maritz employees who worked on the project live and work in St. Louis or the surrounding area. At this point we estimate that approximately 275 Maritz employees or more in the St. Louis area were involved in the project. In light of the numerous issues that are expected to be in dispute, we currently estimate that at least 125 or more of these people may have information which will be needed in connection with the arbitration.

   Similarly, Maritz has tens of thousands of documents in St. Louis relevant to the disputes with Visa. Since most of the work was being done in St. Louis, it follows that most of the documents, including the most important documents, are located in St. Louis.

   Although we anticipate that Visa will try to inflate the number of Visa witnesses and documents located in San Francisco, the reality is that those numbers necessarily will pale in comparison since far and away the greatest percentage of the work and the people involved in the work were in St. Louis. In addition, we understand that at least two key Visa witnesses – Tad Fordyce and Dennis Duvall – are located in Colorado and Minnesota, respectively.

   We also expect that a number of third party witnesses may be important, including from Carlson Marketing in Minnesota and from certain banks on the East Coast.

3. <u>Location of site or place or materials</u>. Again, the location of the work was based in St. Louis, and the materials relating to the work performed by Maritz will for the most part be located in St. Louis as well.

4. <u>Consideration of relative cost to the parties</u>. The relative cost factors of the arbitration cut strongly in favor of proceeding in St. Louis rather than California. For example, the travel costs tilt heavily in favor of proceeding in St. Louis because the greater number of knowledgeable and key witnesses are located in St. Louis. Similarly, to the extent that the arbitrators are drawn from a particular area, the cost of arbitrators in the Midwest should be significantly less than those in California.

5. <u>Place of performance of contract</u>. As noted previously, the contract was being performed in St. Louis. Visa's claims that Maritz supposedly acted negligently with respect to its performance and/or breached the agreement focus on conduct that took place in St. Louis.

6. <u>Laws applicable to the contract</u>. Although the Master Services Agreement is governed by California law, other issues should be governed by Missouri law. In particular, the question of whether Visa fraudulently or negligently misled Maritz, whether Visa is estopped from taking certain positions, and whether Visa waived certain rights based upon representations that it directed to Maritz in St. Louis, and which were received by Maritz in St. Louis, should be governed by Missouri law.

22750917

Ms. Norma Cantu  
December 10, 2007  
Page 3

Bryan Cave LLP

7. <u>Place of previous court actions</u>. Visa filed a "preemptive strike" lawsuit in the Federal Court for San Francisco, while the mediation process was underway, in a move that smacks of bad faith. That lawsuit, however, has no bearing on where the arbitration should be conducted (if arbitration is ordered by the Court) since the cost factors, the location of the witnesses and documents, the place of performance of the contract, the relative cost considerations, and the desirability of an on-site inspection all favor proceeding in St. Louis.

8. <u>Necessity of an on-site inspection of the project</u>. Visa was constantly interfering in Maritz's performance in connection with the project, including as a result of interference at Maritz's corporate headquarters in St. Louis. We believe that an on-site inspection of the Maritz facilities in St. Louis where Visa's interference physically was taking place would be helpful to the arbitrators in that it would show the difficult environment and conditions in which Maritz's personnel were operating while Visa's personnel were on-site interfering in Maritz's work.

In addition, there are (among other things) certain security-related issues that Maritz anticipates being in dispute with respect to which a site inspection of the Maritz headquarters facilities would be helpful to the arbitrators.

9. <u>Other factors that favor proceeding in St. Louis</u>. Visa is essentially challenging the performance of the Maritz employees in St. Louis, questioning whether they performed adequately, and claiming that they were responsible for problems and delays that actually were caused by Visa (among other things) constantly changing what the Maritz employees in St. Louis were supposed to do and giving Maritz's St. Louis employees incomplete, insufficient and inaccurate information. The reputations of Maritz's St. Louis employees are at stake, and they should be entitled to defend their performance here in St. Louis in connection with any arbitration.

Accordingly, if an arbitration takes place, it should be in St. Louis. Determination of a locale, however, should <u>not</u> be made unless and until the Federal District Court first determines whether the dispute is arbitrable in light of Visa's deceitful conduct with respect to the arbitration provision.

Very truly yours,

*Charles A. Weiss*

Charles A. Weiss

CAW/cc

cc: Steve Gallant  
    Rod Thompson

32750917