# Exhibit A
## to the
### Declaration of Ryan S. Hilbert In Support Of *Ex Parte* Application By Maritz Inc. For An Order Shortening Time or, In the Alternative, Temporarily Staying Arbitration



Charles A. Weiss
Direct: 314-259-2215
cweiss@bryancave.com

November 26, 2007

Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel (314) 259-2000
Fax (314) 259-2020
www.bryancave.com

Chicago
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
Los Angeles
New York
Phoenix
Shanghai
St. Louis
Washington, DC

And Bryan Cave,
A Multinational Partnership,
London

Ms. Norma Cantu
American Arbitration Association
6795 North Palm Ave., 2nd Floor
Fresno, CA 93704

Re:   Visa USA/Maritz

Dear Ms. Cantu:

This is to respond to Mr. Thompson's November 20, 2007 letter to you and to again advise you that it is Maritz's position that the American Arbitration Association has no jurisdiction over this dispute.

As we previously informed you, Visa has elected to have the determination of whether or not the parties agreed to arbitrate Visa's claim to be determined by the Federal District Court in San Francisco. For your information, I am enclosing a copy of the lawsuit filed by Visa. While Maritz has not yet filed an answer or counter-claim in that suit, Maritz intends to do so.

It is Maritz's position that the arbitration clause in the July 9 letter is invalid and unenforceable in that it was induced by Mr. Thompson and Visa's fraudulent conduct and deceit. Visa intentionally failed to disclose its   million-plus claim against Maritz (a material fact) prior to the time that Mr. Gallant signed the letter of July 9, 2007. In April 2007, Visa, for its own convenience, terminated its contract with Maritz but did not at that time advise Maritz that it had   million claim against Maritz. There was no reason for Maritz to know that Visa had such a claim against Maritz. When Visa terminated its contract with Maritz, it did not terminate the contract for material breach or for default. Under the contract, Maritz was then entitled to submit its bill for all unpaid work. Maritz then submitted its claim for unpaid compensation in excess of $5 million. Although Visa now claims it had a claim against Maritz going as far back as the fall of 2006, at no time in September, October, November or December 2006 or January, February, March, April, May or June 2007, did Visa ever assert that it had a   million claim against Maritz. Indeed, it was not until two weeks after the July 9, 2007 letter that Mr. Thompson first disclosed to Maritz that Visa was going to assert a   million claim against Maritz. It is obvious that Visa and its attorney, Mr. Thompson, intentionally and deliberately withheld this material fact from Maritz until they were able to get Mr. Gallant to agree to the arbitration clause in the July 9, 2007 letter. Such conduct does not meet the standards of ABA Model Rule 4.1 and does not comply with the law of the

2741659.3

Ms. Norma Cantu  
November 26, 2007  
Page 2

Bryan Cave LLP

jurisdiction in which Ms. Thompson practices: "the law is clear that a duty is owed by an attorney not to defraud another even if that other is an attorney negotiating at arm's length." Cicone v. URS Corporation et. al, 183 Cal. App. 3d 194, 202 (1986).

Upon being advised of the      million claim, Mr. Gallant immediately informed Mr. Thompson that Maritz had not agreed to arbitrate that claim. I have also personally told Mr. Thompson that it is Maritz's position that Maritz did not agree to arbitrate the claim by Visa first presented to Maritz after the July 9, 2007 letter, and that we believe that Mr. Thompson and Visa was deceitful in intentionally concealing Visa's      million claim from Maritz. As you will see in the enclosed Visa's complaint, Visa misleadingly alleges that "Maritz contends that the letter agreement is somehow invalid," feigning ignorance of the reason Maritz says the arbitration clause is unenforceable. Maritz has repeatedly advised Visa the reasons why the arbitration provisions of the letter agreement are invalid and unenforceable.

This matter is now before the Federal District Court in San Francisco, and Visa and Mr. Thompson's deceitful conduct and the consequences of such conduct will be determined by that court. Mr. Thompson has cited no case which holds that Visa has "not elected" to have the court determine arbitrability by filing suit in Federal District Court.

It is up to the Federal District Court, not the American Arbitration Association at this point, to determine the facts and the law in this dispute. As our Supreme Court has instructed, a "court should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakeabl[e]' evidence that they did so." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). The Buckeye case referenced in Mr. Thompson's letter is not applicable here. The Supreme Court in that case reaffirmed its decision in Prima Paint Corp. v. Flood & Clonklin Mfg. Co., 388 U.S. 395, 402 (1967), in which it held that "if the claim is fraud in the inducement of the arbitration clause itself -- an issue that goes to the making of the agreement to arbitrate -- the federal court may proceed to adjudicate it." Here, it is Maritz's position that the arbitration provision in the letter agreement itself was induced by Mr. Thompson and Visa's fraudulent conduct, and thus, as our Supreme Court said in both the Buckeye and the Prima Paint Corporation cases, it is up to the federal court to adjudicate the issue.

