1   Roderick M. Thompson (State Bar No. 96192)
        rthompson@fbm.com
2   Robert C. Holtzapple (State Bar No. 145954)
        bholtzapple@fbm.com
3   Helen Dutton (State Bar No. 235558)
        hdutton@fbm.com
4   Diego F. Acevedo (State Bar No. 244693)
        dacevedo@fbm.com
5   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
6   San Francisco, CA  94104
    Telephone:  (415) 954-4400
7   Facsimile:  (415) 954-4480

8   Attorneys for Plaintiff
    VISA U.S.A. INC.
9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

| 13 | VISA U.S.A. INC., | Case No. CV-07-5585 JSW |
|---|---|---|
| 14 | Plaintiff, | **NOTICE OF MOTION AND MOTION TO STAY ACTION AND TO COMPEL ARBITRATION** |
| 15 | vs. | |
| 16 | MARITZ INC., d/b/a MARITZ LOYALTY MARKETING, | Date:  February 8, 2008 Time:  9:00 a.m. |
| 17 | Defendant. | Courtroom:  2 (17th Floor) Hon. Jeffrey S. White |
| 18 | | |

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /
Case No. CV-07-5585 JSW

21823\1418898.1

1

## NOTICE OF MOTION AND MOTION

2

3            On February 8, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in

4    Courtroom 2, 17th Floor, before the Honorable Jeffrey S. White, Plaintiff Visa U.S.A. Inc.

5    ("Visa") shall and hereby does move the Court, pursuant to the Sections 3 and 4 of the Federal

6    Arbitration Act, for an order staying this action and compelling Defendant Maritz, Inc. d/b/a

7    Maritz Loyalty Marketing ("Maritz") to arbitrate.  This Motion is based upon this Notice of

8    Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of

9    Roderick M. Thompson filed herewith, all files and records in this action and such additional

10   matters as may be judicially noticed or may come before the Court prior to or at the hearing on

11   this matter.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /        - i -                                      21823\1418898.1
Case No. CV-07-5585 JSW

1

## SUMMARY OF ARGUMENT

2          Maritz breached its contractual obligation to develop and deliver a time-critical software

3   program to Visa for use during the critical 2006 holiday season.  Visa terminated Maritz in

4   April 2007, and disputes regarding the parties' respective performance under that contract arose.

5   Visa and Maritz entered a three-stage Letter Agreement (including negotiation, mediation and

6   arbitration) to resolve efficiently their "respective claims for damages resulting from alleged

7   breaches" of that contract and all "related claims" outside of court.  A few weeks later, when

8   confronted with the magnitude of damages it had caused, Maritz abruptly tried to change course.

9   For the last six months, Maritz has sought to avoid arbitration and to delay resolution through its

10  assertion that its Associate General Counsel did not understand the significance of what he

11  signed.  By this motion, Visa asks the Court to stay this action and to let the arbitration proceed.

12          Maritz cannot dispute that both parties signed the Letter Agreement and that it covers both

13  their claims.  Because the Letter Agreement covers a unified dispute resolution framework,

14  Maritz's "challenge to the validity of the contract as a whole, and not specifically to the

15  arbitration clause, must go to the arbitrator[,]" not the Court.  *Buckeye Check Cashing, Inc. v.*

16  *Cardegna*, 546 U.S. 440, 449 (2006).  In any event, because the Letter Agreement incorporated

17  the AAA Commercial Rules, which expressly give the arbitrator the power to rule on validity

18  challenges to the arbitration agreement, the prevailing federal rule (followed by courts in this

19  district) is that Maritz must present any contention that it was fraudulently induced to enter the

20  Letter Agreement to the arbitrator.  *See Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205,

21  207 (2d Cir. 2005).  The Court need determine only that a *prima facie* agreement to arbitrate the

22  parties' claim exists in this case.  *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir.

23  1989).

24          Alternatively, if the Court determines the issue of arbitrability, it need determine only that

25  (1) an enforceable arbitration agreement exists between the parties; and (2) the claims at issue are

26  covered by the Letter Agreement.  *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

27  207 F.3d 1126, 1130 (9th Cir. 2000).  There can be no realistic dispute either that the Letter

28  Agreement is unenforceable, or that it does not cover the existing claims.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /        - ii -
Case No. CV-07-5585 JSW

21823\1418898.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION .......................................................................... I

I.    STATEMENT OF FACTS .............................................................................. 1

II.    ARGUMENT ................................................................................................. 4

 A.    This Case Should Be Stayed Pending the Arbitration And The Court Should Compel Maritz To Arbitrate ....................................................... 4

 B.    Questions Regarding Arbitrability Must Be Submitted To The Arbitrator ........... 5

  1.    The Arbitrator Must Determine the Arbitrability Issue, Because Maritz's Challenge Is to the Entire Letter Agreement, Not Just the Arbitration Provision.......................................................................... 5

  2.    In Any Event, The Letter Agreement Incorporates the AAA Rules, Which Provide that the Validity of the Letter Agreement Is for the Arbitrator.......................................................................... 7

 C.    Alternatively, If the Court Decides the Issue of Arbitrability, Maritz Should Be Compelled to Arbitrate, Because The Letter Agreement Is Both Valid and Covers the Disputes between the Parties.......................................................... 9

