1    Roderick M. Thompson (State Bar No. 96192)
        rthompson@fbm.com
2    Robert C. Holtzapple (State Bar No. 145954)
        bholtzapple@fbm.com
3    Helen Dutton (State Bar No. 235558)
        hdutton@fbm.com
4    Diego F. Acevedo (State Bar No. 244693)
        dacevedo@fbm.com
5    Farella Braun & Martel LLP
     235 Montgomery Street, 17th Floor
6    San Francisco, CA  94104
     Telephone:  (415) 954-4400
7    Facsimile:  (415) 954-4480

8    Attorneys for Plaintiff
     VISA U.S.A. INC.
9

10                IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13   VISA U.S.A. INC.,                    Case No. CV-07-5585 JSW

14            Plaintiff,                  **VISA U.S.A. INC.'S OPPOSITION TO
                                          MARITZ INC.'S MOTION TO STAY
15      vs.                               ARBITRATION**

16   MARITZ INC., d/b/a MARITZ            Date:  February 8, 2008
     LOYALTY MARKETING,                   Time:  9:00 a.m.
17                                        Courtroom:  2 (17th Floor)
             Defendant.                   Hon. Jeffrey S. White
18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

21823\1419467.3

## SUMMARY OF ARGUMENT

In July 2007 defendant Maritz, Inc. ("Maritz") and plaintiff Visa U.S.A. Inc. ("Visa") agreed in writing that their "respective claims for damages resulting from alleged breaches of the [April 17] Agreement and related claims will be resolved outside of court." (The Letter Agreement, attached as Ex. A to Declaration of Roderick M. Thompson ("Thompson Decl.")).

Since the parties signed the Letter Agreement, however, Maritz has consistently attempted to delay the arbitration of the parties' claims; this motion is merely the latest tactic in that delay campaign. Maritz's motion suffers from fatal procedural, legal and factual flaws.

Procedurally, although seeking the equivalent of a temporary restraining order preventing the arbitration from moving forward, Maritz has failed to support its motion with any evidence whatsoever. TRO applications, of course, must be based on evidence that will allow the Court to make specific findings of fact and conclusions of law.

Legally, Maritz makes the unsupported contention that merely because it has *alleged* that the Letter Agreement was induced by fraud a stay is required as a matter of law. In fact Maritz cites no authority holding that an arbitration should or must be stayed pending resolution of arbitrability questions.

Factually, the Letter Agreement itself and the correspondence that preceded it demonstrate that Maritz's baldly-asserted fraudulent inducement argument cannot support its request for a stay. Preliminarily, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator[,]" and not the Court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). Moreover, the Letter Agreement expressly incorporated the AAA Commercial Rules; thus, under the prevailing federal rule, Maritz must present any challenge to the validity of the Letter Agreement to the arbitrator. *See Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 207 (2d Cir. 2005).

Finally, as a matter of both fact and law, Maritz's claim of fraud in the inducement is untenable. Maritz has not – and cannot – demonstrate that Visa (1) had a duty to disclose (2) a material fact; *or* (3) that Maritz justifiably relied on the concealed fact in entering the Letter Agreement.

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

1

# TABLE OF CONTENTS

2

**Page**

3    I.    STATEMENT OF FACTS .......................................................................................... 1

4          A.    The April 17 Agreement, Maritz's Breach Thereof And Visa's Subsequent
                 Termination. ................................................................................................... 1

5          B.    The Letter Agreement ..................................................................................... 2

           C.    Maritz Repudiates the Letter Agreement ....................................................... 2

6          D.    Visa Files Demand For Arbitration; Maritz Adopts Campaign of Delay ............... 3

7    II.   ARGUMENT .......................................................................................................... 4

8          A.    Although Maritz's Motion for A Stay is Really A Request for a Temporary
                 Restraining Order, Maritz Fails Completely To Make A Showing That
9                Would Support Such Relief. .......................................................................... 4

10         B.    Maritz Cites No Authority Which Requires or Mandates A Stay Pending
                 Resolution Of The Issues Now Before The Court. ......................................... 6

11         C.    The Threshold Issue Of Fraud Should Be Decided By The Arbitrator................ 8

12               1.    Maritz's Claim Is That It Was Fraudulently Induced Into the Entire
                       Letter Agreement.  That Claim, Therefore, Must Go to the
13                     Arbitrator................................................................................................ 8

14               2.    The Letter Agreement "Clearly and Unmistakably" Reserved for
                       the Arbitrator All Questions Regarding Its Validity. .............................. 10

15         D.    Even If The Court Decides That It Must Rule on The Validity of The Letter
                 Agreement, Maritz' Request For A Stay Fails Because It Can Not Prove
16               That It Was Fraudulently Induced Into The Agreement. ..................................... 12

17               1.    Visa Had No Duty To Disclose The Amount Of Its Damages
                       During The Negotiations Of The Letter Agreement. ................................ 12

18               2.    The Amount of Visa's Damages is Not Material to the Letter
                       Agreement. ......................................................................................... 14

19               3.    Maritz Cannot Have Justifiably Relied On Visa's Purported
                       "Concealment." .................................................................................. 15

20   III.  CONCLUSION ...................................................................................................... 15

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

**Page**

4

*A. & E. Plastik Pak Co. v. Monsanto Co.,*
    396 F.2d 710 (9th Cir. 1968) .......................................................................................... 5

5

*Alascom, Inc. v. ITT North Electric Co.,*
    727 F.2d 1419 (9th Cir. 1984) ........................................................................................ 7

6

7

*Apollo Computer, Inc. v. Berg,*
    886 F.2d 469 (1st Cir. 1989) ......................................................................................... 11

8

*Applera Corp. v. Illumina, Inc.,*
    282 F. Supp. 2d 1120 (N.D. Cal. 2003) ......................................................................... 7

9

10

*Atari Corp. v. Ernst & Whinney,*
    981 F.2d 1025 (9th Cir. 1992) ...................................................................................... 15

11

*Avue Tech. Corp. v. DCI Group, L.L.C.,*
    2006 WL 1147662 (D.D.C. Apr. 28, 2006) .................................................................. 10

