# Exhibit M

**APPENDIX OF NON-FEDERAL AND UNPUBLISHED FEDERAL AUTHORITIES
CITED IN VISA USA INC.'S OPPOSITION TO MARITZ INC.'S
MOTION TO STAY ARBITRATION**

Commercial Arbitration Rules    Page 1 of 27

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Commercial Arbitration Rules and Mediation PROCEDURES
(Including Procedures for Large, Complex Commercial Disputes)
Amended and Effective September 1, 2007

Summary of Changes

## TABLE OF CONTENTS

IMPORTANT NOTICE
INTRODUCTION
STANDARD ARBITRATION CLAUSE
ADMINISTRATIVE FEES
MEDIATION
LARGE, COMPLEX CASES

COMMERCIAL MEDIATION PROCEDURES
M-1. Agreement of Parties

M-2. Initiation of Mediation
M-3. Representation
M-4. Appointment of the Mediator
M-5. Mediator's Impartiality and Duty to Disclose
M-6. Vacancies
M-7. Date and Responsiblities of the Mediator
M-8. Responsibilities of the Parties
M-9. Privacy
M-10. Confidentiality
M-11. No Stenographic Record
M-12. Termination of Mediation
M-13. Exclusion of Liability
M-14. Interpretation and Application of Procedures
M-15. Deposits
M-16. Expenses

M-17. Cost of Mediation

COMMERCIAL ARBITRATION RULES
R-1. Agreement of Parties
R-2. AAA and Delegation of Duties
R-3. National Roster of Arbitrators
R-4. Initiation under an Arbitration Provision in a Contract
R-5. Initiation under a Submission
R-6. Changes of Claim
R-7. Jurisdiction
R-8. Mediation
R-9. Administrative Conference
R-10. Fixing of Locale

R-11. Appointment from National Roster
R-12. Direct Appointment by a Party
R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
R-14. Nationality of Arbitrator
R-15. Number of Arbitrators
R-16. Disclosure
R-17. Disqualification of Arbitrator
R-18. Communication with Arbitrator
R-19. Vacancies
R-20. Preliminary Hearing
R-21. Exchange of Information
R-22. Date, Time, and Place of Hearing
R-23. Attendance at Hearings
R-24. Representation
R-25. Oaths
R-26. Stenographic Record
R-27. Interpreters
R-28. Postponements
R-29. Arbitration in the Absence of a Party or Representative
R-30. Conduct of Proceedings
R-31. Evidence
R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence
R-33. Inspection or Investigation
R-34. Interim Measures
R-35. Closing of Hearing
R-36. Reopening of Hearing
R-37. Waiver of Rules
R-38. Extensions of Time
R-39. Serving of Notice
R-40. Majority Decision
R-41. Time of Award
R-42. Form of Award
R-43. Scope of Award
R-44. Award upon Settlement
R-45. Delivery of Award to Parties
R-46. Modification of Award
R-47. Release of Documents for Judicial Proceedings
R-48. Applications to Court and Exclusion of Liability
R-49. Administrative Fees
R-50. Expenses
R-51. Neutral Arbitrator's Compensation
R-52. Deposits
R-53. Interpretation and Application of Rules
R-54. Suspension for Nonpayment

EXPEDITED PROCEDURES
E-1. Limitation on Extensions
E-2. Changes of Claim or Counterclaim
E-3. Serving of Notices
E-4. Appointment and Qualifications of Arbitrator
E-5. Exchange of Exhibits
E-6. Proceedings on Documents
E-7. Date, Time, and Place of Hearing

E-8. The Hearing
E-9. Time of Award
E-10. Arbitrator's Compensation

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES
L-1. Administrative Conference

L-2. Arbitrators

L-3. Preliminary Hearing

L-4. Management of Proceedings

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

ADMINISTRATIVE FEES
Fees
Refund Schedule
Hearing Room Rental

IMPORTANT NOTICE

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA. To ensure that you have the most current information, see our Web Site at www.adr.org.

INTRODUCTION

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on all forms of out-of-court dispute settlement.

Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their

contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following controversy: (describe briefly) We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

In transactions likely to require emergency interim relief, the parties may wish to add to their clause the following language:

*The parties also agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to the proceedings.*

These Optional Rules may be found below.

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees.

The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

Mediation

The parties might wish to submit their dispute to mediation prior to arbitration. In mediation, the neutral mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

*If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

*The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs.

The key features of these procedures include:

§ a highly qualified, trained Roster of Neutrals;

§ a mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

§ broad arbitrator authority to order and control discovery, including depositions;

§ presumption that hearings will proceed on a consecutive or block basis.

COMMERCIAL MEDIATION PROCEDURES

M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via WebFile at www.adr.org.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

    i.   A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.
   ii.   The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.
  iii.   A brief statement of the nature of the dispute and the relief requested.
  iv.   Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

## M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-4. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at www.aaamediation.com in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

    i.   Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

    ii.   If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

    iii.   If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the Model Standards of Conduct for Mediators in effect at the time a mediator is appointed to a case. Where there is a conflict between the Model Standards and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

## M-7. Duties and Responsibilities of the Mediator

i. The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.
ii. The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.
iii. The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.
iv. The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.
v. In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.
vi. The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

i. Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;
ii. Admissions made by a party or other participant in the course of the mediation proceedings;
iii. Proposals made or views expressed by the mediator; or
iv. The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-12. Termination of Mediation

The mediation shall be terminated:

i. By the execution of a settlement agreement by the parties; or

ii.  By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

iii.  By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

iv.  When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

## M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-17. Cost of the Mediation

There is no filing fee to initiate a mediation or a fee to request the AAA to invite parties to mediate.

The cost of mediation is based on the hourly mediation rate published on the mediator's AAA profile. This rate covers both mediator compensation and an allocated portion for the AAA's services. There is a four-hour minimum charge for a mediation conference. Expenses referenced in Section M-16 may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the agreement to mediate is filed but prior to the mediation conference the cost is $250 plus any mediator time and charges incurred.

The parties will be billed equally for all costs unless they agree otherwise.

If you have questions about mediation costs or services visit our website at www.adr.org or contact your local AAA office.

Conference Room Rental

The costs described above do not include the use of AAA conference rooms. Conference rooms are available on a rental basis. Please contact your local AAA office for availability and rates.

## COMMERCIAL ARBITRATION RULES

R-1. Agreement of Parties*+

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

(b) Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

(c) Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000, exclusive of claimed interest, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-4 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

(d) All other cases shall be administered in accordance with Sections R-1 through R-54 of these rules.

* The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are nonnegotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

+ A dispute arising out of an employer promulgated plan will be administered under the AAA's National Rules for the Resolution of Employment Disputes.

R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Commercial Arbitrators ("National Roster")

and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

R-4. Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

(i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

(ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.

(iii) The AAA shall confirm notice of such filing to the parties.

(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the party making the counterclaim shall forward to the AAA with the answering statement the appropriate fee provided in the schedule included with these rules.

(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(d) When filing any statement pursuant to this section, the parties are encouraged to provide descriptions of their claims in sufficient detail to make the circumstances of the dispute clear to the arbitrator.

R-5. Initiation under a Submission

Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the nature of the dispute, the names and addresses of all parties, any claims and counterclaims, the amount involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate filing fee as provided in the schedule included with these rules. Unless the parties state otherwise in the submission, all claims and counterclaims will be deemed to be denied by the other party.

R-6. Changes of Claim

After filing of a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

R-8. Mediation

At any stage of the proceedings, the parties may agree to conduct a mediation conference under the Commercial Mediation Procedures in order to facilitate settlement. The mediator shall not be an arbitrator appointed to the case. Where the parties to a pending arbitration agree to mediate under the AAA's rules, no additional administrative fee is required to initiate the mediation.

R-9. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matters.

R-10. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request has been sent to it by the AAA, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding.

R-11. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

(a) Immediately after the filing of the submission or the answering statement or the expiration of the time within which the answering statement is to be filed, the AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from

the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

(c) Unless the parties agree otherwise when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

R-12. Direct Appointment by a Party

(a) If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

(b) Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-17 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-17(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

(c) If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

(d) If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

(a) If, pursuant to Section R-12, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

(b) If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

(c) If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-11, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

R-14. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

R-15. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be

appointed. A party may request three arbitrators in the demand or answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

R-16. Disclosure

(a) Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

(b) Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

(c) In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-16 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

R-17. Disqualification of Arbitrator

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for

(i) partiality or lack of independence,

(ii) inability or refusal to perform his or her duties with diligence and in good faith, and

(iii) any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-12 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

R-18. Communication with Arbitrator

(a) No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-12 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

(b) Section R-18(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-17(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-17(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-18(a) should nonetheless apply prospectively.

R-19. Vacancies

(a) If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

(b) In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

R-20. Preliminary Hearing

(a) At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted by telephone at the arbitrator's discretion.

(b) During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

R-21. Exchange of Information

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

i) the production of documents and other information, and

ii) the identification of any witnesses to be called.

(b) At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

R-22. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

R-23. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than a party and its representatives.

R-24. Representation

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

R-25. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

R-26. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

R-27. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

R-28. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

R-29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

R-30. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

R-31. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

R-33. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

R-34. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

** The Optional Rules may be found below.

R-35. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or

witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall b e declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

R-36. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

R-37. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

R-38. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

R-39. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

R-40. Majority Decision

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

R-41. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

R-42. Form of Award

(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

R-44. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

R-45. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-46. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the

award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

R-47. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

R-48. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

R-49. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

R-50. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

R-51. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

R-52. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

R-54. Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

EXPEDITED PROCEDURES

E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the demand for arbitration or counterclaim as provided in Section R-4.

E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

E-3. Serving of Notices

In addition to notice provided by Section R-39(b), the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

E-4. Appointment and Qualifications of Arbitrator

(a) The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

(b) The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

(c) The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-17. The parties shall notify the AAA within seven days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

E-6. Proceedings on Documents

Where no party's claim exceeds $10,000, exclusive of interest and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. The arbitrator shall establish a fair and equitable procedure for the submission of documents.

E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

E-8. The Hearing

(a) Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

(b) Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-26.

E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 days from the date of the closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES

L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated

herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

(a) to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

(b) to discuss the views of the parties about the technical and other qualifications of the arbitrators;

(c) to obtain conflicts statements from the parties; and

(d) to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

L-2. Arbitrators

(a) Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

(b) The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the Regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

L-3. Preliminary Hearing

As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the preliminary hearing will be conducted by telephone conference call rather than in person. At the preliminary hearing the matters to be considered shall include, without limitation:

(a) service of a detailed statement of claims, damages and defenses, a statement of the issues asserted by each party and positions with respect thereto, and any legal authorities the parties may wish to bring to the attention of the arbitrator(s);

(b) stipulations to uncontested facts;

(c) the extent to which discovery shall be conducted;

(d) exchange and premarking of those documents which each party believes may be offered at the hearing;

(e) the identification and availability of witnesses, including experts, and such matters with respect to witnesses including their biographies and expected testimony as may be appropriate;

(f) whether, and the extent to which, any sworn statements and/or depositions may be introduced;

(g) the extent to which hearings will proceed on consecutive days;

(h) whether a stenographic or other official record of the proceedings shall be maintained;

(i) the possibility of utilizing mediation or other non-adjudicative methods of dispute resolution; and

(j) the procedure for the issuance of subpoenas.

By agreement of the parties and/or order of the arbitrator(s), the pre-hearing activities and the hearing procedures that will govern the arbitration will be memorialized in a Scheduling and Procedure Order.

L-4. Management of Proceedings

(a) Arbitrator(s) shall take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.

(b) Parties shall cooperate in the exchange of documents, exhibits and information within such party's control if the arbitrator(s) consider such production to be consistent with the goal of achieving a just, speedy and cost-effective resolution of a Large, Complex Commercial Case.

(c) The parties may conduct such discovery as may be agreed to by all the parties provided, however, that the arbitrator(s) may place such limitations on the conduct of such discovery as the arbitrator(s) shall deem appropriate. If the parties cannot agree on production of documents and other information, the arbitrator(s), consistent with the expedited nature of arbitration, may establish the extent of the discovery.

(d) At the discretion of the arbitrator(s), upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator(s) may order depositions of, or the propounding of interrogatories to, such persons who may possess information determined by the arbitrator(s) to be necessary to determination of the matter.

(e) The parties shall exchange copies of all exhibits they intend to submit at the hearing 10 business days prior to the hearing unless the arbitrator(s) determine otherwise.

(f) The exchange of information pursuant to this rule, as agreed by the parties and/or directed by the arbitrator(s), shall be included within the Scheduling and Procedure Order.

(g) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

(h) Generally hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the panel to determine finally the apportionment of such costs.

ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator

compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* when filing a consumer-related claim.

The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of | $6,000 |

| | claim above $ 10 million. | |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

- 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.
- 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.
- 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA235

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE

- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# Exhibit N

**APPENDIX OF NON-FEDERAL AND UNPUBLISHED FEDERAL AUTHORITIES
CITED IN VISA USA INC.'S OPPOSITION TO MARITZ INC.'S
MOTION TO STAY ARBITRATION**

# DOMKE ON COMMERCIAL ARBITRATION

(The Law and Practice of Commercial Arbitration)

By **MARTIN DOMKE**
Revised Edition by **Gabriel Wilner**

## THIRD EDITION

By **LARRY E. EDMONSON**

**Volume 1**

Issued April 2007

LIBRARY

MAY 11 2007

FARELLA, BRAUN + MARTEL

**THOMSON**
**WEST**

*For Customer Assistance Call 1-800-328-4880*

Mat #40482963

have sought an order compelling arbitration. That court, and also the Court of Appeals for the Tenth Circuit, found such an order "permissive" and in this case unnecessary. If the rules to which the arbitration clause refers provide for ex parte arbitration, there is no need for such a remedy and an ex parte award under those circumstances will be enforced.

