29.    I believe I had a right to expect that Mr. Thompson and Visa were acting in good faith; indeed, Visa was obligated to do so under Section XXII.A of the Agreement (See paragraph 17 above). It is now apparent they were not doing so. With the benefit of 20/20 hindsight, I can see how Mr. Thompson and Visa set things up. Visa indicated both to Maritz's business people and me that, upon the completion of the transition from Maritz to Carlson, we would meet to discuss Maritz's invoices containing the amounts that Visa owed to Maritz. Visa never indicated in connection with these conversations or communications that it was claiming that Maritz was in default, or that Visa was entitled to any payment from Maritz, much less a payment of tens of millions of dollars. Nor did Mr. Thompson say anything to me about it, until two weeks after I had signed the July 9 letter containing the agreement to arbitrate.

30.    In my discussions with Mr. Thompson, my objection all along has been to the agreement to arbitrate, not with the negotiation and mediation steps, and I made that clear to Mr. Thompson. During the July 23 phone calls with Mr. Thompson, I told Mr. Thompson that we did not have an agreement to arbitrate what he then disclosed for the first time as tens of millions of dollars in claims, but that Maritz was willing to proceed with the negotiation session scheduled for the following day. I also told him that I never would have agreed to arbitrate such claims without the benefit of outside counsel and that in light of his revelation of Visa's claims, we (Maritz) needed to consult with outside counsel. Maritz did so, contacting Charlie Weiss of the Bryan Cave LLP law firm the next day. Mr. Weiss was on vacation between July 30 and August 14. During that time, I had a few telephone calls with Mr. Thompson in which I told him that Maritz's objection was to the arbitration and not to the negotiation or mediation steps and that Maritz was willing to schedule and discuss the dates. places and structure of the negotiation and mediation and that as soon as Mr. Weiss returned we would schedule a telephone call with Mr. Thompson to discuss these matters.

31.    On August 16, Mr. Weiss and I had a telephone call with Mr. Thompson wherein we discussed proceeding with negotiation and mediation. Mr. Thompson, as he had in several other telephone conversations with me, began to discuss the dispute over the arbitration issue, but since I had made it clear in several telephone conversations that Maritz objected to the arbitration,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2778303                           8                    DECLARATION OF STEVE GALLANT
                                                        CASE NO. C07-5585 JSW

1    I told Mr. Thompson that since both of us recognize that we have a disagreement over the

2    arbitration, let us agree to disagree on this issue and use our time to plan the negotiation and

3    mediation. We then discussed proceeding with the negotiation and possible dates and places and

4    also proceeding with a mediation if the negotiation was not successful. Mr. Thompson expressed

5    some reluctance in going forward, noting that he had engaged in such negotiations in the past

6    only to learn that during the negotiation process the other party surprised him by filing suit. We

7    discussed whether the parties could resolve that concern by simply agreeing to some type of

8    agreement wherein the parties would agree not to file suit while the negotiation and mediation

9    were going on. He said he would think about it. Maritz made it clear that it was willing to

10   proceed with the negotiation and mediation but not the arbitration.

11           32.    On August 22, Mr. Weiss and I participated in another phone call with

12   Mr. Thompson and his partners, Mr. Holzapple and Mr. Lemberg, to discuss the procedures and

13   dates for a negotiation session. On August 30, again, I participated along with Mr. Weiss in a

14   telephone call with Mr. Holzapple and Mr. Lemberg regarding the structure of the negotiation

15   meeting and the dates for mediation.

16           33.    The attached e-mail from Mr. Thompson to Mr. Weiss and me dated August 21,

17   2007 (attached hereto as Exhibit 6) makes it clear that Maritz agreed that it was willing to proceed

18   with the first two stages of the dispute resolution process outlined in the July 9 letter agreement,

19   namely negotiation and mediation, but reserved its position on arbitration. Contrary to what

20   Mr. Thompson described in the first sentence of the e-mail, it was not Maritz's position that the

21   July 9, 2000 letter agreement as a whole was unenforceable, but only that the arbitration provision

22   in the letter was unenforceable. As acknowledged by Mr. Thompson in the following sentences

23   of his e-mail, Maritz had said it was willing to proceed with negotiation and mediation but not

24   with arbitration.

25           34.    This was further corroborated by Mr. Thompson's letter to me of September 6,

26   2007 (Exhibit 7 hereto) confirming our proceeding with, and the procedures and structure for, the

27   negotiation and then proceeding with the mediation process, along with his e-mail of September 7

28   (Exhibit 8 hereto) in which he confirms the parties' understandings that they are in agreement

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2778303

9

DECLARATION OF STEVE GALLANT
CASE NO. C07-5585 JSW

1    with the first and second stages as outlined in the July 9 letter while reserving their respective

2    positions regarding the third stage.

3        35.    Thus, contrary to the assertions of Visa's response to Martz's motion to stay

4    arbitration, I consistently and continually, from the first time that Mr. Thompson disclosed to me

5    that Visa had claims of tens of millions of dollars and sought money from Maritz, made it clear to

6    Mr. Thompson that Maritz had no issue with the negotiation and mediation steps outlined in the

7    July 9 letter, but Maritz objected to and did not believe that the arbitration provision was valid.

8        36.    At least several other background facts are important in attempting to put things

9    into perspective.

