MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (California Bar No. 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

Attorneys for Defendant and Counter-Claimant
MARITZ INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VISA U.S.A. INC.<br><br>Plaintiff<br><br>vs.<br><br>MARITZ INC. d/b/a MARITZ LOYALTY MARKETING,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | CIVIL ACTION NO. C07-5585 JSW<br><br>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY ARBITRATION PENDING DETERMINATION OF ARBITRABILITY<br><br>DATE:     Friday, February 22, 2008<br>TIME:      9:00 a.m.<br>PLACE:    Courtroom 2, 17th Floor<br>JUDGE:    Hon. Jeffrey S. White |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 3

    A. Visa Misstates the Standard for Determining Whether a Stay of the Arbitration Should be Granted ........................................................................... 3

    B. Maritz Has Provided Sufficient Legal Authority to Show That This Court May Stay Visa's Arbitration Proceeding Pending Resolution of Arbitrability .......................................................................................................... 6

    C. Maritz's Fraudulent Inducement Claim Must Be Decided By The Court, And Not An Arbitrator ............................................................................................ 7

        1. The Court Must Resolve Claims That The Agreement to Arbitrate Was Procured by Fraud .................................................................................. 7

        2. Visa Concedes That This Court Must Resolve Maritz's Fraud Claim .............................................................................................................. 8

    D. The Court Need Not Reach Whether There Is "Clear and Unmistakable" Evidence That The Parties Agreed To Arbitrate Arbitrability .............................. 9

        1. The Court Cannot Determine What Issues (Including Arbitrability) Were Submitted to Arbitration Until it First Determines Whether the Parties Entered Into a Valid Agreement to Arbitrate in the First Place ............................................................................................................. 9

        2. The Letter Agreement Contains No "Clear and Unmistakable" Evidence that Maritz Intended to Arbitrate Arbitrability Relating to Either the Letter Agreement or Any Claims that the Agreement to Arbitrate Was Fraudulently Induced ..................................................... 11

    E. Visa's Request That This Court Determine Whether Visa Fraudulently Induced Maritz is Premature ................................................................................ 13

III. CONCLUSION .................................................................................................................. 14

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*A. and E. Plastik Pak Co. v. Monsanto Co.*
   396 F.2d 710 (9th Cir. 1968) .................................................................................. 3, 4

*Alascom, Inc. v. ITT North Electric Co.*,
   727 F.2d 1419 (9th Cir. 1984) ....................................................................................... 4

*Appelra Corp. v. Illumina, Inc.*, |
   282 F. Supp. 2d 1120 (N.D. Cal. 2003) ........................................................................ 6

*AT&T Technologies, Inc. v. Communications Workers*,
   475 U.S. 643 (1986) ................................................................................................ 7, 11

*Buckeye Check Cashing*,
   546 U.S. at 445 .................................................................................................. 7, 9, 10

*Camping Const. Co. v. District Council of Iron Workers*,
   915 F.2d 1333 (9th Cir. 1990) .................................................................................. 3, 4

*Certain Underwriters at Lloyd's, London v. Simon*,
   Slip. Op., 2007 WL 3047128, at *3 (S.D. Ind. October 18, 2007) ............................. 13

*Chastain v. Union Sec. Life Ins. Co.*,
   502 F. Supp. 2d 1072 (C.D. Cal. 2007) ........................................................................ 9

*Doctor's Associates, Inc. v. Distajo*,
   66 F.3d 438 (2d Cir. 1995) ........................................................................................... 8

*Downer v. Siegel*,
   489 F.3d 623 (5th Cir. 2007) ........................................................................................ 7

*Litton Financial Planning Div. v. N.L.R.B.*,
   501 U.S. 190 (1991) ................................................................................................. 6, 7

*Moseley v. Electronic & Missile Facilities*,
   374 U.S. 167 (1963) ........................................................................................... 7, 9, 11

*Nagrampa v. Mailcoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) ....................................................................................... 7

*Oblix, Inc. v. Winiecki*
   374 F.3d 488 (7th Cir. 2004) ...................................................................................... 13

*Packeteer Inc. v. Valencia Sys. Inc.*,
   2007 WL 707501, *1, 2 (N.D. Cal. March 2007) ....................................................... 13

*Pipe Trades Council, U.A. Local 159 v. Underground Contrs. Ass'n*,
   835 F.2d 1275 (9th Cir. 1987) ................................................................................... 6, 7

*Poponin v. Virtual Pro, Inc.*,
   2006 WL 2691418, *1 (N.D. Cal. 2006) .................................................................... 12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ............................................................................................... 7, 10

*Santana Row Hotel Partners v. Zurich Am. Ins. Co.*
   2007 WL 914464 ................................................................................................. passim

