MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (California Bar No. 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Attorneys for Defendant and Counter-Claimant
MARITZ INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VISA U.S.A. INC.<br><br>Plaintiff<br><br>vs.<br><br>MARITZ INC. d/b/a MARITZ LOYALTY MARKETING,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | CIVIL ACTION NO. C07-5585 JSW<br><br>OPPOSITION TO MOTION TO STAY ACTION AND TO COMPEL ARBITRATION<br><br>DATE: Friday, February 22, 2008<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 2, 17th Floor<br>JUDGE: Hon. Jeffrey S. White |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1

**TABLE OF CONTENTS**

2

**Page**

3    SUMMARY OF ARGUMENT ............................................................................................. 1

I.    INTRODUCTION ................................................................................................... 1

4    II.   FACTUAL BACKGROUND ................................................................................. 3

5          A.    The Master Services Agreement ................................................................ 3

6          B.    Visa's Termination of the MSA .................................................................. 3

7          C.    Visa Intentionally Withholds Its Claim For Tens of Millions of Dollars
                 From Maritz ................................................................................................. 4

8          D.    Visa Discloses Its Claim For Tens of Millions of Dollars Against Maritz
                 After Inducing Maritz to Agree to Arbitrate and After the Transition to
9                Carlson Has Been Completed ...................................................................... 6

10         E.    The Parties Attempt to Resolve Their Differences Through the First Two
                 Steps of the July 9, 2007 Letter Agreement .............................................. 7

11         F.    Maritz Seeks to Stay the Duplicative and Overlapping Arbitration
                 Proceeding .................................................................................................. 8

12   III.  ARGUMENT ......................................................................................................... 8

13         A.    Visa's Request for a Stay of this Case is Premature ................................. 8

14         B.    The Court, Not The Arbitrator, Must Resolve Maritz's Fraud Claim .................. 9

           C.    The Court Need Not Reach Whether There Is "Clear and Unmistakable"
15               Evidence That The Parties Agreed To Arbitrate Arbitrability ............................ 10

16         D.    The Court Should Defer Resolving Maritz's Fraud Claim Until The Parties
                 Have Been Able To Conduct Discovery And Be Fully Heard On The Issue ....... 11

17               1.    Visa's Request That the Court Rule on the Issue of Arbitrability is
                       Premature ....................................................................................... 11

18               2.    The Court Cannot Resolve Maritz's Fraud Claim as a Matter of
19                     Law .................................................................................................. 12

                       a.    Visa's Counsel Had a Duty to Disclose ........................................ 12

20                     b.    Whether the Information Visa Withheld as to Visa's Claim
21                           for Tens of Millions of Dollars is Material is a Question of
                             Fact That Cannot be Resolved at This Point ................................ 14

22                     c.    Whether Maritz Personnel Justifiably Relied on Visa and
                             Mr. Thompson's Representations and Omissions Involves
23                           Factual Issues That Cannot Be Decided Until Maritz Has
                             Conducted Discovery .................................................................. 15

24   IV.   CONCLUSION ...................................................................................................... 15

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Buckeye Check Cashing Inc. v. Cardegna*,
546 U.S. 440 (2006) .................................................................................. 1, 2, 9, 10

5

*Cicone v. URS Corp.*,
183 Cal. App. 3d 194 (1986) .................................................................... 12, 13

6

*Cmax, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .................................................................... 8

7

*Doctor's Associates*,
107 F.3d at 131 .......................................................................................... 11, 12

8

*Horn v. Guaranty Chev. Motors*,
270 Cal. App. 2d 477 (1969) .................................................................... 14, 15

9

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979),
*cert. denied*, 444 U.S. 827, 100 S. Ct. 51, 62 L. Ed. 2d 34 (1979) ........................ 9

10

*Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*,
501 U.S. 190 (1991) .................................................................................. 9

11

*Moseley v. Electronic & Missile Facilities*,
374 U.S. 167 (1963) .................................................................................. 11

12

*Nagrampa v. Mailcoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .................................................................. 9

13

*Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground
Contractors Ass'n of Northern Cal.*,
835 F.2d 1275 (9th Cir. 1987) .................................................................. 9

14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .................................................................................. 9

15

*Santana Row Hotel Partners, L.P. v. Zurich America Ins. Co.*,
Slip. Op., 2007 WL 914464 (March 20, 2007) .................................... 1, 2, 9, 10, 11

16

*United Steelworkers of America v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (U.S. 1960) .......................................................................... 9

17

*Vega v. Jones, Day, Reavis & Pogue*,
121 Cal. App. 4th 286 (2004) ................................................................. 12, 13, 15

18

## STATUTES

19

9 U.S.C. § 3 ......................................................................................................... 8

20

9 U.S.C. § 4 ......................................................................................................... 11

21

Restatement (Second) of Torts § 551 ................................................................. 13, 14

22

Restatement (Second) of Torts § 551(a) ............................................................ 13

23

Restatement (Second) of Torts § 551(b) ............................................................ 13, 14

24

Restatement (Second) of Torts § 551(e) ............................................................ 14

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

**OTHER AUTHORITIES**

Martin Domke, DOMKE ON COMMERCIAL ARBITRATION § 22:6 (3d. Ed.
    2007) ................................................................................................................................... 9

**RULES**

ABA Model Rule 4.1 .............................................................................................................. 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iii

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

**SUMMARY OF ARGUMENT**

Visa offers no basis for its argument that this Court should concede jurisdiction of Maritz's fraud claim to an arbitrator, or in the alternative, should dispose of Maritz's fraud claim as a matter of law. All relevant authority confirms that the Court, not the American Arbitration Association ("AAA"), must resolve the threshold issue of whether the agreement to arbitrate in the parties' July 9, 2007 letter ("Letter Agreement") was procured by fraud. Visa cannot dispute, and does not effectively distinguish, this compelling law.

