1   MANATT, PHELPS & PHILLIPS, LLP
    RONALD S. KATZ (California Bar No. 085713)
2   E-mail: rkatz@manatt.com
    RYAN S. HILBERT (California Bar No. 210549)
3   E-mail: rhilbert@manatt.com
    1001 Page Mill Road, Building 2
4   Palo Alto, CA 94304-1006
    Telephone: (650) 812-1300
5   Facsimile: (650) 213-0260

6   Attorneys for Defendant/Counterclaim and
    Third-Party Plaintiff Maritz Inc.
7

8                       UNITED STATES DISTRICT COURT
9                         NORTHERN DISTRICT
10                      SAN FRANCISCO DIVISION
11

12
    VISA U.S.A. INC.,                     CIVIL ACTION NO. C 07-5585 JSW
13
              Plaintiff/Counterclaim      BRIEF OF MARITZ, INC. PURSUANT TO
14            Defendant,                  COURT ORDER DATED JANUARY 17, 2008
                                          AND IN SUPPORT OF DISCOVERY
15        v.

16  MARITZ INC., d/b/a MARITZ             DATE:   February 29, 2008
    LOYALTY MARKETING,                    TIME:   9:00 a.m.
17                                        PLACE:  Courtroom 2, 17th Floor
              Defendant/Counterclaim      JUDGE:  Hon. Jeffrey S. White
18            and Third-Party Plaintiff,

19        v.

20  CARLSON MARKETING GROUP, INC.

21
              Third-Party Defendant.
22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2
Page

3

I.      INTRODUCTION ............................................................................................................. 1

4

II.     FACTUAL BACKGROUND ........................................................................................... 1

5

III.    VISA HAD A DUTY TO DISCLOSE THAT IT WAS SEEKING TENS OF
        MILLIONS OF DOLLARS IN DAMAGES FROM MARITZ BEFORE
        INDUCING MARITZ INTO AGREEING TO ARBITRATE ......................................... 6

6

        A.      Visa Owed Maritz a Duty of Disclosure Under the Restatement (2d) of
                Torts § 551 ............................................................................................................. 6

7

        B.      Visa Owed Maritz a Duty of Disclosure Under California Law ........................... 8

8

IV.     MARITZ SHOULD BE ALLOWED TO OBTAIN DISCOVERY RELATING TO
        ITS FRAUD CLAIM ..................................................................................................... 11

9

V.      CONCLUSION .............................................................................................................. 14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1

## TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Ach v. Finkelstein,*
264 Cal. App. 2d 667, 70 Cal. Rptr. 472 (Cal. App. 1968) ................................................ 7, 10

5

*Audio Video Center Inc. v. First Union National Bank,*
84 F. Supp. 2d 624 (E.D. Pa. 2000) ...................................................................................... 12

6

7

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006) ................................................................................................................ 11

8

*Cicone v. URS Corp.,*
183 Cal. App. 3d 194, 227 Cal. Rptr. 887, 891 (Cal. App. 1986) .................................. 10, 11

9

*Doctor's Associates, Inc. v. Distajo,*
107 F.3d 126 (2nd Cir. 1997) ................................................................................................. 11

10

*Dyke v. Zaiser,*
182 P.2d 344 (Cal. App. 1947) .............................................................................................. 10

11

*Ferguson v. Countrywide Credit Industries, Inc.,*
2001 WL 867103, *1 (C.D. Cal. 2001), *aff'd*, 298 F.3d 778, 782 (9th Cir.
2002) ....................................................................................................................................... 12

12

13

*Freedom Trust v. Chubb Group of Ins. Cos.,*
38 F. Supp.2d 1170 (C.D. Cal. 1999) ..................................................................................... 11

14

*Garbacz v. A.T. Kearny, Inc.,*
2006 U.S. Dist. LEXIS 20135, *5-*6 (N.D. Cal. 2006) ............................................... 1, 11, 12

15

16

*In re Eashai,*
97 F.3d 1082 (9th Cir. 1996) .................................................................................................... 7

17

*In re Mediscan Research, Ltd.,*
940 F.2d 558 (9th Cir. 1991) ................................................................................................. 6, 7

18

*Institut Pasteur v. Chiron Corp.,*
315 F. Supp. 2d 33 (D. D.C. 2004) ....................................................................................... 12

19

*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,*
663 F.2d 4 (2nd Cir. 1981) ..................................................................................................... 12

20

21

*Kallgren v. Steele,*
279 P.2d 1027 (Cal. App. 1955) ............................................................................................ 10

22

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,*
6 Cal. App. 4th 603, 7 Cal. Rptr. 2d 859 (Cal. App. 1992) ................................................... 10

23

*Pearson v. Norton,*
230 Cal. App. 2d 1 (Cal. App. 1964) ..................................................................................... 10

24

*Shelton v. American Motors Corp.,*
805 F.2d 1323 (8th Cir. 1986) ............................................................................................... 14

25

*Specht v. Netscape Communications Corp.,*
306 F.3d 17 (2nd Cir. 2002) ................................................................................................... 11

26

*Toledano v. O'Connor,*
501 F. Supp.2d 127 (D. D.C. 2007) ...................................................................................... 10

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

ii

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*Vega v. Jones, Day, Reavis & Pogue*,
    121 Cal. App. 4th 282, 17 Cal. Rptr. 3d 26, 32 (Cal. App. 2004) .......................................... 10

