Roderick M. Thompson (State Bar No. 96192)
    rthompson@fbm.com
Robert C. Holtzapple (State Bar No. 145954)
    bholtzapple@fbm.com
Helen Dutton (State Bar No. 235558)
    hdutton@fbm.com
Diego F. Acevedo (State Bar No. 244693)
    dacevedo@fbm.com
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiff
VISA U.S.A. INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A. INC.,<br><br>             Plaintiff,<br><br>vs.<br><br>MARITZ INC., d/b/a MARITZ LOYALTY MARKETING,<br><br>             Defendant. | Case No. CV-07-5585 JSW<br><br>**VISA U.S.A. INC.'S REPLY IN SUPPORT OF MOTION TO STAY ACTION AND TO COMPEL ARBITRATION**<br><br>Date:       February 8, 2008<br>Time:      9:00 a.m.<br>Courtroom 2 (17th Floor)<br>Hon. Jeffrey S. White |

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

21823\1432538.2

## SUMMARY OF ARGUMENT

Maritz does not dispute that it signed the Letter Agreement knowing that the Letter Agreement requires "[b]inding arbitration pursuant to the AAA Commercial Rules", and that the Letter Agreement covers the parties' respective claims. These admissions end the Court's inquiry: there is undeniably a *prima facie* agreement to arbitrate and any challenges to the validity of that agreement must be submitted to the arbitrator.

In its Opposition, Maritz advances two arguments to support its claim that the "threshold issue of fraud" must be decided by the Court. First, Maritz attempts to avoid *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006), by claiming it was fraudulently induced to agree to the arbitration provision – as opposed to the entire Letter Agreement. Second, although tacitly conceding that the language of the Letter Agreement itself requires that challenges to the validity of the Letter Agreement go to the arbitrator, Maritz argues that the Court need not reach this issue "because a fraudulently induced agreement to arbitrate is no more valid than any other fraudulently induced agreement." (D.E. # 45, Maritz's Opposition To Motion To Stay Action And Compel Arbitration ("Maritz Opp."), 1:17-18.) Both of these arguments fail.

With respect to the first, because the Letter Agreement covers a single, unified dispute resolution framework, Maritz's challenge must be to the validity of that contract as a whole. *See Buckeye Check Cashing, Inc.*, 546 U.S. at 449. With respect to the second, the Letter Agreement incorporated the AAA Commercial Rules, which expressly reserve to the arbitrator the power to rule on validity challenges to the arbitration agreement. The prevailing federal rule (followed by courts in this district) is that Maritz must present any contention that it was fraudulently induced to enter the Letter Agreement to the arbitrator. *See Terminix Int'l. Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005).

Finally, Maritz argues that it has made a sufficient factual showing of fraud in the inducement of the arbitration provision. Again, Maritz is wrong. The undisputed facts demonstrate that Visa had no duty to disclose that which Maritz now claims was material to its decision to enter the Letter Agreement.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

-i-

21823\1432538.2

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Once The Court Determines That The Matter Is Referable To Arbitration, The Pending Litigation Must Be Stayed. ................................................................ 2

    B. Questions Regarding Arbitrability Must Be Submitted To The Arbitrator ............ 3

        1. The Arbitrator Must Determine The Arbitrability Issue, Because Maritz's Challenge Is To The Entire Letter Agreement, Not Just The Arbitration Provision. ................................................................................ 3

        2. Because The Letter Agreement Incorporates The AAA Rules, Issues Regarding the Validity Of The Letter Agreement Are Reserved For The Arbitrator. ....................................................................... 5

    C. Alternatively, If The Court Decides The Issue Of Arbitrability, Maritz Should Be Compelled To Arbitrate, Because The Letter Agreement Is Both Valid And Covers The Disputes Between The Parties. ............................................ 8

        1. The Letter Agreement Is Valid And Enforceable ....................................... 9

        2. Visa Had No Duty To Disclose The Size Of Its Claim Prior To The Execution Of The Letter Agreement ........................................................... 9

III. CONCLUSION .................................................................................................................. 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- ii -

21823\1432538.2

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Anderson v. Pitney Bowes, Inc.*,
    2005 WL 1048700 (N.D. Cal. May 4, 2005) .................................................... 6, 7, 8

*Apollo Computer, Inc. v. Berg*,
    886 F.2d 469 (1st Cir. 1989) ............................................................................... 6

*Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc.*,
    2004 WL 2931284 (N.D. Ill. Dec. 9, 2004) .......................................................... 8

*Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*,
    278 F. Supp. 2d 1041 (N.D. Cal. 2003) ............................................................... 3

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ......................................................................................... 4, 5

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ................................................................................ 2

*Chiron Corp. v. Ortho Diagnostic System*,
    F.3d 1126 (9th Cir. 2000) ..................................................................................... 9

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) .......................................................................................... 3, 9

*Leyva v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ............................................................................... 2

*Poponin v. Virtual Pro*,
    2006 WL 2691418 (N.D. Cal. Sept. 20, 2006) .................................................. 6, 8

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
    388 U.S. 395 (1967) ............................................................................................ 4

*Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*,
    2007 WL 914464 (N.D. Cal. Mar. 20, 2007) ............................................... 4, 5, 8

*Terminix Int'l Co. v. Palmer Ranch Ltd.*,
    432 F.3d 1327 (11th Cir. 2005) ......................................................................... 6, 8

**STATE CASES**

*Brownlee v. Vang*,
    235 Cal. App. 2d 465 (1965) ............................................................................... 11

*Chase Chem. Co. v. Hartford Accident & Indem. Co.*,
    159 Cal. App. 3d 229 (1984) ............................................................................... 9

*Cicone v. URS Corp.*,
    183 Cal. App. 3d 194 (1986) ............................................................................... 12

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION    - iii -
Case No. CV-07-5585 JSW

21823\1432538.2

*Goodman v. Kennedy*
   18 Cal. 3d 335 (1976) ........................................................................................... 9

*Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   604 So. 2d 332 (Ala. 1991) .................................................................................. 5

*People v. Highland Fed.1 Sav. & Loan*,
   14 Cal. App. 4th 1692 (1993) ............................................................................. 10

*Shafer v. Berger, Kahn, Shafton, Moss, Figler & Gladstone*,
   107 Cal. App. 4th 54 (2003) ................................................................................ 9

*Vega v. Jones, Day, Reavis, & Pogue*,
   121 Cal. App. 4th 282 (2004) ....................................................................... 12, 13

## FEDERAL STATUTES

9 U.S.C.
   § 3 ......................................................................................................................... 2
   § 4 ......................................................................................................................... 9

## OTHER AUTHORITY

Martin Domke, DOMKE ON COMMERCIAL ARBITRATION
   § 22:6 ................................................................................................................ 2, 3

Restatement (Second) of Torts
   § 551 (1977) ....................................................................................................... 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION — iv —
Case No. CV-07-5585 JSW

21823\1432538.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case, and the underlying arbitration, arises out of Maritz's breaches of contract and gross negligence in failing to develop, deploy, operate and maintain a points-based rewards program for Visa. In its Opposition and supporting declarations Maritz provides its characterization of Visa's underlying claims and excuses for its failure to perform. This procedural motion is not the appropriate time to respond in detail. Suffice it to say that Maritz failed miserably to meet the comprehensive and painstakingly-negotiated requirements of the contract and, as Maritz must have known:

- Visa is contractually entitled to $70,000 per day in liquidated damages for each day of delay in launching the new program. (Contrary to Maritz assertions, that right has not been waived.)

- As a result of Maritz's failures, the rewards program was not available to Visa cardholders during much of the critical 2006 holiday shopping season.

- Although the contract squarely charged Maritz with the responsibility to "develop, deploy, operate and maintain" the new system, when Maritz's system failed in November 2006, Visa rushed resources to St. Louis, spending millions of dollars and thousands of man hours trying to salvage something out of the substandard Maritz work product. Eventually, Visa concluded that any product that Maritz would create was likely to be late, unstable and ultimately doomed to fail.

- Visa was therefore forced to terminate the contract and to switch to another vendor (at a huge mark up in price).

When Visa terminated the contract, Visa explicitly reserved its rights, including, specifically **"claims Visa has against Maritz for Maritz's breaches . . . Maritz's non performance or delay . . . . and Visa's right to liquidated damages."** (D.E. #27, Declaration of Roderick M. Thompson ISO Motion To Stay ("Thompson Decl."), Ex. B; emphasis added.) In June and July, Visa advised Maritz that it would provide additional information to Maritz as to the **"nature and amount of Visa's claims"** as soon as a procedure for resolving those claims was established. (Thompson Decl., Ex D; emphasis added.) The parties' lawyers discussed procedures and reached agreement in the July 9 Letter Agreement, which Maritz counsel transmitted with the message "attached is an executed agreement outlining the procedures **for resolving any differences that may exist between Visa and Maritz.**" (Thompson Decl., Ex. G;

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION    - 1 -
Case No. CV-07-5585 JSW

21823\1432538.2

emphasis added.) The executed Letter Agreement provided: "We agreed that our clients' **respective claims for damages** resulting from alleged breaches of the [MSA] **and related claims** will all be resolved outside of court." (Thompson Decl., Ex. F; emphasis added.)

