Roderick M. Thompson (State Bar No. 96192)
rthompson@fbm.com
Robert C. Holtzapple (State Bar No. 145954)
bholtzapple@fbm.com
Helen Dutton (State Bar No. 235558)
hdutton@fbm.com
Diego F. Acevedo (State Bar No. 244693)
dacevedo@fbm.com
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiff
VISA U.S.A. INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VISA U.S.A. INC.,

Plaintiff,

vs.

MARITZ INC., d/b/a MARITZ LOYALTY MARKETING,

Defendant.

AND RELATED COUNTERCLAIMS.

Case No. CV-07-5585 JSW

**PLAINTIFF VISA U.S.A. INC.'S OPPOSITION TO DEFENDANT MARITZ INC.'S REQUEST FOR DISCOVERY**

Date: February 22, 2008
Time: 1:30 p.m.
Dept: Courtroom 2 (17th Floor)
Judge: Hon. Jeffrey S. White

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

21823\1433784.1

## SUMMARY OF ARGUMENT

Maritz's request for discovery must be denied for two primary reasons. First, Maritz fails to demonstrate that it needs discovery. It has provided lengthy declarations attempting to establish its fraudulent inducement theory. Moreover, what Maritz argues is the critical fact to its claim – that "Visa knew the nature and magnitude of its damages claims prior to sending the July 9, 2007 letter" (Maritz's Brief In Support of Discovery ("Maritz's Brief"), 6:3-4) – is undisputed: prior to the execution of the Letter Agreement Visa knew that its claim "was considerable, in the range of tens of millions." (Thompson Motion To Stay Decl., ¶ 9.) Although Maritz provides a laundry list of discovery it wishes to take, it fails to show *why* it needs any discovery to respond to Visa's motion to stay this action, much less any of the items of discovery it lists. Second, Maritz fails to produce facts sufficient to show that Visa had a duty to make any disclosure beyond that which it undeniably made. Visa's April 20, 2007 letter states unambiguously:

> We reserve all rights relating to or arising out of the Agreement and any Related Agreement, including without limitation, **claims Visa has against Maritz for Maritz's breaches of the Agreement, Maritz's non performance or delay in performing any obligations due under the Agreement, and Visa's right to liquidated damages**.

Similar language appears in Visa's June 5 and July 2 letters. Each of those letters unambiguously disclosed to Maritz that Visa contended that Maritz had breached the parties' contract and was liable for damages for both its non-performance and under the contract's liquidated damages clause. Maritz ignores these crucial statements in its brief. Distilled to its essence, Maritz's fraud argument is that its Associate General Counsel misunderstood the plain language of Visa's written communications and that Visa had some duty to divine and then correct Maritz's unexpressed misunderstanding. As a matter of law, however, this is insufficient: Maritz's unexpressed misunderstanding of those letters cannot create an obligation on Visa's part to disclose. Because the undisputed facts demonstrate that Visa had no duty to disclose an estimate of its damages prior to the execution of the Letter Agreement, there is no need for discovery before the Court decides Visa's motion to stay the action and compel arbitration.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST
FOR DISCOVERY - Case No. CV-07-5585 JSW          i          21823\1433784.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. RELEVANT FACTS ..... 1

III. ARGUMENT ..... 4

A. Maritz Has Failed To Submit Evidence Showing A Genuine Issue Of Material Fact. ..... 4

B. Maritz Fails To Identify Any Disputed Issue of Material Fact Justifying Discovery ..... 5

C. As A Matter Of Law, Visa Had No Duty To Disclose The Magnitude of Its Damages. ..... 8

1. Visa And Maritz Did Not Have A Fiduciary Or Similar Relationship of Trust or Confidence. ..... 9

2. Visa Did Not Make Any Partial Or Ambiguous Statements Regarding The Amount Of Its Damages Claim. ..... 10

3. Visa Had No Duty to Disclose Under Subsection (2)(e) ..... 12

D. In Any Event, There Is No Need For The Discovery Requested By Maritz To Resolve Visa's Pending Motion to Stay. ..... 13

IV. CONCLUSION ..... 15

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

ii

21823\1433784.1

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Cohen v. Wedbush, Noble, Cooke, Inc.*,
841 F.2d 282 (9th Cir. 1988), *overruled on other grounds by Ticknor v. Choice Hotels Int'l Inc.*, 265 F.3d 931 (9th Cir. 2001)..................... 1, 4, 8, 9, 10

*Doctor's Assocs. v. Distajo*,
107 F.3d 126 (2d Cir. 1997)........................................................................... 4

*Doctor's Assocs. v. Stuart*,
85 F.3d 975 (2d Cir. 1996) ), *aff'd* 107 F.3d 126 (2d Cir. 1997)....................................... 4

*Geoffroy v. Washington Mut. Bank*,
484 F. Supp. 2d 1115 (S.D. Cal. 2007)................................................................ 4

*Hickman v. Taylor*,
329 U.S. 495 (1947)........................................................................................ 7

*Mackey v. Pioneer Nat'l Bank*,
867 F.2d 520 (9th Cir. 1989)........................................................................... 13

*In re Mediscan Research*,
940 F.2d 558 (9th Cir. 1991)........................................................................... 8

*Nidds v. Schindler Elevator Corp.*,
113 F.3d 912 (9th Cir. 1996)........................................................................ 5, 13