We also point out that although Visa is requesting arbitration of its claim of some      million-plus, Visa has paid the AAA an initial filing fee of only $3,250.00. Based upon its claim of      million-plus, Visa is required to pay the AAA an initial filing fee of      , plus a case service fee of      according to the AAA's fee schedule. Thus, we do not believe that Visa has properly complied with AAA's rules concerning payment of a required initial fee, and for this additional reason, the AAA does not properly have jurisdiction over Visa's claims.

22741659.3

Ms. Norma Cantu  
November 26, 2007  
Page 3

Bryan Cave LLP

If you need any additional information, please let me know.

Very truly yours,

*[signature]*

Charles A. Weiss

CAW

cc: Roderick A. Thompson

32741659.3

**BRYAN CAVE**

Charles A. Weiss
Direct: 314-259-2215
cweiss@bryancave.com

December 7, 2007

**VIA EMAIL, FACSIMILE AND FED EX**

Ms. Norma Cantu
American Arbitration Association
6795 North Palm Ave., 2nd Floor
Fresno, CA  93704

Re:   <u>74 117 01325 07 NOCA *Visa USA v. Maritz*</u>

Dear Ms. Cantu:

This is in response to Mr. Thompson's letter to you dated December 4, 2007.  Please forward this letter to the AAA's general counsel for review.

First, contrary to the suggestion contained in Mr. Thompson's letter, my letter to you dated November 26, 2007, in fact <u>was</u> sent to you on November 26, not December 3, 2007.  On December 3, 2007, I sent you a copy of what had been previously sent on November 26.

Second, Mr. Thompson misstates the applicable law regarding the issue of arbitrability.  Visa in bad faith deceived and fraudulently induced Maritz into agreeing to an arbitration provision.  The United States Supreme Court has made clear that where, as here, a party is claiming that the arbitration provision itself was fraudulently induced, the issue of arbitrability is for the court to decide, <u>not</u> the arbitrator.  See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006); see also Nagrampa v. Mailcoups, Inc., 469 F.3d 1257, 1264 (9th Cir. 2006) ("When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must determine whether the arbitration provision is invalid and unenforceable"); Downer v. Siegel, 489 F.3d 623, 627 (5th Cir. 2007) ("the arbitration clause is enforceable unless the plaintiffs were fraudulently induced into agreeing to the arbitration clause itself"); Doctor's Associates, Inc. v. Distajo, 66 F.3d 438, 457 (2d Cir. 1995) (if the arbitration clause was induced by fraud, there can be no arbitration).  See also Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 4.

In <u>Prima Paint</u>, the Supreme Court stated that under Section 4 of the Federal Arbitration Act ("FAA"), "if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the 'making' of the agreement to arbitrate — the

Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel (314) 259-2000
Fax (314) 259-2020
www.bryancave.com

Chicago
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
Los Angeles
New York
Phoenix
Shanghai
St. Louis
Washington, DC

And Bryan Cave,
A Multinational Partnership,
London

Ms. Norma Cantu  
December 7, 2007  
Page 2

Bryan Cave LLP

federal court may proceed to adjudicate it." 388 U.S. at 403-04. See also Buckeye Check Cashing, 546 U.S. at 445 (quoting and approving Prima Paint). Maritz's challenge is directed at the arbitration clause itself, and that issue must be decided by the Court, not the arbitrator.

The pertinent provisions of the FAA include the following:

> "Section 2. Validity, irrevocability, and enforcement of agreements to arbitrate
>
> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, <u>or an agreement in writing to submit to arbitration an existing controversy</u> arising out of such a contract, transaction, or refusal, <u>shall be valid</u>, irrevocable, and enforceable, <u>save upon such grounds as exist at law or in equity for the revocation of any contract.</u>
>
> ....
>
> Section 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. ... <u>The court</u> shall hear the parties, and <u>upon being satisfied that the making of the agreement for arbitration ... is not in issue</u>, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. ... <u>If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof. ... Where such an issue is raised, the party alleged to be in default may ... demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. ...</u>" (emphasis added)

Third, Mr. Thompson's December 4 letter to you distorts and misstates what I said in my November 26 letter. Mr. Thompson's letter misleadingly states that I asserted that "the July 9 letter is invalid and unenforceable ...." In fact, my letter states in pertinent part that:

22750469

Ms. Norma Cantu  Bryan Cave LLP
December 7, 2007
Page 3

> "It is Maritz's position that the arbitration clause in the July 9 letter is invalid and unenforceable in that it was induced by Mr. Thompson and Visa's fraudulent conduct and deceit. ...
>
> Upon being advised of the ____ million claim, Mr. Gallant immediately informed Mr. Thompson that Maritz had not agreed to arbitrate that claim. ... Maritz has repeatedly advised Visa the reasons why the arbitration provisions of the letter agreement are invalid and unenforceable.
>
> . . .
>
> It is up to the Federal District Court, not the American Arbitration Association at this point, to determine the facts and the law in this dispute. ... Here, it is Maritz's position that the arbitration provision in the letter agreement itself was induced by Mr. Thompson and Visa's fraudulent conduct, and thus, as our Supreme Court said in both the Buckeye and the Prima Paint Corporation cases, it is up to the federal court to adjudicate the issue." (emphasis added)

My November 26 letter thus makes clear that it is Maritz's position that the arbitration provision in the July 9 letter was induced by Visa's fraudulent conduct and that the Federal District Court therefore has to adjudicate the issue of arbitrability.

Maritz has already engaged in the first two stages referenced in the July 9 letter – the direct negotiations between parties and the subsequent mediation. Maritz thus is challenging only the enforceability of the arbitration clause and not the entire July 9 letter. Again, this is precisely the type of challenge which the United States Supreme Court has made clear in Prima Paint must be decided by the court rather than the arbitrator.

Mr. Thompson also argues that Visa has paid an appropriate filing fee because it supposedly is arbitrating at this point only to determine the validity of the agreement to arbitrate and to determine the procedures to be used in the arbitration. According to Mr. Thompson, once the arbitration procedures are established, Visa will then submit its claim for damages to be arbitrated. Assuming arguendo that the arbitration provision was enforceable – and it is not, as discussed above – then the arbitration could only be initiated by demand to arbitrate Visa's claim for damages. The very arbitration provision, if it were valid and enforceable, which Visa relies upon in the July 9, 2007 letter purports to provide for binding arbitration pursuant to AAA Commercial Rules (among other things) of the "clients' respective claims for damages resulting from alleged breaches of the agreement and related claims . . . ." The arbitration provision upon which Visa relies does not provide for arbitration of nonmonetary claims. We are aware of no procedure or rule that allows Visa to file a separate arbitration demand related solely to determining arbitrability and the procedures to be followed without also filing a demand for arbitration of its damage claims. Although Rule R-7 provides in some circumstances that the arbitrators may determine the arbitrability of the demand for arbitration, such determination is only incidental to a proper demand for arbitration in the first place. Accordingly, Visa should be required to pay the full filing fee based

Ms. Norma Cantu  
December 7, 2007  
Page 4

Bryan Cave LLP

upon the dollar amount of its claims. Obviously, Visa is attempting to avoid paying the required fee for initiating the arbitration of its claim for damages, but it cannot appropriately proceed before the AAA without filing a demand for arbitration of its claims for damages.

Mr. Thompson also makes the odd complaint that Maritz should not mention the amount of Visa's claim. Visa's position is meritless. The amount of Visa's claim was never considered confidential in any respect and the rules of the AAA require the amount of any claim to be stated by the claimant to the AAA. Indeed, it is the amount of the claim that determines the fees that the claimant must pay in order to commence an arbitration, and it also determines whether the procedures for large, Complex Commercial Disputes shall apply, which in turn determines the number of arbitrators (See Rule R-1(c); L-2; Administrative Fees). In any event, Mr. Thompson told Maritz on July 23, 2007, the day <u>before</u> Maritz signed Visa's July 24 letter referencing the California Evidence Code § 1119, that Visa had a claim of tens of millions of dollars and that its claim was between $10 million and $110 million. Visa therefore cannot contend that its alleged  million damage claim is somehow "confidential."

Thus, the alleged arbitration provision upon which Visa relies provides for arbitration of the parties' respective <u>claims for damages</u>. Without filing a demand for arbitration of Visa's claim for damages, Visa has no basis for invoking the AAA's jurisdiction in this matter.

To reiterate: Maritz objects to any arbitration. Under the FAA and controlling precedent from both the United States Supreme Court and other courts, the issue of whether or not the arbitration provision in the July 9 letter is enforceable is an issue that must be resolved in the federal district court in light of Maritz's claim that Visa deceived and fraudulently induced Maritz into agreeing to the arbitration clause. Further, Visa has failed to file a proper demand for arbitration for "claims for damages" and has failed to pay the required filing fees.