  1.    The Letter Agreement Is Valid and Enforceable. ..................................... 10

  2.    The Letter Agreement Applies to the Parties' "Respective Claims For Damages" and "Related Claims.".................................................... 12

III.    CONCLUSION .......................................................................................... 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /
Case No. CV-07-5585 JSW

- iii -

21823\1418898.1

1

<u>**TABLE OF AUTHORITIES**</u>

2
<u>Page</u>

3

**FEDERAL CASES**

4    *Allied-Bruce Terminix Cos., Inc. v. Dobson,*
        513 U.S. 265 (1995)................................................................................................ 4
5

6    *Anderson v. Pitney Bowes, Inc.,*
        2005 WL 1048700 (N.D. Cal. 2005)...................................................................... 8

7    *Apollo Computer, Inc. v. Berg,*
        886 F.2d 469 (1st Cir. 1989)................................................................................ 5, 8
8

9    *Avue Techs. Corp. v. DCI Group, LLC,*
        2006 WL 1147662 (D.D.C. Apr. 28, 2006) ............................................................ 7

10   *Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc.,*
        2004 WL 2931284 (N.D. Ill. Dec. 9, 2004) ............................................................ 8
11

12   *Bell v. Cendant Corp.,*
        293 F.3d 563 (2d Cir. 2002).................................................................................... 7

13   *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.,*
        203 F.R.D. 677 (S.D. Fla. 2001), *aff'd on other grounds*
14      312 F.3d 1349 (11th Cir. 2002)............................................................................... 8

15   *Bryson v. Gere,*
        268 F. Supp. 2d 46 (D.D.C.2003) ........................................................................... 8
16

17   *Buckeye Check Cashing, Inc. v. Cardegna,*
        546 U.S. 440 (2006)........................................................................................ 3, 5, 6

18   *Chiron Corp. v. Ortho Diagnostic System, Inc.,*
        207 F.3d 1126 (9th Cir. 2000)................................................................................ 10
19

20   *Commonwealth Edison Co. v. Gulf Oil Corp.,*
        541 F.2d 1263 (7th Cir.1976).................................................................................. 8

21   *Contec Corp. v. Remote Solution Co., Ltd.,*
        398 F.3d 205 (2d Cir. 2005)................................................................................. 7, 8
22

23   *Dean Witter Reynolds, Inc. v. Byrd,*
        470 U.S. 213 (1985) .................................................................................... 4, 5, 10

24   *First Options of Chicago, Inc. v. Kaplan,*
        514 U.S. 938 (1995)............................................................................................ 7, 8
25

26   *Green Tree Finance Corp.-Alabama v. Randolph,*
        531 U.S. 79 (2000) ................................................................................................. 4

27   *Lloyd v. Hovensa, LLC,*
        369 F.3d 263 (3d Cir. 2004).................................................................................... 4
28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - iv -          21823\1418898.1
Case No. CV-07-5585 JSW

1

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ............................................................................................................ 12

2

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983) ........................................................................................................... 4, 12

3

4

*P & P Industrial, Inc. v. Sutter Corp.,*
    179 F.3d 861 (10th Cir.1999) ............................................................................................... 8

5

*Packeteer Inc. v. Valencia System Inc.,*
    2007 WL 707501 (N.D. Cal. March 2007) ........................................................................... 8

6

7

*Poponin v. Virtual Pro, Inc.,*
    2006 WL 2691418 (N.D. Cal. 2006) ................................................................................. 8, 9

8

*PowerAgent Inc. v. Electric Data System Corp.,*
    358 F.3d 1187 (9th Cir. 2004) .............................................................................................. 7

9

10

*Qualcom Inc. v. Nokia Corp.,*
    466 F.3d 1366 (Fed. Cir. 2006) ............................................................................................ 8

11

*Rainwater v. National Home Insurance Co.,*
    944 F.2d 190 (4th Cir.1991) .................................................................................................. 8

12

*Shearson/American Express, Inc. v. McMahon,*
    482 U.S. 220 (1987) .............................................................................................................. 4

13

14

*Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.,*
    2007 WL 914464 (N.D. Cal. 2007) ...................................................................................... 6

15

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) .............................................................................................. 12

16

17

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) .................................................................................................................. 4

18

19

*Susai v. Jagadeesh,*
    2007 WL 1742870 (N.D. Cal. June 14, 2007) ............................................................... 6, 10

20

*Terminix International Co., LP v. Palmer Ranch Ltd. Partnership,*
    432 F.3d 1327 (11th Cir. 2005) ............................................................................................ 7

21

22

*Toledano v. O'Connor,*
    501 F. Supp. 2d 127, 145 (D.D.C. 2007) ........................................................................... 11

23

*Warehousemen's Union Local No. 206 v. Continental Can Co., Inc.,*
    821 F.2d 1348 (9th Cir. 1987) ............................................................................................ 10

24

25

*Way Services, Inc. v. Adecco N. America LLC,*
    2007 WL 1775393 (E.D. Pa. Jun. 18, 2007) ................................................................... 4, 7

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - v -                                          21823\1418898.1
Case No. CV-07-5585 JSW

1

**STATE CASES**

*Chase Chemical Co. v. Hartford Accident & Indemnity Co.*,
    159 Cal. App. 3d 229 (1984) ........................................................................ 11

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) ....................................................................... 8