12

13

*Bell v. Cendant Corp.,*
    293 F.3d 563 (2d Cir. 2002) ......................................................................................... 10

14

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) ........................................................................................................ 8

15

16

*Camping Const, Co. v. District Council of Iron Workers,*
    915 F.2d 1333 (9th Cir. 1990) ........................................................................................ 5

17

*Commonwealth Edison Co. v. Gulf Oil Corp.,*
    541 F.2d 1263 (7th Cir. 1976) ...................................................................................... 11

18

19

*Contec Corp. v. Remote Solution, Co., Ltd.,*
    398 F.3d 205 (2d Cir. 2005) ..................................................................................... 8, 11

20

*First Options v. Kaplan,*
    514 U.S. 938 (1995) ...................................................................................................... 10

21

22

*Litton Financial Printing Division v. N.L.R.B.,*
    501 U.S. 190 (1991) ........................................................................................................ 6

23

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983) ............................................................................................................ 7

24

25

*Owner-Operator Independent Drivers Association v. Swift Transport Co.,*
    367 F.3d 1108 (9th Cir. 2004) ........................................................................................ 5

26

27

*P & P Industrial, Inc. v. Sutter Corp.,*
    179 F.3d 861 (10th Cir. 1999) ...................................................................................... 11

28

*Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.,*
    835 F.2d 1275 (9th Cir. 1987). ....................................................................... 6

*Poponin v. Virtual Pro, Inc.,*
    2006 WL 2691418 (N.D. Cal. 2006)............................................................... 12

*Poweragent Inc. v. Electric Data System Corp.,*
    358 F.3d 1187 (9th Cir. 2004)........................................................................ 10

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,*
    388 U.S. 395 (1967) ......................................................................................... 8

*Rainwater v. National Home Insurance Co.,*
    944 F.2d 190 (4th Cir. 1991).......................................................................... 11

*Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.,*
    2007 WL 914464 (N.D. Cal. 2007)................................................................ 10

*Sheet Metal Workers' Intern. Association, Local No. 252 v. Standard Sheet Metal Inc.,*
    699 F.2d 481 (9th Cir. 1983).......................................................................... 7

*Six Clinics Holding Corp., II v. Cafcomp System,*
    119 F.3d 393 (6th Cir. 1997).......................................................................... 5

*Terminix Int'l. Co., v. Palmer Ranch Ltd.,*
    432 F.3d 1327 (11th Cir. 2005)...................................................................... 11

*Toledano v. O'Connor,*
    501 F. Supp. 2d 127 ................................................................................. 13, 14

*United Steelworkers of America v. American Mfg. Co.,*
    363 U.S. 564 (1960) ......................................................................................... 6

*United Steelworkers of America v. Warrior & Gulf Nav. Co.,*
    363 U.S. 574 (1960) ......................................................................................... 6

*Vincent Consolidated Commodities, Inc., v. American Trading and Transfer,*
    2007 U.S. Dist. LEXIS 53680 (S.D. Cal. 2007) ............................................ 12

*Volt Info. Sci., Inc. v. Board Of Trustee,*
    489 U.S. 468 (1989) ......................................................................................... 4

*Way Services, Inc. v. Adecco North America LLC,*
    2007 WL 1775393 (E.D. Pa. 2007) .......................................................... 10, 11

*Wolsey, Ltd. v. Foodmaker, Inc.,*
    144 F.3d 1205 (9th Cir. 1998)........................................................................ 4

1

**STATE CASES**

2

*Brownlee v. Vang,*

3
    235 Cal. App. 2d 465 (1965) ........................................................................ 12

4
*Cicone v. URS Corp.,*
    183 Cal. App. 3d 194 (1986) ...................................................................... 13

5

*Engalla v. Permanente Medical Group, Inc.,*

6
    15 Cal. 4th 951 (1997) ............................................................................... 4

7
*Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    604 So. 2d 332 (Ala. 1991) ........................................................................ 9

8
*People v. Highland Federal Sav. & Loan,*

9
    14 Cal. App. 4th 1692 (Cal. App. 2 Dist., 1993) ............................................ 12

10
*South Tahoe Gas Co. v. Hofmann Land Improvement Co.,*
    25 Cal. App. 3d 750 (1972) ....................................................................... 12

11

12
*Warner Construction Corp. v. City of Los Angeles.,*
    85 Cal. Rptr. 444 (1970) ........................................................................... 14

13

14

**FEDERAL RULES**

15
R. Civ. Proc. 65 (b) (1) ....................................................................................... 5

16
**OTHER AUTHORITIES**

17
Martin Domke , DOMKE ON COMMERCIAL ARBITRATION § 22.5 (3rd ed. 2007) ............. 5

18
26 Williston on Contracts § 69:16 (4th ed. 2007) ...................................................... 13

19
Restatement (Second) of Contracts § 161 (2007)  ...................................................... 13

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  STATEMENT OF FACTS

### A.  The April 17 Agreement, Maritz's Breach Thereof And Visa's Subsequent Termination.

In an agreement dated April 17, 2006 (the "April 17 Agreement") Maritz agreed to develop, deploy and operate a new software-based rewards platform for Visa's then existing customer loyalty program –Visa Extras.  Among other things, the April 17 Agreement set September 30 as the Phase I-A Launch Date, the deadline for Maritz to have begun commercial operations of the new platform.  A successful launch by that date was critical both because Visa's contract with the original provider, Carlson Marketing Group, expired on October 15, 2006 and because it was imperative to have a fully operating system in place for the holiday shopping season.  In recognition that a delay would cause Visa significant damages, the April 17 Agreement contains a liquidated damages clause requiring Maritz to pay Visa $70,000 per day for each day the launch was delayed.  (Ex. B to Thompson Decl.)

Maritz failed to launch its platform by September 30.  In the months that followed, Visa took extraordinary steps to assist Maritz with its ongoing development of the new rewards platform.  Visa hired consultants, including Inovant, to resolve technical issues Maritz could not identify.  Visa was also forced to extend its contract with Carlson to ensure that its member banks would continue to use the original platform without interruption.  In spite of these efforts, Maritz was never able to complete the Phase I-A launch.  In April 2007, after six months of unsuccessful attempts to start the Maritz platform, Visa terminated Maritz.