If the parties do not provide for ex parte arbitration and do not refer in their contract to rules of an arbitration agency which provide for ex parte proceedings, the question again is whether ex parte arbitration can be effective without a court order compelling arbitration. By way of dictum, *Standard Magnesium* suggests that a court order would then be necessary, presumably under the FAA. However, the pertinent arbitration statute may allow expressly for ex parte proceedings. This is the case under Section 5(a)(3) of the Uniform Arbitration Act and of N.Y. Civ. Prac. L. & R. § 7506(c).

From a practical viewpoint it may sometimes be advisable not to proceed ex parte, even if permitted by the rules of the agency administering arbitration, but to seek, in a summary proceeding, a court order directing the other party to proceed to arbitration. This will be of special importance if the later award, rendered in the absence of the party, has to be enforced abroad against the foreign party. The court order establishes prima facie proof that the existence of a valid agreement has been recognized by the court of the state where the arbitration was to be held, and that under its law the arbitration had to be held under the terms of the agreement. Such recognition by the domestic court will, experience has shown, demonstrate to the foreign judge that the party has complied with the law of the state where the arbitration was held. It will thus guarantee a somewhat easier path to the question of enforcement of the ensuing award.[4]

## § 22:5    Stay of proceedings

Among the options available to parties once a dispute arises are: if a dispute is governed by an arbitration agreement, to seek an injunction staying arbitration, and if a suit has been filed, to stay court proceedings and compel arbitration. Alternately, the parties have the option of asking for declaratory relief to determine the rights of the parties under the arbitration agreement, such as whether the disputed issues are arbitrable, or the extent of the arbitrators powers under the arbitration agreement. Strategically, declaratory relief should be sought while staying court action, and

---

[4]In the French case of *Gerstle v. Societe Merry Hall, Juris Classeur Periodique 13338 (1963)*, the Paris Court of Appeals expressly referred to the affidavit of an expert as proof of the validity of the award under New York law.

afterwards if the court determines that the dispute is governed by an arbitration agreement, to seek an order compelling arbitration. If declaratory relief is sought while the identical issues are before the arbitrators, the court can either dismiss the action or enforce the arbitration agreement.[1]

## § 22:6 —Stay of court action

If a party to a contract containing an arbitration clause brings court action on a subject within the scope of the arbitration provision, the other party may move to stay the action and request that arbitration proceedings be instituted.[1] Such an action may be brought by a nonsignatory if the action is based upon the same operative facts and is inherently inseparable from the claims against a signatory.[2] When the case involves both arbitrable and

---

[Section 22:5]

[1]Necchi Sewing Mach Sales Corp v. Necchi SP a, 383 U.S. 909, 86 S. Ct. 892, 15 L. Ed.2d 664 (1966); Aeronaves De Mexico, S.A. v. Triangle Aviation Services, Inc., 515 F.2d 504 (2d Cir. 1975).

On a request for injunctive relief seeking to block a vessel builder from selling the vessel to a third party rather than to a prospective buyer, the trial court could not go beyond the requested injunctive relief and direct the buyer to provide reasonable proof that it would pay the builder, and could not direct the builder to deliver the vessel to the buyer for payment in full since those orders addressed merits underlying the contractual disputes; therefore, the trial court must stay the proceedings in the case and refer the matter to arbitration. J & J Marine, Inc. v. Bay & Ocean Equipment Co., Inc., 758 So. 2d 549 (Ala. 2000).

[Section 22:6]

[1]Under the FAA, unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue, then a stay pending arbitration should be granted. IP Timberlands Operating Co., Ltd. v. Denmiss Corp., 726 So. 2d 96 (Miss. 1998); N.V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp., 532 F.2d 874, 190 U.S.P.Q. (BNA) 385 (2d Cir. 1976); China Union Lines Ltd. v. American Marine Underwriters, Inc., 458 F. Supp. 132, 1978 A.M.C. 2595 (S.D. N.Y. 1978).

With respect to antitrust issues see § 23:17–23:19.

An age discrimination action had to be stayed to permit the Railway Labor Board to determine whether the collective bargaining agreement expressly or implicitly disqualified all flight captains, regardless of age, from being ineligible to become flight officers. Tice v. American Airlines, Inc., 288 F.3d 313, 88 Fair Empl. Prac. Cas. (BNA) 993, 169 L.R.R.M. (BNA) 3148, 82 Empl. Prac. Dec. (CCH) ¶ 41013 (7th Cir. 2002).

Green Tree Financial Corp. of Alabama v. Vintson, 753 So. 2d 497 (Ala. 1999).

Proceedings against the parties and nonparties to an arbitration agreement are stayed pending the outcome of arbitration, when the action against the nonparty is dependant upon the interpretation of the underlying contract. Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524 (5th Cir. 2000), reh'g en banc denied, 218 F.3d 745 (5th Cir. 2000).

[2]Hill v. G E Power Systems, Inc., 282 F.3d 343 (5th Cir. 2002).

# Exhibit O

**APPENDIX OF NON-FEDERAL AND UNPUBLISHED FEDERAL AUTHORITIES
CITED IN VISA USA INC.'S OPPOSITION TO MARITZ INC.'S
MOTION TO STAY ARBITRATION**

21823\1392810.1

Westlaw.

Williston on Contracts
Database updated November 2007

Richard A. Lord

Chapter 69. Fraud and Misrepresentation
III. Silence or Concealment As Fraud

References

§ 69:16.In general

**West's Key Number Digest**

West's Key Number Digest, Fraud🔑15 to 17

**Legal Encyclopedias**

Am. Jur. 2d, Fraud and Deceit §§ 203, 204

Am. Jur. 2d, Products Liability § 892

C.J.S., Fraud §§ 18 to 21

**Treatises and Practice Aids**

Williston on Contracts 4th—Forms § 69F:5

It was long ago said, "there is no legal obligation on the vendor to inform the purchaser that he is under a mistake, not induced by the act of the vendor."[FN37] This hoary statement of the law is still the general rule. It is settled that there is no general requirement of full disclosure of all relevant facts in every business relationship,[FN38] and consequently agreed by the majority of jurisdictions that, at least in courts of law, it is not necessarily fraudulent for one party to a bargain consciously to take advantage of the ignorance or mistake of the other party by failing to disclose material facts,[FN39] provided no words or acts of the party who failed to disclose the fact in question contribute to the mistake, and there is no duty existing between the parties that compels disclosure of the facts,[FN40] although it would seem that a gesture or even an expression of the face might be enough in such a case to constitute actionable deceit.[FN41]

It is necessary, especially where a written contract is in question of which equity might take jurisdiction, to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

WILLSTN-CN § 69:16                                                                Page 2
26 Williston on Contracts § 69:16 (4th ed.)

consider in connection with such cases not only whether the party who keeps silent has in effect made a fraudulent representation that will afford ground for an action of deceit as well as a right of rescission, but whether even if this is not true there is such a mistake as to justify rescission. Unilateral mistake, even apart from knowledge of the other party to the transaction of the mistake, has been held in some cases to justify relief;[FN42] and it has been held with undeniable justice that mistake by one party and knowledge of the mistake by the other will justify relief as fully as mutual mistake.[FN43]

The importance of distinguishing whether the transaction can be called fraudulent as distinguished from one based on mistake without fraud, even where no other remedy than rescission is sought, lies in the fact that fraud as to any circumstances actually inducing a bargain may justify relief,[FN44] although mistake must be as to a matter that formed a fundamental basis of the bargain.[FN45]


[FN37]

**UK:**

Smith v. Hughes, (1871) LR 6 QB 597 (an action for the price of oats; the defendant (the buyer) refused to accept the oats or pay the price because he had been under the impression when he agreed to buy the oats that they were old oats, whereas, in fact, they were new oats; the jury found that the seller believed the defendant to be under this impression; the judge at the trial directed the jury on this finding to return a verdict for the defendant; it was held by the Court of Appeals that there must be a new trial; the self-deception of the buyer did not enable him to avoid the contract even though known to the seller).


[FN38]

**Wash:**

Puget Sound Service Corp. v. Dalarna Management Corp., 51 Wash. App. 209, 752 P.2d 1353 (Div. 1 1988).


[FN39]

**Federal:**

Laidlaw v. Organ, 15 U.S. 178, 4 L. Ed. 214 (1817) (an action by the buyer of tobacco against the sellers to gain possession of it; there was evidence that before the sale that the buyer, upon being asked by one of the sellers whether there was any news calculated to enhance its value, was silent although he had received news that the seller had not of the treaty of Ghent that terminated the War of 1812).


**Cal:**

Herzog v. Capital Co., 27 Cal. 2d 349, 164 P.2d 8 (1945) (citing Restatement of Contracts § 472 (b).
Jordan v. Guerra, 23 Cal. 2d 469, 144 P.2d 349 (1943) (citing Restatement of Restitution § 8).
Heydenfeldt v. Osmont, 178 Cal. 768, 175 P. 1 (1918).
Clauser v. Taylor, 44 Cal. App. 2d 453, 112 P.2d 661 (2d Dist. 1941) (citing Restatement of Contracts § 472, Comment b).


**Conn:**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW    Document 36-4    Filed 01/11/2008    Page 36 of 60

WILLSTN-CN § 69:16                                                                 Page 3
26 Williston on Contracts § 69:16 (4th ed.)

Haddad v. Clark, 132 Conn. 229, 43 A.2d 221 (1945) (quoting Restatement of Restitution § 8).
Gayne v. Smith, 104 Conn. 650, 134 A. 62 (1926).

**DC:**

Borzillo v. Thompson, 57 A.2d 195 (Mun. Ct. App. D.C. 1948) (citing Restatement of Contracts §§ 471(c), 472(1)(b), (2)).

**Florida:**

Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893 (1934).

**Ill:**

Dayton v. Kidder, 105 Ill. App. 107, 1902 WL 2291 (3d Dist. 1902).

**Md:**

Fegeas v. Sherrill, 218 Md. 472, 147 A.2d 223 (1958) (failure of vendors to inform purchasers of past trouble with termites did not constitute fraudulent concealment).

**Mass:**

Lang v. Giraudo, 311 Mass. 132, 40 N.E.2d 707 (1942) (citing Restatement of Contracts § 471, Illus 1; Restatement of Restitution § 8).

**NY:**

South Shore Skate Club, Inc. v. Fatscher, 17 A.D.2d 840, 233 N.Y.S.2d 372 (2d Dep't 1962).

**Okla:**

Gutelius v. Sisemore, 1961 OK 243, 365 P.2d 732 (Okla. 1961) (the doctrine of caveat emptor applies to the sale of realty where the purchaser inspects it, and purchaser of a house who observed the location of air vents, the slope of the land, and the quality of soil that resulted in flooding the basement, could not sue the seller for fraud for his silence on the subject).

**Pa:**

William Goldstein Co. v. Joseph J. & Reynold H. Greenberg, Inc., 352 Pa. 259, 42 A.2d 551 (1945) (quoting Restatement of Contracts § 472).

**Tenn:**

Georgia Marble Co. v. Standard Tile Co., 19 Tenn. App. 258, 86 S.W.2d 429 (1935).

**Wash:**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW    Document 36-4    Filed 01/11/2008    Page 37 of 60

WILLSTN-CN § 69:16                                                    Page 4
26 Williston on Contracts § 69:16 (4th ed.)

Brinkerhoff v. Campbell, 99 Wash. App. 692, 994 P.2d 911 (Div. 1 2000) (a person's silence does not amount to a failure to act in good faith, as will allow silence to constitute a misrepresentation of material fact that will render contract voidable, absent an affirmative duty to disclose material facts).

[FN40]

**Federal:**

Ahern v. Scholz, 85 F.3d 774, 44 Fed. R. Evid. Serv. 687 (1st Cir. 1996).
In re Sallee, 286 F.3d 878, 2002 FED App. 0128P (6th Cir. 2002), cert. denied, 123 S. Ct. 415, 154 L. Ed. 2d 294 (U.S. 2002).
GE Life and Annuity Assur. Co. v. Barbour, 191 F. Supp. 2d 1375 (M.D. Ga. 2002) (applying Georgia law).
Lewin v. Long, 70 F. Supp. 2d 534 (D.N.J. 1999).

**La:**

Luquette v. Floyd, 147 So. 2d 894 (La. Ct. App. 3d Cir. 1962), writ refused, 244 La. 119, 150 So. 2d 585 (1963).

**Tex:**

Boyd v. Boyd, 67 S.W.3d 398 (Tex. App. Fort Worth 2002) (where a person is under a duty to disclose material information, refrains from doing so, and thereby leads another to contract in reliance on a mistaken understanding of the facts, the resulting contract is subject to rescission due to the intentional nondisclosure).
World Help v. Leisure Lifestyles, Inc., 977 S.W.2d 662 (Tex. App. Fort Worth 1998), reh'g overruled, (Sept. 24, 1998).

**Wash:**

Brinkerhoff v. Campbell, 99 Wash. App. 692, 994 P.2d 911 (Div. 1 2000).