10        (a)    I knew that Maritz and Visa had agreed in January or February of 2007 to a

11    new target launch date of early July 2007.  No one had ever told or indicated to me that

12    liquidated damages of any amount were or somehow would be accruing during that

13    timeframe and I am confident I would have been told if a claim for liquidated damages

14    had been made against Maritz.  In addition, if Maritz had known that Visa would be

15    claiming that liquidated damages were accruing, it is inconceivable to me that Maritz

16    would have agreed to postpone the launch date for such a lengthy period of time without

17    first reaching agreement with respect to the liquidated damages.  The first time that I

18    heard that Visa was claiming that liquidated damages had been accruing for many months

19    was on July 23 or 24, 2007, when Mr. Thompson said it.

20        (b)    I understood in approximately March or April 2007 (prior to Visa's

21    April 20, 2007 termination notice) that Maritz and Visa had been discussing one or more

22    other possible joint business opportunities.  Such discussions would have been

23    inconsistent with the notion that Visa was seeking tens of millions of dollars in damages

24    from Maritz.

25        (c)    Visa was terminating the Agreement for convenience rather than based

26    upon any alleged default or material breach.  Had Visa been seeking to terminate due to an

27    alleged material breach, Visa would have been obligated to give Maritz notice and an

28    opportunity to cure, which Visa had not done.  Therefore, it did not occur to me that Visa

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2778303                    10                 DECLARATION OF STEVE GALLANT
                                              CASE NO. C07-5585 JSW

1    would be seeking damages as if it were terminating for a default or material breach since

2    that was not the basis for the termination.

3        (d)    As Mr. Thompson is well aware, my objection has always been that he

4    misled me into agreeing to arbitrate. I have never refused to meet with Visa (which was

5    the first stage in the July 9 letter) or to mediate (the second stage in the letter) due to the

6    deceit and fraud and in fact Maritz did meet with Visa and subsequently engaged in a

7    mediation, all in accordance with the first two steps of the July 9 letter. My complaint is

8    and has been that we (Maritz) were fraudulently induced into agreeing to arbitrate.

9        (e)    Indeed, both Maritz and I were still willing to meet on July 24, 2007 – the

10    day after Mr. Thompson revealed his multi-million dollar surprise. Both I and Charlie

11    Weiss (Maritz's outside counsel who became involved after Mr. Thompson revealed

12    Visa's claims) repeatedly made clear to Mr. Thompson in August 2007 that Maritz was

13    willing to meet and also to mediate, but that Maritz was not obligated to arbitrate.

14        (f)    Although my July 23, 2007 email to Mr. Thompson is not worded as

15    artfully as in retrospect I would have preferred, my reference to "our previous agreement"

16    was directed to the agreement to arbitrate.

17        (g)    Similarly, my August 8, 2007 email to Mr. Thompson focuses on the

18    agreement "to arbitrate." The last sentence in the third paragraph of that email again

19    reflects that the arbitration aspect was the issue in dispute. My reference to the

20    "agreement to mediate" in the previous sentence of the email merely reflects somewhat

21    loose language on my part. As previously stated, both I and Maritz's outside counsel,

22    Charlie Weiss, made very clear to Mr. Thompson in August 2007 that Maritz was willing

23    to mediate and that Maritz's concerns tied to the arbitration agreement.

24        (h)    In my email to Mr. Thompson dated August 22, 2007 at 9:17 a.m., I state at

25    the end of the email that "[a]lthough I suppose it goes without saying, we do disagree with

26    your view of the binding effect of the letter you attached. I have typed these thoughts

27    quickly so I apologize if they are incomplete but there are merely meant to be a thought

28    starter for our conversation." As indicated, I had typed my thoughts quickly and therefore

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2778303           11           DECLARATION OF STEVE GALLANT
CASE NO. C07-5585 JSW

1    noted specifically that they might be incomplete.  The "binding effect of the letter"

2    mentioned in my August 22 email pertains only to the arbitration.  As the rest of my email

3    reflects, and as Mr. Thompson was told a number of times by Mr. Weiss and me, Maritz

4    was willing to participate in the business meeting/negotiations and the mediation as set

5    forth in the July 9 letter.  In fact, by early September of 2007, the parties had agreed that

6    the business meeting and mediation would take place and were working to secure dates,

7    locations and a mediator.

8            (i)      In my mind there was a clear distinction between the business negotiations

9    and the mediation on the one hand, and the arbitration on the other.  Only the arbitration

10   could result in a unilaterally-imposed binding decision.  The other two required a mutual

11   agreement between the parties.  Despite Visa's duplicity, we were willing to proceed with

12   the informal efforts to resolve the parties' disputes.  We were not willing, however, to

13   give up our rights to a jury trial, to conduct full discovery, etc., in connection with an

14   arbitration.

15           (j)      I never agreed that any claim as to whether Visa had fraudulently induced

16   Maritz into arbitrating could be decided by an arbitrator.  I had no idea that Maritz had

17   such a claim, since I also had no idea that Mr. Thompson and Visa had been concealing

18   that it planned to seek tens of millions of dollars from Maritz.

19           37.    Notwithstanding the discussion with Mr. Thompson in mid-August of 2007 that

20   the parties could enter into an agreement in which the parties would agree not to file suit, Visa

21   unexpectedly filed suit against Maritz in federal court in California on Friday, November 2, 2007

22   and commenced arbitration proceedings against Maritz in California that same day, just five days

23   before the parties' mediation was scheduled to commence the following Wednesday,

24   November 7, 2007.

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2778303                                     12                    DECLARATION OF STEVE GALLANT
                                                                  CASE NO. C07-5585 JSW

1     I declare under penalty of perjury under the laws of the United States of America that the

2   foregoing is true and correct and that this declaration was executed on January 18, 2008.

3

4   _____

5                              Steve Gallant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2778303                              13              DECLARATION OF STEVE GALLANT
                                                     CASE NO. C07-5585 JSW