*Smith Wilson Co. v. Trading & Dev. Establishment*,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

744 F. Supp. 14 (D.D.C. 1990) .................................................................................... 4, 6

*Weis Builders, Inc. v. Kay S. Brown Living Trust*,
   236 F. Supp. 2d 1197 (D. Colo. 2002),
   *aff'd*, 94 Fed. Appx. 687 (10th Cir. 2004) ................................................................. 4, 6

**STATUTES**

28 U.S.C. § 1292(a)(1) ....................................................................................................... 4
9 U.S.C. § 4 ................................................................................................................... 3, 6

**OTHER AUTHORITIES**

11A *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
   and Procedure* § 2952 ..................................................................................................... 5

Martin Domke, DOMKE ON COMMERCIAL ARBITRATION § 22:5 (3d. Ed.
   2007) ............................................................................................................................... 5

Martin Domke, DOMKE ON COMMERCIAL ARBITRATION § 22:8 (3d. Ed.
   2007) ............................................................................................................................... 4

**RULES**

Federal Rule of Civil Procedure 65(b) ............................................................................... 1
Federal Rule of Civil Procedure 65(b)(1) ...................................................................... 1, 5
Local Rule 7-3 .................................................................................................................... 1

20195165.4

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

iii

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

## SUMMARY OF ARGUMENT

The Motion to Stay Arbitration filed by Defendant and Counterclaimant Maritz Inc. ("Maritz") seeks only two narrow forms of relief: a stay of the duplicative arbitration initiated by Plaintiff and Counterclaim Defendant Visa USA Inc. ("Visa") the same day Visa commenced this action; and a threshold determination by this Court that it, and not the arbitrator, must first fully adjudicate Maritz's claim that it was fraudulently induced to arbitrate before this matter can proceed to arbitration.

Rather than focus on these two narrow issues, Visa seeks to shortcut the first by suggesting the standard for Maritz's motion to stay is the same as a motion for injunctive relief (which is untrue), and go beyond the second by later asking this Court to adjudicate prematurely Maritz's highly factual fraudulent inducement claim in the absence of any discovery. Each of Visa's arguments in this regard is irrelevant and thus should be disregarded.

As to those issues that are properly within the scope of Maritz's Motion, Visa argues that the July 9, 2007 letter agreement ("Letter Agreement") pursuant to which the parties agreed to arbitrate must be determined by the arbitrator, and not this Court, because Maritz is challenging the agreement as a whole, not just the arbitration provision in the letter agreement. This argument conveniently ignores (1) Maritz's repeated claim that it is only the arbitration provision in the Letter Agreement to which Maritz objects; and (2) the undisputed fact that the other two provisions in the Letter Agreement concerning a settlement negotiation and mediation, respectively, were carried out by Maritz. More importantly, Visa virtually ignores (relegating it only to a footnote) the recent case of *Santana Row Hotel Partners v. Zurich Am. Ins. Co.* in which Judge Ware of this Court expressly held that separate agreements to arbitrate, like the agreement at issue here, must be decided by the Court, and not an arbitrator.

In an effort to avoid this fatal flaw, Visa argues that there exists "clear and unmistakable" evidence that the parties intended for the arbitrator to adjudicate arbitrability. As explained below, the Court need not even consider this issue in light of *Santana Row* and other cases. However, even if it did, the language on which Visa relies for this claim is far from sufficient to divest this Court of its jurisdiction to adjudicate arbitrability.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

1

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The Motion to Stay Arbitration (the "Motion" or "Motion to Stay Arbitration") filed by Defendant and Counterclaimant Maritz Inc. ("Maritz") seeks only two narrow forms of relief: a stay of the duplicative arbitration initiated by Plaintiff and Counterclaim Defendant Visa USA Inc. ("Visa") before the American Arbitration Association ("AAA") the same day Visa commenced this action; and a threshold determination by this Court that it, and not the AAA, must first adjudicate Maritz's claim that it was fraudulently induced to arbitrate before this matter can proceed to arbitration.[1]

Visa seeks to confuse the issues by stating without any supporting authority that the legal standard for Maritz's motion to stay is the same as a motion for injunctive relief. Contrary to Visa's claim, Courts have often granted stays of arbitration without requiring rigid adherence to the rules for injunctive relief.

Visa also states, again without any authority, that the injunctive standard Maritz must meet to stay the arbitration is that of a temporary restraining order under Federal Rule of Civil Procedure 65(b), instead of a preliminary injunction. Visa claims that Maritz failed to submit an affidavit or verified complaint as required by Rule 65(b), but fails to mention that such elements are only necessary when, unlike here, one party does not give the other side notice. Even if Maritz were held to a Rule 65(b)(1) "TRO without notice" or preliminary injunction standard, Maritz meets the standard. Based on Maritz's Counterclaim, its Motion to Stay, the Declarations of Steve Gallant, Mark Peterman, Doris Lyons and Kelvin Taylor, and this Reply, the Court has ample basis for granting Maritz's Motion.