Instead, Visa argues that an arbitrator must resolve Maritz's fraud in the inducement claim because Maritz is challenging the letter agreement as a whole, not just the arbitration provision. Visa's argument ignores (1) that Maritz objects only to the arbitration provision in the letter agreement; (2) that the other dispute resolution techniques in the letter agreement were performed; and (3) the recent case of *Santana Row Hotel Partners v. Zurich Am. Ins. Co.* (decided by Judge Ware of this Court) confirms that fraud claims concerning separate agreements to arbitrate, like the agreement at issue here, must be decided by the Court.

To avoid these fatal flaws, Visa also argues that there exists "clear and unmistakable" evidence that the parties intended for the arbitrator to adjudicate arbitrability. But, as explained below, the Court need not and should not even consider this issue because a fraudulently induced agreement to arbitrate is no more valid than any other fraudulently induced agreement.

Visa's alternative request that the Court should resolve Maritz's fraud claim *as a matter of law* is premature and fundamentally flawed. In a situation such as this, Section 4 of the Federal Arbitration Act ("FAA") provides that a party like Maritz is entitled to a jury trial on the validity of its agreement to arbitrate. 9 U.S.C. § 4. At a minimum, Maritz is entitled to conduct discovery and "submit evidentiary facts showing that there is a dispute of fact to be tried" as if it were opposing a motion for summary judgment. In urging that the Court summarily dispose of Maritz's fraud claim, Visa also ignores that: (1) Visa and its attorney had a duty to disclose that Visa intended to assert a claim for tens of millions of dollars against Maritz (*see* Restatement (2d) of Torts § 551), and (2) whether this information was material and/or subject to justifiable reliance are questions of fact not properly resolved on Visa's Motion.

1 | I.    **INTRODUCTION**

2      Visa urges that because Maritz is claiming fraud as to the "entire" letter agreement to

3 arbitrate, the arbitrator should resolve this threshold issue.  Visa's Motion, p. 5 (citing *Buckeye*

4 *Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)).  In *Santana Row Hotel Partners*,

5 Judge Ware of this Court flatly rejected such a reading of *Buckeye*.  *See, e.g., Santana Row Hotel*

6 *Partners, L.P. v. Zurich America Ins. Co.*, Slip. Op., 2007 WL 914464 (March 20, 2007) (Order

7 Denying Motion to Compel Arbitration).  As this Court explained, when the fraud claim runs

8 solely to the agreement to arbitrate – *not* to the "entire" underlying contract as a whole as was the

9 case in *Buckeye* – the Court must first resolve the fraud claim before compelling arbitration.  *Id.*,

10 2007 WL 914464 at *2.  Here, the underlying Master Service Agreement ("MSA") with Visa

11 does not contain an arbitration provision; rather, the agreement to arbitrate is contained in a stand-

12 alone letter, and the agreement to arbitrate is precisely what is at issue.  As in *Santana Row*,

13 Maritz contends that Visa fraudulently induced it to enter into an agreement to arbitrate, as

14 memorialized in the parties' July 9, 2007 letter.  Under *Santana Row*, and all other relevant

15 authority, the Court thus should decide the threshold issue of fraud.

16      In a futile attempt to distinguish *Santana Row*, Visa claims that Maritz is only challenging

17 the arbitration provision in the letter agreement, not an "entire", stand-alone agreement to

18 arbitrate like the one at issue in *Santana Row*.  Visa's Opposition to Maritz's Motion to Stay, p.

19 10, n. 4.  However, the holding in *Santana Row* did not turn on such a distinction.  Instead, the

20 court held that when a party resisting arbitration contends that the agreement to arbitrate (as

21 opposed to the underlying substantive contract as a whole) was procured by fraud, the Court and

22 not an arbitrator resolves the claim.[1]  *Santana Row*, 2007 WL 914464, at *2.  Visa now illogically

23 insists that Maritz challenges only the *arbitration provision* in the letter agreement", not the other

24 two alternative dispute processes set forth in that agreement, despite the fact that these two other

25 processes have already been completed by the parties pursuant to that Letter Agreement.  *See*

26

27 [1]    Stated differently, the fraudulent inducement at issue ties directly to the agreement to arbitrate, and that
agreement is not buried in a much broader, all-encompassing agreement like the MSA.  Instead, it is a key provision
28 of a narrow, stand-alone agreement, where the other provisions have already been satisfied.

1   Visa's Opposition to Maritz's Motion to Stay, p. 9.  In attempting (unsuccessfully) to distinguish

2   *Santana Row,* Visa has thus conceded that Maritz's claim falls squarely within the exception

3   noted in *Buckeye Check Cashing* – an exception that, until now, Visa contorted to avoid.  *See,*

4   *e.g., Buckeye Check Cashing,* 546 U.S. at 445 (if a fraud claim goes to an *arbitration provision*

5   *only,* the Court must resolve it).

6       Visa then compounds its error by claiming that the Court should nevertheless cede

7   jurisdiction to the AAA because there is "clear and unmistakable" evidence that the parties

8   intended to arbitrate arbitrability.  To the contrary, the Court need not and should not reach this

9   issue (if at all) until *after* it determines whether the agreement to arbitrate arbitrability was itself

10  procured by fraud, and a fraudulently induced agreement to arbitrate arbitrability is just as void

11  any other fraudulently induced agreement.