4

*Visa Intern. Service Ass'n v. Bankcard Holders of America*,
    784 F.2d 1472 (9th Cir. 1986)............................................................................................. 12

5

*Warner Construction Corp. v. City of Los Angeles*,
    2 Cal. 3d 285 (Cal. 1970)................................................................................................ 9, 10

6

**STATUTES**

7

9 U.S.C. § 4 ............................................................................................................................. 11, 12

8

Cal. Bus. & Prof. Code § 6068(d)................................................................................................ 11

9

Cal. Bus. & Prof. Code § 6128 .................................................................................................... 11

10

Cal. Civ. Code § 1572 ............................................................................................................... 8, 9

Cal. Civ. Code § 1573 ............................................................................................................... 8, 9

11

Cal. Civ. Code § 1709 .................................................................................................................... 9

12

Cal. Civ. Code § 1710 .................................................................................................................... 9

13

Cal. Evid. Code § 956 .................................................................................................................. 11

**OTHER AUTHORITIES**

14

Restatement 2[d] Torts, § 551 ....................................................................................... 1, 6, 9, 11

15

Restatement 2[d] Torts, § 551(2)(a) ............................................................................................... 7

16

Restatement 2[d] Torts, § 551(2)(b) ............................................................................................... 7

Restatement 2[d] Torts, § 551(2)(e) ............................................................................................... 8

17

**RULES**

18

Fed. R. Civ. Proc. 56.............................................................................................................. 1, 12

19

Fed. Rule Civ. Proc. 30(b)(6)...................................................................................................... 14

Fed. Rule Civ. Proc. 56(f) ........................................................................................................... 12

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iii

1

## SUMMARY OF ARGUMENT

2      Maritz submits this pleading pursuant to the Court's January 17, 2008 Order in which it

3 requested briefing on "the issue regarding whether there is a need for discovery to determine the

4 validity of the arbitration agreement" and "legal argument regarding why and what discovery is

5 necessary to demonstrate that the agreement to arbitrate was fraudulently induced."

6      Maritz contends that Visa knew that Visa would claim that Maritz owed it tens of millions

7 of dollars, but intentionally withheld this material information in order to fraudulently induce

8 Maritz into agreeing to arbitrate.    Visa was contractually obligated to act in good faith in

9 resolving disputes under the parties' April 2006 Master Services Agreement and thus had a duty

10 to disclose this material information to Maritz.  Visa also had a duty of disclosure under both the

11 Restatement (2d) of Torts § 551 and California law.

12      Notwithstanding its duty, there is no question Visa failed to disclose the nature and

13 magnitude of its damages claim until July 23, 2007, two weeks *after* Maritz agreed to arbitrate.

14 Under Section 4 of the Federal Arbitration Act, Maritz is entitled to a jury trial on whether the

15 arbitration provision Visa fraudulently induced Maritz to sign is valid.  There are disputed factual

16 issues relating to whether Visa fraudulently induced Maritz into agreeing to arbitrate, and a jury

17 should decide whether, under the circumstances, the arbitration provision is invalid because of

18 Visa's misleading conduct and material omissions.   *See Garbacz v. A.T. Kearny, Inc.*, 2006 U.S.

19 Dist. LEXIS 20135, *5-*6 (N.D. Cal. 2006).  Before this Court can properly adjudicate this issue,

20 Maritz needs the discovery identified in Section IV.

21

22

23

24

25

26

27

28

## I.      **INTRODUCTION**

On January 17, 2008, the Court ordered briefing with respect to "the issue regarding whether there is a need for discovery to determine the validity of the arbitration agreement …." The Court, *inter alia*, ordered Maritz to "file an opening brief … setting out its legal argument regarding why and what discovery is necessary to demonstrate that the agreement to arbitrate was fraudulently induced," and further stated in its Order that "[t]he Court is particularly concerned with whether there was any duty to exercise reasonable care to disclose the matter(s) potentially in question. *See, e.g.*, Restatement (2nd) of Torts, § 551." Maritz submits the following in accordance with the Court's Order. In particular, Maritz calls the Court's attention to its previous holding in *Garbacz v. A.T. Kearny, Inc.*:

> When considering a motion to compel arbitration, the court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56. . . . If there is doubt as to whether such an agreement exists, the matter should be resolved through an evidentiary hearing or mini-trial. . . . When considering a motion to compel arbitration which is opposed on the ground that there is no binding agreement to arbitrate, the district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Garbacz v. A.T. Kearny, Inc.*, 2006 U.S. Dist. LEXIS 20135, *5-*6 (N.D. Cal. 2006) (J. White) (citation omitted).

## II.      **FACTUAL BACKGROUND**

The key facts and allegations are contained in the Declarations of Steve Gallant, Mark Peterman, Doris Lyons and Kelvin Taylor previously filed with the Court (and incorporated herein by reference) and Maritz's Counterclaim against plaintiff/counterclaim defendant Visa U.S.A., Inc. ("Visa").[1/]

In April 2006, Maritz and Visa entered into a Master Services Agreement (the "MSA") under which Maritz was to develop, deploy and maintain an improved Visa Extras Rewards program (Counterclaim ¶¶ 11-13). The MSA has no arbitration provision. It does contain, however, a section entitled "DISPUTE RESOLUTION" which specifically imposes a contractual obligation upon Visa the duty to act in good faith and reasonably in interpreting the MSA and in

---

[1/]      The Declarations will be cited as follows: "[Declarant's Name] [Decl. ¶ __]." Exhibits to the Declarations will be cited as "[Declarant's Name] Exh. __." Maritz's Counterclaim will be cited as "Counterclaim ¶ __."