Faced with the reality of having to take responsibility for the substantial damages it caused, Maritz reneged on this Letter Agreement in late July. Since then it has offered a number of excuses for why it should not have to arbitrate as agreed. As explained below, Maritz's challenge to the Letter Agreement must be determined by the arbitrator. But, at bottom, Maritz's current claim is that its Associate General Counsel failed to understand that Visa's April 20 termination letter meant exactly what it said: that Visa had reserved all rights relating to "**claims Visa has against Maritz for Maritz's breaches . . . Maritz's non performance or delay . . . . and Visa's right to liquidated damages.**" As a matter of law, such a claim cannot survive. (Thompson Decl., Ex. B; emphasis added.)

Maritz's continuing attempts to do everything possible to delay the "streamlined" process to which it agreed must end. Visa's motion should be granted. This case should be stayed and the parties directed to arbitrate their disputes.

## II. ARGUMENT

### A. Once The Court Determines That The Matter Is Referable To Arbitration, The Pending Litigation Must Be Stayed.

Section 3 of the FAA requires that pending litigation be stayed once the court is "satisfied that the issue involved in [a] suit or proceeding is referable to arbitration …[it] *shall* on application of one of the parties stay the trial of the action until such arbitration has been had…." 9 U.S.C. § 3 (emphasis added). Notwithstanding the word "shall" in the statute, Maritz disputes the mandatory nature of a stay under this statutory provision, instead urging a discretionary standard of balancing the parties' needs and the interests of the Court.[1] (*See* D.E. #45, Maritz

---

[1] To support its claim that a discretionary standard governs Visa's motion, Maritz cites *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) and *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979). (*See* Maritz Opp. at 8-9.) Neither case supports the proposition. *CMAX* nowhere addresses arbitration or the Federal Arbitration Act. In *Leyva*, the court considered whether a stay should issue when only *some* of the parties' disputes were referable to arbitration. For the same reason, Maritz's citation to Domke is unavailing; the cited

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 2 -

21823\1432538.2

1  Opp. at 8-9.) Maritz, however, overlooks that the FAA is phrased in mandatory terms. *See Dean*
2  *Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding that FAA "leaves no place for
3  the exercise of discretion by a district court"); *see also Boston Telecomms. Group, Inc. v. Deloitte*
4  *Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1046 (N.D. Cal. 2003) (dismissing action "upon finding
5  that the parties agreed to arbitrate, 'a district court has little discretion to deny an arbitration
6  motion....'") (quotation omitted); Martin Domke , DOMKE ON COMMERCIAL
7  ARBITRATION § 22:6 at p. 22-17 (3rd ed. 2007) ("The court *must* stay the action once it finds
8  that the dispute is referable to arbitration and no other impediments prevent the effectiveness of
9  the arbitration clause.") (emphasis added).

For the reasons discussed below, this matter encompasses Visa's claims and Maritz's counterclaims and is referable to arbitration. This case, therefore, must be stayed until the arbitration has been had.

### B. Questions Regarding Arbitrability Must Be Submitted To The Arbitrator.

#### 1. The Arbitrator Must Determine The Arbitrability Issue, Because Maritz's Challenge Is To The Entire Letter Agreement, Not Just The Arbitration Provision.

As detailed in Visa's opening brief, Maritz's contemporaneous communications reflect its initial position that the entire Letter Agreement is invalid. (*See* D.E. #26, Visa's Mot. at 10-12.) Indeed, in an email sent the very day that the purported fraud was revealed, Maritz's Associate General Counsel wrote "our previous agreement [the Letter Agreement] is null an[d] void but that the parties will endeavor to reach resolution on ADR procedures it [sic] in the next ten or so days." (*See* Thompson Decl., Ex. H.) Although Maritz's Associate General Counsel now claims that this email "is not worded as artfully as in retrospect as [he] would have preferred" (D.E. #46, Declaration of Steve Gallant ("Gallant Decl."), 11:14-16), there is simply no way to read that email as being limited to the arbitration portion of the Letter Agreement; in addition to saying that the agreement is "null an[d] void" Mr. Gallant wrote that the parties would "endeavor to reach resolution on ADR procedures," not just arbitration issues. Because Maritz's challenge is to the

section addresses **both** arbitrable **and** nonarbitrable claims. Such is not the case here and Maritz does not so contend.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION          - 3 -
Case No. CV-07-5585 JSW

21823\1432538.2

Letter Agreement as a whole, its "threshold" issue of fraud must be determined by the arbitrator in the first instance. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 449 (2006) (reaffirming that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator").