*TV Events & Mktg v. AMCON Distrib. Co.*,
488 F. Supp. 2d 1071 (2006)........................................................................... 8

*Ticknor v. Choice Hotels Int'l Inc.*,
265 F.3d 931 (9th Cir. 2001)........................................................................... 1

## STATE CASES

*Ach v. Finkelstein*,
264 Cal. App. 2d 667 (1968)........................................................................... 11

*Creager v. Yoshimoto*,
2007 U.S. Dist. LEXIS 77309 (N.D. Cal. 2007)................................................ 10

*Fair v. Bakhtiari*,
40 Cal. 4th 189 (2006) ................................................................................... 7

*Garbacz v. A.T. Kearny, Inc.*,
2006 U.S. Dist. LEXIS 20135 (N.D. Cal. 2006).................................................. 5

*Householder Group LLLP v. Fuss*,
2007 U.S. Dist. LEXIS 44220 (N.D. Cal. 2007)................................................ 10

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

iii

21823\1433784.1

**TABLE OF AUTHORITIES**

**Page(s)**

*People v. Highland Fed. Sav. & Loan*,
14 Cal. App. 4th 1692 (1993) .......... 1, 8

*Perez v. Maid Brigade*,
2007 U.S. Dist. LEXIS 78412 (N.D. Cal. 2007).......... 4

**STATE STATUTES**

California Evidence Code
§ 1119, et seq. .......... 7

**OTHER AUTHORITY**

Restatement (2d) of Torts
§ 551 comment a .......... 8, 9, 12
§ 551(1) .......... 10, 12

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW
iv
21823\1433784.1

## I. INTRODUCTION

Maritz's fraud claim is predicated on its allegation that "Visa failed to disclose to Maritz that Visa was planning to assert that Maritz had defaulted and Visa was entitled to receive tens of millions of dollars from Maritz for Maritz's alleged breaches of the MSA." (D.E. #19, Maritz's Counterclaim, ¶ 117.) Yet, "[t]he concealment of a material fact is not actionable unless there is a duty to disclose." *People v. Highland Fed. Sav. & Loan*, 14 Cal. App. 4th 1692, 1718 (1993); *see also Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir. 1988) (*overruled on other grounds by Ticknor v. Choice Hotels Int'l Inc.*, 265 F.3d 931,941-942 (9th Cir. 2001)) (for "mere omission to constitute actionable fraud, a plaintiff must first demonstrate that a defendant had a duty to disclose the fact at issue"). In its Order denying Maritz's *ex parte* motion to continue Visa's pending Motion to Stay, the Court advised that it was "particularly concerned with whether there was any duty to exercise reasonable care to disclose the matter(s) potentially in question." (D.E. #44, Amended Order at 2:2-4.)

The Court's concern is well taken. Maritz has failed to identify any *fact* that supports a finding that Visa had a duty to disclose "the nature and amount" of its damages claims prior to the execution of the Letter Agreement. Although Maritz purports to need several depositions (including an extremely broad 30(b)(6) deposition of Visa) and responses to undefined document requests to respond to Visa's motion, Maritz cannot explain what material disputed facts justify that discovery. This is because there are no such disputed facts. The content of the parties' relevant communications between April 20 – when the contract was terminated – and July 10 – when the Letter Agreement was executed – are not, in all material respects, disputed. And those undisputed facts demonstrate, as a matter of law that Visa owed no duty to disclose.

Maritz's transparent campaign to delay the arbitration to which it agreed by procedural gambits must end. Maritz's request for discovery should be denied and the parties ordered to arbitrate in accordance with the terms of the Letter Agreement.

## II. RELEVANT FACTS

In April 2006, Visa U.S.A. Inc. ("Visa") and Maritz Inc. d/b/a Maritz Loyalty Marketing ("Maritz") entered into a Master Services Agreement and related agreements (the "MSA") under

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

1

21823\1433784.1

which Maritz agreed to develop, deploy, operate and maintain a highly complex points rewards system for Visa and its member financial institutions. The MSA contained a number of milestones, including that the Phase I-A Launch Date was set for September 30, 2006. (MSA, p. 3.) The MSA expressly provided that meeting this date was critical: "Time is of the essence of this Agreement. The Parties agree that failure by Maritz to release the Phase I-A Software, to migrate the existing Cardholder accounts from the existing Visa rewards program to the Rewards Platform…on or before the Phase I-A Launch Date will result in damages to Visa." (MSA, XXIII, R at p. 34.) The MSA further provided for payments by Maritz to Visa of liquidated damages of up to $70,000 ***per day*** of delay in the Phase I-A Launch. (*Id.)*

Maritz, however, failed to meet the Phase I-A Launch Date. After months of unacceptable performance by Maritz, Visa finally terminated the MSA on April 20, 2007. Visa's April 20 letter, which is mentioned only in passing in a footnote in Maritz's brief, unambiguously stated:

> We reserve all rights relating to or arising out of the Agreement and any Related Agreement, including, without limitation, **claims Visa has against Maritz for Maritz's breaches of the Agreement, Maritz's non performance or delay in performing any obligations due under the Agreement (including any Related Agreement), and Visa's right to liquidated damages**.