Maritz therefore demands that no further action be taken in the arbitration until after the Court has determined whether or not the arbitration provision in the July 9 letter is enforceable. Please let me know whether the AAA will comply with this demand so that Maritz will know whether it has to take this matter up with Judge White of the Federal Court in the Northern District of California.

Sincerely,

*[signature]*

Charles A. Weiss

CAW/db

cc: Eric P. Tuchmann  
General Counsel, AAA  
Rod Thompson

42750469



Charles A. Weiss
Direct: (314) 259-2215
cweiss@bryancave.com

December 7, 2007

**VIA FEDEX**

Mr. Eric P. Tuchmann
General Counsel and Corporate
Secretary
American Arbitration Association
1633 Broadway, 13th Floor
New York, NY 10019-6708

Dear Mr. Tuchmann:

I am writing you to call to your attention a matter relating to the jurisdiction of the American Arbitration Association to proceed with an improper and invalid arbitration demand by Visa USA against Maritz Inc. We represent Maritz.

Because this is a serious and significant issue, we are calling this to your attention.

For your information, I am enclosing a letter dated today to Ms. Cantu as well as previous correspondence. As you can see, this matter was initiated by Visa in the Federal district court in San Francisco, and that court will determine whether or not the parties will have to arbitrate Visa's claims. The AAA should not proceed in this matter until the issue of whether or not the arbitration provision in the July 9, 2007 letter is enforceable and determined in the litigation before Federal district court.

In addition, Visa has attempted to submit the matter to the AAA without submitting a demand for arbitration of its claims and has failed to pay the required initial filing fees.

We hope you will review the applicable law and will direct the Fresno office not to proceed with this arbitration until the issue of arbitrability is determined in the Federal district court case.

Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel (314) 259-2000
Fax (314) 259-2020
www.bryancave.com

Chicago
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
Los Angeles
New York
Phoenix
Shanghai
St. Louis
Washington, DC

And Bryan Cave,
A Multinational Partnership,
London

2751611.1

Bryan Cave LLP

Mr. Eric P. Tuchmann
December 7, 2007
Page 2

If you have any questions whatsoever, please let me know.

Sincerely,

Charles A. Weiss
Attorney for Maritz, Inc.

cc:   Rod Thompson

2751611.1



Charles A. Weiss
Direct: 314-259-2215
cweiss@bryancave.com

VIA EMAIL AND FACSIMILE

December 10, 2007

Ms. Norma Cantu
American Arbitration Association
6795 North Palm Ave., 2nd Floor
Fresno, CA  93704

Re:  74 117 01325 07 NOCA *Visa USA v. Maritz*

Dear Ms. Cantu:

This responds to your letter to the parties dated December 3, 2007, asking for input as to where the arbitration should take place. Preliminarily, and as you know, Maritz objects to any arbitration and believes that the arbitration provision in issue is unenforceable due to Visa's bad faith, deceitful and fraudulent inducement in connection with the arbitration provision. By responding to your letter, Maritz is not waiving its objections to the arbitration, and Maritz reserves all rights with respect to its position. We are responding to your letter, subject to Maritz's objections, only because you thus far appear to have ignored Maritz's objections, and we are concerned that you may continue to do so and, in the process, purport to determine a location for the arbitration without Maritz's input, even though Maritz believes that the AAA has no jurisdiction to proceed.

If an arbitration were to be held, it should be in St. Louis, Missouri. The great majority of the witnesses and documents are located in St. Louis; Maritz's work on the contract was done in St. Louis; the work site is located in St. Louis; the cost considerations strongly favor proceeding in St. Louis; Missouri law will be relevant with respect to certain claims expected to be in issue (e.g., as to Maritz's fraud and misrepresentation claims against Visa, and Maritz's waiver and estoppel claims); and an on-site inspection of the work site in St. Louis will be helpful in order to put certain issues in perspective. In addition, the most critical witnesses – the people who were intimately involved in the project for many months, who are most knowledgeable regarding the key issues, and whose reputations are now being tarnished unfairly by Visa – are located in St. Louis.

Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel (314) 259-2000
Fax (314) 259-2020
www.bryancave.com

Chicago
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
Los Angeles
New York
Phoenix
Shanghai
St. Louis
Washington, DC

And Bryan Cave,
A Multinational Partnership,
London

2750917

Ms. Norma Cantu  
December 10, 2007  
Page 2

Bryan Cave LLP

1. <u>Location of the parties</u>. Maritz's corporate headquarters and principal place of business are located in St. Louis. Approximately 75% of Maritz's employees are located in St. Louis.