*Jones v. Merrill Lynch*,
    604 So. 2d 334 (Ala. 1991) ......................................................................... 5

*Segal v. Silberstein*,
    67 Cal.Rptr.3d 426 ..................................................................................... 12

*Shafer v. Berger, Kahn, Shafton, Moss, Figler & Gladstone*,
    107 Cal. App. 4th 54 (2003) ................................................................. 11, 12


**FEDERAL STATUTES**

9 U.S.C. § 1 *et seq*. ........................................................................................ 4

9 U.S.C. § 2 .................................................................................................... 4

9 U.S.C. § 4 ............................................................................................... 5, 10


**OTHER AUTHORITIES**

AAA Commercial Rules
    Rule R-7(a) .................................................................................................. 9

26 Williston on Contracts § 69:16 (4th ed. 2007) ......................................... 11

Restatement (Second) of Contracts § 161 (2007) ......................................... 11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - vi -                                    21823\1418898.1
Case No. CV-07-5585 JSW

1
2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

3    Pursuant to an Agreement dated April 17, 2006 (the "April 17 Agreement"), Maritz was
4 obligated to develop, deploy, operate and maintain for Visa and its member banks a points-based
5 rewards program for use by Visa cardholders.  The April 17 Agreement required that Maritz
6 launch the rewards program no later than September 30, 2006.  The April 17 Agreement clearly
7 states that failure to meet the September 30, 2006 Launch Date would cause severe damage to
8 Visa.  In addition to stating that "Time is of the essence of this Agreement," the April 17
9 Agreement provides for liquidated damages of $70,000 per day of delay in the Launch.  The
10 April 17 Agreement also states that "Maritz acknowledges that the successful completion of each
11 Deliverable in accordance with the Milestone Schedule is critical to the commercial viability of
12 the Rewards Program."  (Declaration of Roderick M. Thompson ("Thompson Decl."), Ex. A.)
13 Maritz, nevertheless, failed to meet the September 30, 2006 deadline.  Indeed, despite continuing
14 to work on the project, Maritz never launched the rewards program.

15    Pursuant to a letter dated April 20, 2007, Visa terminated the April 17 Agreement.  In its
16 April 20, 2007 letter, Visa expressly "reserve[d] all rights relating to or arising out of the
17 [April 17, 2006] Agreement and any Related Agreement, including, without limitation, **claims**
18 **Visa has against Maritz for Maritz's breaches of the Agreement** (including any Related
19 Agreement), Maritz's non performance or delay in performing any obligations due under the
20 Agreement (including any Related Agreement), and **Visa's right to liquidated damages** [up to
21 $70,000 per day] pursuant to section XXIII.R of the Agreement."  (*See* Thompson Decl., Ex. B.)
22 (emphasis added)

23    Maritz responded in a letter dated May 7, 2007, claiming that Maritz was itself owed more
24 than $5 million.  In that letter, Maritz wrote:  "As Visa has reserved all of its rights relating to or
25 arising out of the Agreement or any Related Agreement, Maritz does the same."  (*See* Thompson
26 Decl., Ex. C.)  By letter dated June 5, 2007, Visa responded that it "anticipates providing
27 additional information to Maritz as to the nature and amount of Visa's claims at the appropriate
28 time." (*See* Thompson Decl., Ex. D.)  Visa explained that once the transition to the new vendor

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /
Case No. CV-07-5585 JSW                            - 1 -                            21823\1418898.1

1  was complete, "we will be prepared to discuss your letter as part of the process for resolving our

2  claims."  On July 2, Visa wrote another letter, reiterating its commitment to discuss "Maritz's

3  claims, as well as the nature and amount of Visa's claims," and that "[i]t is now timely to

4  establish a procedure for **efficiently documenting, discussing and resolving all remaining**

5  **claims**."  (Thompson Decl., Ex. E) (emphasis added.)  In particular,

6
7
8
9
10
> [Visa] proposed a staged process.  The first stage would be direct
> negotiations.  If the parties are unable to reach a mutually agreeable
> resolution through negotiation, the second stage would be non-
> binding mediation.  Finally, if the claims are not resolved in
> mediation, the parties will submit the matter to confidential and
> binding arbitration.  It is important to have this agreement on
> process in place before we commence negotiations so that both
> sides will know the alternative to a negotiated resolution.

11  Visa asked Maritz to have Maritz's legal counsel contact Visa's counsel "to establish a mutually

12  acceptable procedure."  (*Id.*) (emphasis added.)

13        In early July 2007, Maritz's Associate General Counsel contacted Visa's outside counsel

14  to negotiate a dispute resolution process.  Following that discussion, Visa and Maritz agreed to

15  memorialize a three-step dispute resolution process.  Visa's outside counsel sent the Letter

16  Agreement to Maritz's Associate General Counsel on July 9, 2007.  (Thompson Decl., Ex. F.)

17  On July 10, 2007, Maritz's Associate General Counsel sent an e-mail to Visa's outside counsel

18  returning a fully-executed copy of the Letter Agreement and stating, in part, that "attached is an

19  executed agreement outlining the procedures *for resolving any differences that may exist*

20  *between Visa and Maritz*."  (Thompson Decl., Ex. G, ¶ 8.) (emphasis added)

21        A few weeks after signing the Letter Agreement, Maritz's Associate General Counsel

22  asked Visa for an estimate as to the size of Visa's claim; Visa's outside counsel responded by

23  saying that Visa's claim was considerable and in the range of tens of millions of dollars.