Visa's termination letter specifically "reserve[d] all rights relating to or arising out of the [April 17] Agreement and any Related Agreement, including, without limitation, **claims Visa has against Maritz for Maritz's breaches of the Agreement** . . . , Maritz's non performance or delay in performing any obligations due under the Agreement  . . . , and **Visa's right to liquidated damages.**"  (Thompson Decl., Ex. C; emphasis added.)  At the time of termination, liquidated damages had been accruing for at least five months.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

1

21823\1419467.3

1    Maritz responded with its own reservation of rights letter dated May 7, 2007.  That letter,

2    a copy of which was sent to Maritz's general counsel, stated "[a]s Visa has reserved all of its

3    rights relating to or arising out of the Agreement or any Related Agreement, Maritz does the

4    same."  (Thompson Decl., Ex. D.)  On June 5, 2007, Visa acknowledged receipt of Maritz's May

5    7 letter and informed Maritz that Visa would "provid[e] additional information to Maritz as to the

6    nature and amount of Visa's claims at the appropriate time." (Thompson Decl., Ex. E.)  On July

7    2, Visa sent Maritz another letter, reiterating its commitment to discuss "Maritz's claims, as well

8    as the nature and amount of Visa's claims" and suggesting that the parties "establish a procedure

9    for **efficiently documenting, discussing and resolving all remaining claims**." (Thompson

10    Decl., Ex. F; emphasis added.)

11    **B.    The Letter Agreement.**

12    In early July 2007, Maritz's Associate General Counsel contacted Visa's outside counsel

13    to negotiate a dispute resolution process.  After that discussion, Visa and Maritz agreed to resolve

14    their "**respective claims for damages** resulting from alleged breaches of the Agreement and

15    related claims" outside of Court through a three-step dispute resolution process. (Thompson

16    Decl., Ex. A; emphasis added.)   Under the dispute resolution agreement the parties agreed to

17    participate in direct business negotiations, followed by mediation and then, if required, binding

18    arbitration pursuant to the commercial rules of the American Arbitration Association ("AAA").

19    The parties also agreed that any disputes regarding any aspect of the dispute resolution procedure

20    would be resolved according to the rules and procedures of the AAA. (Thompson Decl., Ex. A.)

21    Visa's outside counsel sent the Letter Agreement to Maritz's Associate General Counsel

22    on July 9, 2007.  On July 10, 2007, Maritz's Associate General Counsel returned a fully-executed

23    copy of the Letter Agreement by email stating, in part, "attached is an executed agreement

24    outlining the procedures *for resolving any differences that may exist between Visa and Maritz*."

25    (Thompson Decl., Ex. G; emphasis added)

26    **C.    Maritz Repudiates the Letter Agreement.**

27    Two weeks after signing the Letter Agreement, Maritz's Associate General Counsel asked

28    Visa's outside counsel for an estimate of Visa's damages.  Visa's counsel said that the damages

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW                    2                    21823\1419467.3

1   were considerable and ranged in the tens of millions.  (Thompson Decl., ¶ 10.)  Maritz's

2   Associate General Counsel expressed surprise at the magnitude of Visa's damages claim and then

3   said that Maritz would engage outside counsel.  (*Id.*)  On July 23, Maritz's Associate General

4   Counsel e-mailed Visa's outside counsel proposing that the parties agree that the "previous

5   [Letter] [A]greement was null an [sic] void. . . ."  (Thompson Decl., Ex. H.)  Visa did not agree.

6       On August 8, 2007 Maritz's Associate General Counsel reiterated his belief that the entire

7   Letter Agreement was invalid, stating "I will remind you that Maritz originally agreed to arbitrate

8   without **ANY** understanding of the magnitude of Visa's purported claims and as I have said to

9   you repeatedly there was no meeting of the minds between Maritz and Visa with respect to the

10  circumstances surrounding Maritz' agreement to mediate."  (Thompson Decl., Ex. I; emphasis in

11  original.)  Later that month Maritz exchanged additional emails with Visa's outside counsel

12  steadfastly holding its position that the entire Letter Agreement was invalid and stating in part, "it

13  goes without saying, we do disagree with your view of the binding effect of the [L]etter

14  [Agreement] you attached."  (Thompson Decl., Ex. J.)  In spite of these assertions both parties

15  agreed that they would be better served by attempting to resolve their disputes through

16  negotiation and mediation.  These efforts proved unsuccessful.

17      **D.      Visa Files Demand For Arbitration; Maritz Adopts Campaign of Delay.**

18      On November 2, 2007 Visa filed a demand for arbitration with the American Arbitration

19  Association ("AAA").  On November 16, 2007, Maritz wrote the AAA claiming both that the

20  Letter Agreement was invalid and unenforceable, and objecting to San Francisco as the forum for

21  the arbitration.  (Thompson Decl. Ex. K.)  Visa responded by informing the AAA that under the

22  Supreme Court's decision in *Buckeye Check Cashing* the arbitrator must decide Maritz's

23  challenge to validity of the Letter Agreement.  (Thompson Decl. Ex. L.)

24      Upon learning of Visa's argument under *Buckeye Check Cashing,* Maritz changed its

25  position.  On November 26, in a marked contrast to its earlier assertion that the Letter Agreement

26  was invalid, Maritz claimed for the first time that only the arbitration clause in the Letter

27  Agreement was invalid and unenforceable.  (Thompson Decl., Ex M.)  On November 30, after

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW                3                21823\1419467.3

1   considering the parties contentions the AAA rejected Maritz's jurisdictional challenges and

2   directed the parties to begin the process for selecting an arbitrator.  (Thompson Decl. Ex. N.)

3       Shortly thereafter, Maritz reraised its locale challenge asserting that the proper place for

4   the arbitration was St. Louis.  (Thompson Decl. Ex. O.)   In response, the AAA asked the parties

5   to submit locale contentions on December 10, 2007.   (Thompson Decl. Ex. P.)  On December 20,

6   the AAA rejected Maritz's locale challenge and asserted that the arbitration would move forward

7   in San Francisco.  (Thompson Decl. Ex. Q.)