[FN41]

**NC:**

Smith v. Beatty, 37 N.C. 456, 2 Ired. Eq. 456, 1843 WL 979 (1843) (a false denial of knowledge is unquestionably fraudulent).

**Pa:**

Sansom v. Provident Trust Co., 103 Pa. Super. 447, 157 A. 34 (1931).

[FN42] See § 70:121.

**Federal:**

Martin v. Campanaro, 156 F.2d 127 (C.C.A. 2d Cir. 1946) (citing Restatement of Contracts § 503).
Ricketts v. Pennsylvania R. Co., 153 F.2d 757, 164 A.L.R. 387 (C.C.A. 2d Cir. 1946) (citing text, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW    Document 36-4    Filed 01/11/2008    Page 38 of 60

WILLSTN-CN § 69:16                                                           Page 5
26 Williston on Contracts § 69:16 (4th ed.)

Restatement of Contracts § 503, Comment a).

U.S. v. Jones, 176 F.2d 278 (9th Cir. 1949) (citing text and Restatement of Contracts § 503.

Hume v. American-West African Line, 36 F. Supp. 880 (S.D. N.Y. 1941), judgment rev'd on other grounds, 121 F.2d 336 (C.C.A. 2d Cir. 1941) (citing Restatement of Contracts § 503).

Royal Ins. Co. v. City of Morgantown, W.Va., 98 F. Supp. 609 (N.D. W. Va. 1951) (citing Restatement of Contracts § 503; insurance contract).

**Cal:**

M. F. Kemper Const. Co. v. City of Los Angeles, 37 Cal. 2d 696, 235 P.2d 7 (1951) (citing Restatement of Contracts § 503).

Cf.: Harkins v. Fielder, 150 Cal. App. 2d 528, 310 P.2d 423 (2d Dist. 1957) (citing Palmquist v. Mercer, 43 Cal. 2d 92, 272 P.2d 26 (1954)).

**DC:**

Stern v. Ace Wrecking Co., Inc., 38 A.2d 626 (Mun. Ct. App. D.C. 1944) (citing Restatement of Contracts § 504).

**Neb:**

In re Davenport's Estate, 140 Neb. 769, 2 N.W.2d 17 (1942) (quoting Restatement of Contracts § 503).

[FN43]

**Mich:**

Barr v. Payne, 298 Mich. 85, 298 N.W. 460 (1941) (quoting text).

**Minn:**

Norris v. Cohen, 223 Minn. 471, 27 N.W.2d 277, 171 A.L.R. 178 (1947) (relying on Nadeau case, below).

Nadeau v. Maryland Cas. Co., 170 Minn. 326, 212 N.W. 595 (1927) (quoting and applying text).

cf Miller v. Pelzer, 159 Minn. 375, 199 N.W. 97, 33 A.L.R. 678 (1924).

**Tex:**

Coker v. Hughes, 307 S.W.2d 354 (Tex. Civ. App. Amarillo 1957).

[FN44]

**Cal:**

Jordan v. Guerra, 23 Cal. 2d 469, 144 P.2d 349 (1943) (citing Restatement of Restitution § 8).

Costello v. Roer, 77 Cal. App. 2d 174, 175 P.2d 65 (2d Dist. 1946) (quoting Restatement of Restitution § 8(2)).

**Fla:**

Billian v. Mobil Corp., 710 So. 2d 984 (Fla. Dist. Ct. App. 4th Dist. 1998), reh'g and reh'g en banc denied,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-05585-JSW    Document 36-4    Filed 01/11/2008    Page 39 of 60

WILLSTN-CN § 69:16                                                    Page 6
26 Williston on Contracts § 69:16 (4th ed.)

(Apr. 24, 1998).

**Iowa:**

Bales v. Massey, 241 Iowa 1084, 43 N.W.2d 671 (1950) (quoting Restatement of Restitution § 8).

**Kan:**

Rosenberger v. Livingston, 166 Kan. 259, 200 P.2d 329 (1948) (citing Restatement of Contracts § 470).
Scott v. National Reserve Life Ins. Co., 144 Kan. 224, 58 P.2d 1131 (1936) (as to material misstatement in application for insurance).

**Ky:**

Faulkner Drilling Co., Inc. v. Gross, 943 S.W.2d 634 (Ky. Ct. App. 1997) (concealment of a material fact justifies rescission; a material fact is one likely to affect the conduct of a reasonable person and be an inducement to the contract).

**La:**

Carruth v. State Farm Mut. Auto. Ins. Co., 113 So. 2d 56 (La. Ct. App. 2d Cir. 1959) (as to material misstatement of occupation in application for automobile liability insurance).

**Md:**

Clark v. Kirsner, 196 Md. 52, 74 A.2d 830 (1950) (citing text and Restatement of Contracts § 476, Comment b; in rescission, materiality of innocent misrepresentation is more essential than in instances of fraudulent misrepresentations).

**Miss:**

Penn Mut. Life Ins. Co. v. Nunnery, 176 Miss. 197, 167 So. 416 (1936).

**Neb:**

Trebelhorn v. Bartlett, 154 Neb. 113, 47 N.W.2d 374 (1951) (citing Restatement of Contracts § 470).
Pasko v. Trela, 153 Neb. 759, 46 N.W.2d 139 (1951) (quoting Restatement of Contracts § 470).

**NY:**

Ettman v. Equitable Life Assur. Soc. of U.S., 6 A.D.2d 697, 174 N.Y.S.2d 553 (2d Dep't 1958), appeal granted, 6 A.D.2d 802, 175 N.Y.S.2d 582 (2d Dep't 1958) and order aff'd, 5 N.Y.2d 1005, 185 N.Y.S.2d 262, 158 N.E.2d 124 (1959) (misrepresentation as to treatment for heart disease, held material as a matter of law).
Greenbaum v. Baywood Homes, 62 N.Y.S.2d 545 (Sup 1946), judgment aff'd, 272 A.D. 826, 72 N.Y.S.2d 267 (2d Dep't 1947), judgment aff'd, 299 N.Y. 692, 87 N.E.2d 72 (1949) (citing text and Restatement of Contracts § 476).

**Or:**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Newton v. Peay, 196 Or. 76, 245 P.2d 870 (1952) (citing Restatement of Contracts § 476).
Whitehead v. Montgomery Ward & Co., 194 Or. 106, 239 P.2d 226 (1951) (citing Restatement of Contracts § 476).

**Pa:**

Lake v. Thompson, 366 Pa. 352, 77 A.2d 364 (1951) (citing Restatement of Contracts § 470).

[FN45]

**NY:**

Chinnery v. Kennosset Realty Co., 286 N.Y. 167, 36 N.E.2d 97 (1941).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

WILLSTN-CN § 69:16

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit P

**APPENDIX OF NON-FEDERAL AND UNPUBLISHED FEDERAL AUTHORITIES CITED IN VISA USA INC.'S OPPOSITION TO MARITZ INC.'S MOTION TO STAY ARBITRATION**

Westlaw.

REST 2d CONTR § 161                                                            Page 1
  Restatement (Second) of Contracts § 161 (1981)

**C**Restatement of the Law -- Contracts
**Restatement (Second) of Contracts**
**Current through August 2007**

Copyright © 1981-2007 by the American Law Institut

**Chapter 7. Misrepresentation, Duress And Undue Influence**
**Topic 1. Misrepresentation**
§ 161. When Non-Disclosure Is Equivalent To An Assertion

Link to Case Citations

   A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist
in the following cases only:
      (a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from
being a misrepresentation or from being fraudulent or material.

      (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic
assumption on which that party is making the contract and if non-disclosure of the fact amounts to a
failure to act in good faith and in accordance with reasonable standards of fair dealing.
      (c) where he knows that disclosure of the fact would correct a mistake of the other party as to the
contents or effect of a writing, evidencing or embodying an agreement in whole or in part.
      (d) where the other person is entitled to know the fact because of a relation of trust and confidence
between them.

**Comment:**

   *a. Concealment distinguished.* Like concealment, non-disclosure of a fact may be equivalent to a
misrepresentation. Concealment necessarily involves an element of non-disclosure, but it is the act of preventing
another from learning of a fact that is significant and this act is always equivalent to a misrepresentation (§ 160).
Non-disclosure without concealment is equivalent to a misrepresentation only in special situations. A party making a
contract is not expected to tell all that he knows to the other party, even if he knows that the other party lacks
knowledge on some aspects of the transaction. His nondisclosure, as such, has no legal effect except in the situations
enumerated in this Section. He may not, of course, tell half-truths and his assertion of only some of the facts without
the inclusion of such additional matters as he knows or believes to be necessary to prevent it from being misleading
is itself a misrepresentation. See Comment *a* to § 159. In contrast to the rule applicable to liability in tort for
misrepresentation, it is not enough, where disclosure is expected, merely to make reasonable efforts to disclose the
relevant facts. Actual disclosure is required. Compare Restatement, Second, Torts § 551, Comment *d*.

   *b. Fraudulent or material.* In order to make the contract voidable under the rule stated in § 164(1), the non-
disclosure must be either fraudulent or material. The notion of disclosure necessarily implies that the fact in question
is known to the person expected to disclose it. But the failure to disclose the fact may be unintentional, as when one
forgets to disclose a known fact, and it is then equivalent to an innocent misrepresentation. Furthermore, one is
expected to disclose only such facts as he knows or has reason to know will influence the other in determining his
course of action. See § 162(2). Therefore, he need not disclose facts that the ordinary person would regard as
unimportant unless he knows of some peculiarity of the other person that is likely to lead him to attach importance
to them. There is, however, no such requirement of materiality if it can be shown that the non-disclosure was

actually fraudulent. If a fact is intentionally withheld for the purpose of inducing action, this is equivalent to a fraudulent misrepresentation.

   *c. Failure to correct.* One who has made an assertion that is neither a fraudulent nor a material misrepresentation may subsequently acquire knowledge that bears significantly on his earlier assertion. He is expected to speak up and correct the earlier assertion in three cases. First, if his assertion was not a misrepresentation because it was true, he may later learn that it is no longer true. See Illustration 1. Second, his assertion may have been a misrepresentation but may not have been fraudulent. If this was because he believed that it was true, he may later learn that it was not true. See Illustration 2. If this was because he did not intend that it be relied upon, he may later learn that the other is about to rely on it. See Illustration 3. Third, if his assertion was a misrepresentation but was not material because he had no reason to know of the other's special characteristics that made reliance likely, he may later learn of such characteristics. If a person fails to correct his earlier assertion in these situations, the result is the same as it would have been had he had his newly acquired knowledge at the time he made the assertion. The rule stated in Clause (a), like that stated in Clause (d), extends to non-disclosure by persons who are not parties to the transaction.

**Illustrations:**

   1. A makes to B, a credit rating company, a true statement of his financial condition, intending that its substance be published to B's subscribers. B summarizes the information and transmits the summary to C, a subscriber. Shortly thereafter, A's financial condition becomes seriously impaired, but he does not disclose this to B. C makes a contract to lend money to A. A's non-disclosure is equivalent to an assertion that his financial condition is not seriously impaired, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164.
   2. A, seeking to induce B to make a contract to buy a thoroughbred mare, tells B that the mare is in foal to a well-known stallion. Unknown to A, the mare has miscarried. A learns of the miscarriage but does not disclose it to B. B makes the contract. A's non-disclosure is equivalent to an assertion that the mare has not miscarried, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164.
   3. A, in casual conversation with B, tells B that a tract of land owned by A contains thirty acres. A knows that it contains only twenty-nine acres but misstates its area because he does not regard the figure as important. A's statement is not fraudulent because it is not made with the intention of inducing B to buy the land (§ 162(1)). B later offers to buy the tract from A. A does not disclose its true area to B, for fear that B will not buy it, and accepts B's offer. A's non-disclosure is equivalent to a new assertion that the tract contains thirty acres, and this assertion is a fraudulent misrepresentation (§ 162(1)). Whether the contract is voidable by B is determined by the rule stated in § 164.

   *d. Known mistake as to a basic assumption.* In many situations, if one party knows that the other is mistaken as to a basic assumption, he is expected to disclose the fact that would normally correct the mistake. A seller of real or personal property is, for example, ordinarily expected to disclose a known latent defect of quality or title that is of such a character as would probably prevent the buyer from buying at the contract price. An owner is ordinarily expected to disclose a known error in a bid that he has received from a contractor. See Comment *e* to § 153. The mistake must be as to a basic assumption, as is also required by the rules on mistake stated in § 152 (see Illustrations 4, 5 and 6) and § 153 (see Illustrations 8 and 9). The rule stated in Clause (b), is, however, broader than these rules for mistake because it does not require a showing of a material effect on the agreed exchange and is not affected by the fact that the party seeking relief bears the risk of the mistake (§ 154). Nevertheless, a party need not correct all mistakes of the other and is expected only to act in good faith and in accordance with reasonable standards of fair dealing, as reflected in prevailing business ethics. A party may, therefore, reasonably expect the other to take normal steps to inform himself and to draw his own conclusions. If the other is indolent, inexperienced or ignorant, or if his judgment is bad or he lacks access to adequate information, his adversary is not generally expected to compensate for these deficiencies. A buyer of property, for example, is not ordinarily expected to disclose circumstances that make the property more valuable than the seller supposes. Compare Illustrations 10 and 11. In contrast to the rules stated in Clauses (a) and (d), that stated in Clause (b) is limited to non-disclosure by a party to the transaction.