---

[1] Maritz filed its Motion to Stay Arbitration on December 20, 2008 and noticed the hearing for February 8, 2008 (the earliest available date on the Court's calendar). By Order of this Court, Visa's Opposition was due on January 11, 2008, and Maritz's Reply was due on January 18, 2008. In response to Maritz's Motion, Visa filed a Motion to Compel Arbitration on January 4, 2008 (the last day on which Visa could still get a February 8 hearing date). Under Local Rule 7-3, Maritz's Opposition is due January 18, 2008 and Visa's Reply is due on January 25, 2008. Because of the overlapping nature of these pleadings, Maritz respectfully suggests that the Court consider all the parties' pleadings collectively.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

1    Visa next argues that Maritz's claim that it was fraudulently induced to arbitrate must be decided by an arbitrator, and not this Court, because Maritz supposedly is challenging the July 9, 2007 letter agreement to arbitrate ("Letter Agreement") as a whole. Visa is wrong. Maritz has made clear that it objects only to the arbitration provision in the July 9 Letter; indeed, Maritz has already complied with the negotiation and mediation aspects of the letter. Maritz's challenge to the arbitration provision puts its claim squarely within the exception noted in *Buckeye Check Cashing*. *See, e.g., Buckeye Check Cashing,* 546 U.S. at 445-46 (". . . *unless the challenge is to the arbitration clause itself,* the issue of the contract's validity is considered by the arbitrator.") (emphasis added).

Even if Maritz were challenging the entire Letter Agreement as Visa suggests, Maritz still prevails. Under the recent decision of *Santana Row Hotel Partners v. Zurich Am. Ins. Co.*, Judge Ware of this Court held that a fraudulent inducement claim directed to a separate agreement to arbitrate – like the stand-alone Letter Agreement at issue here – must be decided by the Court, and not an arbitrator.

Knowing that it is unable to avoid this inescapable conclusion, Visa then suggests, without any legal authority, Maritz's fraudulent inducement claim must still go to an arbitrator because there is "clear and unmistakable" evidence that the parties agreed to submit the issue of arbitrability to an arbitrator. As explained below, the Court need not and should not even consider this issue because a fraudulently induced agreement to arbitrate is no more valid than any other fraudulently induced agreement. Indeed, to hold otherwise would allow a party to fraudulently induce another party to agree to arbitrate, and then rely on that same fraudulently induced agreement to force the other party to arbitrate arbitrability.

Even if the Court were to consider this claim, there is *no* "clear and unmistakable" evidence that the parties intended to arbitrate. Visa's support for its claim comes from an ambiguous footnote in the parties' one-and-a-half page Letter Agreement that refers to the AAA Commercial Rules in connection with *procedural* matters. However, the Letter Agreement specifically pertains to the parties' "claims for damages resulting from alleged breaches of the [Master Services] Agreement and related claims …." Nothing in the Letter Agreement states that

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

1  Maritz is agreeing to arbitrate disputes as to the Letter Agreement itself, much less that Maritz
2  agreed to arbitrate whether it was fraudulently induced into agreeing to arbitrate. Put simply, the
3  language in the parties' Letter Agreement referring to the AAA commercial rules is far from
4  sufficient to show that the parties intended to arbitrate arbitrability. Indeed, when faced with even
5  more expansive language than that in the Letter Agreement, courts still have been reticent to find
6  "clear and unmistakable" evidence of an intent to arbitrate arbitrability.

7  Lastly, Visa requests that this Court proceed to actually adjudicate Maritz's fraudulent
8  inducement claim in the absence of any discovery. Visa's request is improper because (1) Maritz
9  itself did not raise it in its moving papers and (2) the request is premature. As explained in
10 Maritz's Opposition to Visa's Motion to Compel, and as will be explained in more detail in
11 Maritz's upcoming motion on discovery (to be filed January 25, 2008), Section 4 of the Federal
12 Arbitration Act ("FAA") provides that a party like Maritz is entitled to a jury trial on the validity
13 of its agreement to arbitrate. 9 U.S.C. § 4. At a minimum, Maritz is entitled to conduct
14 meaningful discovery in order to develop the evidentiary record and to "submit evidentiary facts
15 showing that there is a dispute of fact to be tried" as if it were opposing a motion for summary
16 judgment.