12      Unlike here, none of Visa's cases deal with a fraud claim challenging *whether* the parties

13  entered into a valid agreement to arbitrate – a claim that, by definition, subsumes the secondary

14  issue of *what* issues were submitted to arbitration.  Instead, Visa's cases are in an entirely

15  different category – where the parties *admitted* an agreement to arbitrate was formed, but

16  challenged the scope of the agreement.  For this reason alone, none of Visa's authority is relevant

17  to the issues before this Court.  Even if this secondary question were relevant, however, (which it

18  is not) there is no "clear and convincing" evidence that the parties' Letter Agreement reflects an

19  intent by Maritz to arbitrate arbitrability.

20      Although this Court eventually must resolve Maritz's fraud claim as a threshold matter

21  before this matter may proceed to arbitration, Visa's request that the Court resolve the claim now

22  based solely on its one-sided argument is misguided and premature.  Overwhelming precedent –

23  including the 2006 Supreme Court decision in *Buckeye* – and common sense require that

24  discovery be allowed on these threshold issues, and that they be fully adjudicated.

25      Finally, Visa's suggestion that the Court can or should resolve Maritz's fact-specific fraud

26  claim as a matter of law is incorrect.  Visa and its counsel, Mr. Thompson, had a duty to disclose

27  that Visa would be seeking tens of millions of dollars in damages from Maritz when it procured

28  Maritz's agreement to arbitrate.  Whether Mr. Thompson's failure to do so was material, and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1  whether Maritz justifiably relied on his representations or omissions in entering into the letter

2  agreement, are questions of fact not properly resolved as a matter of law, without an opportunity

3  for discovery on these issues.  *See* Maritz's Motion in Support of Discovery (to be filed on

4  January 25, 2008).

5  **II.    FACTUAL BACKGROUND**

6      **A.    The Master Services Agreement**

7      In April 2006, Maritz and Visa entered into the Master Services Agreement ("MSA"),

8  pursuant to which Maritz agreed, among other things, to develop, deploy and operate for Visa and

9  its members a software-based rewards program (the "Rewards Program").  *See, e.g.,* Declaration

10  of Steve Gallant ("Gallant Decl.") Exh. 2.  The MSA does not contain an arbitration provision.

11  The MSA does specifically require, however, that "[t]he Parties [*i.e.,* Visa and Maritz] shall act in

12  good faith and reasonably in interpreting this Agreement and the Related Agreements and

13  resolving any disputes that arise thereunder."  *Id.* ¶ 17; *see also* ¶ 29.

14      **B.    Visa's Termination of the MSA**

15      On April 20, 2007, Elizabeth Buse of Visa called and then sent Kelvin Taylor of Maritz a

16  letter abruptly and unexpectedly terminating the MSA.  Declaration of Kelvin Taylor ("Taylor

17  Decl.") ¶ 2; Gallant Decl., Exh. 1.  The letter made clear that Visa was not terminating the MSA

18  because Maritz was in material breach or default under Section XII.A.1 of the MSA, nor could

19  Visa have done so because Visa did not give Maritz the contractually-required 30-day opportunity

20  to cure.  Gallant Decl. ¶¶ 2-4.  Instead, Visa terminated the MSA because Visa had decided to

21  implement the Rewards Program through Carlson instead of Maritz.  Gallant Decl., ¶ 3; *see also*

22  Taylor Decl. ¶ 2.

23      In the April 20 letter, Ms. Buse stated that Visa was reserving its rights "relating to or

24  arising out of the [MSA]", including "claims Visa has against Maritz for Maritz's breaches of the

25  Agreement," and "Visa's right to liquidated damages."  For a variety of reasons, Steve Gallant,

26  Associate General Counsel for Maritz, considered Ms. Buse's "reservation of rights" as standard

27  language meant to preserve Visa's ability to challenge the amounts Visa owed Maritz.  Gallant

28  Decl. ¶¶ 4-6.

1    Mr. Gallant's and Maritz's beliefs were reasonable.  Among other things, (1) in November

2   2006, Visa had waived the liquidated damages provision in the MSA and agreed that Maritz

3   would proceed on a "best efforts" basis (Declaration of Doris Lyons ("Lyons Decl.") ¶ 5, Exh. 1);

4   (2) the parties had met in Denver in December 2006 and Visa confirmed that it intended to

5   continue with Maritz (Taylor Decl. ¶ 2); and (3) the parties had mutually agreed in January or

6   February 2007 to a new target launch date of July 2007 (Gallant Decl. ¶ 36(a)).[2]

7    **C.    <u>Visa Intentionally Withholds Its Claim For Tens of Millions of Dollars From Maritz</u>**

8

9    On May 7, 2007, Maritz informed Visa that in accordance with Section XII.A.2(b) of the

10   MSA, Visa owed Maritz approximately $5.2 million.  Taylor Decl., ¶ 3, Exh. 1; Gallant Decl.

11   ¶¶ 7-8.  Maritz's May 7 letter also included a brief reservation of rights to the extent it might be

12   relevant.  Gallant Decl. ¶ 8, Exh. 3.[3]

13   On June 5, 2007, Visa sent a letter once again mentioning that it was reserving its rights as

14   to Maritz's claims.  Gallant Decl. ¶ 9.  Given the circumstances surrounding Visa's termination as

15   explained above, Maritz once again reasonably assumed that Visa's reservation of rights simply

16   referenced the parties' respective claims over the actual amount owed to Maritz.  Gallant Decl.

17   ¶ 9.  Significantly, although raising the subject of damages, nowhere in Visa's June 5 letter did

18   Visa even suggest that it would be seeking tens of millions of dollars from Maritz.  Maritz intends

19   to show through discovery, that Visa knew or should have known of this claim at least at that

20   time.