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1   resolving any disputes thereunder (Gallant Decl. ¶ 17; Gallant. Exh. 2).   More specifically,

2   Section XXII.A. of the MSA provides:

3       "The Parties shall act in good faith and reasonably in interpreting this Agreement
        and the Related Agreements and resolving any disputes that arise thereunder."
4

5       Under the MSA, the Phase I-A launch date was scheduled for September 30, 2006 (*See*

6   Lyons Decl. ¶ 3).   Because of a number of problems and delays caused largely by Visa and its

7   vendor Carlson Marketing ("Carlson"), Maritz recommended postponing the launch until January

8   2007 (*Id.*).   Visa, however, postponed the launch date incrementally, ultimately scheduling the

9   launch for mid-November 2006 (*Id.*).   Because of the problems, concerns and delays relating to

10  the project, Visa and Maritz agreed on November 8-9, 2006 that the parties were proceeding on a

11  best efforts basis and that Visa would not impose the penalty clause – i.e., it would waive the

12  liquidated damages provision – of the MSA (*Id.*, ¶¶ 4-5; Lyons Exh. 2; Peterman Decl. ¶ 7;

13  Taylor Decl. ¶ 5).

14      The mid-November 2006 launch was unsuccessful largely because of problems caused by

15  Visa and/or Carlson (*See, e.g.*, Counterclaim ¶¶ 21-27, 30-34, 46).   As a result, in December 2006

16  Visa had Carlson re-start its Visa Rewards Program web site (*Id.*, ¶ 47).   Visa, however, assured

17  Maritz in mid-December 2006 that Visa's arrangement with Carlson was only short-term and that

18  Visa was committed in the long term to Maritz (*Id.*, ¶ 48; Taylor Decl. ¶ 2).   Visa's assurances

19  were critical to Maritz because of Maritz's concern about continuing to invest time, money and

20  effort into the Visa Rewards Program project (Counterclaim ¶ 49).

21      In January and February 2007, Visa and Maritz met and ultimately agreed to a new

22  timeline containing a new target launch date of July 2, 2007 (Peterman Decl. ¶ 8).   At no time in

23  the January/February 2007 time frame did Visa ever say or indicate that the liquidated damages

24  clock was ticking or that Visa would be pursuing Maritz for default damages (which would have

25  been inconsistent with Visa's November 8-9, 2006 agreement to waive liquidated damages and

26  that the parties were proceeding on a best efforts basis) (*Id.*; *see also* Gallant Decl. ¶ 36(a)).

27      Maritz was meeting its obligations under the new agreed-upon timeline when Visa

28  unexpectedly gave 30 days notice on April 20, 2007, that it was terminating the MSA

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1   (Counterclaim, ¶¶ 55-62; Gallant Decl. ¶¶ 2-4; Gallant Exh. 1). Visa did not terminate the MSA

2   because of any alleged breach or default by Maritz; instead, Visa terminated it for convenience,

3   i.e., because Visa had decided to implement the Rewards Program through Carlson (*Id*.).

4       At approximately the same time, John McCarthy of Inovant LLC ("Inovant"), a Visa

5   subsidiary used by Visa as a technology consultant in connection with the Rewards Program, told

6   Maritz that technology did not play a part in Visa's decision to terminate the MSA (Counterclaim

7   ¶ 62). McCarthy also complimented the Maritz team (*Id*.).

8       In accordance with the MSA, Maritz sent Visa a letter dated May 7, 2007, advising Visa

9   that it owed Maritz approximately $5.2 million for services provided, costs, and the like (Taylor

10  Decl. ¶ 3; Taylor Exh. 1). On June 5, 2007, Visa sent Maritz a letter which postponed discussions

11  about Maritz's bill until after the transition from Maritz to Carlson was complete. *See*

12  Declaration of Roderick Thompson in Support of Visa's Motion to Compel Arbitration, Exh. G.[2/]

13      On June 15, 2007, Mark Peterman of Maritz spoke with David Shepard of Visa (Peterman

14  Decl. ¶ 9). Shepard indicated to Peterman that Shepard, as well as Visa's Tad Fordyce and Tim

15  Attinger, were available to meet with Maritz in mid-July 2007 to discuss Maritz's invoices which

16  supported the $5.2 million that Maritz had stated was owed (*Id*.). Peterman informed Maritz's in-

17  house counsel, Steve Gallant, of his discussion with Shepard (Gallant Decl. ¶ 10). During

18  Peterman's conversation with Shepard, Shepard never stated or indicated that Visa was looking

19  for any payment from Maritz, much less that Visa believed that Maritz owed Visa tens of millions

20  of dollars (Peterman Decl. ¶ 9).