Maritz argues that *Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*, 2007 WL 914464 (N.D. Cal. Mar. 20, 2007) requires that the Court determine Maritz's fraud in the inducement claim. (Maritz Opp. at 1-2 and 9-10.) In *Santana Row*, the court held that a party's fraudulent inducement defense to a stand-alone arbitration agreement was an issue for the court to decide. 2007 WL 914464 at *2 (N.D. Cal. Mar. 20, 2007). The case is readily distinguished from this matter, however. The *Santana Row* agreement was a stand-alone arbitration agreement which contained "no broader contractual duties other than to arbitrate covered disputes in the agreed-upon manner." *Id.* Although Maritz baldly asserts that the "*Santana Row* holding does not turn on this [stand-alone agreement] distinction" (Maritz Opp., 10:4-5), the form of the agreement in *Santana Row* was indeed central to that court's holding. Specifically, in distinguishing *Buckeye* and *Prima Paint*, the court stated:

> By contrast, the Arbitration Agreement between [the parties] is precisely what its title indicates: an agreement to arbitrate. It contains no broader contractual duties other than to arbitrate covered disputes in the agreed-upon manner. Therefore, it does not present the severability issue confronted in the cases. The fraud claim runs solely to an agreement to arbitrate. Accordingly, the claim must be considered by the Court as a prerequisite to its enforcement.

2007 WL 914464 at *2.

Here, by contrast, the Letter Agreement does contain broader contractual duties that obligate Visa and Maritz to resolve all disputes outside of court through a three-stage process, which obligated each party to fulfill each stage of the procedure in sequence. Indeed, Maritz admits as much: "Accordingly, on October 15, 2007, Maritz and Visa, **pursuant to other**

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 4 -

21823\1432538.2

***provisions of the July 9, 2007 letter***, participated in face-to-face negotiations." (D.E. #20, Maritz's Motion to Stay, 7:21-22; emphasis added.) While Maritz may contend that the arbitration provision was "a key provision of a narrow, stand-alone agreement" (Maritz Opp., 1:27-28.), the agreement had other provisions.[2]

Nor does it matter that "the other provisions have already been satisfied." *Id.* If Maritz is able to avoid or delay arbitration by changing positions it would effectively eviscerate the FAA and unfairly circumvent the strong federal policy favoring arbitration. *See Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 604 So.2d 332, 337-38 (Ala. 1991) (counsel's sharpening of issue relating to arbitration clause progressively over time readily apparent; court rejected later-developed argument as impermissible end run around FAA). Maritz's own words and writings demonstrate that Maritz initially challenged the Letter Agreement as a whole and only after Visa called *Buckeye Check Cashing* to its attention did Maritz change course to assert that it was fraudulently induced into the arbitration provision. Since Maritz has challenged the entire Letter Agreement, the issue of fraudulent inducement is properly reserved to the arbitrator.

### 2. Because The Letter Agreement Incorporates The AAA Rules, Issues Regarding the Validity Of The Letter Agreement Are Reserved For The Arbitrator.

Maritz does not dispute the "prevailing" rule that incorporation of the AAA Rules in the Letter Agreement evidences the parties' "clear and unmistakable" intent to submit issues of arbitrability to the arbitrator. Rather, Maritz erroneously claims that this rule does not apply where one alleges fraud in the inducement and claims that all of the authorities cited by Visa "deal with situations where the parties *conceded that an arbitration agreement existed.*" (Maritz

---

[2] Citing to footnote 4 on page 10 of Visa's Opposition to Maritz's Motion to Stay, Maritz argues that "Visa claims that Maritz is only challenging the arbitration provision in the letter agreement, not an 'entire', stand-alone agreement to arbitrate like the one at issue in *Santana Row*." (Maritz Opp., 1:16-19.) This is a rather striking misreading of Visa's brief – nothing in the cited footnote, or for that matter anywhere else in Visa's brief, supports this statement.