(*See* D.E. #27, Declaration of R. Thompson In Support of Visa's Motion To Stay Action ("Thompson Motion To Stay Decl."), Ex. B.) Following this letter, the parties had a limited number of communications before the Letter Agreement was executed:

On or about April 23, 2007, Maritz's Associate General Counsel, Steve Gallant, reviewed Visa's April 20, 2007 letter, including the "reservation of rights" provisions quoted immediately above. (D.E. #46, Declaration of S. Gallant In Support of Maritz's Opposition To Motion To Stay Action and To Compel Arbitration ("Gallant Decl.") ¶¶ 2 and 6.)

In its May 7, 2007 letter, Maritz claimed it was owed $5.2 million and stated "[a]s Visa has reserved all of its rights relating to or arising out of the Agreement or any Related Agreement, Maritz does the same." (D.E. #27, Thompson Motion To Stay Decl., Ex. C.) In Visa's June 5, 2007 response, Visa informed Maritz that Visa would "provid[e] additional information to Maritz as to **the nature and amount of Visa's claims** at the appropriate time." (D.E. #27, Thompson

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

2

21823\1433784.1

Motion To Stay Decl., Ex. D; emphasis added.)

On July 2, 2007, Visa sent a letter to Maritz stating that it was time to "discuss Maritz's claims, **as well as the nature and amount of Visa's claims**," but **"[b]efore** starting that discussion, and to protect both parties, [Visa] believe[s] that we should reach an understanding as to the process for resolving all claims in the event that something more than direct negotiation is required." That letter reiterates: "It is important to have this agreement on process in place **before we commence negotiations** so that both sides will know the alternative to a negotiated resolution." (D.E. #27, Thompson Motion To Stay Decl., Ex. E; emphasis added.)

Following Maritz's receipt of the July 2 letter – which for the first time proposed arbitration – the only contact between parties that in any way related to arbitration prior to execution of the Letter Agreement on July 10 were between Visa's outside counsel, Rod Thompson, and Maritz's counsel, Steve Gallant. (D.E. #27, Thompson Motion To Stay Decl., ¶ 8, Ex. G.)

Between July 5 and July 10, Mr. Thompson and Mr. Gallant exchanged voicemails and engaged in at least one brief conversation which focused exclusively on the dispute resolution procedure. (*See* Declaration of R. Thompson In Support of Visa's Opposition To Maritz's Request For Discovery ("Thompson Decl."), ¶3) In none of those communications did either discuss the magnitude of either party's damages and neither Mr. Gallant nor Mr. Thompson asked any questions directed at the level of damages either party was claiming. (*Id*. at ¶ 7.)

On July 10, Maritz signed the Letter Agreement. The Letter Agreement itself states that it applies to the parties "**respective claims for damages.**" (D.E. #27, Thompson Motion To Stay Decl., Ex. F; emphasis added.) In his email returning the executed copy, Mr. Gallant confirmed that the Letter Agreement "outlin[ed] the procedures for resolving ***any*** **differences that may exist between Visa and Maritz**." (Thompson Motion To Stay Decl., Ex. G; emphasis added.)

On July 23, upon his return from vacation, Maritz's counsel for the first time asked about the magnitude of Visa's damages.[1] In response to that inquiry, Mr. Thompson disclosed that Visa

[1] Maritz purports to make much of the fact that this conversation did not occur "until approximately two weeks *after* the July 9 Letter containing the agreement to arbitrate was signed." (Maritz's Brief, 4:15-17 (emphasis in original); see also summary of argument at 12 ("Visa failed to disclose the nature and magnitude of its damages claim until July 23, 2007, two weeks *after* Maritz agreed to arbitrate"); 5:10 ("Visa continued its concealment until July 23,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

3

21823\1433784.1

estimated its damages in the tens of millions. (D.E. #27, Thompson Motion To Stay Decl., ¶ 9.)

These facts are undisputed. Even construing them most favorably to Maritz, these facts do not, and cannot, create a duty on Visa to have disclosed the "nature and magnitude" of its damages claims prior to the execution of the Letter Agreement.

## III. ARGUMENT

### A. Maritz Has Failed To Submit Evidence Showing A Genuine Issue Of Material Fact.

The predicate of Maritz's request is that it "is entitled to a jury trial on whether the arbitration provision" was induced by fraud. (D.E. #56, Maritz's Brief, summary of argument:14-15; see also 11:3-12:28.) Maritz, however, "cannot obtain a jury trial merely by demanding one"; Maritz bears the "burden of showing that it is entitled to a jury trial under §4 of the [FAA]." *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996), *aff'd* 107 F.3d 126 (2d Cir. 1997); *see also Cohen*, 841 F.2d at 286-88 (holding party claiming fraud in the inducement of arbitration provision not entitled to jury trial because party unable to demonstrate duty to disclose). The party resisting arbitration must submit evidence showing there exists a genuine issue of material fact, as when opposing a motion for summary judgment; otherwise the Court may determine the issue as a matter of law. *Geoffroy v. Washington Mutual Bank*, 484 F. Supp. 2d 1115, 119 (S.D. Cal. 2007) (finding no issues of disputed fact and determining enforceability of arbitration clause as a matter of law); *Perez v. Maid Brigade*, 2007 U.S. Dist. LEXIS 78412 *10 fn. 4 (N.D. Cal. 2007) (citing *Doctor's Assocs*.). And, as Maritz concedes, it "bears the burden of showing that [it] is entitled to a jury trial." *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 129 (2d Cir. 1997) (citing *Stuart*, 85 F.3d at 983).