2. <u>Location of witnesses and documents</u>. All the Maritz employees who worked on the project live and work in St. Louis or the surrounding area. At this point we estimate that approximately 275 Maritz employees or more in the St. Louis area were involved in the project. In light of the numerous issues that are expected to be in dispute, we currently estimate that at least 125 or more of these people may have information which will be needed in connection with the arbitration.

   Similarly, Maritz has tens of thousands of documents in St. Louis relevant to the disputes with Visa. Since most of the work was being done in St. Louis, it follows that most of the documents, including the most important documents, are located in St. Louis.

   Although we anticipate that Visa will try to inflate the number of Visa witnesses and documents located in San Francisco, the reality is that those numbers necessarily will pale in comparison since far and away the greatest percentage of the work and the people involved in the work were in St. Louis. In addition, we understand that at least two key Visa witnesses – Tad Fordyce and Dennis Duvall – are located in Colorado and Minnesota, respectively.

   We also expect that a number of third party witnesses may be important, including from Carlson Marketing in Minnesota and from certain banks on the East Coast.

3. <u>Location of site or place or materials</u>. Again, the location of the work was based in St. Louis, and the materials relating to the work performed by Maritz will for the most part be located in St. Louis as well.

4. <u>Consideration of relative cost to the parties</u>. The relative cost factors of the arbitration cut strongly in favor of proceeding in St. Louis rather than California. For example, the travel costs tilt heavily in favor of proceeding in St. Louis because the greater number of knowledgeable and key witnesses are located in St. Louis. Similarly, to the extent that the arbitrators are drawn from a particular area, the cost of arbitrators in the Midwest should be significantly less than those in California.

5. <u>Place of performance of contract</u>. As noted previously, the contract was being performed in St. Louis. Visa's claims that Maritz supposedly acted negligently with respect to its performance and/or breached the agreement focus on conduct that took place in St. Louis.

6. <u>Laws applicable to the contract</u>. Although the Master Services Agreement is governed by California law, other issues should be governed by Missouri law. In particular, the question of whether Visa fraudulently or negligently misled Maritz, whether Visa is estopped from taking certain positions, and whether Visa waived certain rights based upon representations that it directed to Maritz in St. Louis, and which were received by Maritz in St. Louis, should be governed by Missouri law.

22750917

Ms. Norma Cantu
December 10, 2007
Page 3

Bryan Cave LLP

7. <u>Place of previous court actions</u>. Visa filed a "preemptive strike" lawsuit in the Federal Court for San Francisco, while the mediation process was underway, in a move that smacks of bad faith. That lawsuit, however, has no bearing on where the arbitration should be conducted (if arbitration is ordered by the Court) since the cost factors, the location of the witnesses and documents, the place of performance of the contract, the relative cost considerations, and the desirability of an on-site inspection all favor proceeding in St. Louis.

8. <u>Necessity of an on-site inspection of the project</u>. Visa was constantly interfering in Maritz's performance in connection with the project, including as a result of interference at Maritz's corporate headquarters in St. Louis. We believe that an on-site inspection of the Maritz facilities in St. Louis where Visa's interference physically was taking place would be helpful to the arbitrators in that it would show the difficult environment and conditions in which Maritz's personnel were operating while Visa's personnel were on-site interfering in Maritz's work.

In addition, there are (among other things) certain security-related issues that Maritz anticipates being in dispute with respect to which a site inspection of the Maritz headquarters facilities would be helpful to the arbitrators.

9. <u>Other factors that favor proceeding in St. Louis</u>. Visa is essentially challenging the performance of the Maritz employees in St. Louis, questioning whether they performed adequately, and claiming that they were responsible for problems and delays that actually were caused by Visa (among other things) constantly changing what the Maritz employees in St. Louis were supposed to do and giving Maritz's St. Louis employees incomplete, insufficient and inaccurate information. The reputations of Maritz's St. Louis employees are at stake, and they should be entitled to defend their performance here in St. Louis in connection with any arbitration.

Accordingly, if an arbitration takes place, it should be in St. Louis. Determination of a locale, however, should <u>not</u> be made unless and until the Federal District Court first determines whether the dispute is arbitrable in light of Visa's deceitful conduct with respect to the arbitration provision.

Very truly yours,

*Charles A. Weiss*

Charles A. Weiss

CAW/cc

cc:  Steve Gallant
     Rod Thompson

32750917