24  (Thompson Decl., ¶ 9.)  Maritz's Associate General Counsel expressed surprise at the magnitude

25  of Visa's damages claim and then said that, although he was not accusing Visa's counsel of trying

26  to deceive him or of having said anything that was inaccurate, Maritz would engage outside

27  counsel.  (*Id.*)  On July 23, Maritz's Associate General Counsel e-mailed Visa's outside counsel

28  proposing that the parties agree that the "previous [Letter] [A]greement was null an [sic]

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 2 -                    21823\1418898.1
Case No. CV-07-5585 JSW

1   void. . . ." (Thompson Decl., Ex. H.)  Visa did not agree.  Maritz's Associate General Counsel

2   continued to maintain this position in an August 8, 2007 e-mail, stating "I will remind you that

3   Maritz originally agreed to arbitrate without **ANY** understanding of the magnitude of Visa's

4   purported claims and as I have said to you repeatedly there was no meeting of the minds between

5   Maritz and Visa with respect to the circumstances surrounding Maritz' agreement to mediate."

6   (Thompson Decl., Ex. I.) (emphasis in original)  Although Visa's outside counsel responded that

7   he "disagree[d] with Maritz' position that the attached July 9, 2007 [L]etter [A]greement is not

8   enforceable," Maritz held fast stating, "Although I suppose it goes without saying, we do disagree

9   with your view of the binding effect of the [L]etter [Agreement] you attached."  (Thompson

10  Decl., Ex. J, Aug. 21 Thompson e-mail, Aug. 22 Gallant e-mail, respectively.)

11          On November 2, 2007, Visa submitted an arbitration demand to the AAA.  (Thompson

12  Decl., Ex. K.)  Maritz responded to the AAA on November 16, 2007 that it disputes the validity

13  of the Letter Agreement and refuses to submit to the jurisdiction of the AAA.  (Thompson Decl.,

14  Ex. L.)  Maritz wrote again to the AAA on November 26, claiming that the Letter Agreement is

15  invalid and unenforceable; in a shift from its prior position that there had been "no meeting of the

16  minds," Maritz now contended that the Letter Agreement had been "induced by [Visa's outside

17  counsel] and Visa's fraudulent conduct and deceit" (Thompson Decl., Ex. M.)  In particular,

18  Maritz now claims that Visa's "failure" to disclose the magnitude of its damages claim was an

19  omission of material fact.  Moreover, and only after Visa's outside counsel raised the *Buckeye*

20  *Check Cashing* argument, Maritz changed its position, narrowly taking issue with only "the

21  arbitration clause in the [L]etter [A]greement" now claiming this provision "was induced by

22  [Visa's outside counsel] and Visa's fraudulent conduct."  (*Id.*)  On November 30, the AAA

23  rejected Maritz's procedural challenge, directed the arbitration to proceed, and provided that any

24  jurisdictional challenges could be raised to the arbitrator.  (Thompson Decl., Ex. N.)  Undeterred,

25  Maritz again wrote to the AAA objecting to any further action by the AAA in the administration

26  of the arbitration.  Despite Maritz's repeated objections, the AAA again rejected Maritz's

27  procedural challenge on December 13 and has directed the arbitration to proceed with the locale

28  as San Francisco.  (Thompson Decl., Ex. O.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 3 -                                    21823\1418898.1
Case No. CV-07-5585 JSW

## II.     ARGUMENT

The Federal Arbitration Act ("FAA") governs the Letter Agreement.  9 U.S.C. § 1 *et seq*. The present agreement involves "commerce" within the meaning of the FAA, where the underlying dispute relates to a contractual dispute regarding Maritz's development, deployment, operation and maintenance of a points-based rewards program.

Under the FAA, a written provision "in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA was enacted to overcome the reluctance of some courts to enforce arbitration agreements.  *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995).  The FAA establishes a federal policy in favor of arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

The United States Supreme Court has directed federal courts to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985); *Shearson/ American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### A.     This Case Should Be Stayed Pending the Arbitration And The Court Should Compel Maritz To Arbitrate

Section 3 of the FAA provides that a district court "upon being satisfied that the issue involved in [a] suit or proceeding is referable" to arbitration, shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (stay mandatory once court compels arbitration); *see also Way Services, Inc. v. Adecco N. Am. LLC*, 2007 WL 1775393 at *4 (E.D. Pa. Jun. 18, 2007) (staying action pending arbitration of arbitrability issue).  For the reasons discussed below in Sections B and C, this matter encompasses Visa's claims and Maritz's counterclaims and is referable to arbitration.  This case, including both Visa's claims and Maritz's counterclaims, therefore, must be stayed until the arbitration has been had.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 4 -
Case No. CV-07-5585 JSW

21823\1418898.1

A court must compel arbitration if the parties have in fact agreed in writing to arbitrate the claims pending before it. 9 U.S.C. § 4; *Dean Witter Reynolds*, 470 U.S. at 218 (district court had no discretion once it determined that written agreement to arbitrate existed). Where, as here, the validity of the Letter Agreement is an issue for the arbitrator to decide, the Court need only determine that a *prima facie* agreement to arbitrate the parties' claim exists. *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989). Authorized representatives from both Visa and Maritz signed the Letter Agreement. (Thompson Decl., Ex. F.) Indeed, Maritz has admitted in its Answer that it signed the Letter Agreement. (*See* D.E. #19, ¶ 23.) Further, the Letter Agreement expressly encompasses the parties' "respective" contract claims and all "related" claims. Accordingly, on its face, the Letter Agreement reflects a *prima facie* agreement to arbitrate.