8       Immediately after learning that it had lost its locale challenge, Maritz filed this motion to

9   stay arbitration and the accompanying counterclaims against Visa.

10  **II.    ARGUMENT**

11      **A.    Although Maritz's Motion for A Stay is Really A Request for a Temporary**
         **Restraining Order, Maritz Fails Completely To Make A Showing That Would**
12       **Support Such Relief.**

13      As discussed below Maritz's motion contains a number of separate legal and factual

14  flaws, each of which is fatal to its motion.  Maritz's motion also suffers, however, from a fatal

15  and fundamental procedural flaw:  Maritz failed to support its extraordinary request that the Court

16  halt the pending arbitration with any evidence allowing such an injunction to issue.

17      Nowhere in its motion does Maritz cite any rule or statute that supports its request for a

18  stay of the pending arbitration.  This is because there is no such rule or statute.  The Federal

19  Arbitration Act does not contain a provision authorizing a court to stay an arbitration. *See Volt*

20  *Info. Sci., Inc. v. Bd. Of Tr.,* 489 U.S. 468, 476 (1989); *Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F.3d

21  1205, 1209-10 (9th Cir. 1998) ("Unlike the FAA, California's arbitration rules grant courts the

22  discretion to stay arbitration proceedings pending resolution of related litigation.").[1]

23

24  _____
    [1]  Any claim by Maritz that its motion should be granted based upon section 1281.2 of
25  California's Code of Civil Procedure must be rejected.  Even assuming that section 1281.2 were
    applicable to this Agreement, under that statute Maritz would have had the burden to prove by a
26  preponderance of the evidence that a stay was necessary under the statute. *See Engalla v.*
    *Permanente Medical Group, Inc.,* 15 Cal. 4th 951, 972 (1997) (party opposing arbitration under
27  1281.2 bears burden of proving by preponderance of evidence any fact necessary to its defense;
    court sits as a trier of fact, weighing declarations and other documentary evidence, as well as oral
28  testimony received at the court's discretion, to reach a final determination).  Maritz presented no
    such evidence that could meet this evidentiary burden.

VISA'S OPPOSITION TO MARITZ'S MOTION          4          21823\1419467.3
TO STAY ARBITRATION CV-07-5585 JSW

1    The correct procedural mechanism to attempt to stop a pending arbitration is to seek

2   injunctive relief enjoining the arbitration proceeding.  Martin Domke , DOMKE ON

3   COMMERCIAL ARBITRATION § 22.5 (3rd ed. 2007) (party seeking to stop arbitration should

4   file to enjoin the proceedings).  An order staying a pending arbitration must be made as a request

5   for injunctive relief because, unlike a request to stay the court's own proceedings, a request to

6   stay arbitration is "not a mere step in the controlling of litigation before the court."  *Camping*

7   *Const, Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1343 (9th Cir. 1990) (citations

8   omitted).  Instead, a stay of arbitration asks the Court to interfere affirmatively with proceedings

9   in another forum; "to exercise its equity powers to halt action of its litigants outside of its own

10  court proceedings."  *A. & E. Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710, 713 (9th Cir. 1968).

11  As the Ninth Circuit has stated, "an order staying arbitration is a 'classic form of injunction.'"

12  *Camping Const. Co.*, 915 F.2d at 1343 (citations omitted).

13    Maritz, however, has made no attempt to establish the requisite elements for a temporary

14  restraining order.  To obtain such relief, Maritz would be required to establish through an

15  evidentiary showing "(1) a combination of probable success on the merits and the possibility of

16  irreparable harm, or (2) the existence of serious questions going to the merits, the balance of

17  hardships tipping sharply in its favor, and at least a fair chance of success on the merits."  *Owner-*

18  *Operator Indep. Drivers Ass'n v. Swift Transp. Co.,* 367 F.3d 1108, 1111 (9th Cir. 2004).

19    Such a showing must be supported by evidence. See *Six Clinics Holding Corp., II v.*

20  *Cafcomp Sys.,* 119 F.3d 393, 400 (6th Cir. 1997) (court's findings must be based on conclusions

21  derived from evidence presented in favor of the TRO); *see also* Fed. R. Civ. Proc. 65 (b) (1)

22  (TRO may issue only if "specific facts in an affidavit or verified complaint" justify issuance).

23  Here, Maritz has failed to offer any evidence whatsoever supporting its claim of fraud in the

24  inducement – it cites only the unverified allegations of its Counterclaim to support that charge.

25  Moreover, Maritz makes no showing, or any argument, that it would somehow be irreparably

26  harmed if a TRO halting the arbitration did not issue.

27

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW          5          21823\1419467.3

1

**B.     Maritz Cites No Authority Which Requires or Mandates A Stay Pending Resolution Of The Issues Now Before The Court.**

In essence, Maritz's motion asserts that once a party makes an allegation that an arbitration agreement was induced by fraud, the Court must, as a matter of law, stay the arbitration proceeding. (See Maritz's Motion to Stay ("Maritz Motion"), 9:27-28.) This argument finds no legal support. In fact, *none* of the authorities Maritz cites stand for this proposition.

In support of its argument that the question is one of law, Maritz quotes *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 583 fn. 7 (1960) as follows: "[t]he question of arbitrability is for the courts to decide." (Maritz's Motion, 10:1-2) The full sentence however states, "[i]t is clear that **under both the agreements in this case** and that involved in *American Manufacturing Co.*, ante 564, the question of arbitrability is for the courts to decide" (emphasis added). Here the Letter Agreement specifically reserved the question of arbitrability for the arbitrator. Furthermore, *United Steelworkers* does not state that a stay of arbitration is required as a matter of law. In fact, the case does not deal with a stay at all, but instead focuses on whether a contracting-out provision in a contract was excepted from the grievance procedure in the agreement.