Copr. © 2007 The American Law Institute.

Actual knowledge is required for the application of the rule stated in Clause (b). The case of a party who does not know but has reason to know of a mistake is governed by the rule stated in § 153(b). As to knowledge in the case of an organization, see the analogous rule in Uniform Commercial Code § 1-201(27).

**Illustrations:**

4. A, seeking to induce B to make a contract to buy land, knows that B does not know that the land has been filled with debris and covered but does not disclose this to B. B makes the contract. A's non-disclosure is equivalent to an assertion that the land has not been filled with debris and covered, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164.

5. A, seeking to induce B to make a contract to buy A's house, knows that B does not know that the house is riddled with termites but does not disclose this to B. B makes the contract. A's non-disclosure is equivalent to an assertion that the house is not riddled with termites, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164.

6. A, seeking to induce B to make a contract to buy a food-processing business, knows that B does not know that the health department has given repeated warnings that a necessary license will not be renewed unless expensive improvements are made but does not disclose this to B. B makes the contract. A's non-disclosure is equivalent to an assertion that no warnings have been given by the health department, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164.

7. A, seeking to induce B to make a contract to sell land, knows that B does not know that the land has appreciably increased in value because of a proposed shopping center but does not disclose this to B. B makes the contract. Since B's mistake is not one as to a basic assumption (see Comment *b* to § 152 and Comment *b* to § 261), A's non-disclosure is not equivalent to an assertion that the value of the land has not appreciably increased, and this assertion is not a misrepresentation. The contract is not voidable by B. See Illustration 13.

8. In response to B's invitation for bids on the construction of a building according to stated specifications, A submits an offer to do the work for $150,000. A believes that this is the total of a column of figures, but he has made an error by inadvertently omitting a $5,000 item, and in fact the total is $155,000. B knows this but accepts A's bid without disclosing it. B's non-disclosure is equivalent to an assertion that no error has been made in the total, and this assertion is a misrepresentation. Whether the contract is voidable by A is determined by the rule stated in § 164. See Illustrations 1 and 2 to § 153. See also Comment *a* to § 167.

9. In answer to an inquiry from "J.B. Smith Company," A offers to sell goods for cash on delivery. A mistakenly believes that the offeree is John B. Smith, who has an established business of good repute, but in fact it is a business run by his son, with whom A has refused to deal because of previous disputes. The son learns of A's mistake but accepts A's offer without disclosing his identity. The son's non-disclosure is equivalent to an assertion that the business is run by the father, and this assertion is a misrepresentation. Whether the contract is voidable by A is determined by the rule stated in § 164. See Illustration 11 to § 153. See also Comment *a* to § 167.

10. A, seeking to induce B to make a contract to sell A land, learns from government surveys that the land contains valuable mineral deposits and knows that B does not know this, but does not disclose this to B. B makes the contract. A's non-disclosure does not amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing and is therefore not equivalent to an assertion that the land does not contain valuable mineral deposits. The contract is not voidable by B.

11. The facts being otherwise as stated in Illustration 10, A learns of the valuable mineral deposits from trespassing on B's land and not from government surveys. A's non-disclosure is equivalent to an assertion that the land does not contain valuable mineral deposits, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164.

*e. Known mistake as to a writing.* One party cannot hold the other to a writing if he knew that the other was mistaken as to its contents or as to its legal effect. He is expected to correct such mistakes of the other party and his failure to do so is equivalent to a misrepresentation, which may be grounds either for avoidance under § 164 or for reformation under § 166. (Compare the rule on reformation for mistake of both parties as to their written expression stated in § 155. See Comment *a* to § 155.) The failure of a party to use care in reading the writing so as to discover the mistake may not preclude such relief (§ 172). In the case of standardized agreements, these rules supplement that

of § 211(3), which applies, regardless of actual knowledge, if there is reason to believe that the other party would not manifest assent if he knew that the writing contained a particular term. Like the rule stated in Clause (b), that stated in Clause (c) requires actual knowledge and is limited to non-disclosure by a party to the transaction. See Comment d.

**Illustration:**

12. A, seeking to induce B to make a contract to sell a tract of land to A for $100,000, makes a written offer to B. A knows that B mistakenly thinks that the offer contains a provision under which A assumes an existing mortgage, and he knows that it does not contain such a provision but does not disclose this to B. B signs the writing, which is an integrated agreement. A's non-disclosure is equivalent to an assertion that the writing contains such a provision, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164. Whether, at the request of B, the court will decree that the writing be reformed to add the provision for assumption is determined by the rule stated in § 166. See Illustration 4 to § 166.

*f. Relation of trust and confidence.* The rule stated in Clause (d) supplements that stated in § 173 with respect to contracts between parties in a fiduciary relation. Where the latter rule applies, as in the case of a trustee, an agent, a guardian, or an executor or administrator, its more stringent requirements govern. Even where a party is not, strictly speaking, a fiduciary, he may stand in such a relation of trust and confidence to the other as to give the other the right to expect disclosure. Such a relationship normally exists between members of the same family and may arise, in other situations as, for example, between physician and patient. In addition, some types of contracts, such as those of suretyship or guaranty, marine insurance and joint adventure, are recognized as creating in themselves confidential relations and hence as requiring the utmost good faith and full and fair disclosure. As to contracts of suretyship, see Restatement of Security § 124.

The rule stated in Clause (d) is not limited to cases in which the non-disclosure is by a party to the transaction. In contrast, the rule stated in § 173 applies only to non-disclosure by a fiduciary who is a party. Therefore the rule stated in Clause (d) covers the residual case of a fiduciary who is not a party. As to the duty of a trustee to disclose to his beneficiary matters important for him to know in dealing with others, see Restatement, Second, Trusts § 173, Comment d. As to the duty of an agent to disclose to his principal matters important for him to know in dealing with others, see Restatement, Second, Agency § 381.

**Illustration:**

13. A, who is experienced in business, has raised B, a young man, in his household, and B has habitually followed his advice, although A is neither his parent nor his guardian. A, seeking to induce B to make a contract to sell land to A, knows that the land has appreciably increased in value because of a planned shopping center but does not disclose this to B. B makes the contract. A's non-disclosure is equivalent to an assertion that the value of the land has not appreciably increased, and this assertion is a misrepresentation. Whether the contract is voidable by B is determined by the rule stated in § 164. See Illustration 7.

### REPORTER'S NOTE

This Section is based on former §§ 471(c) and 472; cf. Restatement, Second, Torts § 551. See 12 Williston, Contracts §§ 1497-99 (3d ed.1970); Keeton, Fraud--Concealment and Non-Disclosure, 15 Tex.L.Rev. 1 (1936).

*Comment c.* See James & Gray, Misrepresentation--Part II, 37 Md.L.Rev. 488, 525-26 n. 13 (1978). Illustration 1 is based on Illustration 2 to Restatement, Second, Torts § 551. In Bursey v. Clement, 118 N.H. 412, 387 A.2d 346 (1978), a real estate contract and conveyance were held subject to rescission when, after a change in a building permit policy, a defendant failed to correct his previously accurate statement that no "no growth" legislation was planned. Illustration 2 is supported by Illustration 1 to Restatement, Second, Torts § 551. Illustration 3 is based on

Copr. © 2007 The American Law Institute.

Illustrations 1 and 3 to former § 472.

   *Comment d.* See James & Gray, Misrepresentation--Part II, 37 Md.L.Rev. 488, 526-27 (1978); Kronman, Mistake, Disclosure, Information, and the Law of Contracts, 7 J.Leg. Studies 1 (1978). Kronman's thesis is that the right not to disclose socially useful information is a property right and that "the law tends to recognize a right of this sort where the information is the result of a deliberate and costly search and not to recognize it where the information has been casually acquired." Id. at 33. Kronman, however, does not consider whether it is relevant that the other party may lack the resources for such a "deliberate and costly search." Illustration 4 is based on Clauser v. Taylor, 44 Cal.App.2d 453, 112 P.2d 661 (1941); cf. Lawson v. Citizens & Southern Nat'l Bank, 255 S.C. 517, 180 S.E.2d 206 (1971), appeal after remand, 259 S.C. 477, 193 S.E.2d 124 (1972); Loghry v. Capel, 257 Iowa 285, 132 N.W.2d 417 (1965). Illustration 5 is based on Illustration 3 to Restatement, Second, Torts § 551; Obde v. Schlemeyer, 56 Wash.2d 449, 353 P.2d 672 (1960); cf. Weikel v. Sterns, 142 Ky. 513, 134 S.W. 908 (1911); Perkins v. Marsh, 179 Wash. 362, 37 P.2d 689 (1934). Contra: Hendrick v. Lynn, 37 Del. Ch. 402, 144 A.2d 147 (1958); Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 42 N.E.2d 808 (1942). See Annot., 22 A.L.R.3d 972 (1968). Illustration 6 is based on Peterson v. Arellono, 289 Minn. 541, 185 N.W.2d 282 (1971); cf. Musgrave v. Lucas, 193 Or. 401, 238 P.2d 780 (1951); Nader v. Allegheny Airlines, 445 F.Supp. 168, 173-76 (D.D.C.1978). Illustration 7 is based on Illustration 4 to former § 472. Illustration 8 is based on Conlan v. Sullivan, 110 Cal. 624, 42 P. 1081 (1895); Tyra v. Cheney, 129 Minn. 428, 152 N.W. 835 (1915); cf. Illustration 2 to former §472; United States v. Jones, 176 F.2d 278 (9th Cir.1949); Kemp v. United States, 38 F.Supp. 568 (D.Md.1968). Compare Illustrations 8 and 9 to Restatement of Restitution § 11. Illustration 9 is based on Boston Ice Co. v. Potter, 123 Mass. 28 (1877); Klein v. Tabatchnick, 418 F.Supp. 1368, 1375-76 (S.D.N.Y.1976); cf. Illustration 4 to former § 471. Illustration 10 is based on Caples v. Steel, 7 Or. 491 (1879); Harris v. Tyson, 24 Pa. 347 (1855); Neill v. Shamburg, 158 Pa. 263, 27 A. 992 (1893). Cf. Leitch Gold Mines v. Texas Gulf Sulphur, 1 Ont. 469 (1969); Kronman, supra at 19- 22. Illustration 11 is supported by Phillips v. Homfray, L.R. 6 Ch. Rep. 770 (1871); Keeton, Fraud--Concealment and Non-Disclosure, 15 Tex.L.Rev. 1, 25- 26 (1936); 12 Williston, Contracts § 1498 (3d ed.1970).

   *Comment e.* With respect to avoidance, Illustration 12 is supported by Hollywood Credit Clothing Co. v. Gibson, 188 A.2d 348 (D.C.App.1963); Bixler v. Wright, 116 Me. 133, 100 A. 467 (1917); see also Illustration 5 to former § 471. With respect to reformation, Illustration 12 is supported by Illustration 1 to former § 505; Hugo v. Erickson, 110 Neb. 602, 194 N.W. 723 (1923); Webb v. Culver, 265 Or. 467, 509 P.2d 1173 (1973); cf. Bleyer v. Veeder, 119 N.J.Eq. 398, 183 A.2d 203 (1936). On the "duty" to read, see Reporter's Note to Comment *e* to § 23.

   *Comment f.* See James & Gray, Misrepresentation--Part II, 37 Md.L.Rev. 488, 524-25 (1978). Illustration 13 is based on Illustration 5 to former § 472; cf. Sellers v. Sellers, 428 P.2d 230 (Okl.1967). Compare Eaton v. Sontag, 387 A.2d 33 (Me.1978) (fifteen years' social friendship alone does not create "confidential relationship").

Case Citations

Case Citations Through December 1977, Including Cross References

Case Citations January 1978 -- June 1984

Case Citations July 1984 -- June 1989

Case Citations July 1989 -- June 1991

Case Citations July 1991 -- June 1996

Case Citations July 1996 -- June 2001

Case Citations July 2001 -- June 2006

Copr. © 2007 The American Law Institute.

REST 2d CONTR § 161                                                              Page 6
  Restatement (Second) of Contracts § 161 (1981)


Case Citations July 2006 -- April 2007

**Case Citations Through December 1977, Including Cross References:**
**Cross References to**

1. Digest System Key Numbers

    Contracts ☞ 94(8)


2. A.L.R. Annotation

    Fraud predicated on vendor's misrepresentation or concealment of danger or possibility of flooding or other unfavorable water conditions. 90 A.L.R.3d 568.

    Duty of vendor of real estate to give purchaser information as to termite infestation. 22 A.L.R.3d 972.

**Case Citations January 1978 -- June 1984:**

No earlier citations

   **C.A.D.C.**1983. Cit. in ftn. in disc. The government brought a criminal action for wire fraud against the defendants. The defendants appealed from district court convictions. This court affirmed. In discussing the scope of wire fraud, this court stated that an employee's intentional nondisclosure of a conflict of interest did not constitute sufficient evidence of intent to defraud an employer under the wire fraud statute. There must also be a reasonably foreseeable, identifiable risk of harm to the employer caused by the nondisclosure. The court noted that civil law treatment of nondisclosure was similar in the nondisclosure was material only if it was reasonably likely to affect a party's judgment in a particular transaction. United States v. Lemire, 720 F.2d 1327, 1336, certiorari denied --- U.S. ----, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

   **S.D.Tex.**1983. Com. (a) cit. in ftn. in disc. A defendant moved to dismiss her indictment on the grounds that it violated the federal government's agreement with a codefendant not to prosecute her. The government argued, inter alia, that it was induced to enter the agreement by fraud and duress. The court recognized that fraud, which it defined as false assertions made explicitly or implicitly, was grounds for avoiding a contract if it induced a party to enter the agreement. However, the court found no untruthfulness in the codefendant's preagreement statements to the government. Nor could the government avoid performance on the grounds of unintentional concealment of a material fact absent proof that the codefendant knew of the allegedly withheld fact. A contract was voidable if the parties made a mutual mistake about a material fact, but the government by its actions bore the risk of the mistake. Since the agreement was found voidable for duress, however, the motion was denied. United States v. McBride, 571 F.Supp. 596, 609.