## II. ARGUMENT

### A. Visa Misstates the Standard for Determining Whether a Stay of the Arbitration Should be Granted

Visa asserts numerous arguments why it claims the parties' dispute should be adjudicated by an arbitrator and not this Court. Visa contends, for example, that Maritz's Motion must be denied on procedural grounds because Maritz has failed to establish the requisite elements for a temporary restraining order ("TRO"). There are several reasons why Visa's contention is untenable.

Visa has not cited *any* authority (and Maritz has been unable to find any such authority) standing for the proposition that the legal standard for a motion to stay an arbitration is the same as the standard for obtaining injunctive relief. Visa misplaces reliance on *A. & E. Plastik Pak*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

1  *Co. v. Monsanto Co.* and *Camping Const. Co. v. District Council of Iron Workers*. Neither case
2  supports Visa's proposition.

3  In *A. and E. Plastik Pak Co. v. Monsanto Co.*, the Ninth Circuit considered whether it had
4  appellate jurisdiction under 28 U.S.C. § 1292(a)(1) to consider the district court's denial of a
5  TRO staying arbitration.[2] 396 F.2d 710, 713 (9th Cir. 1968). The Court analogized the TRO
6  staying arbitration to an injunction for the purpose of determining that 28 U.S.C. § 1292(a)(1)
7  applied. The Court did *not*, however, hold that the standard for granting a motion to stay is the
8  same as a motion for injunctive relief. *See id.*; *cf.* Martin Domke, DOMKE ON COMMERCIAL
9  ARBITRATION § 22:8 (3d. Ed. 2007) (stating that in order to stay an arbitration *pending appeal*,
10 one must show "both irreparable injury and probable success on the merits.").

11 Similarly, in *Camping Const. Co. v. District Council of Iron Workers*, the Ninth Circuit
12 considered whether a preliminary injunction (not a TRO) granting a stay of an arbitration in a
13 labor dispute fell under the anti-injunction provisions of the Norris-LaGuardia Act. 915 F.2d
14 1333, 1343 (9th Cir. 1990). Once again, the Court analogized such a stay to an injunction this
15 time for the purpose of determining that the Norris-LaGuardia Act precluded such activity. As in
16 *A. and E. Plastik Pak Co.*, the Court did *not* go so far as to the say the standard for granting a
17 motion to stay is the same as a motion for injunctive relief.

18 Contrary to Visa's claim, Courts have often granted stays of arbitration without requiring
19 rigid adherence to the rules for a preliminary injunction. Indeed, Courts have often stayed
20 arbitration proceedings through the use of motion practice alone. *See, e.g., Alascom, Inc. v. ITT*
21 *North Electric Co.*, 727 F.2d 1419, 1420 (9th Cir. 1984) (granting stay of arbitration without any
22 discussion concerning elements of a temporary restraining order); *Smith Wilson Co. v. Trading &*
23 *Dev. Establishment*, 744 F. Supp. 14, 15 (D.D.C. 1990) (granting motion to stay arbitration
24 proceedings without any reference to a temporary restraining order); *Weis Builders, Inc. v. Kay S.*
25 *Brown Living Trust*, 236 F. Supp. 2d 1197, 1204 (D. Colo. 2002) (granting motion to stay

---

[2] 28 U.S.C. § 1292(a)(1) states in relevant part: "The Courts of Appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ."

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

arbitration without any reference to a temporary restraining order "pending the determination that a valid agreement to arbitrate exists between the parties"), *aff'd*, 94 Fed. Appx. 687 (10th Cir. 2004). This is especially the case where, as here, Maritz has sought declaratory relief (in Count V of its Counterclaim against Visa) in connection with its claim that it was fraudulently induced to arbitrate. *See* Martin Domke, DOMKE ON COMMERCIAL ARBITRATION § 22:5 (3d. Ed. 2007) (in the section cited by Visa, it states: "Among the *options* available to parties once a dispute arises are . . . the option of asking for declaratory relief to determine the rights of the parties under the arbitration agreement, such as whether the disputed issues are arbitrable, or the extent of the arbitrators' power under the arbitration agreement.").[3]

Visa states, again without any legal authority, that the injunctive standard Maritz must meet to stay the arbitration is that of a temporary restraining order, not a preliminary injunction. Visa misleadingly suggests that an affidavit or verified complaint is required in order for a TRO to issue, citing Federal Rule of Civil Procedure 65(b)(1). Rule 65(b)(1), however, applies only where a TRO is being granted "without written or oral notice to the adverse party or that party's attorney." *See* 11A *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2952 at 275 (confirming that "neither [an affidavit nor a verified complaint] technically is necessary if notice has been given to the adverse party and the case for a restraining order can be demonstrated in some other appropriate fashion"). Here, both Visa and its counsel have had ample notice: Maritz filed its Motion on December 20, 2007; Visa has had an opportunity to file briefing papers; and the hearing is scheduled for February 22, 2008.