21   All of Visa's actions during this time period suggest that Visa was doing whatever it could

22   to keep the nature and amount of its claims discreet.  On June 15, 2007, Mark Peterman of Maritz

23   spoke to David Shepard of Visa.  Declaration of Mark Peterman ("Peterman Decl.") ¶ 9; Gallant

24

25   [2]    In addition, John McCarthy of Inovant LLC ("Inovant"), a wholly owned subsidiary of Visa, told Maritz
26   around the time of Visa's April 20, 2007 letter that technology did not play a part in Visa's decision to terminate the MSA, and, in fact, Mr. McCarthy complimented the Maritz team for its outstanding performance.  Inovant is the company that Visa identified as its technology consultant for the implementation of the Rewards Program on page 1
27   of its Opposition to Maritz's Motion to Stay Arbitration.
     [3]    Maritz's May 7 letter states: "As Visa has reserved all of its rights relating to or arising out of the [MSA],
28   Maritz does the same."  Taylor Decl., ¶ 3, Exh. 1 (emphasis added).

Decl. ¶ 10.  During this conversation, Mr. Shepard indicated that he, Edward "Tad" Fordyce, and Mr. Fordyce's boss, Tim Attinger, were available to meet with Maritz in mid-July to review and discuss Maritz's invoices (supporting Maritz's $5.2 million claim against Visa).  Peterman Decl. ¶ 9; Gallant Decl. ¶ 10-11, Exh. 4.  Despite the fact that the conversation concerned damages, at no time did Mr. Shepard indicate that Visa expected Maritz to pay anything, let alone tens of millions of dollars.  Peterman Decl. ¶ 9; Gallant Decl. ¶ 10.  Eventually the parties agreed to meet on July 24, 2007 at Maritz.

On July 2, 2007, Visa sent another letter to Maritz, this time proposing a three-stage process to negotiate a resolution to the parties' dispute:  first, direct negotiations; then a non-binding mediation if the negotiations were unsuccessful; and finally, arbitration if the mediation was not successful.  Gallant Decl. ¶ 9, 11-12.  Although damages were again central to this topic, nowhere in its July 2 letter did Visa suggest that it would be seeking tens of millions of dollars from Maritz.

In response to Visa's July 2 letter, Mr. Gallant of Maritz contacted Roderick Thompson, outside counsel for Visa, and had several conversations between July 2 and July 9 concerning a framework for resolving the parties' differences.  Gallant Decl. ¶¶ 14-17.  Again, although damages were again central to this topic, at no time during any of these conversations did Mr. Thompson suggest that Maritz was in default or that it owed Visa tens of millions of dollars.  *Id.*  To the contrary, Mr. Thompson said nothing to Mr. Gallant to suggest that Visa intended to seek money from Maritz, much less tens of millions of dollars.  Gallant Decl. ¶¶ 18-20.

On July 9, 2007, Mr. Thompson sent Mr. Gallant a letter which contained, among other things, an agreement to arbitrate (i.e., the Letter Agreement).  Gallant Decl. ¶ 18.  Mr. Gallant signed the July 9 Letter Agreement.  *Id* ¶¶ 18-20; Peterman Decl. ¶ 9.  Again, although damages were central to this topic, at no time before Mr. Gallant signed the Letter Agreement did Mr. Thompson, or anyone else at Visa, ever say or indicate to Mr. Gallant, or anyone else at Maritz, that Visa expected Maritz to pay Visa anything, and certainly not that Visa was or would be seeking tens of millions of dollars.  Gallant Decl. ¶¶ 18-20; Peterman Decl. ¶ 9.  Had anyone at Visa done so, Mr. Gallant would *never* have agreed to binding arbitration of such claims or the

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1  parties' dispute, particularly in light of the limited discovery and time limitations suggested in the
2  Letter Agreement.  Gallant Decl. ¶¶ 18-20.

3       It is also important to consider the course of dealings between the parties and the backdrop
4  against which Mr. Gallant signed the Letter Agreement on July 9, 2007 containing an agreement
5  to arbitrate: (1) in November 2006, Visa had waived the liquidated damages provision in the
6  MSA and agreed that Maritz would proceed on a "best efforts" basis (Lyons Decl. ¶ 5, Exh. 1);
7  (2) the parties had met in Denver in December 2006 and Visa confirmed that it intended to
8  continue with Maritz (Taylor Decl. ¶ 2); (3) the parties had agreed in January or February 2007 to
9  a new target launch date of July 2007 (Gallant Decl. ¶ 36(a)); (4) when Visa terminated the MSA
10 in the Spring of 2007, it did so for convenience, not default; and (5) during all this time, Visa
11 never advised Maritz that it considered Maritz in default or that it intended to hold Maritz liable
12 for tens of millions of dollars in default and liquidated damages.  Gallant Decl. ¶ 36.

13     **D.**    **Visa Discloses Its Claim For Tens of Millions of Dollars Against Maritz *After***
14 **Inducing Maritz to Agree to Arbitrate and *After* the Transition to Carlson Has**
   **Been Completed**

15      The first time Visa disclosed the amount and nature of its claim was on July 23, two
16 weeks *after* its outside counsel sent Mr. Gallant the July 9 Letter Agreement, and *after* Maritz had
17 completed the transition to Carlson.  Gallant Decl. ¶¶ 22, 29; Peterman Decl. ¶ 6; Taylor Decl. ¶ 4.