21      On July 2, 2007, Visa sent Maritz a letter indicating that the transition to Carlson was

22  complete and that it was therefore appropriate to discuss a procedure for discussing and resolving

23  the parties' claims (*See* Gallant Decl. ¶ 12). Visa's letter suggested a three-stage process, with

24  the first stage being direct negotiations between the parties, followed by non-binding mediation if

25  the negotiations were unsuccessful, followed by arbitration if the mediation were unsuccessful

26

27  ───────────────
    [2/]    Maritz's in-house counsel considered the "reservation of rights" language contained in Visa's April 20 and

28  follow-up letters to be simply standard language to preserve Visa's ability to object to the amount that Visa would
    have to pay Maritz in light of Visa's "for convenience" termination (Gallant Decl. ¶¶ 6, 8-9).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

1    (*Id.*).    Visa suggested that Maritz's legal counsel contact Visa's legal counsel, Roderick

2    Thompson (*Id.*).

3    As Visa suggested, Maritz's counsel, Steve Gallant, contacted Thompson (*Id.*, ¶ 14).

4    Gallant had several communications with Thompson between Maritz's receipt of the July 2 letter

5    and July 9, 2007 (*Id.* ¶ 15).  At no time during any of these communications did Thompson say or

6    indicate that Visa was claiming that Maritz was in default or that Visa was claiming that Maritz

7    owed Visa anything, much less tens of millions of dollars (*Id.*).    Based on the conversations

8    between Gallant and Thompson, Gallant was led to believe that he and Thompson were trying to

9    devise a process for determining the amount that Visa owed Maritz under the MSA in light of

10    Visa's termination for convenience (*Id.*).

11    On July 9, 2007, Thompson sent Gallant a letter (the "July 9 Letter") which contained,

12    among other things, an agreement to arbitrate (*Id.*, ¶ 18).  Gallant signed and returned the July 9

13    Letter the next day (*Id.*).    At no time before Gallant signed the July 9 Letter did Thompson ever

14    say or indicate to Gallant that Visa considered Maritz to be in default or that Visa expected Maritz

15    to pay Visa anything, much less tens of millions of dollars (*Id.*).    Thompson did not reveal Visa's

16    claims until approximately two weeks *after* the July 9 Letter containing the agreement to arbitrate

17    was signed (*Id.* ¶ 22).

18    The evidence indicates that Visa was not acting in good faith, despite Visa's specific

19    contractual obligation to do so under Section XXII.A. of the MSA (*See* Gallant Decl. ¶¶ 7-18, 22-

20    26, 29).  Visa indicated that upon completion of the transition from Maritz to Carlson, the parties

21    would meet to discuss Maritz's invoices reflecting what Visa owed Maritz (*See generally*

22    Peterman Decl. ¶ 9; Gallant Decl. ¶ 10).  Visa *never* indicated that it was claiming Maritz was in

23    default or that Visa was entitled to tens of millions of dollars, until after Maritz had been

24    sandbagged into agreeing to arbitrate (Peterman Decl. ¶¶ 2-8; Gallant Decl. ¶¶ 22-26).

25    Maritz would never have agreed to arbitrate in the July 9 Letter –  giving up its rights to a

26    jury trial and to full discovery under the Federal Rules, as well as limiting its rights on appeal –

27    had Visa disclosed the nature and magnitude of its claims (*See* Gallant Decl. ¶¶ 19-20).

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

4

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1      If Visa was going to seek (for example) many millions of dollars in damages from Maritz

2 – whether liquidated, "cover" or other damages – as a result of the parties not meeting the

3 November 2006 launch date, Visa should have disclosed this to Maritz before inducing Maritz to

4 agree to arbitrate, especially in light of (a) the November 8-9, 2006 emails in which the parties

5 agreed to proceed on a best efforts basis and Visa agreed to waive punitive damages, (b) Visa's

6 contractual obligations to act in good faith in resolving any disputes under the MSA, (c) the

7 parties' agreement in February 2007 to a new launch date in July 2007 (without any mention by

8 Visa that the liquidated damages clock would be ticking the entire time), and (d) Visa's

9 termination for convenience rather than for material breach or default.

10      Visa continued its concealment until July 23, 2007, the day before the parties were

11 scheduled to meet in St. Louis to discuss Maritz's invoices supporting Maritz's $5.2 million bill.

12 On Friday, July 20, 2007, Maritz's Mark Peterman spoke with Visa's Tad Fordyce to confirm

13 Peterman's expectation of what was going to be covered in the July 24 meeting with Visa

14 (Peterman Decl. ¶¶ 4-6). Peterman told Fordyce that Maritz wanted to make sure that its

15 expectations were set correctly for the July 24 meeting, that Peterman wanted to confirm that

16 Fordyce had Maritz's invoices and the related detailed back-up pertaining to the approximately

17 $5.2 million that Maritz was owed, and to let Fordyce know that Maritz would be prepared to

18 discuss the invoices at the July 24 meeting (*Id.*). Fordyce confirmed he had the Maritz invoices

19 and related back-up and that was what they were coming to discuss (*Id.*). Fordyce never said

20 anything indicating that Visa believed that Maritz should pay Visa anything, much less tens of

21 millions of dollars (*Id.*). Peterman's understanding based on his conversation with Fordyce was

22 that Visa was willing to pay Maritz, but not the full $5.2 million that Visa owed (*Id.*).

23      It was not until July 23, 2007 that Thompson told Gallant for the very first time that Visa

24 was seeking tens of millions of dollars from Maritz. On July 24, 2007, Thompson specified that

25 Visa was seeking $66 million in damages from Maritz, dwarfing the $5.2 million Maritz had been

26 seeking from Visa.[3/]

---

27 [3/]    Even though Visa previously told Maritz that the exact amount of its claim against Maritz was privileged,
28 Visa has publicly disclosed this amount twice in this litigation – in Exhibit M to the Declaration of Roderick M.
Thompson in Support of Visa's Motion to Compel and in Exhibit M to the Declaration of Roderick M. Thompson in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1    **III.    VISA HAD A DUTY TO DISCLOSE THAT IT WAS SEEKING TENS OF**
2    **MILLIONS OF DOLLARS IN DAMAGES FROM MARITZ BEFORE INDUCING**
      **MARITZ INTO AGREEING TO ARBITRATE**

3            The information currently available to Maritz indicates Visa knew the nature and

4    magnitude of its damages prior to sending the July 9, 2007 letter and had decided not to disclose

5    that material information to Maritz prior to inducing Maritz into agreeing to arbitrate.