As Maritz presumably understands, the point of footnote 4 was to show that the Letter Agreement, unlike the agreement at issue in *Santana Row*, contained obligations in addition to the obligation to resolve all disputes through binding arbitration under the AAA Commercial Rules. Indeed, as noted above, Maritz admits as much.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 5 -

21823\1432538.2

Opp., 11:7-8 (emphasis in original).)[3] Maritz's characterization of Visa's case law is wrong: in fact, several of the cited cases addressed whether validity and enforceability challenges should go to the arbitrator as expressly provided for under AAA Rule 7.

For example, in *Terminix* (cited on page 7 of Visa's motion), the Eleventh Circuit held: "By incorporating the AAA rules, including Rule 8 [now Rule 7], into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is **valid**." *Terminix Int'l. Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005) (emphasis added). There, the party opposing arbitration did not concede that an arbitration agreement existed, as Maritz erroneously represents. To the contrary, the party opposing arbitration specifically contested the validity of an agreement to arbitrate that contained remedial restrictions. In holding that the validity of the agreement was an issue for the arbitrator to decide, the Eleventh Circuit explained that it was required not to evaluate the validity of the arbitration provision because "the parties ha[d] contracted around that default rule [of court adjudication of arbitrability issues, including validity disputes] and it is, therefore, unnecessary for us to reach these issues." So, too, here. By incorporating the AAA Commercial Rules, Visa and Maritz expressly contracted around the default rule of requiring court adjudication of validity issues. *See also Poponin v. Virtual Pro*, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006) (cited on pages 8 and 9 of Visa's Motion) (although plaintiff contended arbitration provision unconscionable and thus unenforceable, because agreement incorporated ICC rules, question of conscionability reserved for the arbitrator).

Indeed, in circumstances like those presented by Visa's motion, the Court's inquiry is strictly limited. Where, as here, the validity of the Letter Agreement is an issue for the arbitrator to decide, the Court need only determine that a *prima facie* agreement to arbitrate the parties' claim exists. *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989). In *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, at * 3 (N.D. Cal. May 4, 2005) (cited on page 8 of

---

[3]   *See also* Maritz Opp., 2:14-16: "Visa's cases are in an entirely different category – where the parties *admitted* an agreement to arbitrate was formed but challenged the scope of the agreement. For this reason alone, none of Visa's authority is relevant to the issues before this Court." (Emphasis in original.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 6 -

21823\1432538.2

Visa's motion), plaintiff challenged the validity of an arbitration agreement, arguing both that no agreement to arbitrate existed because he had not initialed the arbitration clause and that the arbitration clause was unconscionable and thus unenforceable. Noting that the "issue of who should decide arbitrability turns on what the parties agreed to in their contract," the *Anderson* court concluded that because the agreement "clearly and unmistakably" provided the arbitrator with that authority, the question was reserved for the arbitrator. *Id.* Plaintiff argued that "no agreement to arbitrate *exists* because of his failure to initial the provision" and thus the court had to determine arbitrability. The court rejected that argument, explaining "Plaintiff misunderstands the scope of a court's review under these circumstances. The Court, by conducting a *facial and limited review* of the contract must only decide whether the parties have clearly and unmistakably agreed to commit the question of arbitrability to the arbitrator." *Id.* at * 4. Because plaintiff's execution of the agreement "objectively manifest[ed] his intent to agree to arbitrate certain disputes, including arbitrability" the court granted the petition to compel arbitration and reserved for the arbitrator "whatever significance [plaintiff's] failure to initial may have . . . regarding the Agreement's enforceability." *Id.* at * 3. The same result is required here.

The Letter Agreement unambiguously provides that the third stage of the dispute resolution protocol is "binding arbitration pursuant to the AAA Commercial Rules." In its Reply Brief in Support of its Motion to Stay ("Maritz Reply"), Maritz argues that the Letter Agreement "does *not* say that any claims or differences with respect to the Letter Agreement will be resolved by arbitration." (D.E. #51, Maritz Reply at 11:18-19; emphasis in original.) But this is simply wrong. The Letter Agreement undeniably incorporated *all* of the AAA Commercial Rules, and Commercial Rule 7(a) provides that "The arbitrator shall have the power to rule on his or her own jurisdiction, *including any objections with respect to the existence, scope or validity of the arbitration agreement*." (Emphasis added.) Because the Letter Agreement incorporates a rule that expressly says the arbitrator shall rule on challenges to the "existence, scope or validity of the arbitration agreement," Maritz's claim of fraud in the inducement must be determined by the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 7 -

21823\1432538.2

arbitrator.[4] *See Terminix Int. Co. v. Palmer Ranch L.P.*, 432 F.3d 1327 (11th Cir. 2005) (agreement provided that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association," and AAA rule provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Court held that "By incorporating the AAA Rules, including Rule 8 [now 7], into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