A standard similar to that on a motion for summary judgment is applied to a motion to

---

2007"); 5:23-24 ("[i]t was not until July 23, 2007 that Thompson told Gallant for the very first time that Visa was seeking tens of millions of dollars from Maritz"). Maritz fails to explain why this matters. Moreover, the implication that Visa somehow delayed making such a disclosure is disingenuous. Mr. Gallant returned from vacation on July 23. (Gallant Decl., ¶. 23.) Upon his return to the office, Mr. Gallant asked *for the first time* about the magnitude of Visa's claims; Mr. Thompson immediately told Mr. Gallant that Visa's claim "was considerable, in the range of tens of millions." (D.E. #27, Thompson Motion To Stay Decl, ¶ 9.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

4

21823\1433784.1

compel arbitration. *Garbacz v. A.T. Kearny, Inc.*, 2006 U.S. Dist. LEXIS 20135 *5-6 (N.D. Cal. 2006). "The burden is on the party seeking additional discovery [pursuant to Rule 56(f)] to proffer sufficient *facts* to show that the evidence sought exists . . . and that it would prevent summary judgment." *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 921 (9th Cir. 1996). Here, Maritz has failed to proffer such facts – indeed, there is no genuine issue of material fact that either justifies discovery or creates any duty on Visa to disclose.

### B. Maritz Fails To Identify Any Disputed Issue of Material Fact Justifying Discovery

Maritz baldly asserts that "there are disputed factual issues relating to whether Visa fraudulently induced Maritz into agreeing to arbitrate." (D.E. #56, Maritz's Brief, 12:7-8.) Yet, Maritz fails to identify what those disputed facts are. Indeed, that Maritz has already submitted four detailed declarations[2] is in itself strong proof that Maritz needs no discovery to respond to Visa's motion. Maritz contends that the facts do not support Visa's underlying claims for damages, but that is no reason for discovery regarding Maritz's fraudulent inducement claim. The facts relevant to that assertion are either known to Maritz (its reliance and whether it was reasonable) or not disputed (Visa was aware of its claims and damages theory in July).

Maritz itself argues that the crux of its request to take discovery is its belief that "Visa knew the nature and magnitude of its damages prior to sending the July 9, 2007 letter and had decided not to disclose that material information to Maritz" prior to the Letter Agreement's execution. (D.E. #56, Maritz's Brief, 6:3-5.) But these facts are essentially[3] undisputed, and thus cannot support Maritz's claimed need for discovery. Indeed, although Maritz ignores it, Visa repeatedly ***disclosed in writing*** to Maritz before the Letter Agreement was executed both that

---

[2] Each of these declarations is riddled with inadmissible testimony. (*See* Visa's Objections, DE #s 57 and 58.)

[3] Prior to the execution of the Letter Agreement, Visa admittedly knew both that (1) it had claims against Maritz arising out of Maritz's breaches of the MSA and/or failure to perform pursuant to the MSA and (2) that the damages suffered by Visa were in the tens of millions. Visa has not, however, completed either its analysis of the underlying facts or its damages and thus it is incorrect for Maritz to assert that Visa knew "the exact amount of its claim" prior to execution of the Letter Agreement.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

5

21823\1433784.1

Visa had claims against Maritz and that it would discuss the nature and amount of those claims with Maritz *after* a protocol to resolve the parties disputes had been entered.

Specifically, the April 20 letter expressly states, "Visa ***has*** [claims] against Maritz for Maritz's breaches of the Agreement . . . Maritz's non-performance or delay in performing obligations due under the Agreement . . ., and Visa's right to liquidated damages pursuant to" the Agreement. (*See* D.E. #27, Thompson Motion To Stay Decl., Ex. B.) Thus, no matter what Mr. Gallant claims he thought this language to mean,[4] there can be no genuine issue of material fact as to whether Visa disclosed to Maritz prior to the execution of the Letter Agreement that Visa had claims for Maritz's "breaches of the Agreement," "non-performance or delay" and pursuant to the Agreement's liquidated damages clause. In the same vein, Visa's June 5 letter unambiguously states that Visa will "provid[e] additional information to Maritz as to the nature and amount of Visa's claims at the appropriate time." (*See* D.E. #27, Thompson Motion To Stay Decl., Ex. D.)

Similarly, the July 2 letter states "Visa would discuss Maritz's claims, ***as well as the nature and amount of Visa's claims***." The July 2 letter continues, however, to say that "[***b]efore starting that discussion, and to protect both parties***, we believe that we should reach an understanding as to the process for resolving all claims in the event that something more than direct negotiation is required. . . . . It is important to have this agreement on process in place ***before*** we commence negotiations so that both sides will know the alternative to a negotiated resolution." (*See* D.E. #27, Thompson Motion To Stay Decl., Ex. G.) Thus, there can be no dispute that Visa disclosed to Maritz that Visa would discuss "the nature and amount of Visa's claims" *after* the parties agreed on a process for resolving those claims. Although Maritz apparently claims it misread this language as well,[5] that Visa expressly told Maritz that it would

---

[4] Mr. Gallant states "I considered Ms. Buse's 'reservation of rights' language in her April 20 letter to be simply standard language to preserve Visa's ability to object to the amount that Visa would have to pay Maritz in light of Visa's 'for convenience' termination." (D.E. #46, Gallant Decl., ¶ 6.) It is, frankly, impossible to read the plain language of the April 20 letter as Mr. Gallant now claims. But even assuming Mr. Gallant did "consider" the April 20 letter as he testifies, his misreading cannot somehow create an obligation that Visa repeat what it said.