**B.** **Questions Regarding Arbitrability Must Be Submitted To The Arbitrator**

      **1.** **The Arbitrator Must Determine the Arbitrability Issue, Because Maritz's Challenge Is to the Entire Letter Agreement, Not Just the Arbitration Provision.**

Maritz first argued that the entire Letter Agreement was "null an [sic] void," that there was no "meeting of the minds," and therefore the Letter Agreement was neither binding nor enforceable. (*See* Thompson Decl., Ex. H and Ex. L, respectively.) Based on these statements, Visa pointed out to the AAA that Maritz's challenge was to the validity of the entire Letter Agreement and that under *Buckeye Check Cashing Inc*., "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46. (Thompson Decl., Ex. P.)

Upon learning of Visa's *Buckeye Check Cashing* argument, however, Maritz changed course. In its December 3, 2007 letter to the AAA, Maritz alleged "that the arbitration provision in the [L]etter [A]greement itself was induced by [Visa's outside counsel] and Visa's fraudulent conduct . . . ." Notwithstanding these "*ad hoc* arguments of counsel," the parties' contemporaneous correspondence compels the conclusion that Maritz took issue with the ***entire*** Letter Agreement. *See Jones v. Merrill Lynch*, 604 So.2d 334, 337 (Ala. 1991) (rejecting Plaintiff's later-developed argument and observing that "a skillfully crafted complaint would, in

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /
Case No. CV-07-5585 JSW                    - 5 -                    21823\1418898.1

1    every case, necessitate a trial [instead of arbitration] thus effectively eviscerating the FAA and

2    circumventing the strong policy favoring arbitration").  As in *Jones*, "[t]he ability of competent

3    counsel to sharpen the issue relating to the arbitration clause progressively over time is readily

4    apparent," and is likewise unavailing here.  *Id.* at 338.  The Court should reject Maritz's "cynical

5    attempt to avoid th[e] [*Buckeye*] rule by simply adding a cause of action challenging the validity

6    of the arbitration clause" where the contemporaneous correspondence demonstrates that Maritz

7    took issue with the entire Letter Agreement, not merely the arbitration provision.  *See Susai v.*

8    *Jagadeesh*, 2007, WL 1742870, at *6 (N.D. Cal. June 14, 2007).

9         In addition, Maritz's belated attempt to attack only "the arbitration provision" is ruled out

10   by the Letter Agreement itself.  Simply put, there is no separable "arbitration provision."  The

11   parties agreed to a unified dispute resolution framework.  To wit, the opening paragraph of the

12   Letter Agreement provides:  "[w]e agreed that our clients' respective claims for damages

13   resulting from alleged breaches of the Agreement and related claims will all be resolved outside

14   of court," according to the "dispute resolution framework" set forth therein.  (Thompson Decl.,

15   Ex. F.)  Additionally, the parties agreed that "further details on the dispute resolution process will

16   need to be worked out," and if "they are unable to agree on any aspect of the procedure," it will

17   be resolved under applicable AAA "rules and procedures."  The entire agreed-upon dispute

18   resolution framework, therefore, is itself the subject of the pending arbitration.  Accordingly,

19   there is no separable "arbitration provision."  No matter how Maritz casts and recasts its

20   arguments, any alleged fraud in the inducement challenge is necessarily a challenge to the validity

21   of the entire Letter Agreement.[1]

22

23

24

25   _____

26   [1]       Visa raises to the Court's attention *Santana Row Hotel Partners, L.P., v. Zurich Am. Ins. Co.*, in which that Court held that a party's fraudulent inducement defense to a stand-alone arbitration agreement was a challenge to the entire agreement, and therefore an issue for the Court to decide.  2007 WL 914464  at *2 (N.D. Cal. March 20, 2007).

27   Although the Letter Agreement here is distinguishable from the arbitration agreement in *Santana Row*, Visa respectfully submits that the *Santana Row* Court's interpretation of *Buckeye Check Cashing* regarding severability is

28   mistaken.  *See id.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /        - 6 -
Case No. CV-07-5585 JSW

21823\1418898.1

1

2

**2.    In Any Event, The Letter Agreement Incorporates the AAA Rules, Which Provide that the Validity of the Letter Agreement Is for the Arbitrator.**

3      Incorporation of the AAA Rules in the Letter Agreement evidences the parties' intent to

4    submit issues of arbitrability to the arbitrator.  The FAA requires that the parties' agreement to

5    arbitrate be enforced as written.  In *First Options of Chicago, Inc. v. Kaplan*, the United States

6    Supreme Court held that "the question 'who has the primary power to decide arbitrability' turns

7    upon what the parties agreed about that matter." 514 U.S. 938, 943 (1995).  Thus, where "there is

8    clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, the court will

9    compel the parties to honor that agreement.  *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d

10    1187, 1191 (9th Cir. 2004); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

11      "The weight of authority in the federal courts *overwhelmingly* supports the [] conclusion"

12    that incorporation of arbitration rules constitutes clear and unmistakable evidence that the parties

13    intended to submit arbitrability issues to the arbitrator.  *Avue Techs. Corp. v. DCI Group, LLC*,

14    2006 WL 1147662 at *6 (D.D.C. Apr. 28, 2006) (emphasis added); *see also Way Services, Inc.*,

15    2007 WL 1775393 at *4 ("Considering this relevant case law, the Court is persuaded that the

16    *prevailing* rule across jurisdictions is that incorporation by reference of rules granting the

17    arbitrator the authority to decide questions of arbitrability – especially the AAA rules – is clear

18    and unmistakable evidence that the parties agreed to submit arbitrability questions to the

19    arbitrators.  *More importantly, the Court is convinced that California law has adopted this rule*.")