Similarly, Maritz selectively quotes from *Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.* as follows: "[t]he arbitrator should not determine his or her own jurisdiction." 835 F.2d 1275, 1278 (9th Cir. 1987). However the full sentence reads "[t]he arbitrator should not determine his or her own jurisdiction, . . . **unless** the collective bargaining agreement expressly provides that issues of arbitrability are to be decided by arbitration" *Pipe Trades Council of Northern Cal., U.A. Local 159 ,* 835 F.2d at 1278 (emphasis added). As Maritz undoubtedly knew when it omitted the second half of the sentence, the omitted language make the case inapplicable here because as Maritz also knew when it filed its brief, the Letter Agreement expressly provides that the "issues" of arbitrability are to be decided by arbitration.[2]

---

[2]  Maritz similarly miscites *Litton Financial Printing Div. v. N.L.R.B.*, 501 U.S. 190, 208-09 (1991). In *Litton* the Court held only that the question of whether a collective bargaining

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

6

21823\1419467.3

1    Simply put, Maritz cites no authority supporting its claim that a stay is required as a

2    matter of law (or, for that matter, that the Court has the discretion to stay arbitration pending

3    resolution of threshold issues of arbitrability).[3]  This is because there is no such authority.

4    Indeed, if the law were otherwise, a party could delay and frustrate the purpose of arbitration by

5    merely alleging that an arbitration agreement was induced by fraud (which is precisely what

6    Maritz is attempting to do).  *See Alascom*, 727 F.2d at 1422 (order halting arbitration deprives

7    party of inexpensive and expeditious means by which parties agreed to resolve their disputes,

8    such deprivation is serious and perhaps irreparable injury and subject to immediate appeal); *see*

9    *also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983)

10   ("Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute

11   out of court and into arbitration as quickly and easily as possible.")

12

13   agreement requires the parties to arbitrate a particular grievance is an issue to be decided by a
     court, not the arbitrator, ***unless*** the parties clearly and unmistakably provide otherwise.  Again,

14   the Letter Agreement clearly and unmistakably reserves for the arbitrator questions regarding the
     validity of that agreement.  Moreover, unlike *Litton*, Maritz cannot contend that any of the claims

15   at issue fall outside the scope of the Letter Agreement.

     [3]  Somewhat confusingly, Maritz also argues that "Once arbitration proceedings have

16   commenced, the Court has the *discretion* to stay those proceedings pending its resolution of
     questions of arbitrability."  (Maritz's Motion, 9:17-26; emphasis added.)  Again, however,

17   Maritz's own authorities do not support the assertion.

18   Maritz represents that in *Applera Corp. v. Illumina, Inc.,* 282 F. Supp. 2d 1120, 1123
     (N.D. Cal. 2003) the "district court stayed arbitration proceedings pending resolution of

19   arbitrability."  (Maritz Motion, 9:19-20.)  In fact, *Appelera* had nothing to do with a stay of a
     pending arbitration.  In *Applera* the court considered whether federal patent claims should be

20   stayed or dismissed because a state action involving the same accused products was already
     pending.  The *Applera* Court at no point considered whether it had discretion to stay an

21   **arbitration** pending resolution of arbitrability issues.

22   Maritz also incorrectly cites *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1420
     (9th Cir. 1984) when it represents that the "court exercised discretion to stay arbitration

23   proceeding pending determination of whether claims were arbitrable."  (Maritz's Mot., 9:21-22.)
     In *Alascom* the district court found that the claims were not arbitrable and, following that finding,

24   stayed the arbitration.  Thus, *Alascom* does not support Maritz's contention that a court has
     discretion to stay arbitration proceedings *pending* resolution of questions of arbitrability.

25   Maritz's reliance on *Sheet Metal Workers' Intern. Ass'n, Local No. 252 v. Standard Sheet*

26   *Metal Inc.,* 699 F.2d 481, 483 (9th Cir. 1983), is similarly misplaced.  In that case Standard Sheet
     Metal appealed the confirmation of an arbitration award in favor of a Union.  Standard argued

27   *inter alia* that the arbitration award should not be confirmed because Standard had filed a
     complaint with the National Labor Relations Board for unfair practices and a confirmation of the

28   award could lead to conflicting rulings.  The *Sheet Metal Worker* court ***rejected*** the argument,
     noting that the NLRB and the court had concurrent jurisdiction and that the pending NLRB
     charge did not mandate a stay of the litigation.

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

7

21823\1419467.3

C.    **The Threshold Issue Of Fraud Should Be Decided By The Arbitrator.**

Even if Maritz had supported its motion with evidence (which it did not) and even if Maritz's motion had some legal basis (which it does not), its motion would nevertheless fail. The "threshold" issue which Maritz contends the Court must decide is whether Visa and its outside counsel fraudulently induced Maritz to enter the Letter Agreement. For two separate reasons, however, this "threshold issue" must be determined by the arbitrator.

Resolution of a claim that a contract containing an arbitration agreement is unenforceable involves a two part analysis. First, the Court must determine whether the alleged fraud induced the party into the entire agreement or whether the alleged fraud was directed only at the arbitration clause in the agreement. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the 'making' of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). Second, the Court must determine whether the parties' agreement reserved for the arbitrator all questions regarding the validity of that agreement. *Contec Corp. v. Remote Solution, Co., Ltd*., 398 F.3d 205, 207 (2d Cir. 2005). Maritz must clear both of these hurdles to avoid having the arbitrator determine the "threshold" issue. Here, it can satisfy neither.

1.    **Maritz's Claim Is That It Was Fraudulently Induced Into the Entire Letter Agreement. That Claim, Therefore, Must Go to the Arbitrator.**

Here Maritz's request for a stay must fail because Maritz is challenging the Letter Agreement as a whole. Thus, the "threshold" issue of fraud must be determined by the arbitrator in the first instance. *See Buckeye Check Cashing*, 546 U.S. *at* 449 (reaffirming that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator").