   **Cal.App.**1983. Cit. in disc., subsec. (b) cit. in disc. A purchaser of a house sued a vendor and his real estate agents, seeking rescission of the contract of sale and damages. The lower court granted the vendor's and the real estate agents' demurrer to the purchaser's first amended complaint for failure to state a cause of action, and the purchaser appealed. This court held that the purchaser stated a cause of action where the vendor and real estate agents failed to disclose the fact that the house was the site of a decade-old multiple murder, a material fact which, it was alleged, decreased the value of the house at the time of sale. Accordingly, the judgment granting the demurrer was reversed. Reed v. King, 145 Cal.App.3d 261, 193 Cal.Rptr. 130, 131, 132.

   **Conn.**1983. Cit. in disc. The plaintiffs brought an action for damages resulting from fraudulent misrepresentations claimed to have been made when they purchased the defendant's interests in certain corporations. The defendant filed a counterclaim based on the plaintiffs' refusal to pay the balance due on a promissory note given to him at the time of the purchase and also his share as a beneficiary in a profit sharing plan of one of the

Copr. © 2007 The American Law Institute.

corporations. The trial court rendered judgment for the defendant on the complaint as well as on the counterclaim. The state found no error in the appeal, but found error in the cross appeal in the trial court's refusal to award the defendant attorney's fees on his counterclaim. The defendant breached his fiduciary duty to the plaintiffs by failing to disclose the existence of a bank account into which he diverted corporate funds while entering a settlement agreement with the plaintiffs under which the defendant sold his interest in the corporations. The plaintiffs did not assume the risk of mistake, as they had no idea that the defendant had diverted corporate money to his own use in an entirely separate and concealed account. The plaintiffs' misjudgment in relying upon the defendant's fulfillment of his legal duty as fiduciary and an the financial books of the corporation was not so extreme as to amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing. A settlement agreement and general release could not shield the defendant from liability for failing to disclose information regarding to the concealed bank account. However, the plaintiffs were precluded from relief for the defendant's misrepresentation because they chose to seek damages under the agreement for the nondisclosure rather than rescission of the agreement, and they could not prove that the terms of the settlement would have been different had they known of the nondisclosure. Pacelli Bros. Transp., Inc. v. Pacelli, 189 Conn. 401, 456 A.2d 325, 328.

  **Mass.App.**1982. Com. (b) cit. in disc. The plaintiff buyer brought an action against the defendant seller and the defendant broker, alleging that they had induced him to buy the seller's property by representing that there were no existing state building code violations affecting the building when, in fact, there were. The plaintiff sought damages as well as rescission of the sale. The seller counterclaimed for monies owed by the plaintiff on his second mortgage promissory note. The trial judge found that neither defendant had deceived the plaintiff, and entered a judgment in their favor. In affirming, this court noted that there was authority for the proposition that a material misrepresentation made by one who was not a party to the transaction to one who was a party could render the contract voidable. However, such relief was unavailable where the other party to the contract, the seller here, in good faith and without reason to know of the misrepresentation either gave value or relied materially on the transaction. Further, the purchase and sale agreement between the parties was silent on the topic of building code violations and thus made no mention of who would bear the risk of any mistake concerning them. It could not be said that the building code violations had a material effect on the agreed exchange between the parties. The court saw no justification for allocating the risk of the sale to the defendants by allowing the plaintiff to rescind. Lawton v. Dracousis, 14 Mass.App.Ct. 164, 437 N.E.2d 543, 547, review denied 387 Mass. 1103, 440 N.E.2d 1177 (1982).

  **Mo.App.**1983. Subsec. (d) and com. (f) cit. in ftn. in sup. An attorney and a banker who had served as consultants for a closely held corporation brought an action for declaratory judgment to determine whether the corporation had the right to purchase their shares in the corporation under the terms of a shareholder's agreement. The trial court entered judgment for the plaintiffs, concluding that neither had been an employee of the corporation within the meaning of the shareholder's agreement, which allowed the corporation to purchase the shares of the terminated employees. After the banker died, the corporation appealed the judgment for the attorney, and this court reversed. The court noted that the prior decision amounted to an adjudication that the meaning of the term employment was manifest from the term itself, and held that the lower court's decision on that issue was against the weight of the evidence and based on erroneous conclusions of law. Finding that the shareholder's agreement contained no definition of the term, the court indicated that the trial court erred in interpreting it as a word of art, instead of one of common usage with a meaning variable according to the purpose of the document. Interpreting the word itself, the court found that the term "under employment" referred to a shareholder actively engaged in the affairs of the corporation, described all minority shareholders, and was therefore applicable to the attorney appellee. Shaffer v. Terrydale Management Corp., 648 S.W.2d 595, 607.

  **N.Y.Sup.Ct.App.Div.**1982. Com. (f) quot. in part in disc. The plaintiff and her husband agreed to lend the defendant $20,000, payable within six months at a rate of 12 percent interest per annum. After three years, the defendant had repaid $2,500. The plaintiff, now divorced and holding the promissory note as part of her divorce settlement, demanded payment from the defendant. Instead of paying, the defendant drew a new promissory note providing for payment of $17,500 at 12 percent interest per year. The plaintiff took the note without looking at it. No payments were made on the indebtedness. When the plaintiff brought suit, the defendant raised the defense of usury. The lower court granted judgment for the plaintiff, finding that the defense had not been established. This court affirmed, stating that the peculiar facts of the required that the defendant be estopped from asserting the defense.

Copr. © 2007 The American Law Institute.

The defendant was active in borrowing and lending money had was familiar with the usury laws. He was a close friend of the plaintiff and her husband. The defendant drew the note and fixed the rate of interest. Although the defendant was aware of the legal rate of interest, he did not tell the plaintiff that the note was usurious. Due to the close personal relationship between the parties, and the defendant's superior knowledge, he had a duty to disclose that fact. Hammond v. Marrano, 88 A.D.2d 758, 451 N.Y.S.2d 484, 486, appeal granted 57 N.Y.2d 608, 455 N.Y.S.2d 1027, 442 N.E.2d 70 (1982).

The following cases have cited or referred to § 303 of the Tentative Drafts. This is now s 161 of the Official Draft.

**D.D.C.**1980. Cit. in disc. The action was commenced by a home owner challenging the validity of a promissory note and deed of trust on her home. The court voided the promissory note and deed of trust and permanently enjoined the defendants from exercising their power to foreclose. The court concluded that the defendant's actions in the negotiation and execution of the loan documents contained all of the elements necessary to render a contract void for fraud or misrepresentation. The defendants, through affirmative statements and material omissions, had made statements not in accord with the facts regarding essential terms of the proposed contract (failure to disclose brokerage fees and failure to disclose the significance of designating the loan as one for business purposes), reasonably inducing apparent assent (her signature) by one who neither knew nor had reasonable opportunity to know what these essential terms were (plaintiff was faced with the option of immediately signing the documents or losing her home in foreclosure). Greene v. Gibraltar Mortgage Inv. Corp., 488 F.Supp. 177, 180.

**Alaska,** 1981. Quot. in part in ftn. and com. (e) quot. in part in ftn. After a nightclub owner fired a performing band, the plaintiff band brought an action against the defendant nightclub owner for the payment due under the parties' written contract. On motion for partial summary judgment, the trial court entered judgment in favor of the band on the basis of the written contract. The appellate court affirmed, and the defendant again appealed. On appeal, the defendant argued, inter alia, that the doctrine of promissory estoppel applied to the instant case. The court noted that the doctrine of promissory estoppel is a principle applicable to situations where a promise unsupported by consideration is sought to be enforced; thus, the principle had no relevance to the case at bar. The defendant also argued that the lower court should have admitted his proffered parol evidence regarding an antecedent oral agreement that the contract engaging the band to perform at the nightclub could be terminated on two weeks' notice if the band didn't draw well as the addition of a consistent term to the contract. On this issue, the court noted that a binding agreement supersedes inconsistent terms of prior agreements. The court held that the oral agreement proffered by the defendant was inconsistent with the unambiguous terms of the written contract and was therefore inadmissible. Finally, the defendant argued that the parol evidence was admissible to show the band's fraud in inducing the defendant to enter the written contract. The court noted that the parol evidence was admissible on this ground even if the contract were to be viewed as fully integrated. However, the court noted that a party seeking to avoid enforcement of a contract on the ground of fraud must show, inter alia, that the fraud induced the recipient to make the contract. The court found that in the instant case, there was no evidence from which it could be inferred that the parol statements induced the defendant to enter into the contract. Accordingly, the judgment below was affirmed. Johnson v. Curran, 633 P.2d 994, 998.

**Wis.**1980. Cit. in sup. A bank brought an action against a surety to recover the balance due on a debtor's promissory note. When the surety had initially contacted the bank to inquire about the debtor's credit record he was told that her credit was good and that a third mortgage on the debtor's property would accompany the loan. The surety was also told that the proceeds from this loan would be used to improve the debtor's property when in fact the proceeds would be used to pay a prior loan. In addition, the debtor's credit history was actually cloudy and the bank later withdrew the mortgage requirement without notifying the surety. The trial court submitted the case to the jury on a tort theory of misrepresentation and instructed the jury on comparative negligence. The surety was found to be 67% negligent. The intermediate court reversed the trial court and held that the bank was strictly liable for its misrepresentations. On appeal, this court stated that the case was submitted to the jury on an improper theory of law. The court discussed the relationship between contract and tort actions for misrepresentation. The court found that this was a suit to recover on a contract and the surety's defense was based upon an attempt to avoid the contract rather than an assertion of damages. Therefore, this court held that the principles of contract and suretyship law

Copr. © 2007 The American Law Institute.

would apply rather than tort law. The court stated that the issue was under what circumstances would a contractual surety obligation be rendered voidable based upon the material misrepresentation or nondisclosure of a creditor. The court stated that two types of misrepresentations were alleged in this case. The first involved whether the nondisclosure of material facts, known to the creditor, would be sufficient to avoid the surety's contract. The court stated that a surety has a valid defense if the creditor knows facts that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, and the creditor knows that the surety does not know these facts and has an opportunity to inform the surety. The court held that the degree of knowledge possessed by the surety and the materiality of the undisclosed facts are questions for the jury. The court stated that the bank could not use the privacy interests of its customers as a shield to protect itself from the legal duty of disclosing material facts to the surety. The court held that the bank's nondisclosure in this case could form the basis of a misrepresentation sufficient to avoid the surety's contract. The court then discussed the situation where a creditor makes a false, affirmative statement to the surety regarding the risk of entering into the contract. The court stated that the general rule for rescission in this situation was that if a party to a contract is induced, by means of a fraudulent or material misrepresentation made by another party to the contract, the contract is voidable if the recipient justifiably relied upon that misrepresentation. The court noted that if there was an actual fraud in this case then there would not be a requirement that the misrepresentation be material. The court held that there are two separate standards for determining the materiality of a misrepresentation: whether the reasonable man would be induced to enter into the contract on the basis of the misrepresentation and whether the maker of the false statement knew of special circumstances which would induce the recipient to enter into the contract. The court held that the surety's failure to discover the facts behind the misrepresentation would not make his reliance unjustified unless he acted in bad faith or his conduct did not conform to the reasonable standards of fair dealing. The court found that the issue, whether the bank's nondisclosure of the debtor's credit history was significant enough to avoid the contract, was a question for the jury. The court also found that whether the bank's misrepresentation as to the existence of the third mortgage was material, was also a question for the jury. One factor which would affect this determination of materiality would be the misrepresentation as to the purpose and use of the loan proceeds. The court found that the status quo could not be restored by granting rescission in this case. The court held that because the trial had proceeded on an improper theory, the issues were not fully tried. The intermediate court's decision was reversed and the cause was remanded for a new trial. First Nat. Bank & Trust Co. v. Notte, 97 Wis.2d 207, 293 N.W.2d 530, 537.

### Case Citations July 1984 -- June 1989:

**C.A.5,** 1985. Cit. in disc. §§ 159-164. The owner of a damaged vessel, who claimed that he had been fraudulently induced to sign a contract with a salvage company, sued to have the contract declared invalid. This court affirmed the district court's judgment for the owner. It held that the owner did not ratify the contract, since he did not delay in seeking to rescind the contract and did not demonstrate any intent to ratify the salvage contract. Black Gold Marine, Inc. v. Jackson Marine Co., 759 F.2d 466, 470, rehearing denied 765 F.2d 1120 (5th Cir.1985).