Even if Maritz were held to a Rule 65(b)(1) "TRO without notice" or preliminary injunction standard, Maritz meets the standard.[4] Based on Maritz's Counterclaim, its Motion to

---

[3] Though the next sentence in Domke on Commercial Arbitration states that "declaratory relief should be sought while staying court action," it does not limit this option solely to such a procedural posture.

[4] Visa also misstates the elements Maritz would have to establish in order to obtain injunctive relief. "Where the injunctive relief sought is a stay of arbitration, the inquiry is somewhat different [from a standard analysis of preliminary injunction factors]. Because the right to proceed with an arbitration must be based upon agreement of the parties, the court must determine any issues which may preclude arbitration of the underlying dispute. The focus is not on whether the movant will ultimately succeed in the underlying dispute, but whether he must pursue that dispute through arbitration." *Breyer v. First Nat'l Monetary Corp.*, 548 F. Supp. 955 (D.N.J. 1982) (citation omitted).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

1  Stay, the Declarations of Steve Gallant, Mark Peterman, Doris Lyons and Kelvin Taylor, and this
2  Reply, the Court has ample basis for granting Maritz's Motion.

3    **B.**  **Maritz Has Provided Sufficient Legal Authority to Show That This Court May Stay Visa's Arbitration Proceeding Pending Resolution of Arbitrability**
4

5    After providing this Court with the wrong standard for determining a motion to stay
6  arbitration, Visa then tries to suggest that this is the only standard available by seeking to
7  distinguish those cases cited by Maritz in its moving papers in ways that are both misleading and
8  disingenuous. As an example, Visa urges this Court to disregard Maritz's reliance on *Pipe*
9  *Trades Council, U.A. Local 159 v. Underground Contrs. Ass'n* and *Litton Financial Planning*
10 *Div. v. N.L.R.B.*, because Maritz did not quote those portions of these cases addressing "clear and
11 unmistakable" evidence, which Visa states Maritz knows is present and controlling here. 835
12 F.2d 1275, 1278 (9th Cir. 1987); 501 U.S. 190, 208-09 (1991); Visa's Opposition, p. 6 and fn. 2.
13 As explained below, not only does no such evidence exist, this Court does not even need to
14 consider this issue.

15   Maritz, however, has provided sufficient authority to show that courts like this one have
16 the authority to stay arbitration proceedings pending a resolution of arbitrability. *See Appelra*
17 *Corp. v. Illumina, Inc.*, 282 F. Supp. 2d 1120, 1123 (N.D. Cal. 2003) (acknowledging state
18 court's decision to stay arbitration proceedings pending resolution of issues of arbitrability and
19 other issues related to the parties' agreement); *see also Smith Wilson Co. v. Trading & Dev.*
20 *Establishment*, 744 F. Supp. 14, 15 (D.D.C. 1990) ("Therefore, the arbitration proceedings
21 pending before the American Arbitration Association must be stayed and may continue only if the
22 Court (or a jury), see 9 U.S.C. § 4, has determined that the plaintiffs are bound by the arbitration
23 provision of the 'Agreement.'"); *Weis Builders, Inc. v. Kay S. Brown Living Trust*, 236 F. Supp.
24 2d 1197, 1204 (D. Colo. 2002) (granting motion to stay arbitration without any reference to a
25 temporary restraining order "pending the determination that a valid agreement to arbitrate exists
26 between the parties"), *aff'd*, 94 Fed. Appx. 687 (10th Cir. 2004).

27
28

### C. Maritz's Fraudulent Inducement Claim Must Be Decided By The Court, And Not An Arbitrator

Whether the dispute between Visa and Maritz is arbitrable is a threshold question for the Court, *not* an arbitrator, to decide. *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 208-209 (1991) (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651 (1986)) (whether a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court, and a party cannot be forced to "arbitrate the arbitrability question."); *Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.*, 835 F.2d 1275, 1278 (9th Cir. 1987) ("[T]he district court has the duty to 'interpret the agreement' and to determine 'in the first instance whether the dispute [should] be resolved through arbitration.' [citation omitted.] The arbitrator should not determine his or her own jurisdiction.").