18      On Friday, July 20, three days before Visa made this disclosure, Mr. Peterman of Maritz
19 called Tad Fordyce of Visa to confirm that Visa was still coming to Maritz on July 24 to discuss
20 the amount of Maritz's invoices, and to make sure that Visa had everything it needed for the
21 meeting.  Peterman Decl. ¶¶ 4-5.  As expected, Mr. Fordyce indicated that he did not agree with
22 the amounts Maritz claimed it was owed.  *Id.* ¶ 5.  At no point, however, did Mr. Fordyce say
23 *anything* about any amounts Maritz might owe Visa, much less that Maritz owed Visa tens of
24 millions of dollars.  *Id.*; Gallant Decl. ¶ 23.

25      On July 23, 2007, Mr. Gallant received from Mr. Thompson an "Alternative Dispute
26 Resolution Protocol" dated July 19, 2007.  Gallant Decl. ¶¶ 23-28.  The proposed Protocol stated
27 (for the first time) that "Each Party claims the other should make a payment to resolve the
28

6

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1    dispute." *Id*.    Because Mr. Gallant had not previously been aware that Visa was making a

2    separate claim against Maritz, he asked others at Maritz if they had ever heard about such claims

3    (they had not), and then contacted Mr. Thompson to discuss the issue.    *Id*.    During that

4    conversation, Mr. Thompson revealed, for the first time, that Visa was claiming that Maritz owed

5    Visa tens of millions of dollars.    *Id*.

6         Mr. Gallant told Mr. Thompson that this information was a complete surprise.    Gallant

7    Decl. ¶ 25; Peterman Decl. ¶ 6; Taylor Decl. ¶ 4.    In response, Mr. Thompson told Mr. Gallant

8    that Maritz's business people had known about Visa's claim for some time.    Gallant Decl. ¶ 25.

9    Mr. Gallant knew that this statement was untrue as he had just spoken to two of Maritz's key

10   business people less than two hours before his call.    *Id*.    Mr. Gallant was incensed at how he had

11   been misled, but did not act unprofessionally by accusing Mr. Thompson of acting improperly. *Id*.

12   ¶ 26.    Mr. Thompson subsequently acknowledged Mr. Gallant's surprise in an e-mail he sent later

13   that day stating "*in light of Maritz [sic] surprise about Visa's claim for damages*, it makes sense

14   not to rush into a meeting without an agreement on the details of the process. " *Id*. ¶ 28, Exh. 5

15   (emphasis added).

16        **E.    The Parties Attempt to Resolve Their Differences Through the First Two Steps**
             **of the July 9, 2007 Letter Agreement**
17

18        Following the July 23 discussion, Mr. Gallant had a number of communications with

19   Mr. Thompson in which Mr. Gallant maintained his objections to the arbitration provision in the

20   Letter Agreement, but agreed to move forward with the negotiation and mediation steps.    Gallant

21   Decl. ¶¶ 30-35, Exhs. 6-8.    Visa was well aware of Maritz's position.    For example, on

22   August 21, Mr. Thompson sent Mr. Gallant an e-mail confirming that Maritz was willing to

23   proceed with negotiation and mediation, but reserved its rights as to the arbitration.  *Id.*, Exh. 6.

24        On October 15, 2007, Maritz and Visa participated in face-to-face negotiations pursuant to

25   the first stage in the July 9 Letter Agreement.    When these efforts were unsuccessful, the parties

26   engaged in the second stage identified in the Letter Agreement, mediation.    This mediation

27   occurred in Chicago on November 7-8, 2007.

28        Approximately five days before the mediation, on November 2, 2007, Visa, apparently

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1  ignoring its obligation to negotiate in good faith, filed a demand for arbitration with the AAA

2  seeking a determination of the parties' agreement to arbitrate (not a demand to determine a claim

3  for breach of the MSA).  That same day, Visa commenced this action.

**F.    Maritz Seeks to Stay the Duplicative and Overlapping Arbitration Proceeding**

5  Maritz's repeated efforts to stay the arbitration proceedings are set forth in Section III.E of

6  Maritz's Motion to Stay Arbitration.  In short, Maritz has sent at least a half-dozen letters to the

7  AAA urging the AAA to suspend its proceedings at least until this Court has had an opportunity

8  to rule on the threshold issue of arbitrability.  Visa has responded to each of Maritz's letters by

9  urging the AAA to move forward.

10  In light of Visa's insistence on moving forward with the arbitration, Maritz was left with

11  two choices – either waive its objections to the arbitration proceedings, or seek an order from this

12  Court staying the arbitration pending resolution of these threshold issues of arbitrability.  Maritz

13  chose the latter and thus filed a Motion to Stay the Arbitration on December 4, 2007.  In response,

14  on January 4, 2008, Visa filed this motion to stay the litigation and to compel arbitration.

**III.    ARGUMENT**

**A.    Visa's Request for a Stay of this Case is Premature**

17  In seeking a stay of this action, Visa urges "that a district court 'upon being satisfied that

18  the issue involved in [a] suit or proceeding is referable' to arbitration, shall 'stay the trial of the

19  action until such arbitration has been had . . . '".  Visa's Motion to Compel, p. 4 (citing Section 3

20  of the FAA (9 U.S.C. § 3) and two non-California cases).  At the same time, however, Visa has

21  not even attempted to address those issues necessary for the Court to grant such relief:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.  Among these competing interests are <u>the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.</u>

26  *Cmax, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (emphasis added) (citation omitted); *Leyva*

27  *v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (stating that this

28  rule also applies when the separate proceedings are "arbitral in character"), *cert. denied*, 444 U.S.