6            **A.    Visa Owed Maritz a Duty of Disclosure Under the Restatement (2d) of Torts §**
                  **551.**

7

8            Section 551 of the Restatement (2d) of Torts provides:

9            (1)    One who fails to disclose to another a fact that he knows may justifiably
             induce the other to act or refrain from acting in a business transaction is subject to
10           the same liability to the other as though he had represented the nonexistence of the
             matter that he has failed to disclose, if, but only if, he is under a duty to the other
11           to exercise reasonable care to disclose the matter in question.

12           (2)    One party to a business transaction is under a duty to exercise reasonable
             care to disclose to the other before the transaction is consummated,
13
14           (a)    matters known to him that the other is entitled to know because of a
             fiduciary or other similar relation of trust and confidence between them; and

15           (b)    matters known to him that he knows to be necessary to prevent his partial
             or ambiguous statement of the facts from being misleading; and
16
17                  ….

18           (e)    facts basic to the transaction, if he knows that the other is about to enter
             into it under a mistake as to them, and that the other, because of the relationship
             between them, the customs of the trade or other objective circumstances, would
19           reasonably expect a disclosure of those facts.

20           Under Section 551, the key issue is whether Visa owed a duty to disclose the types,

21   amounts and/or magnitude of the damages Visa claimed Maritz owed before inducing Maritz into

22   agreeing to arbitrate.  Visa's duty to disclose under Section 551 can be based on at least several

23   separate grounds.  *See generally In re Mediscan Research, Ltd.*, 940 F.2d 558, 561-63 (9th Cir.

24   1991) (discussing California law regarding fraudulent concealment, including under § 551).

25           First, under the MSA, Visa was contractually obligated to act in good faith in resolving

26   disputes under the MSA.  This good faith contractual requirement created a relationship of trust

27   _____

28   Support of Visa's Opposition to Maritz's Motion to Stay Arbitration.  Maritz informed Visa of this public disclosure
     on January 18, 2007, but Visa has failed to take any steps to remove this information from the public domain.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1   and confidence such that if Visa was going to claim that it was owed tens of millions of dollars,

2   then under Section 551(2)(a) it should have disclosed this information to Maritz before inducing

3   Maritz into "the transaction," i.e., the agreement to arbitrate.

4           Second, under Section 551(2)(b), Visa's termination for convenience, combined with,

5   *inter alia*, (a) the November 2006 waiver of punitive damages and the related agreement that the

6   parties were proceeding on a best efforts basis, (b) the parties' February 2007 agreement on a new

7   timeline, including the new agreed-upon target launch date of July 2007 (without Visa ever

8   mentioning that liquidated damages would be accruing during this time), (c) Visa's termination

9   prior to July 2007, without Visa having given Maritz any notice of default or opportunity to cure,

10  (d) the statement by Inovant's McCarthy that technology did not play a role in Visa's decision to

11  terminate, and (e) the complete absence of any indication that Visa expected Maritz to pay

12  anything, much less tens of millions of dollars, triggered a duty to disclose on Visa's part if Visa

13  were going to pursue multi-millions of dollars worth of damages.  *See generally In re Mediscan

14  Research, Ltd.*, 940 F.2d at 561-63; *Ach v. Finkelstein*, 264 Cal. App. 2d 667, 70 Cal. Rptr. 472

15  (Cal. App. 1968) (fraud embraces anything intended to deceive, including statements, acts,

16  concealments and omissions involving breach of a legal or equitable duty).  Visa's statements and

17  conduct were partial, misleading and ambiguous at best, and created the impression that Visa

18  would not be making multi-million dollar claims which dwarfed those of Maritz's for services

19  rendered.

20          If Visa was going to claim that Maritz owed tens of millions of dollars, whether for

21  default damages, liquidated damages, or anything else, then it should have said so.  Visa should

22  not have led Maritz into believing that Visa was coming to St. Louis in mid-July 2007 to discuss

23  how much of the $5.2 million in invoices that Maritz had provided would be paid, when in fact

24  Visa was planning to claim that regardless of the $5.2 million, Maritz owed Visa tens of millions

25  of dollars.  Visa's conduct lulled Maritz into a false sense that the only issue in dispute was how

26  much of the $5.2 million Visa would pay.  *Cf. In re Eashai*, 97 F.3d 1082, 1088-89 (9th Cir.

27  1996) (affirming finding of fraud based on debtor's concealment of intent in credit card scheme

28  not to pay credit card bills).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1     Third, Visa also owed Maritz a duty to disclose under Section 551(2)(e). Visa's

2 undisclosed intent to seek tens of millions of dollars were "facts basic to the transaction" – i.e.,

3 whether Maritz would agree to arbitrate – that Visa should have disclosed under Section

4 551(2)(e). Maritz believes discovery will show Visa knew that Maritz did not realize Visa was

5 claiming Maritz owed tens of millions of dollars. Disclosure under Section 551(2)(e) was further

6 required because Maritz reasonably expected, in light of Visa's contractual obligation under the

7 MSA to act in good faith in resolving disputes, that Visa would have disclosed this information

8 before inducing Maritz into an arbitration agreement.