Maritz also argues, without support, that because "a fraudulently induced agreement to arbitrate arbitrability is just [as] void as any other fraudulently induced agreement" the court should not even consider the terms of the Letter Agreement until after resolving Maritz's challenge. (Maritz Opp., 2:8-11, 10-11.) But as discussed above, the AAA rule that is incorporated into the Letter Agreement expressly includes challenges to "validity"; thus Maritz's argument would eviscerate the rule. Moreover, any challenge to the existence or validity of an agreement, if successful, means the agreement is unenforceable. Thus, if Maritz were correct, a claim that the arbitration provision was unconscionable as in *Terminix* or *Poponin* or that there was no meeting of the minds as in *Anderson* would necessarily need to be resolved by the court.[5]

### C. Alternatively, If The Court Decides The Issue Of Arbitrability, Maritz Should Be Compelled To Arbitrate, Because The Letter Agreement Is Both Valid And Covers The Disputes Between The Parties.

Alternatively, if the Court determines that the issue of the Letter Agreement's validity is not reserved for the arbitrator, Maritz must nonetheless be compelled to arbitrate. In this

---

[4] Maritz bore the burden of understanding the contents of not only the Letter Agreement but also the import of incorporating the AAA rules. *See Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc.*, 2004 WL 2931284, at *3 (N.D. Ill. Dec. 9, 2004) ("It is a rule universally recognized that a written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs it") (citation omitted). Indeed, if Maritz had intended to exclude validity challenges from going to the arbitrator in the first instance, it was required to "state such an exception in the [Letter] Agreement." *See Bayer CropScience, Inc.* at *4.

[5] Maritz also argues the *Santana Row* decision requires that a claim of fraudulent inducement must be resolved by the Court prior to considering what effect the incorporation of the AAA rules has. (Maritz Opp., 1:7-9) But there is nothing at all that supports this contention: there is no discussion whatsoever of incorporation of any arbitration rules in *Santana Row*.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION          - 8 -
Case No. CV-07-5585 JSW

21823\1432538.2

alternative, the Court need consider only two questions: (1) whether an enforceable arbitration agreement exists between the parties; and (2) whether the claims at issue are covered by the arbitration agreement. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys.*, F.3d 1126, 1130 (9th Cir. 2000).[6] Once the Court determines that there is an arbitration agreement that applies to the dispute, the Court's work ends. *See Dean Witter Reynolds*, 470 U.S. at 218. Here, that two-step analysis collapses to only the first, where Maritz disputes only the validity element and not the scope of the Letter Agreement.

### 1. The Letter Agreement Is Valid And Enforceable.

The crux of Maritz's challenge is that Visa had some obligation to disclose an estimate of the amount of Visa's damages claim prior to the execution of the Letter Agreement. This argument fails as a matter of law. Fraud based on concealment or nondisclosure is not actionable unless there is a duty to disclose. *Chase Chem. Co. v. Hartford Accident & Indem. Co.*, 159 Cal. App. 3d 229, 243 (1984). A duty to disclose a material fact normally arises only where there exists a confidential relation between the parties. *Shafer v. Berger, Kahn, Shafton, Moss, Figler & Gladstone*, 107 Cal. App. 4th 54, 71 (2003).

### 2. Visa Had No Duty To Disclose The Size Of Its Claim Prior To The Execution Of The Letter Agreement.

As a threshold matter, Maritz is mistaken when it claims that "the Court cannot resolve Maritz's fraud claim as a matter of law." (*See* Maritz Opp. at 12:7-9) The Court may indeed resolve this matter because, based on the undisputed facts, as a matter of law, no duty to disclose existed here. *See Goodman v. Kennedy*, 18 Cal. 3d 335, 347-49 (1976) (affirming trial court's sustaining demurrer without leave to amend on claim for fraud based on concealment where no facts were alleged that would give rise to duty to disclose).

The following facts – which are undisputed – demonstrate that neither Visa nor its counsel had a duty to disclose an estimate of the amount of Visa's damages claims to Maritz prior to the execution of the Letter Agreement:

---

[6] Maritz's claim that Visa's recitation of this test is somehow a concession where it is clearly stated within Visa's alternative argument should be flatly rejected. (*See* Maritz Reply at 8:4-10.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 9 -

21823\1432538.2

- Visa's April 20, 2007 termination letter specifically "reserve[d] all rights relating to or arising out of the [April 17] Agreement and any Related Agreement, including, without limitation, **claims Visa has against Maritz for Maritz's breaches of the Agreement . . . , Maritz's non performance or delay in performing any obligations due under the Agreement . . . , and Visa's right to liquidated damages.**" (Thompson Decl., Ex. B; emphasis added.)