[5] Mr. Gallant states he "considered the 'reservation of rights' language [in Visa's June 5 and July 2 letters] to be redundant to that of the April 20 letter." (D.E. #46, Gallant Decl., ¶ 6.)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

6

21823\1433784.1

make such a disclosure *after* such a process had been agreed to demonstrates, as a matter of law, that Visa had no duty to make such a disclosure *before* the Letter Agreement was entered.[6]

Indeed, the July 2 letter shows that Visa expressly told Maritz that "to protect both parties," details regarding the parties' respective claims would be discussed only after "an understanding as to the process for resolving all claims" was reached. (*See* D.E. # 27, Thompson Motion To Stay Decl., Ex. G.)  This refers to the need to have an agreement in place that such discussions would be covered by the protections of California's mediation protections (which is precisely what the parties agreed to on July 24) so that any statements made could not be used in any way if the discussions failed to resolve the disputes.  The scope of the mediation protections is extremely broad.  As the California Supreme Court recently explained:  "[w]e have repeatedly noted that the mediation confidentiality provisions of the Evidence Code were enacted to encourage mediation by permitting the parties to frankly exchange views, without fear that disclosures might be used against them in later proceedings." *Fair v. Bakhtiari*, 40 Cal. 4th 189, 194 (2006) (citations omitted).[7]  The fact that Visa expressly told Maritz this – coupled with the fact that Visa only disclosed an estimate of its damages *after* such an agreement was executed – underscores that Visa could not have had a duty to disclose the magnitude of its damages claims prior to execution of the Letter Agreement.

---

[6] Another fundamental flaw to Maritz's claim is that it is premised on Visa's purported obligation to disclose its estimate of damages.  Visa's estimate of its damages, however, is its attorneys' work product.  As a matter of law, a claim of fraud in the inducement cannot be predicated on the fact that a party failed to disclose its counsel's evaluation of the strengths and weaknesses of the case. *See Hickman v. Taylor*, 329 US 495, 511 (1947) (describing scope of work product doctrine).

[7] The *Fair* court reiterated that "the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." *Fair v. Bakhtiari*, 40 Cal.4th at 194 (citations omitted). Unfortunately, Maritz has included in its brief the estimate of Visa's damages claims that was discussed at the parties' mediation. (Maritz's Brief, 5:23-28.) Before Visa provided this estimate to Maritz the parties agreed *in writing* that all such communications would be protected as mediation communications under Cal. Evid. Code Section 1119, et seq. Maritz then broke that agreement by citing the estimate of Visa's damages used in the mediation to the AAA. Although Maritz argues that Visa has "publicly disclosed this amount twice in this litigation" what Maritz cites to is **Maritz's** November 26, 2007 letter to the AAA in which **Maritz** improperly disclosed to the AAA what Visa's mediation estimate of its damages were.  That copies of Maritz's November 26 letter have been attached to Declarations submitted by Mr. Thompson does not somehow cause the protections of the mediation rules to evaporate. Simply put, as *Fair* holds, neither party may use anything said during the mediation process for any purpose absent compliance with California's evidence code.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST
FOR DISCOVERY - Case No. CV-07-5585 JSW            7                                    21823\1433784.1

The facts relevant to Maritz's fraud claim are undisputed. There is, therefore, no need for any discovery to rule on Visa's Motion to Stay.

### C. As A Matter Of Law, Visa Had No Duty To Disclose The Magnitude of Its Damages.

The alleged concealment of a material fact is not actionable unless there is a duty to disclose. *Highland Fed. Sav. & Loan*, 14 Cal. App. 4th at 1718-19. A finding of duty is of paramount importance in a nondisclosure claim because a party to a business transaction can have no liability to the other party without the requisite showing of duty. *See TV Events & Mktg. v. AMCON Distrib. Co.*, 488 F. Supp. 2d 1071, 1081 (2006) (citing Restatement (Second) of Torts § 551 comment a.) This is true even if the party charged knows both that the other party is ignorant of the fact and that the other party would regard the fact as material. *Id.*

Maritz concedes the facts described above regarding the parties' communications leading up to the execution of the Letter Agreement.[8] Maritz also concedes, as it must, that to state a claim based on Visa's purported concealment, Maritz must demonstrate that Visa had a duty to disclose. *See* Section 551(1) of the Restatement (2d) of Torts ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose ***if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in*** question.") (emphasis added).