20    (emphases added).  Indeed, the vast majority of the Circuit Courts of Appeal has adopted this

21    rule.  *See e.g., Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th

22    Cir. 2005) ("By incorporating the AAA Rules, including Rule 8 [, now Rule 7], into their

23    agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether

24    the arbitration clause is valid."); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208, 209

25    (2d Cir. 2005) ("when . . . parties explicitly incorporate rules that empower an arbitrator to decide

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /                - 7 -
Case No. CV-07-5585 JSW

21823\1418898.1

1   issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties'

2   intent to delegate such issues to an arbitrator").[2]

3        Courts of this district have similarly followed this prevailing rule:  "where the parties'

4   agreement to arbitrate includes an agreement to follow a particular set of arbitration rules – such

5   as the ICC Rules – that provide for the arbitrator to decide arbitrability," issues regarding

6   arbitrability are decided by the arbitrator.  *Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418 *1, 9

7   (arbitration agreement incorporating ICC rules; issues regarding arbitrability reserved for

8   arbitrator); *see also Packeteer Inc. v. Valencia Sys. Inc.*, 2007 WL 707501 *1, 2 (N.D. Cal. March

9   2007) (Whyte, J.) (finding "that because it incorporates the rules of the American Arbitration

10  Association, the agreement to arbitrate is sufficiently broad as to give the arbitrator the authority

11  to determine arbitrability of issues"); *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, *1, 2-4

12  (N.D. Cal. 2005) (citing with approval *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th

13  547, 557 (2004) (holding clause specifying that arbitration would be "in accordance with the

14  AAA Commercial Arbitration Rules" constituted clear and unmistakable evidence that parties

15  intended arbitrator rather than court determine arbitrability)).

16       Although Maritz contends that "there is no arbitration agreement that would empower

17  arbitrators to determine the validity or enforceability of any arbitration agreement" (Thompson

---

18  [2]      *See also Qualcom Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (concluding "that the 2001
19  Agreement, which incorporates the AAA Rules containing the same language as that in *Contec*, clearly and
    unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator"); *P & P*
20  *Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999) (finding that when a party incorporates the AAA
    rules by reference, it is bound by all of the procedural rules of the AAA); *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d
21  190, 193-94 (4th Cir. 1991) (finding, before *First Options*, that a reference to AAA rules in an arbitration agreement
    incorporates all of those rules by reference); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("By
22  contracting to have all disputes resolved according to the Rules of the ICC . . . , Apollo agreed to be bound by
    Articles 8.3 and 8.4.  These provisions clearly and unmistakably allow the arbitrator to determine her own
23  jurisdiction when, as here, there exists a prima facie agreement to arbitrate whose continued existence and validity is
    being questioned.") *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272-73 (7th Cir. 1976) (same);
24  *Bryson v. Gere*, 268 F. Supp. 2d 46, 52-53 (D.D.C.2003) (finding, post-*First Options*, that a reference to AAA rules
    in an arbitration agreement incorporates all of those rules by reference, but without discussion of the "clear and
25  unmistakable evidence" standard); *Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc.*, 2004 WL 2931284, at
    *4 (N.D. Ill. Dec. 9, 2004) ("The inclusion of the phrase '[t]he arbitration shall be conducted . . . in accordance with
26  the prevailing commercial arbitration rules of [AAA]' . . . is clear and unmistakable evidence that the issue of
    arbitrability is to be submitted to the arbitrator."); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v.*
27  *MedPartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001) (holding agreement's incorporation of AAA rules
    "provide[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"), *aff'd on other grounds*,
28  312 F.3d 1349 (11th Cir. 2002).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 8 -                                    21823\1418898.1
Case No. CV-07-5585 JSW

1   Decl., Ex. G), the weight of authority proves Maritz wrong.[3]  Here, the one-and-a-half-page

2   Letter Agreement incorporates the AAA rules **twice.**  First, the Letter Agreement unequivocally

3   provides that the parties' disputes shall be resolved through "[b]inding arbitration pursuant to the

4   AAA Commercial Rules."  (Thompson, Decl., Ex. F.)  Second, the Letter Agreement also

5   provides that "[t]o the extent [the parties] are unable to agree on any aspect of the procedure, such

6   disagreement will be resolved by the applicable rules and procedures of the American Arbitration

7   Association ('AAA')."  (Thompson Decl., Ex. F.)  In relevant part, the AAA Commercial Rules

8   provide:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any

9   objections with respect to the existence, scope or validity of the arbitration agreement."  AAA

10  Commercial Rule R-7(a).  Thus, by incorporating AAA's Commercial Rules – including Rule

11  R-7(a) – the parties "clearly and unmistakably" agreed to reserve to the *arbitrator* the power to

12  rule on any objection Maritz may have as to the validity or enforceability of the Letter

13  Agreement.

14          Based on the same facts, this Court (Hamilton, J.) found in *Poponin*:  "[T]his court has no

15  subject matter jurisdiction to determine arbitrability.  By agreeing to arbitration under the ICC

16  Rules, Dr. Poponin and Virtual Pro clearly and unmistakably agreed that questions of arbitrability

17  would be submitted to arbitration."  2006 WL 2691418 at *9.  The same result is required here:

18  because Maritz undeniably agreed to arbitration under the AAA's rules, questions of arbitrability

19  must be submitted to the AAA.