This fact is clearly borne out by the contemporaneous correspondence leading up to these motions. On July 23, Maritz's Associate General Counsel e-mailed Visa's outside counsel and

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

8

21823\1419467.3

1    asked that the parties include in their confidentiality agreement that the "previous [Letter]

2    [A]greement is null an [sic] void. . . ."  (Thompson Decl., Ex. H.)  On August 8, Maritz's

3    Associate General Counsel again stated "I will remind you that Maritz originally agreed to

4    arbitrate without **ANY** understanding of the magnitude of Visa's purported claims and as I have

5    said to you repeatedly there was no meeting of the minds between Maritz and Visa with respect to

6    the circumstances surrounding Maritz' agreement to mediate."  (Thompson Decl., Ex. I.)  It is

7    clear from these writings that Maritz believed as late as August 8 that the entire Letter Agreement

8    was "null an[d] void" and that it was under no obligation to abide by any of the procedures set

9    forth therein whether directed at mediation or arbitration.  The fact that Maritz ultimately

10   participated in business negotiations and mediation, does not change the fact that in the months

11   immediately following it execution, Maritz claimed the entire Letter Agreement was void.  In

12   fact, Maritz reiterated this position in an email exchange dated August 22.  In this email  Maritz's

13   Associate General counsel outlined logistics for a negotiation and mediation, however he

14   concluded his letter by stating " . . . I suppose it goes without saying, we do disagree with your

15   view of the binding effect of the [L]etter [Agreement] you attached."  (Thompson Decl., Ex. J.)

16          Maritz continued to challenge the validity of the entire Letter Agreement until it received

17   a copy of Visa's November 20 letter to the AAA explaining that because Maritz was challenging

18   the Letter Agreement as a whole, the issue of arbitrability was reserved for the arbitrator under

19   *Buckeye Check Cashing*.  (Thompson Decl., Ex. L.)  Only *after* realizing that *Buckeye Check*

20   *Cashing* required that an arbitrator resolve its jurisdictional challenge did Maritz reverse its

21   position stating "[h]ere, it is Maritz's position that the arbitration provision in the letter agreement

22   itself was induced by [Visa's outside counsel] and Visa's fraudulent conduct and thus . . . it is up

23   to the federal court to adjudicate the issue.  (Thompson Decl., Ex. M)

24          Maritz's later formed argument cannot carry the day.   If Maritz is able to avoid or delay

25   arbitration by crafting its complaint in a manner that ignores the factual history of the case, it

26   would effectively eviscerate the FAA and unfairly circumvent the strong federal policy favoring

27   arbitration.  *See Jones v. Merrill Lynch*, 604 So.2d 332, 337-38 (Ala. 1991) (counsel's sharpening

28   of the issue relating to the arbitration clause progressively over time readily apparent; court

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW                    9                    21823\1419467.3

1   rejected later-developed argument as impermissible end run around the FAA).   Maritz's own

2   words and writings demonstrate that Maritz initially challenged the Letter Agreement as a whole

3   and only after Visa called *Buckeye Check Cashing* to its attention did Maritz change course to

4   assert that it was fraudulently induced into the arbitration provision.  Since Maritz has challenged

5   the entire Letter Agreement, the issue of fraudulent inducement is properly reserved to the

6   arbitrator, and therefore no stay is justified or required.[4]

7
8
      ## 2.      The Letter Agreement "Clearly and Unmistakably" Reserved for the Arbitrator All Questions Regarding Its Validity.

9          Maritz's attempt to secure a stay is also defeated by the terms of the Letter Agreement

10  itself.  The FAA requires that the parties' agreement to arbitrate be enforced as written.  In *First*

11  *Options of Chicago, Inc. v. Kaplan*, the United States Supreme Court held that "the question 'who

12  has the primary power to decide arbitrability' turns upon what the parties agreed about *that*

13  matter."  514 U.S. 938, 943 (1995).  Thus, where "there is clear and unmistakable evidence" that

14  the parties agreed to arbitrate arbitrability, the court will compel the parties to honor that

15  agreement.  *See Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1191 (9th Cir. 2004),

16  (citing *First Options,* 514 U.S. at 938); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir.

17  2002) (also citing *First Options,* 514 U.S. at 938).  Furthermore incorporation of arbitration rules

18  constitutes clear and unmistakable evidence that the parties intended to submit arbitrability issues

19  to the arbitrator.  *See Avue Tech. Corp. v. DCI Group, L.L.C.*, 2006 WL 1147662 at *6 (D.D.C.

20  Apr. 28, 2006) (emphasis added); *see also Way Services, Inc. v. Adecco North America LLC*,

21
22   ------
[4]  Visa notes that in *Santana Row Hotel Partners, v. Zurich Am. Ins. Co.*, the court held that a
23   party's fraudulent inducement defense to a stand-alone arbitration agreement was an issue for the
     court to decide.  2007 WL 914464 at *2 (N.D. Cal. Mar. 20, 2007).  However *Santana Row* is
24   distinguishable for at least two reasons.  First the *Santana Row* agreement was a stand alone
     arbitration agreement which contained "no broader contractual duties other than to arbitrate
     covered disputes in the agreed-upon manner."  *Id.*  In contrast, the Letter Agreement obligates
25   Visa and Maritz to resolve all disputes outside of court through a three stage process, which
     obligated each party to fulfill each stage of the procedure in sequence.  Indeed, Maritz admits as
26   much in its Motion:  "Accordingly, on October 15, 2007, Maritz and Visa, ***pursuant to other***
     ***provisions of the July 9, 2007 letter***, participated in face to face negotiations."  (Maritz Motion,
     7:21-22; emphasis added.)   The agreement here at issue contained "broader contractual duties
27   other than to arbitrate."  Second the arbitration agreement in *Santana Row* apparently did not
     incorporate the AAA rules; as discussed below, where the parties incorporate the AAA's rules
28   into an arbitration agreement all questions regarding the validity of that agreement must be
     resolved by the arbitrator.