**C.A.D.C.**1985. Cit. in disc., cit. in ftn., com. (a) cit. in ftn. A borrower sued a bank for damages after the bank rescinded a loan agreement at the last moment. The loan was to have been used for the redemption of the borrower's home, which had been sold at a tax sale. The bank defended and moved for summary judgment on the ground that the borrower had made innocent material representations in his loan application that justified the bank's avoidance of the contract. The trial court granted the bank's motion for summary judgment, and the borrower appealed. Reversing and remanding, this court held that the trial court had failed to apply the correct legal test for determining when an innocent material misrepresentation permitted the rescission of a contract. According to the court, the trial court had not considered the legal distinctions between assertions of fact and nondisclosure and between assertions of fact and statements of opinion and had neglected to investigate whether the bank had actually relied on the representations in deciding to make the loan; whether that reliance, if it existed, was justifiable; and whether the bank had relied to its detriment. Barrer v. Women's Nat. Bank, 761 F.2d 752, 758.

**U.S.Cl.Ct.**1988. Cit. in sup. §§ 160-164. A not-for-profit cooperative association of rural electric systems made an $8 million debt service payment to a government lending agency on behalf of one of its member cooperatives in reliance on an agreement with the Rural Electrification Administration (REA) that it would provide a lien accommodation in favor of the association to secure a $53 million loan to the member. The REA refused to secure the smaller loan, asserting that the lien accommodation was predicated on the member's obtaining approval for a

loan from the association in the full amount, and that this condition had not been met because the necessary state regulatory agency's borrowing approval had not been obtained. The association sued the government for restitution of the $8 million, alleging breach of contract by the REA and, alternatively, seeking rescission and restitution. This court granted the defendant's motion for summary judgment, holding that the failure of conditions precedent released the REA from any contractual obligations, and that there was no evidence to support the plaintiff's claim of fraudulent inducement where the record revealed no misrepresentations by the REA regarding the terms and conditions for a lien accommodation. National Rural Util. Co-op. Finance Corp. v. U.S., 14 Cl.Ct. 130, 142.

   **D.Del.**1985. Cit. in sup., cit. in disc. §§ 159-164. The purchasers of a residential development sued the sellers for rescission or reformation of a contract on grounds of misrepresentation and mutual mistake after the sellers sold the property without a required governmental approval, causing the purchasers to lose 38 of the purchased lots. Both parties moved for summary judgment. The court denied both motions, holding that issues of material fact precluded summary judgment. The court stated that a material representation, innocently made, but nevertheless false, renders a contract voidable when one of the parties justifiably relies on the misstatement in making the contract. The court also reasoned that seeking rescission based on misrepresentation through nondisclosure is inconsistent with seeking rescission on the basis of mutual mistake. Shore Builders, Inc. v. Dogwood, Inc., 616 F.Supp. 1004, 1012, 1014.

   **D.N.M.**1988. Cit. in disc. §§ 159-161 and §§ 159-164. Past and present telephone company customers who had contracted for inside wire maintenance service (IWMS) sued the company, alleging that the company monopolized the IWMS and that the contracts were void or voidable under state contract law. The court granted the plaintiffs' motion for certification as a plaintiff class, and denied the defendant's motion for dismissal of the plaintiffs' pendent state law claim. Regarding the contracts claim, the court found that there was no clearly established or plainly contradictory law in the other states in the proposed class that conflicted with the relevant law of the forum state of New Mexico; therefore application of the contract law from the Restatement, relied on by the parties, would not violate the due process clause or the full faith and credit clause of the Constitution. Sollenbarger v. Mountain States Tel. and Tel. Co., 121 F.R.D. 417, 421, 428, 434.

   **S.D.N.Y.**1987. Subsec. (b) quot. in sup. A foreign country borrowed money to finance the construction of an electric power plant. After it defaulted on a loan payment, guarantor banks that paid the full amount of the loan sued the country for repayment. The court denied the plaintiffs' motion for summary judgment, holding that the defendant had raised a triable issue by asserting that the plaintiffs fraudulently omitted to advise the defendant that the project could never be self-financing. The court said that a person's nondisclosure of a fact known to him was equivalent to an assertion that the fact did not exist; a half-truth could actually be regarded as crossing the line from nondisclosure to an active false assertion of fact. Morgan Guar. Trust Co. of N.Y. v. Republic of Palau, 657 F.Supp. 1475, 1483.

   **S.D.N.Y.**1988. Subsec. (b) quot. in disc. Several banking institutions sought to recover from a foreign state over $40 million they paid out as guarantors after the foreign state defaulted on its repayment of loans for the construction of a power plant. This court entered judgment for the plaintiffs, holding that the defendant had contractually waived its right of sovereign immunity; that British law, as specified in the choice-of-laws clause in the parties' recourse agreement, was applicable where there was no evidence that the clause was consented to as a result of fraud or misrepresentation; that under British law the plaintiffs were entitled to recover because defendant failed to prove any mistake or reliance on an alleged misrepresentation that would invalidate the recourse agreement; and that, since there was no evidence of an agency relationship between the plaintiffs and the project's contractor, any misrepresentation made by the contractor was not attributable to the plaintiffs. Morgan Guar. Trust Co. of N.Y. v. Rep. of Palau, 693 F.Supp. 1479, 1496.

   **S.D.N.Y.**1988. Cit. in ftn. An investor sued a stock brokerage firm and a stock broker, alleging that he was fraudulently induced to agree to arbitrate all claims arising out of his account with the stock broker when the broker told him to sign a document without reading a margin agreement that contained an arbitration clause. Although a jury found for the plaintiff, this court granted the broker's motion for judgment n.o.v., holding that there was no evidence to support the jury's verdict on the issues of falsity, materiality, and justifiable reliance, and that the plaintiff failed to establish a prima facie case of fraudulent inducement with respect to the arbitration agreement.

The court said that, for the plaintiff to establish that the broker had made fraudulent misstatements about the margin agreement, the plaintiff must show that the broker did not have the confidence that he stated or implied in the truth of his statements or that the broker knew that he did not have the basis that he stated or implied for the assertion. Rush v. Oppenheimer & Co., Inc., 681 F.Supp. 1045, 1048.

**Ariz.App.**1986. Cit. in sup., com. (d) quot. in disc. Buyers sued to rescind an agreement to purchase a residence, alleging that the sellers had made misrepresentations by failing to disclose the existence of termite infestation and damage in the residence. The trial court dismissed the misrepresentation claim and granted summary judgment for the defendants on the concealment claim. Reversing, this court held that the sellers had a duty to disclose to the buyer the existence of termite damage in a residential dwelling which was known to the sellers, but not to the buyer, and which materially affected the value of the property. The court reasoned that disclosure of the termite damage was necessary because it was a material fact that could influence a buyer's decision to purchase, and because nondisclosure was equivalent to the assertion that damage which affected the value of the property did not exist. Hill v. Jones, 151 Ariz. 81, 725 P.2d 1115, 1118, 1120.

**Ariz.App.**1988. Com. (d) cit. in disc. A cattle ranch operator leased grazing land from a land company; the lease reserved to the lessor the right to sell the land and to cancel the lease on 30 days' notice. After an adjoining rancher purchased the leased property, the vendor gave notice of the lease cancellation to the lessee. The lessee sued the purchaser and the vendor, alleging that the purchaser had fraudulently induced the sale and that the vendor breached the lease because the lessee had an implied right of first refusal. The trial court granted the defendants' motions for summary judgment. Affirming, this court held that there was no evidence that the purchaser had acted improperly or with an improper motive to cause a breach of the lease, or that he wrongfully interfered with the plaintiff's business relationships or contractual rights. The court examined the purchaser's conduct and motive and found no evidence that he acted illegally or inequitably; therefore summary judgment was properly granted. Bar J Bar Cattle Co., Inc. v. Pace, 158 Ariz. 481, 763 P.2d 545, 548.

**Iowa,** 1985. Subsec. (b) quot. in sup. A bank refused to honor a cashier's check that it had made out to the plaintiff. The plaintiff had obtained the cashier's check by cashing a personal check from a third party whom the plaintiff had known lacked sufficient funds to cover the personal check. The plaintiff brought this action for the amount of the check and for compensatory and punitive damages. The jury found for the plaintiff against the bank, and this appeal followed. Affirming, this court noted the bank's contention that it could defend against its own cashier's check on the ground of fraud by the check's holder. The court noted that, although nondisclosure of a fact known to a person normally is not equivalent to an assertion that the fact does not exist, nondisclosure does constitute such an assertion by the person when he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which the party is making the contract and if nondisclosure amounts to a failure to act in good faith. Bossuyt v. Osage Farmers Nat. Bank, 360 N.W.2d 769, 774.

**Mass.App.**1988. Subsec. (c) cit. but dist. A deed conveyed more of the seller's land than the parties had previously agreed to convey. The buyer noted the discrepancy at the closing, and since the seller himself was not present, the seller's attorney agreed to the modification of the original agreement. The seller sued to reform the deed. The trial court denied relief. Reversing, this court held that the seller was entitled to reformation of the deed. The court stated that when one party to a contract was mistaken about a basic assumption that had a substantial adverse effect on that party's duties in the contract, while the other party had reason to know of the mistake, equitable relief was available. The court also stated that the attorney was not authorized to act as the agent of the seller at the closing, and therefore his assent to the modification of the agreement was not binding on the seller. Torrao v. Cox, 26 Mass.App.Ct. 247, 525 N.E.2d 1349, 1352.

**N.J.Super.**1985. Cit. in disc. A lessee sued the lessor for breach of contract, and the lessor counterclaimed for breach of the lease. At issue was the nonperformance by the lessee of a condition precedent in a commercial lease agreement, allegedly caused by the lessor's bad faith failure to disclose a material fact. The trial court granted summary judgment for the lessor, holding that the lessee had failed to sufficiently raise the issue of the lessor's bad faith. Reversing and remanding, this court held that, although the lessee had not fulfilled the condition precedent,

Copr. © 2007 The American Law Institute.

there was evidence that the lessor had failed to disclose a material fact; thus, summary judgment was improper because the condition could have been excused. The court stated that to establish bad faith, an express misrepresentation did not have to be shown; the requirement could be met by evidence of nondisclosure of a material fact. Allstate Redevelopment v. Summit Assoc., 206 N.J.Super. 318, 502 A.2d 1137, 1141.

**Va.**1988. Cit. in disc. A grantor conveyed property to the grantees, reserving a parking easement. The grantees filed a bill praying that the easement be removed due to mistake and fraud, and the grantor filed a cross-bill, alleging fraud and undue influence, and demanded rescission of the deed. The trial court ordered rescission of the deed, and this court affirmed, holding that the grantees had a duty to disclose the true contents and effect of the deed before the grantor signed it, and that the nondisclosure was the equivalent of a fraudulent assertion of a material fact, knowingly made with intent to mislead. The court stated that a contracting party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud. Spence v. Griffin, 236 Va.21, 372 S.E.2d 595, 599.

**Wash.App.**1985. Subsec. (b) quot. in disc. Purchasers of residential property sued the sellers for fraud, misrepresentation, and breach of an express warranty in connection with the sellers' failure to disclose a defect in the water system. The trial court dismissed the complaint, awarding attorney's fees to the sellers, and the purchasers appealed, contending that the sellers had a duty to disclose the unusual water piping arrangements and that failure to do so amounted to a material misrepresentation rendering the sellers liable for damages. This court affirmed, holding that the defect complained of was not a material defect substantially and adversely affecting the value and usefulness of the property. The court reasoned that the duty to disclose arises in such cases only when the undisclosed fact substantially and adversely affects the value of the property or operates to materially impair or defeat the purpose of the transaction. The court remanded as to the issue of attorney's fees. Mitchell v. Straith, 40 Wash.App. 405, 698 P.2d 609, 613.

**Wash.App.**1985. Coms. (a) and (b) cit. in disc. Franchisees sued the franchisor for negligent misrepresentation. The franchisees, who had purchased and then sold at a loss a yogurt franchise, charged that the franchisors had misrepresented the yogurt mix as a unique formula. Although the franchisor and the company that had developed the mix had treated the formula as a trade secret, they also had sold the mix to other customers. The trial court held that there was no misrepresentation and awarded the franchisor court costs and attorney's fees. Affirming, this court disagreed with the franchisee's contention that the franchisor should have disclosed the fact that the mix had been sold to other customers. The court concluded that a vendor was required to disclose only facts that it could reasonably assume were material to the transaction and held that the evidence supported the representation that the yogurt was unique. Morris v. International Yogurt Co., 41 Wash.App. 226, 703 P.2d 318, 320.

### Case Citations July 1989 -- June 1991:
**S.D.N.Y.**1990. Cit. in disc. Several banks that held the promissory notes of investors in a company sued the surety for payment of the defaulted notes, while the surety moved for an enforcement of its rights to recover from the defaulting investors. The court granted the banks' motions for partial summary judgment and denied the surety's motion for quia timet or exoneration relief, holding, inter alia, that under the terms of the bonds the surety had waived defenses to the payment of the notes, and that even if the waiver-of-defenses provisions in the surety bonds were void, the investors did not have valid defenses to payment of their notes; therefore, the surety was obligated on their behalf to make payment to the banks. The court specifically rejected the investors' defense of fraudulent inducement by the banks, stating that the banks did not have a duty to disclose information regarding "pooling" of funds and that no fiduciary duty existed between the banks and the investors. In re Gas Reclamation, Inc. Securities Litigation, 741 F.Supp. 1094, 1104, dismissed 924 F.2d 448 (2d Cir.1991).