#### 1. The Court Must Resolve Claims That The Agreement to Arbitrate Was Procured by Fraud.

As set forth in Maritz's Opposition to Visa's Motion to Compel Arbitration, Maritz has established a *prima facie* claim that it was fraudulently induced to agree to arbitrate. It is well established that such claims must be adjudicated by the Courts, not by an arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it."); *Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 170-71 (1963) (holding that a court must determine whether there was fraud in the inducement on the arbitration clause); *Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 445 (2006) (quoting and approving *Prima Paint*); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) ("When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must determine whether the arbitration provision is invalid and unenforceable"); *see also Downer v. Siegel*, 489 F.3d 623, 627 (5th Cir. 2007) ("[T]he arbitration clause is enforceable unless the plaintiffs were fraudulently induced into agreeing to the arbitration clause itself");

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

*Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 457 (2d Cir. 1995) (if the arbitration clause was induced by fraud, there can be no arbitration).

### 2. Visa Concedes That This Court Must Resolve Maritz's Fraud Claim

Visa does not and cannot dispute this well-settled authority. Indeed, Visa has effectively conceded at pages 9-10 of its Motion to Compel Arbitration that the Court must determine arbitrability before referring the case to arbitration:

> In ruling on a petition to compel arbitration *the Court considers* only two questions: (1) *whether an enforceable arbitration agreement exists* between the parties; and (2) whether the claims at issue are covered by the arbitration agreement.

Visa's Motion to Compel Arbitration, pp. 9-10 (emphasis added).

Visa nevertheless argues that the Court should defer this issue to the arbitrator because Maritz's fraud claim goes to the parties' "entire" Letter Agreement, not just to the arbitration provision. *See, e.g.,* Visa's Motion to Compel Arbitration, p. 5. Visa also tries (unsuccessfully) to distinguish *Santana Row*. Both arguments fail.

First, Maritz is claiming only that the agreement to arbitrate is unenforceable because it was fraudulently induced. *See, e.g.,* Gallant Decl. ¶ 21; *see also* Exhibits K and M to the Declaration of Roderick Thompson in Support of Visa's Motion to Compel. Maritz has already complied with the negotiation and mediation aspects of the Letter Agreement. Maritz's challenge to the arbitration provision puts its claim squarely within the exception noted in *Buckeye Check Cashing. See, e.g., Buckeye Check Cashing,* 546 U.S. at 445-46 ("*unless the challenge is to the arbitration clause itself,* the issue of the contract's validity is considered by the arbitrator.") (emphasis added); *see also Santana Row,* 2007 WL 914464, at *2 ("[A] district court faced with a claim that only the arbitration provision was fraudulently induced must consider such a claim before compelling arbitration.") (citations omitted).

Second, even if Maritz were claiming that the "entire" Letter Agreement had been fraudulently induced, under *Santana Row* the arbitrability issue would still have to be decided by the Court. The Letter Agreement is only one-and-a-half pages; the agreement to arbitrate is a significant portion; and the letter is a stand-alone, separate and distinct from the MSA. As the

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

Court stated in *Santana Row*: "[Here] the fraud claim runs solely to an agreement to arbitrate. Accordingly, the [fraud] claim must be considered by the court as a prerequisite to [the agreement's] enforcement." *Santana Row,* 2007 WL 914464, at *2. The *Santana Row* principle squarely applies, and under *Santana Row* the Court must decide the arbitrability issue.

Visa has not and cannot effectively distinguish *Santana Row*. As a result, Visa is reduced to arguing "that the *Santana Row* Court's interpretation of *Buckeye Check Cashing* regarding severability is mistaken." *See* Visa's Motion to Compel, p. 6, n. 1.

### D. The Court Need Not Reach Whether There Is "Clear and Unmistakable" Evidence That The Parties Agreed To Arbitrate Arbitrability

Visa also argues that the Court can nevertheless defer to the arbitrator because there is "clear and unmistakable" evidence that the parties intended to submit questions of arbitrability to the AAA. Visa's Motion, pp. 7-9. Visa again is incorrect.

#### 1. The Court Cannot Determine What Issues (Including Arbitrability) Were Submitted to Arbitration Until it First Determines Whether the Parties Entered Into a Valid Agreement to Arbitrate in the First Place

As here, when a Court is faced with claims that the agreement to arbitrate was procured by fraud, it should not (and may not need to) reach the secondary issue of *what* issues the parties agreed to submit to the arbitrator. Logically the Court cannot determine *what* issues (including arbitrability) should be arbitrable until it determines *whether* an enforceable agreement to arbitrate exists in the first place. *See, e.g., Moseley,* 374 U.S. at 170-71 (when faced with fraud in the inducement on the arbitration clause, the Court must proceed to trial of this potentially dispositive issue first – it need not reach issues related to arbitrability of the dispute until *after* the fraud claim is resolved); *see also Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1075 (C.D. Cal. 2007) ("[A]rbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

Again, this Court in *Santana Row* was definitive: the Court explicitly confirmed that it must *first* resolve a fraud in the inducement claim *before* compelling arbitration on *any* issue – including the issue of arbitrability. *See Santana Row,* 2007 WL 914464, *2 ("the [fraud] claim must be considered by the court as a prerequisite to [the agreement's] enforcement); *see also id.*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

9

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

("[A] district court faced with a claim that only the arbitration provision was fraudulently induced must consider such a claim *before* compelling arbitration.").