827 (1979); *see also* Martin Domke, DOMKE ON COMMERCIAL ARBITRATION § 22:6 (3d. Ed. 2007) (When deciding whether to grant a stay pending arbitration, "the trial court is to balance the competing needs of the parties, taking into account the interests of the courts, . . . the presence or absence of hardship or inequity, and the burden of proof."). Visa has failed to make the necessary showing.

Moreover, as Section 3 confirms, a stay of this action is not appropriate unless the Court first determines whether the matter is arbitrable, which, as explained below, cannot be properly adjudicated absent discovery. Even if Visa could show that the elements above weigh in its favor (which it cannot), Visa's request for a stay of this action is premature.

**B.    The Court, Not The Arbitrator, Must Resolve Maritz's Fraud Claim**

Whether the dispute between Visa and Maritz is arbitrable is a threshold question for the Court, *not* an arbitrator, to decide. *See, e.g., United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583, fn. 7 (U.S. 1960); *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190, 208-09 (1991); *Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.*, 835 F.2d 1275, 1278 (9th Cir. 1987). This is especially true where, as here, the party resisting arbitration claims fraud in the inducement of the agreement to arbitrate itself. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Buckeye Check Cashing,* 546 U.S. at 445 (2006); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006); *Santana Row Hotel Partners*, 2007 WL 914464, at *2.

Visa does not dispute this well-settled authority, but nevertheless claims that the Court should cede jurisdiction to the arbitrator. Visa argues that, because Maritz's fraud claim goes to the "entire" Letter Agreement, not just the arbitration provision, *Buckeye* compels the arbitrator to resolve the issue. *See, e.g.,* Visa's Motion to Compel Arbitration, p. 5. This Court in *Santana Row* specifically held that Visa's reading of *Buckeye* is misguided. *Santana Row*, 2007 WL 914464 at *2 (citing *Buckeye,* 546 U.S. at 445-46) (where the fraud claim ran solely to stand-alone agreement to arbitrate – as opposed to the entire, underlying contract – "the fraud claim must be considered by the court as a prerequisite to its [the agreement's] enforcement.").

1    In its Opposition to Maritz's Motion to Stay Arbitration, Visa alternatively tries to
2  distinguish *Santana Row* by arguing that, unlike in that case, Maritz's fraud claim challenges the
3  arbitration provision, and *not* an entire, stand-alone agreement to arbitrate.  *See, e.g.,* Visa's
4  Opposition to Maritz's Motion to Stay, p. 10 , n. 4.  The *Santana Row* holding does not turn on
5  this distinction.  In any event, under Visa's own logic, Maritz's challenge to the *arbitration*
6  *provision* puts its claim squarely within the exception noted in *Buckeye.  See, e.g., Buckeye ,* 546
7  U.S. at 445-46 ("*unless the challenge is to the arbitration clause itself,* the issue of the contract's
8  validity is considered by the arbitrator") (emphasis added); *see also Santana Row,* 2007 WL
9  914464, at *2 (when a district court is faced with a claim that an arbitration provision in a broader
10  contract is the result of fraud, it must first consider that claim before compelling any arbitration).

11    This is not a case where the arbitration provision is part of a much longer agreement such
12  as the MSA and the fraud claim is directed at the larger agreement.  Here, the arbitration
13  provision is in a short, one-and-a-half page letter.  Maritz is challenging only the arbitration
14  provision in that letter, and the parties have already completed the first two steps outlined in the
15  letter.  The agreement to arbitrate was (and is) the only aspect of the letter that allows a third-
16  party to decide against Maritz (since the negotiation and mediation stages required both parties to
17  agree to such a resolution).  It therefore makes perfect sense that Maritz's objection based upon
18  Visa's fraudulent inducement is and always has been directed at the agreement to arbitrate.
19  Under both *Buckeye* and *Santana Row*, Maritz's claim that it was fraudulently induced to arbitrate
20  must be decided by the Court.

21    **C.    The Court Need Not Reach Whether There Is "Clear and Unmistakable"**
       **Evidence That The Parties Agreed To Arbitrate Arbitrability**
22

23    Visa suggests the Court can nevertheless cede jurisdiction to the arbitrator because there is
24  "clear and unmistakable" evidence that the parties intended to submit questions of arbitrability to
25  the AAA.  Visa's Motion to Compel, pp. 7-9.  Visa is wrong.

26    As explained in Maritz's Reply in Support of Its Motion to Stay Arbitration, it is well-
27  settled that the Court need not and should not determine *what* issues (including arbitrability) the
28  parties intended to arbitrate before it first determines *whether* the parties entered into an

10

1   agreement to arbitrate. *See, e.g., Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 170-

2   71 (1963); *Santana Row*, 2007 WL 914464, *2 (" . . . the [fraud] claim must be considered by the

3   court as a *prerequisite* to its [the agreement's] enforcement). This makes sense logically. Indeed,

4   to hold otherwise would allow a party to fraudulently induce a party to agree to arbitrate, and then

5   rely on that same fraudulently induced agreement to force the other party to arbitrate arbitrability.

6        None of Visa's cases deal with a claim that the agreement to arbitrate was the result of

7   fraud. Instead, they deal with situations where the parties *conceded that an arbitration agreement

8   existed*. Moreover, as explained in Maritz's Reply in Support of Its Motion to Stay Arbitration,

9   there is no "clear and unmistakable" evidence in the Letter Agreement that Maritz intended for an

10  arbitrator to resolve issues of arbitrability. This applies both to the Letter Agreement and to the

11  arbitration provision contained therein.

12  **D.   The Court Should Defer Resolving Maritz's Fraud Claim Until The Parties
        Have Been Able To Conduct Discovery And Be Fully Heard On The Issue**

13

14       Visa's request that the Court resolve the threshold issue of fraud at this preliminary stage,

15  before the evidence is fully developed, and before Maritz is allowed to conduct meaningful

16  discovery, is not only premature, but fundamentally flawed.