9     **B.**    **<u>Visa Owed Maritz a Duty of Disclosure Under California Law</u>**

10      As explained above, Visa's contractual requirement to resolve any disputes in good faith

11 under the MSA created a relationship of trust and confidence between the parties. Whether the

12 parties had such a relationship, however, is just one way Maritz can succeed on its fraud. Even in

13 the absence of such a relationship, Maritz's fraud claims find support under various California

14 statutes and case law. Cal. Civ. Code § 1572, for example, broadly defines "actual fraud" as

15 follows:

16     Actual fraud, within the meaning of this chapter, consists in any of the following
17     acts, committed by a party to the contract, or with his connivance, with intent to
    deceive another party thereto, or to induce him to enter into the contract:

18     1.    The suggestion, as a fact, of that which is not true, by one who does not
19     believe it to be true;

       ….
20

21     3.    The suppression of that which is true, by one having knowledge or belief of
    the fact;

22       ….

23     5.    Any other act fitted to deceive.

24 Similarly, "constructive fraud" is broadly defined in Cal. Civ. Code § 1573 (2007) to include

25 "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person

26 in fault … by misleading another to his prejudice …."

27      Maritz was misled and deceived into agreeing to arbitrate by, among other things, Visa's

28 conduct and statements indicating that the only question was how much Visa would pay of the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

$5.2 million that Maritz believed was owed, and Visa's suppression of its claims for tens of millions of dollars from Maritz.

California also statutorily provides, with respect to "fraudulent deceit," that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." *See* Cal. Civ. Code § 1709 (2007). "Deceit" within § 1709 is broadly defined in Cal. Civ. Code § 1710 (2007) to include:

> 1.     The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
>        ….
>
> 3.     The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; …

For the same reasons as discussed above with respect to the Restatement (2d) of Torts § 551 and Cal. Civ. Code §§ 1572-73, Visa's conduct falls within Sections 1709-10 of the Civil Code. Visa deceived Maritz by its conduct, statements, and its concealment of its plan to induce Maritz into agreeing to arbitrate before disclosing the magnitude of what Visa claims Maritz owes – conduct flying squarely in the face of Visa's duty to act in good faith under the MSA.

In *Warner Construction Corp. v. City of Los Angeles*, the California Supreme Court upheld the jury's finding of liability in a construction case in which Warner Construction asserted breach of contract and fraudulent concealment claims against the City of Los Angeles. 2 Cal. 3d 285 (1970). In affirming the finding of fraudulent concealment liability, the California Supreme Court stated:

> In transactions which do not involve fiduciary or confidential relations, a cause of action for nondisclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff.
>
> All these instances are present in this case, or so the jury could find. The nondisclosure of the cave-ins and special drilling techniques used in drilling the test holes transformed the logs into misleading half-truths. The facts concealed were exclusively available to defendant. Finally, plaintiff presented evidence of intentional concealment by the city.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

9

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1    *Id.*, 2 Cal. 3d at 294-95 (footnotes and citations omitted). As in *Warner Construction*, Visa failed

2    to make a complete disclosure, misled Maritz as to what Visa was planning to do, and concealed

3    very material information from Maritz – information that only Visa knew. *See also Marketing*

4    *West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 613, 7 Cal. Rptr. 2d 859 (Cal. App.

5    1992) (noting that in at least three instances, a cause of action for nondisclosure of material facts

6    may arise in transactions not involving fiduciary or confidential relations); *Dyke v. Zaiser*, 182

7    P.2d 344, 351-53 (Cal. App. 1947) (discussing duty to disclose and the scope thereof).

8    Similarly, in *Ach v. Finkelstein*, 264 Cal. App. 2d 667, 70 Cal. Rptr. 472 (Cal. App. 1968),

9    plaintiffs claimed defendants had defrauded plaintiffs in connection with plaintiffs' purchase of

10    an apartment house. Plaintiffs claimed they were misled because defendants failed to disclose

11    that rental concessions had been given to the tenants. In affirming the trial court's judgment for

12    plaintiffs, the appellate court stated:

13    > In its broad, general sense the concept of fraud embraces anything which is
14    > intended to deceive, including all statements, acts, concealments and omissions
     > involving a breach of legal or equitable duty, trust or confidence which results in
     > injury to one who justifiably relies thereon. … There is no absolute or fixed rule
15    > for determining what facts will constitute fraud; whether or not it is found depends
     > upon the particular facts of the case under inquiry. Fraud may be proved by direct
16    > evidence or it may be inferred from all of the circumstances in the case.

17    *Id.*, 264 Cal. App. 2d at 674, 70 Cal. Rptr. at 477 (quoting *Pearson v. Norton*, 230 Cal. App. 2d 1,

18    7-8 (Cal. App. 1964) (citations omitted). *See also Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.