- On or about April 23, 2007, Maritz's Associate General Counsel reviewed Visa's April 20, 2007 letter, including the "reservation of rights" provisions. (Gallant Decl., ¶¶ 2 and 6.)

- By letter dated May 7, 2007, Maritz claimed it was owed approximately $5.2 million and stated "[a]s Visa has reserved all of its rights relating to or arising out of the Agreement or any Related Agreement, Maritz does the same." (Thompson Decl., Ex. C.)

- On June 5, 2007, Visa acknowledged receipt of Maritz's May 7 letter and informed Maritz that Visa would "provid[e] additional information to Maritz as to **the nature and amount of Visa's claims** at the appropriate time." (Thompson Decl., Ex. D; emphasis added.)

- On July 2, 2007, Visa sent a letter to Maritz stating that it was time to "discuss Maritz's claims, **as well as the nature and amount of Visa's claims**," but "[b]efore starting that discussion, and to protect both parties, [Visa] believe[s] that we should reach an understanding as to the process for resolving all claims in the event that something more than direct negotiation is required." That letter reiterates: "It is important to have this agreement on process in place **before we commence negotiations** so that both sides will know the alternative to a negotiated resolution." (Thompson Decl., Ex. E; emphasis added.)

- Following Maritz's receipt of the July 2 letter – which for the first time proposes arbitration – the only contact between parties that in any way related to the Letter Agreement prior to its execution on July 10 were between Visa's outside counsel, Rod Thompson, and Maritz's Associate General Counsel, Steve Gallant. (Thompson Decl., ¶ 8, Ex. G.)

- The Letter Agreement itself states that it applies to the parties **"respective claims for damages."** (Thompson Decl., Ex. F; emphasis added.)

- In his email returning the executed Letter Agreement, Maritz's Associate General Counsel described the Letter Agreement as "outlining the procedure for resolving **any differences that may exist between Visa and Maritz**." (Thompson Decl, Ex. G; emphasis added.)

Thus, the undisputed facts demonstrate that Visa had no duty to disclose the "nature and amount" of its claims.[7] *See People v. Highland Fed. Sav. & Loan*, 14 Cal. App. 4th 1692, 1718-19 (1993) (concealment not actionable absent duty to disclose). A duty to disclose arises where

---

[7] There can be no doubt that this is the crux of Maritz's claim. (*See* D.E. #19, Counterclaim, ¶ 118 (alleging that Visa failed to disclose "the nature and magnitude of its alleged claims").)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 10 -

21823\1432538.2

the party charged with fraud has volunteered information on a subject but withholds information that would materially qualify the information disclosed. *Brownlee v. Vang*, 235 Cal. App. 2d 465, 477 (1965). Here, there is no allegation that Visa volunteered any such information (and thus no such duty could have arisen); indeed, Visa expressly told Maritz that it would discuss the "nature and amount of Visa's claims" only *after* the parties had agreed to a procedure for resolving their disputes.

Maritz attempts to cloud the issue by offering inadmissible testimony from Mr. Gallant that he "considered Ms. Buse's 'reservation of rights' language in her April 20 letter to be simply standard language to preserve Visa's ability to object to the amount that Visa would have to pay Maritz."[8] (Gallant Decl., ¶ 6; *see generally* objections to evidence filed herewith.) But Mr. Gallant's unexpressed objective belief cannot create a duty to disclose.[9] Moreover, at bottom, what Maritz is claiming is that Mr. Gallant did not understand the plain and unambiguous language used in Visa's April 20, June 5, and July 2 letters and the Letter Agreement itself. But a duty to disclose cannot arise from Maritz's own *unexpressed* misunderstanding of what Visa in fact said.

Nowhere does Maritz allege that Visa or its outside counsel ever: (1) materially misrepresented the scope of its damages; or (2) offered partial information as to the size of its claims, facts necessary to establish a duty to disclose. To the contrary, Mr. Gallant's own

---

[8] Although perhaps more relevant to the issue of reasonable reliance or materiality, Mr. Gallant's claim that he read this language as "simply standard language to preserve Visa's ability to object to the amount that Visa would have to pay Maritz" under the contract is illogical. First, Visa made this statement *before* Maritz sent its June letter estimating that it was owed approximately $5.2 million. Second, Visa's claims for damages are legally distinct from whatever claims Maritz had for payment for partially completed milestones. (*See* Gallant Decl., ¶ 8 ("I thought that Visa might disagree, for example, with Maritz's percentage completion estimates for partially completed Milestones and thus attempt to reduce the amount that Visa would have to pay Maritz.").)

[9] Indeed, the bulk of the Gallant declaration appears to be an attempt to demonstrate that he "reasonably" relied on Visa's silence. For example Mr. Gallant states "I had no reason to believe that Visa was claiming that Maritz should pay it any money . . . ." and "I believe it was reasonable for me to expect that, if Visa intended to make a default claim exceeding the amount of Maritz's invoices by ten times or more and to resolve that claim in binding arbitration, Mr. Thompson would tell me." (Gallant Decl. ¶¶ 9, 16.) As discussed in the evidentiary objections filed herewith, however, Mr. Gallant's unexpressed "beliefs" are irrelevant and inadmissible.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 11 -

21823\1432538.2

declaration demonstrates that Visa never volunteered to speak to the issue of its damages. Mr. Gallant states:

> I had several conversations or communications with [Visa's outside counsel] between Maritz's receipt of the July 2 letter and July 9, 2007. **At no time during any of these** discussions or communications did Mr. Thompson say or indicate that Visa was claiming that Maritz was in default,[10] or that Visa would claim that Maritz should pay Visa anything, much less that Visa was owed tens of millions of dollars. Nothing that [Visa's counsel] said to me suggested that Visa had or was making any claim for money from Maritz.

(Gallant Decl. ¶ 15; emphasis added.) Given that Visa had already disclosed to Maritz *in writing* that Visa was reserving all claims it had "**against Maritz for Maritz's breaches of the Agreement . . . and Visa's right to liquidated damages**" (Thompson Decl. Ex. B) and that Visa wished to get a dispute resolution agreement in place *before* discussing the "nature and amount of Visa's claims" (the July 2 letter, Thompson Decl. Ex. E) Maritz cannot, as a matter of law, establish that Visa had a duty to disclose the amount of those damages prior to execution of the agreement.

Maritz cites two cases to support its contention that Visa's counsel did have such a duty to disclose: *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 202 (1986) and *Vega v. Jones, Day, Reavis, & Pogue*, 121 Cal. App. 4th 282, 286 (2004). Yet neither supports the claim that Visa had a duty to disclose.

In *Cicone*, opposing counsel was alleged to have made a knowing affirmative misrepresentation to induce the other side to enter a contract. The case, therefore, stands for the unremarkable proposition that "[a]lthough a duty to disclose a material fact normally arises only where there exists a confidential relation between the parties or other special circumstances require disclosure, where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated." *Id.* at 201. Here, by contrast, there

---

[10]  This representation – that Visa had never indicated that it contended Maritz was in default – is undeniably false. *See, e.g.*, April 20 letter (reserving "claims Visa has against Maritz for Maritz's breaches of the Agreement . . . , Maritz's non performance or delay in performing any obligations due under the Agreement . . . , and Visa's right to liquidated damages"); Letter Agreement (applies to the parties' "respective claims for damages") (Thompson Decl., Exs. B and F, respectively.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 12 -

21823\1432538.2

is no allegation that Visa made any representation whatsoever regarding the scope of its damages claim. *Vega v. Jones, Day, Reavis, & Pogue* stands for the same wholly unremarkable claim that a person must offer the whole truth when they have decided to volunteer information as to a given topic.[11]

## III. CONCLUSION

For the foregoing reasons, Visa respectfully requests that the Court issue an Order (a) staying this entire action, including Maritz's counterclaims, and (b) compelling Maritz to submit to arbitration, in accordance with the Letter Agreement.

DATED: January 25, 2008

FARELLA BRAUN & MARTEL LLP

By: /s/Roderick M. Thompson
    Roderick M. Thompson

Attorneys for Plaintiff
VISA U.S.A. INC.

---

[11] In its Opposition, Maritz also cites to and relies upon three subparts of section 551 of the Restatement (Second) of Torts, to which the Court referred in denying Maritz's ex parte application for expedited discovery. Yet Maritz's attempt to rely upon the Restatement to support its concealment claim fails for the same reason – given the undisputed facts here, as a matter of law, Visa had no duty to disclose an estimate of its damages claim prior to execution of the Letter Agreement.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S REPLY I/S/O MOTION TO STAY
ACTION AND TO COMPEL ARBITRATION
Case No. CV-07-5585 JSW

- 13 -

21823\1432538.2