Maritz's claim is similar to that rejected by the Ninth Circuit in *Cohen*. There, plaintiffs claimed they had been fraudulently induced into an arbitration provision and demanded that they receive a jury trial on the question. The district court ordered the parties to arbitrate. Plaintiffs

---

[8] Maritz's reliance on *In re Mediscan Research*, 940 F.2d 558, 561-63 (9th Cir. 1991) is puzzling. There, defendant's argument that the evidence was insufficient to establish a duty to disclose was rejected because the lower court had found that defendants "*actively* participated in and assisted in defrauding and concealing the truth from Mediscan's limited partners. Thus, the fact that the officers of GE&T themselves did not make affirmative misrepresentations to the limited partners does not undermine the bankruptcy court's finding." 940 F.2d at 562 (emphasis in original). Alternatively the court found that defendant had a duty to disclose because defendant had received after-acquired information, which made a previous representation false. 940 F2d at 562 n. 4. Neither factor is present here.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

8

21823\1433784.1

appealed, arguing that they had not understood the language of the agreement they signed and that defendant had failed "to disclose the effect of the arbitration clause." 841 F.2d at 286. Holding that plaintiffs did not produce facts giving rise to a duty to disclose, the Ninth Circuit affirmed, explaining, "[w]e know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract." 841 F.2d at 287.

The same result is required here. The Letter Agreement unambiguously states that it governs "our clients' [Visa and Maritz] respective claims for damages." As the Ninth Circuit explained in *Cohen,* Maritz's contention that, despite this unambiguous language, the Letter Agreement really only applies to whatever claims Maritz had against Visa fails as a matter of law:

> We see no unfairness in expecting parties to read contracts before they sign them. As the First Circuit stated in Turner, 'if a jury is allowed to ignore contract provisions directly at odds with oral representations allegedly made during negotiations, the language of a contract simply would not matter anymore . . . . Contracts would become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements. 809 F.2d at 96. This reasoning is particularly persuasive in the context of arbitration clauses, where permitting plaintiffs to present their claims to a jury would frustrate the very policies these clauses, and the Arbitration Act itself, are meant to promote. **We therefore hold that allegations of misrepresentations directly contrary to the specific and unambiguous terms of a written arbitration agreement do not, as a matter of law, state a claim for fraud.**

841 F.2d at 287-88 (emphasis added; ellipses in original).

Nevertheless, Maritz asserts Visa owed such a duty because (a) Visa was a fiduciary of Maritz; (b) Visa made "partial or ambiguous statements"; or (c) Visa's knew a fact "basic to the transaction," about which Visa knew both that Maritz was mistaken and which it would expect Visa to disclose. None of these arguments has merit.

**1. Visa And Maritz Did Not Have A Fiduciary Or Similar Relationship of Trust or Confidence.**

A party to a business transaction is liable for failure to disclose a material fact only where there is a duty to exercise reasonable care in disclosing the fact before the transaction is consummated. Restatement (Second) of Torts, § 551. Section 551(2)(a) states, "[a] party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

9

21823\1433784.1

transaction is consummated, matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them."

Maritz baldly asserts that the MSA's provision that the parties shall "act in good faith in resolving any disputes under the MSA" created "a relationship of trust and confidence." (D.E. #56, Maritz's Brief, 6:25-7:1.) Maritz cites no authority supporting this conclusion, nor does it present any analysis that would establish that a mutual agreement to act in good faith constitutes a relationship of trust or confidence such as that shared between fiduciaries. Moreover, Maritz's bald conclusion is rejected by the very terms of the contract upon which it relies. On the same page where the good faith provision appears, MSA Section XXIII, C states, "**Relationship of the Parties.** The Parties to this Agreement intend that each will act as independent contractor of the other in the performance hereof." Parties to commercial contracts are not fiduciaries, unless one party agrees to serve as a fiduciary. *Householder Group LLLP v. Fuss*, 2007 U.S. Dist. LEXIS 44220 *9 (N.D. Cal. 2007). Furthermore, where the contract provides that the parties are independent contractors and prohibits one party from acting in a joint venture or as an agent or employee of the other, there is no fiduciary relationship. *Id.*

Moreover, an obligation to act in good faith, alone, cannot create a fiduciary relationship. All contracts have an implied covenant to act in good faith. *Creager v. Yoshimoto*, 2007 U.S. Dist. LEXIS 77309, *6 (N.D. Cal. 2007). If an obligation to act in good faith creates a fiduciary relationship, then all contracts create fiduciary relationships. Such a finding would contradict the general rule that a party to a business transaction owes no duty of disclosure to the other contracting party. *See* Restatement (2d) of Torts, § 551(1). Maritz's claim that Visa owed it a duty like that of a fiduciary is simply untenable.

### 2. Visa Did Not Make Any Partial Or Ambiguous Statements Regarding The Amount Of Its Damages Claim.

Alternatively, Maritz argues that it "was misled and deceived into agreeing to arbitrate by, among other things, Visa's conduct and statements indicating that the only question was how much Visa would pay of the $5.2 million that Maritz believed it was owed." (D.E. #56, Maritz's Brief, 8:27-9:1.) Preliminarily, as the Ninth Circuit held in *Cohen*, because such purported

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

10

21823\1433784.1

statements contradict the Letter Agreement's statement that it governs the parties "***respective*** claims for ***damages,"*** as a matter of law, such statements cannot support a fraud claim.