20          **C.      Alternatively, If the Court Decides the Issue of Arbitrability, Maritz Should
21                    Be Compelled to Arbitrate, Because The Letter Agreement Is Both Valid and
                      Covers the Disputes between the Parties.**

22          Alternatively, if the issue of the Letter Agreement's validity is not reserved for the

23  arbitrator, Maritz must nonetheless be compelled to arbitrate.  In ruling on a petition to compel

24  arbitration the Court considers only two questions:  (1) whether an enforceable arbitration

25  agreement exists between the parties; and (2) whether the claims at issue are covered by the

26

27  _____
    [3]      Maritz neither identified nor distinguished any of this contrary authority in its December 20, 2007 Motion to
28  Stay despite being on notice of the majority of these cases from Visa's initial Petition to Compel, filed before
    Magistrate Zimmerman on November 28, 2007 as well as from Visa's letters to the AAA.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 9 -                                    21823\1418898.1
Case No. CV-07-5585 JSW

1   arbitration agreement.  See 9 U.S.C. § 4; *Chiron Corp.*, 207 F.3d at 1130.  Once the Court

2   determines that there is an arbitration agreement that applies to the dispute, the Court's work

3   ends.  *See Dean Witter Reynolds*, 470 U.S. at 218.  Here, both requirements are met.

4                    **1.    The Letter Agreement Is Valid and Enforceable.**

5          The parties negotiated, drafted and entered the Letter Agreement *after* the disputes

6   between the parties had arisen.  (*See* Thompson Decl., Ex. B, Ex. C, and Ex. D.)  Both parties

7   were represented by counsel during the bargaining process. When Maritz's Associate General

8   Counsel signed and returned the Letter Agreement, Maritz undeniably indicated that there had

9   been a meeting of the minds with respect to the Letter Agreement.

10          Nevertheless, Maritz initially claimed that the Letter Agreement was unenforceable

11  because there was "no meeting of the minds."  This argument is premised on Maritz's Associate

12  General Counsel's alleged *subjective* and unexpressed understanding that Visa's claim would not

13  be large.[4]  But where, as here, the parties' objective acts make their intent to enter the Letter

14  Agreement plain, subjective intent is not relevant.  *See, e.g., Warehousemen's Union Local No.*

15  *206 v. Continental Can Co., Inc.*, 821 F.2d 1348, 1350 (9th Cir. 1987) ("where there are objective

16  manifestations of the parties' intent to create a contract, the court need look no further").  Further,

17  Maritz's argument that "had [its Associate General Counsel] known all of the purported facts at

18  the time he entered into the Agreement, he would not have done so" cannot defeat the arbitration.

19  *Susai v. Jagadeesh*, 2007 WL 1742870, at *6 (N.D. Cal. June 14, 2007) (granting petition to

20  compel arbitration).

21          Perhaps understanding that the "no meeting of the minds" argument was unsupportable,

22  Maritz now claims it was "fraudulently induced" into the Letter Agreement.  This argument too

23  must fail.  Fraud based on concealment or nondisclosure is not actionable unless there is a duty to

24  disclose.  *Chase Chem. Co. v. Hartford Accident & Indem. Co.*, 159 Cal. App. 3d 229, 243

25

26  [4]       Importantly, Martiz cannot claim that its Associate General Counsel did not know Visa had claims:  not only
    was the fact that Visa had claims against Maritz clearly and repeatedly expressed in Visa's correspondence with
27  Maritz, but also in his cover e-mail returning the fully executed Letter Agreement, Maritz's Associate General
    Counsel wrote that the Letter Agreement expressed "the procedures for resolving **any differences that may exist**
28  **between Visa and Maritz**."  (Thompson Decl, Ex. G.) (emphasis added)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 10 -                    21823\1418898.1
Case No. CV-07-5585 JSW

1    (1984). A duty to disclose a material fact normally arises only where there exists a confidential

2    relation between the parties. *Shafer v. Berger, Kahn, Shafton, Moss, Figler & Gladstone*, 107

3    Cal. App. 4th 54, 71 (2003). Here, *after* disputes between the parties had arisen, Maritz's

4    Associate General Counsel negotiated the Letter Agreement with Visa's outside counsel; Maritz

5    cannot contend that Visa's outside counsel had a confidential relationship with Maritz.