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW

10

21823\1419467.3

1  2007 WL 1775393 at *4 (E.D. Pa. 2007) ("Considering this relevant case law, the Court is

2  persuaded that the *prevailing* rule across jurisdictions is that incorporation by reference of rules

3  granting the arbitrator the authority to decide questions of arbitrability – especially the AAA

4  rules – is clear and unmistakable evidence that the parties agreed to submit arbitrability questions

5  to the arbitrators.  More importantly, the Court is convinced that California law has adopted this

6  rule" (emphasis added)).[5]

7          Here, the Letter Agreement unequivocally provides both that the parties' disputes shall be

8  resolved through "[b]inding arbitration pursuant to the AAA Commercial Rules" and that "[t]o

9  the extent [the parties] are unable to agree on any aspect of the procedure, such disagreement will

10 be resolved by the applicable rules and procedures of the American Arbitration Association

11 ('AAA')."  (Thompson Decl., Ex. A.)  The AAA Commercial Rules, in turn, provide:  "The

12 arbitrator shall have the power to rule on his or her own jurisdiction, including any objections

13 with respect to the existence, scope or validity of the arbitration agreement."  AAA Commercial

14 Rule R-7(a).  Thus, by incorporating AAA's Commercial Rules – including Rule R-7(a) – the

15

16

17

18 [5]  Indeed, the vast majority of the Circuits have adopted this rule.  *See e.g., Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules,

19 including Rule 8 [, now Rule 7], into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Contec Corp. v. Remote

20 Solution, Co.*, Ltd., 398 F.3d 205, 208 (2d Cir. 2005) ("when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear

21 and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999) (when party incorporates AAA

22 rules by reference, it is bound by all of the procedural rules of the AAA); *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 193-94 (4th Cir. 1991) (finding that reference to AAA rules in

23 arbitration agreement incorporates all of those rules by reference); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the

24 Rules of the ICC . . . , Apollo agreed to be bound by Articles 8.3 and 8.4.  These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here,

25 there exists a prima facie agreement to arbitrate whose continued existence and validity is being questioned."); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272-73 (7th Cir.

26 1976) (same).

27          Maritz neither identified nor distinguished any of this contrary authority in its December 20, 2007 Motion to Stay despite being on notice of the majority of these cases from Visa's initial

28 Petition to Compel, filed before Magistrate Zimmerman on November 28, 2007 as well as from Visa's letters to the AAA.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1    parties "clearly and unmistakably" agreed to reserve to the *arbitrator* the power to rule on any

2    objection Maritz may have as to the validity or enforceability of the Letter Agreement.[6]

3        **D.**      **Even If The Court Decides That It Must Rule on The Validity of The Letter Agreement, Maritz' Request For A Stay Fails Because It Can Not Prove That It Was Fraudulently Induced Into The Agreement.**

4

5          Even assuming Maritz could somehow overcome the procedural, legal and factual hurdles

6    described above, Maritz's motion would still fail. As a matter of both fact and law, Maritz cannot

7    demonstrate by a preponderance of the evidence that Visa fraudulently induced it to arbitrate.

8          To state a claim for fraud based on nondisclosure Maritz must demonstrate amongst other

9    things, that Visa (1) had a duty to disclose (2) a material fact; and (3) that Maritz justifiably relied

10    on the concealed fact in entering the Letter Agreement. *See People v. Highland Fed. Sav. &*

11    *Loan*, 14 Cal. App. 4th 1692, 1718-1719 (Cal. App. 2 Dist., 1993); *Vincent Consolidated*

12    *Commodities, Inc., v. American Trading and Transfer*, 2007 U.S. Dist. LEXIS 53680 at *9 (S.D.

13    Cal. 2007) (citing *South Tahoe Gas Co. v. Hofmann Land Improvement Co.,* 25 Cal. App. 3d 750,

14    765 (1972)). Maritz does not -- and cannot -- establish any of these requisite elements.

15        **1.**      **Visa Had No Duty To Disclose The Amount Of Its Damages During The Negotiations Of The Letter Agreement.**

16

17          When a claim of fraud is based on concealment–as it is here– the party alleging fraud

18    must show that the person so charged was bound to disclose the "concealed" fact. *People v.*

19    *Highland Fed. Sav. & Loan*, 14 Cal. App. at 1718-19 (concealment not actionable absent duty to

20    disclose). A duty to disclose arises where the party charged with fraud has volunteered

21    information on a subject but withholds information that would materially qualify the information

22    disclosed. *Brownlee v. Vang*, 235 Cal. App. 2d 465, 477 (1965).

23          Here, Maritz cannot show that Visa had any duty to disclose the size of its damages claim.

24    Before the Letter Agreement was executed Visa did disclose – repeatedly – that it was reserving

25    its rights regarding damages it had incurred as a result of Maritz's breaches. (Exs. C, E, and F to

---

26    [6]  Based on the same facts, this Court (Hamilton, J.) found in *Poponin v. Virtual Pro, Inc.,*:
"[T]his court has no subject matter jurisdiction to determine arbitrability. By agreeing to

27    arbitration under the ICC Rules, Dr. Poponin and Virtual Pro clearly and unmistakably agreed that questions of arbitrability would be submitted to arbitration." 2006 WL 2691418 at *9. The

28    same result is required here: because Maritz undeniably agreed to arbitration under the AAA's rules, questions of arbitrability must be submitted to the AAA.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW      12      21823\1419467.3

1  Thompson Decl.)  Indeed, Maritz admits that it knew Visa was asserting it had been damaged by

2  Maritz's conduct.[7]  At no point prior to signing the Letter Agreement did Maritz ask Visa for an

3  estimate of its damages, nor are there any allegations that Visa made any statements about the

4  amount of its damages.  In fact, Visa continually and consistently reiterated that it had claims for

5  damages and that it would share further information regarding the nature and amount of those

6  claims once the parties transitioned the platform to another vendor and the parties agreed to a

7  dispute resolution framework.[8]

8        Furthermore, the Letter Agreement was an arms length transaction between sophisticated

9  parties.  It is well settled that "[a] party making a contract is not expected to tell all that he knows

10 to the other party, even if he knows that the other party lacks knowledge on some aspects of the

11 transaction." *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 145 (D.D.C. 2007); Restatement

12 (Second) of Contracts § 161 cmt. A; *see also* 26 Williston on Contracts § 69:16 (4th ed.) ("It is

13 settled that there is no general requirement of full disclosure of all relevant facts in every business