**S.D.N.Y.**1990. Quot. in disc, subsec. (d) cit. in disc. The petitioner entered into a contract with the respondent whereby the petitioner was to manage offshore supply vessels purchased by the respondent. The respondent rescinded the contract upon learning that one of the petitioner's officers, who was supervising the refurbishing of the vessels, had previously been convicted of bank fraud. Upon the petitioner's demand for arbitration, a majority of an arbitration panel found for the petitioner, concluding that the nondisclosure of the criminal record did not justify

Copr. © 2007 The American Law Institute.

rescission. The petitioner moved to confirm the award, and the respondent filed a cross-motion to stay or vacate the award. This court granted the petition to confirm the award, holding that the nondisclosure was made without the kind of knowledge necessary to render it the equivalent of a misrepresentation. The court said that the respondent was not entitled to relief because it failed to show harm from reliance given the officer's offer to resign his position with the petitioner. U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F.Supp. 86, 90.

    **Colo.App.1990.** Subsec. (d), com. (f) cit. in disc. In a suit by a bank for foreclosure under a deed of trust, the borrower counterclaimed, inter alia, for breach of fiduciary duty. The borrower was allowed to add as a counterclaim defendant an adviser to a real estate sale, alleging that because of his special trust in the advisor's opinions and business acumen developed over 20 years of business dealings and social friendship, he had relied on the advisor's assessment of the real estate deal and had been induced to pursue a less attractive offer. The jury was instructed that a fiduciary duty may arise from a business or confidential relationship in which one party is induced to relax the care and vigilance it would have ordinarily exercised. This court reversed and vacated the trial court's judgment on the jury verdict against the advisor for breach of fiduciary duty, holding that judgment was precluded by the jury's inconsistent findings on other related claims. The court concluded that the instructions had equated fiduciary duty with a confidential relationship, and had erroneously advised the jury that, if the borrower trusted the advisor, it could find a breach of duty without considering how and if a confidential relationship had indeed arisen and determining the scope of any duty created. First Nat. Bank of Meeker v. Theos, 794 P.2d 1055, 1061.

    **Tex.App.1989.** Subsec. (c) cit. in disc. A couple purchased several tracts of land from a bank. The buyers were familiar with the land and, at closing, became aware that the deed contained additional tracts of land not bargained for. The buyers did not bring the mistake to the attention of bank officials. Subsequently, the bank discovered its mistake and sued the buyers, seeking to reform the deed. The trial court ruled for the bank. Affirming, this court held that the bank's mistake, combined with the buyers' concealment of their awareness of the mistake, amounted to a mutual mistake--a valid ground for reformation. The court noted that, while the buyers' conduct did not rise to the level of fraud, their unjust enrichment coupled with concealment was inequitable enough to justify reformation. Hamberlin v. Longview Bank & Trust Co., 770 S.W.2d 12, 14.

    **Wis.1980.** Cit. in disc. (citing § 303, T.D. No. 11, 1976, which is now s 161 of the Official Draft). A bank sued a surety to recover the balance owing on a consumer installment note and chattel security agreement, plus interest and costs. The defendant was a gratuitous cosigner for the principal debtor, who defaulted on the obligation and later filed for bankruptcy. After instructing the jury on theories of negligent and intentional misrepresentation and comparative negligence, the trial court entered judgment on a verdict for the bank. The intermediate appellate court reversed and granted the surety rescission. This court reversed and remanded for a new trial, noting that contract rather than tort law was appropriate. The court held the bank had a duty to make disclosure to the surety if the bank knew of facts that materially increased the risk beyond that which the bank had reason to believe the surety intended to assume, and the bank had a reasonable opportunity to communicate them to the surety; failure to disclose under these circumstances would be a defense to the surety obligation. Moreover, the contract would be voidable if the surety justifiably relied on any fraudulent or material misrepresentations made by the bank to obtain the surety's assent. First Nat. Bank & Trust Co., etc. v. Notte, 97 Wis.2d 207, 293 N.W.2d 530, 537.

### Case Citations July 1991 -- June 1996:

    **C.A.1,** 1993. Quot. in disc. Borrowers sued the Federal Deposit Insurance Corporation, as receiver of a failed bank, to recover damages and to enjoin it from collecting on promissory notes issued to them by the bank, alleging that the bank failed to disclose that the project for which the loans were made was subject to a notice of responsibility requiring the removal of hazardous waste from the property. Affirming the district court's dismissal of the case, this court held that since plaintiffs' misrepresentation claim based on nondisclosure, as much as one based on an affirmative assertion, was tantamount to a challenge to the truthfulness of the bank's warranty that the project was free of any notices of responsibility and thus was analogous to a breach of warranty claim, it was barred by a federal statute making invalid all agreements, including warranties, that tended to diminish the interest of defendant in any asset it acquired unless certain requirements were met. McCullough v. F.D.I.C., 987 F.2d 870, 873.

Copr. © 2007 The American Law Institute.

**C.A.3,** 1992. Cit. in sup., quot. in ftn. An employee who was promoted for performing well in his former position and then discharged from the job to which he was promoted sued his Chapter 11 debtor employer for compensation in accordance with his new employment contract. The bankruptcy court ruled for the defendant, finding that the plaintiff breached the new contract by performing negligently under the earlier employment agreement, and the district court affirmed. Vacating and remanding, this court held that more findings were necessary to determine whether the new contract was entered into by fraud or mistake. The court said that if the plaintiff concealed from the defendant his poor performance in his former position and the defendant promoted him on the basis of his reputation as a good performer, then the contract was induced by fraud or misrepresentation and was voidable. The court also said that the contract might be voidable under a theory of unilateral mistake if the defendant promoted the plaintiff in ignorance of the plaintiff's failure to perform well in his former position. In re Allegheny Intern., Inc., 954 F.2d 167, 178.

**C.A.7,** 1991. Com. (d) cit. in disc. A lessee sued a lessor for breach of lease after the lessor refused to finance improvements. The district court granted summary judgment to the lessor, on the ground that the failure of the lessee to mention its entitlement under the lease to purchase the property if financing negotiations broke down prevented proper negotiations and violated a duty of good faith. Reversing and remanding, this court held that genuine issues of material fact existed as to whether the lessee acted in bad faith in dealing with the lessor. The court said that, although Wisconsin law read into every contract a duty of good faith, it noted that there were situations in which a party might take advantage of another's ignorance without incurring liability. Market Street Associates Ltd. Partnership v. Frey, 941 F.2d 588, 594, on remand 817 F.Supp. 784 (E.D.Wis.1993), affirmed 21 F.3d 782 (7th Cir.1994).

**D.Hawaii,** 1993. Cit. in sup. Owner of building under construction sued surety for contractor principal, alleging, inter alia, fraudulent and negligent misrepresentation, fraudulent withholding of material information, and breach of contract arising from surety's refusal to cover allowance items in the construction contract. Denying surety's motion for summary judgment, the court held that surety could be found liable for fraudulent and negligent misrepresentation regardless of whether its alleged representation that the bond would cover allowance items was characterized as a factual or legal misrepresentation, and that owner stated a valid claim for nondisclosure because surety's alleged failure to inform owner of its policy regarding allowance items was a factual misrepresentation basic to the bond transaction. The court held, moreover, that surety's alleged fraud could also warrant reformation of the contract to make surety liable for allowance items, regardless of the principal's liability. Elliot Megdal & Assoc. v. Hawaii Planing Mill, 814 F.Supp. 898, 906.

**Ariz.App.**1994. Quot. in case cit. in sup. Purchasers of residential lot sued seller for, inter alia, negligent misrepresentation by omission. Plaintiffs, who required water service in order to construct a home on the lot, alleged that they were damaged by defendant's failure to inform them that the water company was overextended and unable to provide service. Reversing the trial court insofar as it entered summary judgment for defendant on this issue and remanding, this court held that because defendant was aware of plaintiffs' utility needs and had included in other purchasers' agreements a disclaimer regarding the availability of water, it owed plaintiffs a duty to disclose potential water service problems. Alaface v. National Inv. Co., 181 Ariz. 586, 892 P.2d 1375, 1385.

**Mass.**1993. Com. (b) quot. in case quot. in disc. Husband and wife rented an apartment from landlord who later sold apartment to another landlord. After wife became pregnant, an inspection of the apartment revealed high levels of lead-based paint. The apartment was deleaded over a period of four months, during which time the couple's newborn baby required medical intervention because of lead in his bloodstream. The couple sued, among others, the first landlord for violating the Massachusetts unfair trade practices statute by failing to disclose the presence of lead-based paint. Trial court entered judgment for the couple, holding that landlord's nondisclosure of presence of lead-based paint violated the statute. Reversing, this court held that the statute imposed no liability for nondisclosure in this case, since the nondisclosure was not material, knowing, and willful. There was no evidence that landlord knew of presence of lead-based paint, or that any complaints regarding lead-based paint were directed to the landlord while he owned the apartment. Underwood v. Risman, 414 Mass. 96, 605 N.E.2d 832, 835.

Copr. © 2007 The American Law Institute.

**Mo.**1995. Cit. in headnotes and sup. Investor sued securities broker and its employee for breach of fiduciary duty in her securities transactions, alleging that she was misled about the arbitration and loan provision forms. Trial court overruled defendants' motion to stay litigation and compel arbitration and appellate court affirmed. This court affirmed, holding, inter alia, that employee's silence was not a misrepresentation, and thus not fraud in the procurement. While stockbrokers owe customers a fiduciary duty, a broker's duty to disclose material facts does not include an obligation to discuss orally with a competent party conspicuous written provisions like the arbitration and loan clauses here. State ex rel. PaineWebber v. Voorhees, 891 S.W.2d 126, 127, 129, 130.

**N.Y.Sup.Ct.**1995. Illus. 4 cit. in disc. After home buyers discovered the presence of a chemical on the property, resulting from treatment for termites 19 years previously, they sued the sellers seeking rescission based on mutual mistake, rescission and damages for fraud or constructive fraud, and alleging breach of contract for the sale of an uninhabitable residence. This court dismissed plaintiff's claims, holding, inter alia, that plaintiff failed to state a cause of action for constructive fraud, because there was no misrepresentation of fact regarding termites or chlordane in that plaintiffs had access to the pertinent information and defendants informed plaintiffs of all they knew on the subject prior to the closing. Plaintiffs chose to go forward with the deal knowing that a termite condition once existed, not knowing the present state of the termite problem, and without attempting to protect themselves by adding a rider regarding the termite condition. Copland v. Nathaniel, 164 Misc.2d 507, 624 N.Y.S.2d 514, 522.

**Va.App.**1994. Subsec. (d) and com. (f) quot. in sup. A couple entered into a prenuptial agreement providing that the wife forfeited all marital rights she might otherwise have acquired in the husband's property. After being married four years, the wife filed for divorce and challenged the validity of the prenuptial agreement. The trial court nullified the prenuptial agreement. Affirming, this court held that the agreement was unenforceable because it was entered into by the wife without full and frank disclosure of the extent of husband's financial holdings and without the benefit of independent legal representation. The court noted that parties engaged to be married are not dealing at arm's length, as they have a special relationship of trust and confidence. Carpenter v. Carpenter, 19 Va.App. 147, 449 S.E.2d 502, 504.

### Case Citations July 1996 -- June 2001:

**Ct.Fed.Cl.**1997. Subsec. (b) cit. in disc. and headnote. A custodial services company that had been awarded a competitively bid contract with the Army abandoned the work when the Army required the company to adhere to wage rates set forth in a collective-bargaining agreement that were higher than those upon which the company had based its bid. As a result, the government terminated the contract for default. The company submitted a claim for relief, which was rejected by the contracting officer. This court granted the government's motion to dismiss, holding, inter alia, that the company was not free to recognize the contract's mistake and, at the same time, supply its own correction. Thus, if plaintiff knew at the time it acknowledged receipt of the contractual amendment that the collective-bargaining agreement was no longer in force, then it had an obligation to bring that fact to the government's attention. Ashford v. United States, 43 Fed.Cl. 1, 4, affirmed 178 F.3d 1311 (Fed.Cir.1998).

**D.Ariz.**1998. Cit. in case quot. in disc. Property buyers sued sellers and real estate brokers, alleging, in part, that defendants committed fraud and intentional misrepresentation during the listing of the property, during the advertisement of the property, and during the execution of the real property disclosure statement. This court granted in part and denied in part defendants' motion for partial summary judgment, holding, inter alia, that a jury could find that sellers were negligent in not informing plaintiffs that the main residence was a blocked-in mobile home and that some of the wells were inoperable and contained contaminated water. Coleman v. Watts, 87 F.Supp.2d 944, 953.

**D.Kan.**2001. Cit. in sup., subsec. (b) quot. in sup. An end-lender in the mortgage business sued an originator of mortgage loans for breach of contract, alleging that plaintiff accepted defendant's written offer to refinance or repurchase four loans from plaintiff if plaintiff first purchased two of those loans from defendant. Entering judgment for defendant, this court held that the alleged contract was unenforceable. Plaintiff's material misrepresentations regarding serious problems with the loans rendered the contract voidable by defendant; moreover, there was no consideration for the contract. Saxon Mortg., Inc. v. Mortgage Plus, Inc., 130 F.Supp.2d 1236, 1245, 1246.

Copr. © 2007 The American Law Institute.