In a separate pleading, Visa attempts to distinguish *Santana Row* on the grounds that the agreement "apparently" did not contain "clear and unmistakable" evidence of intent to arbitrate arbitrability. Visa's Opposition to Motion to Stay, p. 10, n. 4. However, Visa overlooks the obvious point that the Court did not address this secondary issue because it *did not need to in light of the underlying fraud in the inducement claim. Santana Row,* 2007 WL 914464, at *2. An agreement obtained by fraud that contains a provision stating that an arbitrator determines arbitrability is just as void as any other fraudulently obtained agreement.

Stated differently, in the context of a fraudulent inducement claim, the question of whether there is "clear and unmistakable" evidence of intent to arbitrate arbitrability is irrelevant. If the court determines that the fraud claim relates to an entire agreement (such as the MSA), the matter is referred to an arbitrator. If, however, the Court determines that the fraud claim relates to the arbitration provision (or a stand-alone agreement to arbitrate, as both here and in *Santana Row*), then under *Buckeye Check Cashing* (and *Prima Paint*), the Court, not the arbitrator, must first adjudicate the fraud claim and determine whether the provision is valid. Only *after* the Court determines the provision is valid can it consider whether the provision contains "clear and unmistakable" evidence to arbitrate arbitrability, but by then the determination of fraud has already been made. To hold otherwise would allow a party to fraudulently induce a party to agree to arbitrate, and then rely on that same fraudulently induced agreement to force the other party to arbitrate arbitrability.

This interpretation is supported by the fact that not one of the cases cited by Visa was resolved in the context of a fraud in the inducement claim. *See, e.g.,* Visa's Opposition , pp. 7-9 and n. 2. Instead, by stark contrast to this case, Visa's cases deal with an entirely different context – where the parties *conceded that an arbitration agreement existed*, but argued that its scope did not cover the claims at issue and/or that enforcement of the agreement would be unconscionable or unfair. *Id.* Given that context, it is hardly surprising that those courts turned to the issue of whether "clear and unmistakable" evidence confirmed that the parties agreed to

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

arbitrate the issue of arbitrability. Here, to reach the derivative question of what specific issues the parties intended to arbitrate *before* considering whether the parties effectively entered into an agreement to arbitrate in the first place, would not only be futile, but contrary to basic contract interpretation. *See, e.g., Kaplan,* 514 U.S. at 945; *Moseley,* 374 U.S. at 170-71; *Santana Row Hotel Partners,* 2007 WL 914464, at *2.

**2. The Letter Agreement Contains No "Clear and Unmistakable" Evidence that Maritz Intended to Arbitrate Arbitrability Relating to Either the Letter Agreement or Any Claims that the Agreement to Arbitrate Was Fraudulently Induced**

Even if the issue were relevant in the context of Maritz's fraud claim, there is certainly no "clear and unmistakable" evidence that the parties intended to the arbitrator to resolve issues of arbitrability as Visa argues.

Aside from the parties' disagreement as to whether the arbitration agreement is enforceable, what is clear is that on the face of the Letter Agreement, there is no agreement that any dispute arising out of or relating to the Letter Agreement, as distinguished from the MSA, is to be resolved by arbitration. To the extent the arbitration provision is enforceable (which Maritz denies), that provision states only that the parties' "respective claims for damages resulting from alleged breaches of the [Master Services] Agreement and related claims" would be resolved by arbitration. It does *not* say that any claims or differences with respect to the Letter Agreement will be resolved by arbitration. *See Kaplan,* 514 U.S. at 945 (a "court should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakable[e]' evidence that they did so."); *see also AT&T Technologies, Inc*, 475 U.S. 643, 649, (1986) (indicating it is the Court's role to determine whether "clear and unmistakable" evidence exists). Significantly, Visa has not filed a demand with the AAA to arbitrate a dispute resulting from breach of the MSA or related claims, but rather has filed a demand to arbitrate the dispute relating to the validity of the arbitration agreement in the Letter Agreement.

The arbitration provision in dispute is not contained in and not a part of the MSA. Instead, it is found only in the Letter Agreement, which is separate and distinct from the MSA

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

1  that Visa terminated for convenience in the Spring of 2007.  Clearly, the Letter Agreement does
2  not obligate Maritz to arbitrate the validity of the Letter Agreement itself or any provision in it.