17       **1.   Visa's Request That the Court Rule on the Issue of Arbitrability is
             Premature**

18

19       It is well-settled that the question of whether fraud in the inducement taints an arbitration

20  agreement requires a full adjudication on the merits by this Court. *See, e.g.,* 9 U.S.C. § 4 ("If the

21  making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the

22  trial . . . the party alleged to be in default may . . . demand a jury trial . . ."); *see also Doctor's

23  Associates, Inc. v. Distajo*, 107 F.3d 126, 130 (2d. Cir. 1997) (summary judgment standard

24  applies to Section 4 jury trial requests).

25       As demonstrated in Sections II(A)-(F) above, and as will be demonstrated in more detail

26  in Maritz's Motion in Support of Discovery ("Discovery Motion") to be filed on January 25,

27  Maritz has created at least a disputed issue of fact that Visa fraudulently induced it to agree to the

28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

11

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1  arbitration provision in the Letter Agreement.[4]  Indeed, certain facts – including that Visa did not

2  disclose the amount and nature of its claims until after Maritz signed the Letter Agreement – are

3  undisputed.  Gallant Decl. ¶ 22, 29; Peterman Decl. ¶ 6; Taylor Decl. ¶ 4; *see also* Visa's Motion

4  to Stay, p. 2.  Under relevant standards, Maritz is thus entitled to a jury trial, or at the very least

5  an evidentiary hearing, on its fraud claim.  *Id.; see also Doctor's Associates,* 107 F.3d at 129-30.

6  **2.    The Court Cannot Resolve Maritz's Fraud Claim as a Matter of Law**

7  Contrary to Visa's argument, the Court cannot resolve Maritz's fraud claim as a matter of

8  law, certainly not without providing an opportunity for relevant discovery.  Visa's Motion to

9  Compel Arbitration, pp. 9-13; *see also* Visa's Opposition to Motion to Stay, pp. 12-14.

10  **a.    Visa's Counsel Had a Duty to Disclose**

11  Visa argues that Maritz's fraud claim is deficient as a matter of law because its counsel,

12  Mr. Thompson, had no "duty to disclose" that Visa would be asserting a claim for tens of millions

13  of dollars against Maritz when he procured Maritz's agreement to arbitrate.   Visa's Motion,

14  pp. 10-11.  To the contrary, in *Cicone v. URS Corp.*, the court confirmed that "a duty is owed by

15  an attorney not to defraud another, even if that other is an attorney negotiating at arm's length."

16  *Id.*, 183 Cal. App. 3d 194, 202 (1986); *see also Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.

17  App. 4th 286, 294 (2004) ("Even when no duty to disclose would otherwise exist 'where one does

18  speak, he must speak the whole truth to the end that he does not conceal any facts which

19  materially qualify those stated'").

20  Visa makes only a passing reference to the *Cicone* case, asserting that "there is no

21  allegation that Visa made any representation whatsoever regarding the scope of its damages

---

[4]    As will be explained in its upcoming Discovery Motion, Maritz should be entitled, at a minimum, to conduct discovery into (1) when Visa knew it had claims, including for "cover" damages; (2) when Visa determined the amount it was allegedly owed and how that amount would be calculated, notwithstanding a November 8-9, 2006 e-mail exchange in which Tad Fordyce of Visa waived liquidated damages; (3) why Elizabeth Buse of Visa chose to terminate Visa's relationship with Maritz in a letter dated April 20, 2007 for "convenience" rather than by alleging that Maritz was in breach of the MSA; (4) whether Visa knew that it intended to assert claims for tens of millions of dollars when Ms. Buse sent her April 20, 2007 letter terminating the contract and at the time of John McCarthy's contemporaneous statements to Maritz that technology did not play a role in Visa's decision to terminate; (5) why Visa failed to disclose the nature and amount of its claims until July 23-24, 2007; (6) whether Visa had internal communications and discussions regarding not telling Maritz of its claim for millions of dollars; and (7) what role, if any, Visa's transition from Maritz to Carlson played in its decision to withhold such material information from Maritz.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

12

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1   claim." Visa's Opposition to Maritz's Motion to Stay, p. 12, n. 8. As Visa is well aware, Maritz

2   *has* alleged that Visa fraudulently led Maritz to believe that its claims would simply offset the

3   $5.2 million claim Maritz had disclosed to Visa. *See, e.g.,* Gallant Decl. ¶¶ 9-10, 15-17, 22-23.

4   In addition, Visa simply disregards that Maritz is claiming that Visa fraudulently concealed not

5   only the scope of its multi-million dollar claim, but that it would be filing such a claim against

6   Maritz at all. Gallant Decl. ¶¶ 9-10, 36. Under *Cicone*, and any other relevant authority,

7   Mr. Thompson had a duty to disclose this material information to Mr. Gallant. *See, e.g., Cicone*,

8   183 Cal. App. 3d at 202; *Vega*, 121 Cal. App. 4th at 294-95; *see also* ABA Model Rule 4.1.

9        Moreover, Visa completely ignores that it had an obligation to resolve any disputes with

10  Maritz over the MSA in good faith. Section XXII of the MSA expressly provides that "[t]he

11  Parties [*i.e.*, Visa and Maritz] shall act in good faith and reasonably in interpreting this

12  Agreement and the Related Agreements and resolving any disputes that arise thereunder."

13  Gallant Decl., Exh. 2 (emphasis added). Based on this provision, and Visa's actions as explained

14  above, Visa had a duty to disclose the true nature and magnitude of its claim against Maritz, but

15  intentionally failed to do so.