19    App. 4th 282, 291, 17 Cal. Rptr. 3d 26, 32 (Cal. App. 2004) ("[a]ctive concealment or suppression

20    of facts by a nonfiduciary is the equivalent of a false representation, i.e., actual fraud"); *Cicone v.*

21    *URS Corp.*, 183 Cal. App. 3d 194, 201, 227 Cal. Rptr. 887, 891 (Cal. App. 1986) ("One who is

22    asked for or volunteers information must be truthful, and the telling of a half-truth calculated to

23    deceive is fraud."). *Cf. Toledano v. O'Connor*, 501 F. Supp.2d 127, 145 (D. D.C. 2007) (superior

24    knowledge can support rescission based on the nondisclosure of material facts if the facts are

25    known or accessible only to one party, and that party knows they are not known or reasonably

26    discoverable by the other party; *citing Warner Construction*, *supra*); *Kallgren v. Steele*, 279 P.2d

27    1027 (Cal. App. 1955) (affirming judgment based upon seller's failure to disclose facts materially

28    affecting the value of property sold). Here, only Visa knew that it was claiming that Maritz owed

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1    tens of millions of dollars, and the evidence indicates Visa was not going to disclose this

2    information until after Maritz had unwittingly agreed to arbitrate.[4]

3    **IV.    MARITZ SHOULD BE ALLOWED TO OBTAIN DISCOVERY RELATING TO
          ITS FRAUD CLAIM**

4

5        Because Visa had a duty to disclose its intention to assert multi-million dollar claims

6    against Maritz under the "good faith" provisions of the MSA, as well as under the Restatement

7    (2d) of Torts § 551 and California law, the Court cannot dispose of Maritz's fraud claim as a

8    matter of law.  *See* Section II above.  Under Section 4 of the FAA, the question of whether Visa's

9    fraud taints the parties' Letter Agreement requires adjudication on the merits by this Court.  *See,*

10   *e.g.,* 9 U.S. C. § 4; *Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 131 (2nd Cir. 1997); *cf.*

11   *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445-46 (2006).

12       Section 4 of the FAA, 9 U.S.C. § 4, states that a party alleged to be in default of an

13   arbitration agreement may demand a jury trial on the validity of an arbitration provision:

14       If the making of the arbitration agreement . . . be in issue, the court shall proceed
         summarily to the trial thereof. . . . Where such an issue is raised, the party
15       alleged to be in default may . . . demand a jury trial of such issue, and upon such demand
         the court shall make an order referring the issue or issues to a jury in the manner
16       provided by the Federal Rules of Civil Procedure, or may specially call a jury for
         that purpose .

17

18       Courts have employed a summary judgment approach to Section 4, with the party

19   resisting arbitration bearing the burden in this regard.  9 U.S.C. § 4; *see also Doctor's Associates,*

20   107 F.3d at 129-30; *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2nd Cir. 2002).  As

21   this Court stated in *Garbacz v. A.T. Kearny, Inc.*:

22   _____

     [4]    Visa's injection of Mr. Thompson into the equation as of July 2, 2007 does not change Visa's duty to
23   disclose, i.e., Visa's duty to disclose is not eliminated simply because Visa's outside counsel surfaced. "In California
     it is well established that an attorney may not, with impunity, … conspire with a client to defraud or injure a third
24   person" and that "a duty is owed by an attorney not to defraud another, even if that other is an attorney negotiating at
     arms-length."  *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 201, 227 Cal. Rptr. 887, 891 (Cal. App. 1986).  *See*
25   *generally* Cal. Bus. & Prof. Code §§ 6068(d) and 6128.  Indeed, "[o]ne who is asked for or volunteers information
     must be truthful, and the telling of a half-truth calculated to deceive is fraud." *Id*
26       In addition, under well-established California, law, if Mr. Thompson was involved in facilitating or
     furthering Visa's fraudulent inducement and deceit, then his conduct was improper and otherwise privileged
27   communications may be discoverable.  *See, e.g.,* Cal. Evid. Code § 956 (2007) ("There is no privilege under [the
     attorney-client privilege] if the services of the lawyer were sought or obtained to enable or aid anyone to commit or
28   plan to commit a crime or a fraud."); *see also Freedom Trust v. Chubb Group of Ins. Cos.*, 38 F. Supp.2d 1170, 1171
     (C.D. Cal. 1999) (the "fraud" portion of the crime fraud privilege exception includes civil fraud).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

> When considering a motion to compel arbitration, the court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56. . . . If there is doubt as to whether such an agreement exists, the matter should be resolved through an evidentiary hearing or mini-trial. . . . When considering a motion to compel arbitration which is opposed on the ground that there is no binding agreement to arbitrate, the district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Garbacz v. A.T. Kearny, Inc.*, 2006 U.S. Dist. LEXIS 20135, *5-*6 (N.D. Cal. 2006) (J. White) (citation omitted).

There are disputed factual issues relating to whether Visa fraudulently induced Maritz into agreeing to arbitrate, and a jury should decide whether, under the circumstances, the arbitration provision is invalid because of Visa's misleading conduct and material omissions. *See, e.g.,* 9 U.S.C. § 4; *Ferguson v. Countrywide Credit Industries, Inc.*, 2001 WL 867103, *1 (C.D. Cal. 2001), *aff'd*, 298 F.3d 778, 782 (9th Cir. 2002) (finding that party resisting arbitration raised a genuine dispute regarding the making of the arbitration agreement, entitling it to Section 4 jury trial); *see also Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 39 (D. D.C. 2004) (whether parties agreed to arbitrate could not be determined on the motion to compel arbitration alone; trial was required on issue of existence of the agreement and court suggested that further discovery would be allowed on the issue); *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 5 (2nd Cir. 1981) (disputed fact issue concerning fraud; Section 4 trial required); *Garbacz v. A.T. Kearny, Inc.*, 2006 U.S. Dist. LEXIS 20135 at *5 (denying motion to compel arbitration because of genuine issues of material fact as to whether party consented to arbitration agreement).