Moreover, Maritz fails to identify any "conduct and statements" made by Visa that support this accusation. Other than what is written in Visa's April 20, June 5 and July 2 letters, there is no evidence of any communication between the parties regarding "the nature and amount" of Visa's claims. The issue of an alternative dispute resolution protocol, including binding arbitration, was first raised in Visa's July 2, 2007 letter. It is undisputed that from that date until the execution of the Letter Agreement, the only communications related to the Letter Agreement were those between Mr. Thompson and Mr. Gallant, who did not discuss either the nature of their respective clients' claims or their estimates of the damages their respective clients were owed. (*See* Thompson Decl., ¶. 7; D.E. #46, Gallant Decl., ¶ 15.) [9]

Nevertheless, Maritz argues that Visa made "partial, misleading and ambiguous" statements before the termination. Even assuming arguendo that such statements were made, none give rise to the duty that Maritz now urges. Again, Maritz ignores the April 20 letter which states unambiguously that Visa is reserving "all rights relating to" all "claims Visa has against Maritz for Maritz's breaches of the Agreement, for non-performance or delay in performing…and Visa's right to liquidated damages." Thus, even assuming arguendo that some ambiguity could have been created in Maritz's mind regarding whether Visa believed it had claims against Maritz before the termination, that ambiguity was clarified by Visa's April 20, June 5 and July 2 letters. (*See* D.E. #27, Thompson Motion To Stay Decl., Exs. B, D, and E, respectively.) Visa's unequivocal written statements eviscerate any claim that Visa had a duty to disclose based on purportedly ambiguous prior statements.[10]

---

[9] Relying upon inadmissible portions of Mr. Gallant's Declaration, Maritz argues that "[b]ased on the conversations between Gallant and Thompson, Gallant was led to believe that he and Thompson were trying to devise a process for determining the amount that Visa owed Maritz under the MSA in light of Visa's termination." (Maritz's Brief, 4:7-10.) But nowhere in the Gallant declaration is there description of what Mr. Thompson purportedly said that allegedly "led [Gallant] to believe" this. This is because there are no facts to support this conclusion – as a matter of fact neither Mr. Thompson nor Mr. Gallant discussed the size of either of their clients' claims during the negotiations of the Letter Agreement.

[10] Maritz's reliance on *Ach v. Finkelstein*, 264 Cal. App. 2d 667, 674 (1968), is also puzzling. (D.E. #56, Maritz's Brief, 7:14-16; 10:8-18.) In *Ach* after buying an apartment house

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

11

21823\1433784.1

**3. Visa Had No Duty to Disclose Under Subsection (2)(e).**

Finally, Maritz argues that a duty to disclose was created under Section 551(2)(e). (Maritz's Brief, 8:1-8.) That section states that a party must disclose facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts. Restatement (2d) of Torts, § 551(2)(e). Thus the section has two required elements: (1) that Visa knew Maritz's understanding of an underlying basic fact was mistaken and (2) that the relationship required Visa to correct that misunderstanding. Maritz can satisfy neither.

Addressing the second prong first, as discussed above, there simply are no facts to support Maritz's contention that the parties had a fiduciary type relationship. Maritz has provided no evidence that the course of conduct between the parties, the customs of the trade or other objective circumstances, caused Maritz to reasonably expect that Visa would make any disclosure to Maritz, much less a disclosure of an estimate of Visa's damages claim. Although Maritz again relies upon the MSA's provision requiring that the parties act in good faith to resolve their disputes, as explained above, that provision does not create any obligation on Visa to disclose an estimate of its damages claims to Maritz prior to the execution of the Letter Agreement.

With respect to the known mistaken "fact basic to the transaction" prong, Maritz's argument again fails. Maritz cannot deny that it knew its serious breaches of the MSA caused Visa damages. For example, Maritz knew that it failed to launch by the contractually mandated date of September 30, 2006 and that in fact no launch occurred before Visa terminated the contract on April 20, 2007. Instead Maritz contends that it believed in November 2006 that Visa

---

from defendants, plaintiffs sued, alleging that defendants had failed to disclose certain rent concessions. In affirming a jury verdict for plaintiffs, the *Ach* court found that "the evidence demonstrates that defendants knew the rentals set forth in the leases based upon a yearly rental were false and misleading." 264 Cal.App.2d at 675. The *Ach* court concluded "that these leases and the way in which they were drawn reflect a scheme of giving rent concessions to inflate the rentals above their true market value so that a higher price could be obtained for the apartment building." 264 Cal.App.2d at 676. Here, Maritz cites to nothing that Visa said or did that was purportedly "false and misleading."

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

waived its rights to claim damages for the missed launch date.[11] But Maritz's waiver argument is at most a defense to the merits of Visa's claim. It does not justify Maritz's speculation that "Visa knew that Maritz did not realize Visa was claiming Maritz owed tens of millions of dollars." (D.E. #56, Maritz's Brief, 8:4-5.) To the contrary, that argument is belied by the April 20 letter where Visa reserved its "right to liquidated damages." Whatever Visa's state of mind in November 2006, there is no support for Maritz's assertion that Visa knew Maritz (supposedly) mistakenly ignored that express terms of Visa's April 20, June 5 and July 2 letters.

More crucially, as a matter of fact, from the time arbitration was proposed (July 2), until the Letter Agreement was signed (July 10), there was no discussion at all between the parties regarding the "nature and magnitude" of either party's claims; rather the only thing discussed was a procedure to resolve "all disputes [between Visa and Maritz] outside of court." (D.E. #27, Thompson Motion To Stay Decl., Ex. F, fn. 1. Maritz identifies nothing during those negotiations that either Visa or its counsel said that was in any way inaccurate or misleading.

**D. In Any Event, There Is No Need For The Discovery Requested By Maritz To Resolve Visa's Pending Motion to Stay.**

Again, Maritz has identified no need for discovery from Visa to respond to Visa's Motion to Stay: the only unwritten communications relating to the negotiation of the Letter Agreement were those between Messrs. Thompson and Gallant. With respect to those communications, Visa offered to make Mr. Thompson available for deposition. Maritz rejected that offer, rather dramatically illustrating that it has no true need for discovery.

"The burden is on the party seeking additional discovery [pursuant to Rule 56(f)] to proffer sufficient *facts* to show that the evidence sought exists . . . and that it would prevent summary judgment." *Nidds*, 113 F.3d at 920; *see also Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523-24 (9th Cir. 1989) ("A Rule 56(f) motion must show how additional discovery would

---

[11] For example, Maritz claims that in a comment in a November 2006 email Visa agreed to waive any claim for liquidated damages. (*See* Maritz's Brief, 7:5: "the November 2006 waiver of punitive [sic] damages.") Visa denies that any such waiver occurred. The MSA specifies a process through which it can be amended, a process that the parties followed both before and after the purported November "waiver."

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

13

21823\1433784.1

preclude summary judgment and why a party cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact."). Here, Maritz has made no such showing.

Although Maritz seeks to depose three Visa executives (Elizabeth Buse, Tim Attinger and Tad Fordyce) and a consultant (John McCarthy), Maritz does not explain *why* it needs such discovery. Maritz, of course, can submit declarations stating what it contends Visa and/or Mr. McCarthy told it in opposition to Visa's motion; indeed, Maritz has done so. That does not mean, however, that Maritz needs to depose anyone. For example, presumably Maritz seeks confirmation from Mr. McCarthy that he said "that technology did not play a part in Visa's decision to terminate the MSA." (D.E. #56, Maritz's Brief, 3:5-6.) Yet, given the current procedural posture, even if Mr. McCarthy denied saying that, it would only create a disputed issue of fact (assuming both that Maritz submitted a declaration detailing Mr. McCarthy's alleged statement and that what Mr. McCarthy purportedly said is somehow relevant). The same is true for Mr. Fordyce (who is mentioned in Mr. Peterman's declaration). With respect to Ms. Buse and Mr. Attinger, why Maritz believes it needs either's deposition is a mystery – there is no mention of anything Ms. Buse or Mr. Attinger is purported to have said to anyone at Maritz in any of Maritz's papers. Perhaps more importantly, there is no mention of anything that Maritz believes it needs to learn from any of these individuals to oppose Visa's motion.

The same is true with respect to the 12 broadly-worded "topics" on which Maritz seeks "to obtain documents and take Rule 30(b)(6) depositions." (D.E. #56, Maritz's Brief, 14:11-12.) Notably, Maritz has not submitted either a 30(b)(6) deposition notice or document request that it seeks leave to serve, alone a basis to deny this request. Moreover, Maritz again fails to explain why it needs such discovery to respond to Visa's motion. For example, Maritz requests a deposition and documents regarding "when Visa determined the amount it was allegedly owed and how that amount would be calculated."[12] (D.E. #56, Maritz's Brief, 13:5-6.) Presumably what Maritz really seeks to learn is when Visa knew it had "significant" claims against Maritz.

---

[12] Such a topic is based upon a false assumption (that Visa has finally determined the amount it is owed by Maritz) and is an improper attempt to take damages related discovery prematurely – whatever estimates Visa currently has are protected by the attorney work product doctrine.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST
FOR DISCOVERY - Case No. CV-07-5585 JSW     14                           21823\1433784.1

But, again, it is undisputed that Visa believed it had significant claims against Maritz prior to the execution of the Letter Agreement; this is why the Letter Agreement expressly applies to the parties' "respective claims for damages." Given this "admission," why does it matter whether Visa knew this on April 1 or May 1 or July 1 or any other date? Simply put, Maritz needs no discovery to respond to Visa's Motion to Stay.

## IV. CONCLUSION

Predicated on its purported misreading of Visa's April 20, June 5 and July 2 letters, Maritz has asserted serious accusations of fraud and deceit against Visa and its counsel. Although Maritz claims that it was "misled" into signing the Letter Agreement, the undisputed facts demonstrate that, before the Letter Agreement was executed, Visa clearly disclosed both that it believed it had claims against Maritz and that Visa would discuss the magnitude of its claims with Maritz *after* the parties had agreed upon a process to resolve all of their disputes.

Even if taken as true, Maritz's counsel's misreading of Visa's unambiguous letters cannot – and does not – somehow create a duty requiring Visa to correct that misunderstanding. Maritz cites no statement by Visa that is even arguably ambiguous or partial regarding the scope of Visa's damages claims. Moreover, Maritz does not (and could not) allege that it made any inquiry as to the "nature and amount of Visa's damages" until after the Letter Agreement was signed. Since Maritz has presented no facts that, if true, would create a duty to disclose, Maritz's claim of fraud in the inducement is defective as a matter of law. Maritz's motion should be denied and this case stayed pending resolution of the arbitration.

Dated: February 4, 2008

FARELLA BRAUN & MARTEL LLP

By: /s/Roderick M. Thompson
Roderick M. Thompson

Attorneys for Plaintiff VISA U.S.A. INC.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VISA'S OPP TO MARITZ'S REQUEST FOR DISCOVERY - Case No. CV-07-5585 JSW

15

21823\1433784.1