6    Moreover, it remains a matter of general contract law that "[a] party making a contract is not

7    expected to tell all that he knows to the other party, even if he knows that the other party lacks

8    knowledge on some aspects of the transaction." *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 145

9    (D.D.C. 2007); Restatement (Second) of Contracts § 161 cmt. A; *see also* 26 Williston on

10   Contracts § 69:16 (4th ed.) ("It is settled that there is no general requirement of full disclosure of

11   all relevant facts in every business relationship and consequently agreed by the majority of

12   jurisdictions that, at least in courts of law, it is not necessarily fraudulent for one party to a

13   bargain consciously to take advantage of the ignorance or mistake of the other party by failing to

14   disclose material facts, provided no words or acts of the party who failed to disclose the fact in

15   question contribute to the mistake, and there is no duty existing between the parties that compels

16   disclosure of the facts. . . .").

17        In addition, even if Visa had a duty to disclose, Maritz's newly-crafted fraud in the

18   inducement is belied by the contemporaneous correspondence between the parties and their legal

19   counsel. In the termination letter to Maritz, dated April 20, 2007, Visa informed Maritz that Visa

20   was reserving all rights relating to or arising out of the Agreement including claims Visa had

21   against Maritz for Maritz's breaches of the Agreement and Visa's right to liquidated damages.

22   Maritz knew that liquidated damages accrued at a rate of $70,000.00 per day and that Visa's April

23   2007 termination of Maritz was over six months after the September 2006 Launch Date. (*See*

24   Thompson Decl, Ex. A.) Maritz was therefore on notice that Visa claims based on liquidated

25   damages alone could range in the tens of millions. On July 2, 2007, Visa again wrote Maritz

26   explaining that Visa would discuss Maritz's claims as well as the nature and amount of Visa's

27   claims after the parties had established "a procedure for efficiently documenting, discussing and

28   resolving all remaining claims." (See Thompson Decl, Ex. E.) The Letter Agreement also

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 11 -                                    21823\1418898.1
Case No. CV-07-5585 JSW

1  specifically states "we agreed that our clients' **respective claims for damages** resulting from

2  alleged breaches of the Agreement and related claims will all be resolved outside of court."

3  (emphasis added).  Given this series of communications, Maritz knew or should have known that

4  Visa would be seeking damages and not simply setoffs to Maritz's claim of five million dollars.

5  In fact, if Maritz had conducted a simple, superficial, and conservative calculation of the

6  liquidated damages that Visa might claim for Maritz's failure to launch the system between

7  September 30, 2006 and April 20, 2007 (as required under the April 17 Agreement), Maritz

8  would have known that Visa was claiming at least ten million dollars.  Given these

9  contemporaneous communications, Maritz cannot show that it actually relied on Visa's silence

10 regarding the size of its claim, or that such reliance was reasonably justified.[5]

11
12    **2.      The Letter Agreement Applies to the Parties' "Respective Claims For Damages" and "Related Claims."**

13        Maritz may contend that the Letter Agreement does not cover the disputes raised by

14 Visa's arbitration demand or by Maritz's counterclaims.  Any such contention would be baseless.

15        "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

16 arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

17 California law also has a strong "preference for arbitration, and the concomitant rule that

18 arbitration should be upheld unless it can be said with assurance that an arbitration clause cannot

19 reasonably be interpreted to cover a dispute."  *Segal v. Silberstein*, 67 Cal.Rptr.3d 426, 432-433

20 (Cal. App. 2d October 29, 2007) (reversing trial court's denial of petition to compel arbitration

21 even though arbitration clause was deemed "poorly worded").  Broad arbitration clauses, such as

22 the one here, apply so long as the factual allegations underlying a claim "touch matters" covered

23 by the contract.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625

24 n.13 (1985); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

25
26 _____
[5]      Even if Visa owed Maritz a duty to disclose, in order to prevail on a claim for fraud in the inducement
27 Maritz must also, *inter alia*, prove materiality and intent.  Visa will address these elements and the aforementioned
   elements of duty and reliance in its opposition to Maritz's Motion to Stay Arbitration.  As is clear from the parties'
28 contemporaneous correspondence, however, Maritz cannot establish its reliance was justified.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /        - 12 -                    21823\1418898.1
Case No. CV-07-5585 JSW

1     Here, the plain and unambiguous language of the Letter Agreement provides: "We agree[]

2     that [Visa's and Maritz's] ***respective claims for damages*** resulting from alleged breaches of the

3     [April 17] Agreement ***and related claims*** will ***all*** be resolved outside of court."  (Thompson

4     Decl., Ex. F, Letter Agreement (emphasis added).)  The inclusion of the words "respective" and

5     "related" demonstrates that the scope of the Letter Agreement applies to both parties' claims.

6     Maritz simply cannot credibly claim that the Letter Agreement does not cover the parties'

7     respective disputes surrounding the performance of the April 17 Agreement and all counterclaims

8     asserted by Maritz against Visa.

9   **III.     CONCLUSION**

10     For the foregoing reasons, Visa respectfully requests that the Court issue an Order

11    (a) staying this entire action, including Maritz's counterclaims, and (b) compelling Maritz to

12    submit to arbitration, in accordance with the Letter Agreement.

13

14    DATED:  January 4, 2007                         FARELLA BRAUN & MARTEL LLP

15

16                                                    By: /s/
17                                                          Roderick M. Thompson

18                                                    Attorneys for Plaintiff
                                                      VISA U.S.A. INC.

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF MOTION AND MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION /          - 13 -                                    21823\1418898.1
Case No. CV-07-5585 JSW