14

15 [7]  In its Motion, Maritz states that July 23 "was the first time Maritz had any idea that Visa would
    be seeking damages ***rather than from offsets to Maritz's damages.***"  (Maritz Motion, 6:25-26;
16 (emphasis added.))  The bolded portion of this statement is an admission that Maritz knew Visa
    was claiming that it had been damaged by Maritz's conduct.  The idea, however, that Visa's
17 damages claims were somehow limited to offsets is unexplained and unsupportable.  First, Visa's
    April 20 letter stating that Visa was reserving it rights to assert claims for damages against Maritz
18 predates Maritz's May 7 letter claiming that Maritz was owed money by Visa pursuant to the
    April 17 Agreement.  Second, Maritz's argument necessarily assumes both that it had disclosed
19 the amount of Maritz's claimed damages to Visa and, in entering the Letter Agreement, agreed to
    cap its damages claim at that amount.  Neither assumption is valid as is dramatically illustrated by
20 the fact that Maritz has now sued Visa seeking, in addition to its claims under the April 17
    Agreement, unspecified damages for Quantum Meruit, Fraud and Negligent Misrepresentation.
21 See Counts II, III and IV of Maritz's Counterclaim.  Although these claims are undeniably subject
    to the Letter Agreement, which covers ***both*** the parties "respective claims for damages resulting
22 from alleged breaches of the [April 17] Agreement ***and*** related claims," (emphasis added) prior to
    executing the Letter Agreement Maritz neither disclosed that it believed it had such claims nor
23 informed Visa as to what amount of damages it sought in connection with them.

24 [8]  In its correspondence with the AAA, Maritz cited C*icone v. URS Corp*., 183 Cal.App.3d
    194 (1986) as supporting its claim that Visa somehow erred.  In *Cicone*, however, opposing
25 counsel was alleged to have made a knowing affirmative misrepresentation to induce the other
    side to enter a contract.  The case, therefore, stands for the unremarkable proposition that
26 "Although a duty to disclose a material fact normally arises only where there exists a confidential
    relation between the parties or other special circumstances require disclosure, where one does
27 speak he must speak the whole truth to the end that he does not conceal any facts which
    materially qualify those stated."  183 Cal. App. 3d at 201.  Here, by contrast, there is no
28 allegation that Visa made any representation whatsoever regarding the scope of its damages
    claim.

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW              13                        21823\1419467.3

1   relationship and consequently agreed by the majority of jurisdictions that, at least in courts of law,

2   it is not necessarily fraudulent for one party to a bargain consciously to take advantage of the

3   ignorance or mistake of the other party by failing to disclose material facts, provided no words or

4   acts of the party who failed to disclose the fact in question contribute to the mistake . . . .").

5          Indeed, in a case factually similar to Maritz's claim, the Court rejected an unrepresented

6   plaintiff's claim that opposing counsel had a duty to explain the consequences of entering an

7   arbitration agreement.  In *Toledano*, plaintiff contended that he had been fraudulently induced

8   into an arbitration agreement because opposing counsel did not explain the costs of arbitration or

9   the complexity of arbitration proceedings.   The district court rejected this argument, despite the

10  undisputed facts that plaintiff was elderly and unrepresented at the time he signed the arbitration

11  agreement:  "absent a duty to disclose, superior knowledge alone is not sufficient to support

12  rescission of a contract based on the non-disclosure of material facts unless 'the facts are known

13  or accessible only to defendant, and defendant knows they are not known or reasonably

14  discoverable by the plaintiff.'"  *Toledano,* 501 F. Supp. 2d at 145 (quoting *Warner Constr. Corp.*

15  *v. City of Los Angeles.,* 85 Cal. Rptr. 444, 449 (1970)).

16  <center>**2.    The Amount of Visa's Damages is Not Material to the Letter**</center>

17  <center>**Agreement.**</center>

18         Maritz simply asserts, without any support or explanation, that it would not have entered

19  the Letter Agreement had it known that Visa's damages claim would be in the tens of millions of

20  dollars.  (Maritz Motion, 11:17-19.)  As discussed below, Maritz did know – or should have

21  known – that Visa's claim exceeded $10 million.  But perhaps more importantly, Maritz provides

22  no explanation as to why it was material to its decision to enter the Letter Agreement that Visa's

23  claim be some unspecified amount less than $10 million.  Indeed, the only explanation offered by

24  Maritz regarding the purported materiality of this "concealed" fact is that an arbitration would

25  occur in "a tribunal that did not include Carlson and that might not have subpoena power over

26  Inovant."  (Maritz Motion, 8:4-5.)  Yet these are complaints regarding the nature of arbitration,

27  precisely the same complaint that the *Toledano* court held could not support a claim for fraud.

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW          14          21823\1419467.3

1

### 3. Maritz Cannot Have Justifiably Relied On Visa's Purported "Concealment."

Finally, Maritz cannot show that it justifiably relied on Visa's silence regarding the size of its damages. A party's reliance is not justified if the party's own investigation reasonably could have disclosed the "omitted" fact. *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030-31 (9th Cir. 1992) (if one possesses information sufficient to call alleged representations into question, one cannot later claim to have relied on purported misrepresentations). Here, Visa undeniably and repeatedly informed Maritz that Visa was asserting damages claims against Maritz.

In fact, Maritz had intimate knowledge of the facts underlying the parties' dispute and thus the magnitude of Visa's damages were "reasonably discoverable" to Maritz. Maritz, of course, knew that it had not met the September 30 Phase I-A Launch Date. Maritz itself acknowledged in the April 17 Agreement that "successful completion of each Deliverable in accordance with the Milestone Schedule is critical to the commercial viability of the Rewards Program." Moreover, the April 17 Agreement provides for liquidated damages of ***$70,000 per day*** of delay. Visa terminated the agreement effective May 20, 2007 -- more than six months after the September 30, 2006 launch date had passed. Even a superficial calculation would have given Maritz notice that just the potential liquidated damages totaled approximately $14 million. Maritz's contention that it somehow justifiably relied on Visa's purported concealment of the scope of its damages claim is simply untenable.

## III. CONCLUSION

For the foregoing reasons, Maritz's Motion should be denied.

DATED:  January 11, 2008                           FARELLA BRAUN & MARTEL LLP

                                                   By:  /s/ Roderick M. Thompson
                                                        Roderick M. Thompson
                                                   Attorneys for Plaintiff VISA U.S.A. INC.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VISA'S OPPOSITION TO MARITZ'S MOTION
TO STAY ARBITRATION CV-07-5585 JSW                 15                           21823\1419467.3