**S.D.N.Y.**1998. Cit. in headnote, subsec. (a) cit. in disc. Criminal defendant moved for dismissal of a superseding indictment or for an order directing the government to grant him a cooperation agreement, which he argued prosecutors promised him in exchange for his participation in five proffer sessions. Denying the motion, the court held, in part, that government did not renege on assurances it made to defendant with respect to a cooperation agreement; that defendant could not rescind his proffers based on mutual mistake, since only he misunderstood the meaning of the promises allegedly made; and that defendant was not fraudulently induced into the proffer sessions by misrepresentations or nondisclosures on the part of government. U.S. v. Heatley, 39 F.Supp.2d 287, 311.

**N.D.Ohio,** 1996. Subsec. (d) cit. in headnotes and sup. Employer's president and an employee brought an ERISA action against a group health insurer, alleging that the insurer breached its obligation to inform them that, although insureds were required to pay 20% of the amounts billed by the hospitals, the insurer had discount agreements with the hospitals under which it was required to pay less than 80% of the amounts billed. Following entry of summary judgment for plaintiffs, the insurer moved for reconsideration. This court denied the insurer's motion, holding, inter alia, that insurer operated a discount scheme that was, with regard to its obligations under ERISA, undisclosed to the beneficiaries of its hospitalization policies. The court stated that none of the methods by which the discount scheme may have become known to members of the public, including some of insurer's beneficiaries, constituted in form or substance the notice that should and could have been given directly, and from the outset, in the pertinent plan documents. McConocha v. Blue Cross and Blue Shield Mut. of Ohio, 930 F.Supp. 1182, 1183, 1185.

**Alaska,** 1997. Cit. in disc., subsec. (a) cit. in disc., com. (b) quot. in disc. Campaign worker sued state political party and party chairman for, inter alia, breach of contract and misrepresentation after chairman reneged on an alleged oral promise to hire worker as party's executive director. The trial court entered judgment on a jury verdict awarding worker approximately $30,000 in damages. Affirming, this court held that, notwithstanding the Statute of Frauds, chairman's promise of employment was enforceable under the doctrine of promissory estoppel where worker forwent a similar position in reliance on chairman's offer; that the lower court did not err by failing to instruct the jury that worker was required to take definite and substantial action in reliance on chairman's promise; that chairman's status as a volunteer was not fatal to worker's misrepresentation claim; and that the damages awarded were not excessive in light of the evidence. Alaska Democratic Party v. Rice, 934 P.2d 1313, 1320.

**Ariz.**2000. Cit. in disc. Sellers of real property sued buyer's real estate agent for negligent misrepresentation, alleging that defendant failed to inform them that the buyer was or might have been unable to perform because of financial difficulties. Trial court granted defendant summary judgment, and the intermediate appellate court affirmed. This court reversed and remanded, holding, inter alia, that since the buyer had a duty to disclose her financial condition to the sellers, her agent had a duty to disclose. The court stated generally that a buyer could not present himself as a ready, willing, and able buyer if he knew that there was a significant risk that the deal would never close because of his inability to perform. Lombardo v. Albu, 199 Ariz. 97, 14 P.3d 288, 290.

**Colo.**1998. Illus. 11 cit. in disc. Oil company that had an exclusive right to explore for oil on Indian tribe property sued a competitor and its geologist, alleging trespass for conducting tests on the property and fraudulent concealment. Plaintiff alleged that defendants had a duty to disclose their knowledge regarding the tests before buying plaintiff's rights to the land. Trial court entered judgment for defendants, and the appellate court affirmed. This court affirmed, holding, inter alia, that defendants were not liable for fraudulent concealment, because they did not have a duty to disclose their knowledge of potential gas reserves to plaintiff prior to the sale. Mallon Oil v. Bowen/Edwards Associates, 965 P.2d 105, 112.

**Colo.App.**1996. Cit. in headnotes, illus. 10 and 11 cit. in disc. An oil and gas company that had a mineral development agreement with an Indian tribe sued a company that purchased interests in those oil and gas rights and the purchaser's employee, asserting claims for fraudulent concealment of the results of the purchaser's employee's desorption tests, misappropriation of geological data, and civil conspiracy. Trial court granted defendants summary judgment. This court vacated and remanded, holding, inter alia, that defendants did not have a duty to disclose their

findings of gas in the subject land from their geophysical tests. There was no relationship of trust and confidence between the two oil and gas exploration companies, as competitors, that would give rise to a duty to disclose. The information defendants acquired would not make untrue a previous representation, since there were no previous representations between the two regarding the amount of gas in the subject land. Furthermore, because the employee was rightfully on the land looking for coal, he was not a geophysical trespasser, and consequently, defendants had no duty to disclose their discovery of gas. Mallon Oil Co. v. Bowen/Edwards Assoc., 940 P.2d 1055, 1056, 1060, affirmed 965 P.2d 105 (Colo.1998). See above case.

**Iowa**, 1996. Cit. in disc., subsec. (b) cit. in case cit. in disc. Purchasers of a motor home sued dealer to rescind the purchase agreement based on misrepresentation, alleging, in part, that defendant failed to disclose to them the motor home manufacturer's troubled financial condition and its bankruptcy. The trial court granted the requested relief. Affirming and remanding, this court held, inter alia, that the trial court did not err in finding that defendant knew of the manufacturer's serious financial troubles prior to the sale of the motor home to plaintiffs. Hyler v. Garner, 548 N.W.2d 864, 872, 873.

**Wash.App.**2000. Quot. in case quot. in disc. After defendant in a case arising from a two-car accident moved to enforce a settlement agreement, plaintiff moved to declare the agreement void and unenforceable due to misrepresentation of a material fact. Reversing the trial court's order enforcing the settlement, this court held, inter alia, that a factual dispute existed as to whether defendant's attorney made an affirmative misrepresentation about the limits of defendant's automobile insurance policy; the court remanded for an evidentiary hearing. Brinkerhoff v. Campbell, 99 Wash.App. 692, 994 P.2d 911, 915.

### Case Citations July 2001 -- June 2006:

**C.A.7,** 2003. Quot. in sup. Motorcycle manufacturer sought rescission of its approval of transfer of dealership. District court granted summary judgment for transferee. Reversing and remanding, this court held, inter alia, that issues of fact precluded summary judgment as to whether transferee induced manufacturer to approve transfer of dealership by material or fraudulent misrepresentations. Harley-Davidson Motor Co., Inc. v. Powersports, Inc., 319 F.3d 973, 991.

**D.D.C.**2005. Cit. in disc. Serviceman sued various armed-services representatives, alleging, in part, that the Army's failure to disclose the possibility of an involuntary extension of his term of service constituted a misrepresentation that invalidated his enlistment contract. Denying serviceman's motion for a preliminary injunction ordering his immediate release from active military service, this court held, inter alia, that serviceman offered no evidence that he was induced to enter the enlistment contract by fraud or false representations; therefore, serviceman failed to make a clear showing that he was likely to succeed on his fraud claim. Qualls v. Rumsfeld, 357 F.Supp.2d 274, 284.

**S.D.Iowa,** 2005. Cit. in disc., subsec. (b) cit. and quot. in sup. Real-estate company sued competitor for, in part, breach of the implied covenant of good faith and fair dealing after defendant's proposed launch of a new office-exclusive marketing program allegedly threatened to breach a sublicense between the parties. This court granted plaintiff's motion to enforce settlement agreement, holding, inter alia, that defendant failed to show any basis in equity to rescind the agreement. Because plaintiff did not know, and had no reason to know, that its failure to disclose to defendant the fact that its president had made statements to an Internet news service about this litigation added to defendant's mistaken assumption that plaintiff had made no further public statements, there could be no finding that plaintiff failed to act in good faith through nondisclosure. Mid-America Real Estate Co. v. Iowa Realty, Inc., 385 F.Supp.2d 828, 835.

**D.Minn.Bkrtcy.Ct.**2005. Cit. in disc. Chapter 7 trustee brought adversary proceeding against lender, alleging breach of contract. Granting judgment for lender, this court held, inter alia, that, although the contract between lender and debtor was valid, it was procured by debtor's material and fraudulent misrepresentations, and, therefore, lender was entitled to rescission. In re Health Risk Management, Inc., 319 B.R. 181, 188.

Copr. © 2007 The American Law Institute.

**Conn.App.**2003. Cit. in case quot. in sup. Uncle brought action for strict foreclosure of a purchase-money mortgage on one of three properties he conveyed to his niece. Niece counterclaimed, alleging that uncle was guilty of fraud and misrepresentation regarding sale of property. Trial court entered judgment of strict foreclosure, and denied niece's counterclaim. This court reversed, holding, inter alia, that a reasonable factfinder would conclude that uncle's representation to niece that all the properties were legal and good was material to her ultimate decision to buy, and that uncle knew otherwise as to the two other properties when he pressured her to buy the three properties. There was a reasonable nexus between counterclaim and uncle's conduct in inducing niece's making of note and mortgage. Morgera v. Chiappardi, 74 Conn.App. 442, 451, 813 A.2d 89, 95, on remand 2003 WL 22705753 (Conn.Super.2003).

**Del.Ch.**2000. Cit. in ftn., subsec. (d) cit. in ftn. After member of limited-liability company was removed from the company and his interest declared forfeited, he sued the remaining members for breach of the parties' operating agreement. Entering judgment for plaintiff, the court held, inter alia, even if plaintiff fraudulently induced defendants to enter into the operating agreement by failing to disclose his improper fee arrangement with a potential lender, the alleged fraud did not justify plaintiff's removal or bar recovery because defendants clearly did not rely on it when they signed the operating agreement. Walker v. Resource Development Co. Ltd., L.L.C., 791 A.2d 799, 816.

**Iowa,** 2004. Quot. in sup., subsec. (d) cit. in sup., com. (f) quot. in sup. City and its claim administrator sued for specific performance of settlement agreement with city transit driver who sought workers' compensation benefits. Driver counterclaimed for rescission. Trial court ordered rescission due to misrepresentation and failure to disclose material facts. Court of appeals reversed, holding that claims representative made no material misrepresentations. This court affirmed, holding that driver did not establish rescission of settlement based on false representations or failure to make required disclosures. Claims representative's role did not involve relation of trust sufficient to invoke enhanced duty of disclosure, and parties' discussion of future medical benefits was with regard to settlement offer's terms and did not pertain to driver's potential entitlement in litigation. City of Ottumwa v. Poole, 687 N.W.2d 266, 269-270.

**Nev.**2004. Cit. in sup. and in ftn., subsecs. (b) and (c) quot. in sup. Buyer of two incorrectly described parcels of city property at a public auction sued county for trespass, inverse condemnation, and nuisance after taxes were assessed on parcels. County counterclaimed, seeking reformation of deed or rescission of contract. Trial court ordered buyer to reform contract to reflect property that county had intended to sell. This court affirmed reformation order, but remanded for partial refund to buyer. Given Nevada case law, the Restatement Second of Contracts, and the trend among western states to allow reformation, the court held that trial court did not err in reforming contract between buyer and county to describe remnant parcels based on county's unilateral mistake. Buyer knew about mistake but failed to disclose it to county. NOLM, LLC v. County of Clark, 100 P.3d 658, 661, 663.

**N.M.App.**2003. Com. (b) quot. in sup. Buyers of home that lacked permits required by state law sued sellers, electrical and mechanical subcontractor, and public utility, asserting claims for, among other things, rescission and negligent misrepresentation. Trial court granted defendants summary judgment. Reversing in part and remanding, this court held, inter alia, that contractual disclaimer that buyers were purchasing home on their own examination did not prevent rescission based on sellers' fraud. McElhannon v. Ford, 134 N.M. 124, 73 P.3d 827, 832.

**Or.App.**2003. Com. (e) cit. and quot. in sup. Seller of timberland sued to compel buyer to reconvey land and timber, alleging that conveyance resulted either from mutual mistake by seller and buyer or from seller's unilateral mistake coupled with buyer's inequitable conduct. Trial court entered judgment for seller, reforming contract, ordering buyer to reconvey property, and awarding seller $2 million. This court affirmed, holding that buyer engaged in inequitable conduct that perpetuated, and sought to take advantage of, seller's unilateral mistake. Buyer, which knew that property description of parties' agreement was broad enough to encompass land and timber not within parties' original and continuing contemplation, made no effort to correct either its previous misrepresentation or seller's continuing misapprehension. Pioneer Resources, LLC v. D.R. Johnson Lumber Co., 187 Or.App. 341, 376, 378, 68 P.3d 233, 253, 254.

Copr. © 2007 The American Law Institute.

REST 2d CONTR § 161                                                                Page 19
  Restatement (Second) of Contracts § 161 (1981)

**Case Citations July 2006 -- April 2007:**

**N.M.App.**2006. Com. (e) cit. in sup. As part of his wrongful-termination suit, terminated employee alleged that his former employer misrepresented that an arbitration requirement had been removed from the employment agreement, thereby inducing him to sign it. The trial court granted defendant's motion to compel arbitration. This court reversed and remanded, holding, inter alia, that plaintiff produced evidence to support the determination that his failure to read the contract was justified by defendant's conduct. The court pointed to plaintiff's allegations that, after he objected during negotiations to language referring to compulsory arbitration, defendant represented that such language had been fully removed from a revised version of the agreement forwarded to plaintiff. Sisneros v. Citadel Broadcasting Co., 140 N.M. 266, 142 P.3d 34, 40.

(1981)

  REST 2d CONTR § 161
  END OF DOCUMENT

Copr. © 2007 The American Law Institute.