3  Visa claims that references to the AAA's Commercial Rules provide "clear and
4  unmistakable" evidence that the parties intended to arbitrate arbitrability.  Visa's Opposition, pp.
5  11-12.  To the contrary, these vague references do not come close to establishing "clear and
6  unmistakable" evidence that the parties agreed to arbitrate challenges to the arbitration provision
7  in the Letter Agreement.

8  Footnote 1 of the Letter Agreement, upon which Visa relies, simply is not "clear and
9  unmistakable" evidence that the parties agreed to arbitrate the validity of the arbitration provision
10 in the Letter Agreement.  Footnote 1 of the letter states that if the parties "are unable to agree on
11 any aspect of the procedure, such disagreement will be resolved by the applicable rules and
12 procedures" of the AAA.  This footnote, however, relates only to resolution of claims resulting
13 from alleged breaches of the MSA, and not to any disputes regarding the validity of the Letter
14 Agreement.  In addition, footnote 1 of the Letter Agreement appears to invoke the AAA
15 Commercial Rules in connection with the procedure for the overall dispute resolution procedure,
16 including the negotiations and mediation, which is non-sensical.  At most, this footnote merely
17 confirms that the AAA Commercial Rules are meant to apply to disagreements concerning the
18 *procedure* for the arbitration of disputes pertaining to the MSA, not disagreements related to the
19 Letter Agreement itself.

20 The cases upon which Visa relies are inapposite, as they contain either broader or more
21 explicit arbitration provisions, including provisions that encompass the agreement in issue (unlike
22 here, where the arbitration provision in the Letter Agreement pertains to disputes under the MSA,
23 not the Letter Agreement itself.  *Cf., e.g.,* Visa's Opposition, p. 11, fn. 5 (citing, *inter alia,*
24 *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, *1, 2-4 (N.D. Cal. 2005) (in contrast to the
25 language at issue here, the relevant arbitration provision explicitly provided that "[t]he Arbitrator
26 shall have the exclusive authority to resolve any dispute relating to the interpretation,
27 applicability, enforcement or formation of this Agreement . . . "); *Poponin v. Virtual Pro, Inc.*,
28 2006 WL 2691418, *1 (N.D. Cal. 2006) (arbitration provision at issue stated that "*any disputes*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

12

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

*'arising in connection with the present agreement'"* would be subject to the ICC rules) (emphasis added); *Packeteer Inc. v. Valencia Sys. Inc.*, 2007 WL 707501, *1, 2 (N.D. Cal. March 2007) (Whyte, J.) (relevant language provided that "*any dispute concerning this agreement* . . . shall be resolved by binding arbitration . . . under the [AAA] rules) (emphasis added)).

When faced with even more expansive language than that in the Letter Agreement, courts still have been reticent to find "clear and unmistakable" evidence of intent to arbitrate arbitrability. For example, in *Oblix, Inc. v. Winiecki*, the arbitration clause read, in pertinent part: "'any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be resolved exclusively by binding arbitration . . . in accordance with the rules then in effect of the [AAA].'" 374 F.3d 488, 490 (7th Cir. 2004). Despite this broad language, the Seventh Circuit found that this arbitration clause did not reach the issue of arbitrability. *Id.* Similarly, in *Certain Underwriters at Lloyd's, London v. Simon,* the court held that the language "any disputes arising from this [agreement] . . . shall be referred to arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association," did not reflect "clear and convincing" evidence that the parties agreed to submit questions of arbitrability to an arbitrator. 2007 U.S. Dist. LEXIS 77686, at *3, *4 (S.D. Ind. October 18, 2007).

### E. <u>Visa's Request That This Court Determine Whether Visa Fraudulently Induced Maritz is Premature.</u>

Visa asks the Court to rule on Maritz's highly factual fraudulent inducement claim even though Visa has refused to allow Maritz to conduct meaningful discovery on this issue. Because Visa is not the moving party, it is not entitled to seek relief from this Court that is outside the scope of Maritz's Motion to Compel. Moreover, it would be premature at this juncture for the Court to rule on the underlying issue of fraudulent inducement. Maritz needs discovery to flesh out Visa's misconduct and to develop a full evidentiary record pertaining to Visa's misconduct.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

13

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW

### III. CONCLUSION

For the reasons set forth above, Maritz respectfully requests that its Motion to Stay the Arbitration be granted.

Dated: January 18, 2008

MANATT, PHELPS & PHILLIPS, LLP

By: s/Ryan S. Hilbert
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260
*Attorneys for Defendant and Counter-Claimant*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

14

MARITZ'S REPLY IN SUPPORT
OF MOTION TO STAY
CASE NO. C07-5585 JSW