16       Visa's actions are contrary to Restatement (Second) of Torts § 551 concerning when a

17  party to a business transactions owes a duty to disclose certain matters to the other before the

18  transaction has been completed. Under Section 551(a), a party owes a duty to disclose to the

19  other those "matters known to him that the other is entitled to know because of a fiduciary duty or

20  other similar relation of trust and confidence between them." Restatement (Second) of Torts

21  § 551(a). Maritz has alleged and believes discovery will show that Visa knew of its claims for

22  tens of millions of damages against Maritz on April 20, 2007 (i.e, the date Visa gave notice it was

23  terminating the MSA for "convenience" rather than for cause) if not sooner and certainly before

24  July 9, 2007 (i.e., the date of the "letter agreement" proposed by Visa). Visa was contractually

25  obligated to act in good faith in resolving disputes, and hoodwinked Maritz into agreeing to

26  arbitrate without revealing its claim for tens of millions of dollars.

27       Visa's actions also are contrary to subsection (b) of Section 551. Under Section 551(b), a

28  party owes a duty to disclose those "matters known to him that he knows to be necessary to

1   prevent his partial or ambiguous statement of the facts from being misleading." Restatement

2   (Second) of Torts § 551(b). Visa's conduct and its less-than-candid statements were misleading,

3   at best. *See, e.g.,* Lyons Decl. ¶ 5; Gallant Decl. ¶¶ 3-4, 9-10, 36. Visa's discussion of damages

4   and the resolution process for resolving them without disclosing the magnitude of its claims falls

5   squarely under this provision.

6        Lastly, Visa's actions run contrary to subsection (e) of Section 551: a party owes a duty

7   to disclose those "facts basic to the transaction, if he knows that the other is about to enter into it

8   under a mistake as to them, and that the other, because of the relationship between them . . . or

9   other objective circumstances, would reasonably expect a disclosure of those facts." Restatement

10  (Second) of Torts § 551(e). As the facts above and in the accompanying declarations

11  demonstrate, it was Maritz's reasonable understanding, as confirmed by Visa's actions, that Visa

12  would be seeking only amounts that would serve to reduce the amounts Visa owed Maritz.

13  Indeed, the parties were working together to schedule meetings solely to discuss the amount of

14  and support for Maritz's invoices. Visa knew or should have known that, at a minimum, Maritz

15  believed Visa was going to pay part of the $5.2 million Maritz claimed Visa owed, and did not

16  know Visa would be seeking tens of millions of dollars. Visa had an obligation to clear the

17  record on this issue.

18           **b.    Whether the Information Visa Withheld as to Visa's Claim for
                    Tens of Millions of Dollars is Material is a Question of Fact**
19                  **That Cannot be Resolved at This Point**

20       Visa's suggestion that the information Visa and Mr. Thompson withheld was

21  "immaterial" and thus cannot form the basis for Maritz's fraud claim is clearly a question of fact

22  requiring discovery. Visa's Opposition to Maritz's Motion to Stay, p. 14. Questions concerning

23  the materiality of representations (or concealments) are questions of fact, not properly resolved as

24  a matter of law. *See, e.g., Horn v. Guaranty Chev. Motors,* 270 Cal. App. 2d 477, 482-83 (1969)

25  ("[T]he issue of reliance is no less a question of fact than questions whether there were material

26  misrepresentations."). Here, Visa's failure to disclose its claim for tens of millions of dollars is

27  *prima facie* material, which is likely to be confirmed by discovery.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

14

MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW

1

       **c.**     **Whether Maritz Personnel Justifiably Relied on Visa and Mr. Thompson's Representations and Omissions Involves Factual Issues That Cannot Be Decided Until Maritz Has Conducted Discovery**

2

3

4        Finally, Visa claims that Maritz cannot show that it justifiably relied on Mr. Thompson's

5 representations when deciding to enter into the Letter Agreement. Visa's Opposition to Maritz's

6 Motion to Stay, pp. 14-15. Visa suggests that the liquidated damages provision of the MSA

7 should have made Maritz aware that Visa was going to pursue a claim of at least $14 million. *Id.*

8 Visa ignores, however, that there is evidence that in November 2006, the parties *waived* the

9 liquidated damages provision in the MSA in response to Maritz's concerns over delays in the

10 project caused by Visa and/or Carlson, and that Maritz would continue on a "best efforts" basis.

11 *See, e.g.,* Taylor Decl. ¶ 2; Lyon Decl. ¶ 5. More importantly, as with the question of materiality,

12 whether there was justifiable reliance in this case is a "question of fact [] to be resolved on the

13 evidence, not as a matter of law . . . ." *Vega,* 121 Cal. App. 4th at 295; *see also Horn*, 270 Cal.

14 App. 2d at 482-83.

15 **IV.**   **CONCLUSION**

16        For the reasons given above, Visa's Motion should be denied.

17

18 Dated:   January 18, 2008      MANATT, PHELPS & PHILLIPS, LLP

19

20                 By:  _s/Ryan S. Hilbert_____
                    Ronald S. Katz (SBN 085713)
21                    Ryan S. Hilbert (SBN 210549)
                    MANATT, PHELPS & PHILLIPS, LLP
22                    1001 Page Mill Road, Building 2
                    Palo Alto, CA  94304-1006
23                    Telephone:    (650) 812-1300
                    Facsimile:     (650) 213-0260
24                    *Attorneys for Defendant and Counter-Claimant*

25

26

27

28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

15      MARITZ'S OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. C07-5585 JSW