If this Court were to allow Visa's Motion to proceed in the absence of discovery, it would be the equivalent of hearing and deciding a motion for summary judgment notwithstanding a valid claim under Federal Rule of Civil Procedure 56(f). *Cf.* F.R.C.P. 56(f); *Visa Intern. Service Ass'n v. Bankcard Holders of America*, 784 F.2d 1472 (9th Cir. 1986) (reversing the decision of the Northern District of California court, finding that disallowing discovery under Rule 56(f) constituted an abuse of discretion); *Audio Video Center Inc. v. First Union National Bank*, 84 F. Supp. 2d 624, 626-27 (E.D. Pa. 2000) (to determine whether the parties made an arbitration agreement, parties directed to conduct discovery on fraud issue).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

12

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

Maritz needs and is entitled to discovery relating, at a minimum, to the following topics:

1.   whether Visa knew and/or had discussed that it intended to assert claims for tens of millions of dollars when the parties agreed in February 2007 to a new launch date of July 2, 2007 and/or when Visa sent its April 20, 2007 letter to Maritz;

2.   when Visa determined the amount it was allegedly owed and how that amount would be calculated;

3.   whether Visa had internal communications and discussions regarding not telling Maritz of Visa's claims for millions of dollars;

4.   the reasons that Visa failed to disclose to Maritz the specifics of Visa's damage claims – including the kinds of damages Visa would or might be seeking (e.g., cover damages, liquidated damages, etc.), the time period for which Visa was claiming entitlement to damages, and the amounts and magnitude of the damages Visa would be seeking (i.e., tens of millions of dollars) – prior to July 23, 2007;

5.   the extent to which Visa's failures to disclose this information related to Visa's desire to arbitrate;

6.   any discussions or communications as to what Maritz should or should not be told about Visa's claims or potential claims, and when Maritz should be told (or not told, as the case may be);

7.   the extent to which Visa knew or believed that Maritz did not realize that Visa would or might be seeking (a) tens of millions of dollars, (b) liquidated damages, and/or (c) cover damages (e.g., relating to Visa's decision to use Carlson);

8.   the extent to which Visa's counsel was involved in directing, orchestrating, facilitating or approving the concealment of information relating to the above;

9.   the extent to which Visa's failure to disclose the types and amounts of damages it was seeking related to the parties' prior agreement in November 2006 to proceed on a best efforts basis and/or for Visa to waive punitive damages; the parties' agreement in February 2007 to a new timeline containing a new launch date of July 2, 2007; and/or Visa's decision to terminate,

1    prior to the July 2007 launch date, the MSA for convenience rather than any alleged default or

2    material breach;

3        10. why Visa chose to terminate the MSA for convenience rather than default or

4    breach;

5        11. did Visa want Maritz to agree to arbitrate before telling Maritz of the amounts and

6    magnitude of damages Visa was seeking and, if so, (a) why, (b) who was involved in making the

7    decision and then implementing it, and (c) what did Visa do (or not do) so that Maritz would not

8    find out; and

9        12. what role Visa's transition from Maritz to Carlson played in Visa's decision to

10    withhold Visa's damages-related claims and information from Maritz.

11        Maritz should be allowed to obtain documents and take Rule 30(b)(6) depositions relating

12    to each of the above topics.  In addition, Maritz should be allowed to depose Visa's Fordyce, Tim

13    Attinger (Fordyce's boss) and Elizabeth Buse – each of whom is expected to have discoverable

14    information (and who may also be the 30(b)(6) designees) relating to the above topics; and John

15    McCarthy of Inovant.[5]

16    **V.    CONCLUSION**

17        Maritz believes, and the evidence indicates, that Visa deliberately withheld that it was

18    planning to seek tens of millions of dollars from Maritz so that Visa could induce Maritz into

19    agreeing to arbitrate.  Under the circumstances, including the express MSA contractual obligation

20    that Visa act in good faith in resolving disputes under the MSA, the November 8-9, 2006 waiver

21    of liquidated damages and agreement to proceed on a best efforts basis, Visa's termination of the

22    MSA for convenience, and Visa's failure to give any indication that it expected Maritz to pay tens

23    of millions of dollars in damages, Visa had a duty to disclose to Maritz that it would be seeking

24    such damages and what those damages encompassed before inducing Maritz to arbitrate.  Maritz

25

26

27

28

---

[5]    Depending on the information Maritz obtains from these individuals, Maritz may also need to depose Visa's
outside counsel, Mr. Thompson, especially since he had communications directly relevant to the agreement to
arbitrate and to the reasons why Visa failed to disclose its damages-related information to Maritz prior to inducing
Maritz into agreeing to arbitrate. *See generally Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

14

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1    should be allowed to obtain discovery to help prove its claim that the agreement to arbitrate was

2    fraudulently induced.

3

4    Dated:    January 25, 2008                Manatt, Phelps & Phillips, LLP

5

6                                    By:    /s/ Ryan S. Hilbert
                                        Ronald S. Katz (SBN 085713)
7                                       Ryan S. Hilbert (SBN 210549)
                                        MANATT, PHELPS & PHILLIPS, LLP
8                                       1001 Page Mill Road, Building 2
                                        Palo Alto, CA  94304-1006
9                                       Telephone:    (650) 812-1300
                                        Facsimile:    (650) 213-0260
10                                      *Attorneys for Defendant and Counter-Claimant*

11

12    20195690.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

15

BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW