MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (California Bar No. 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Attorneys for Defendant/Counterclaim and
Third-Party Plaintiff Maritz Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| VISA U.S.A. INC.,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>MARITZ INC., d/b/a MARITZ LOYALTY MARKETING,<br><br>    Defendant/Counterclaim and Third-Party Plaintiff,<br><br>v.<br><br>CARLSON MARKETING GROUP, INC.<br><br>    Third-Party Defendant. | CIVIL ACTION NO. C 07-5585 JSW<br><br>REPLY BRIEF OF MARITZ INC. PURSUANT TO COURT ORDER DATED JANUARY 17, 2008 AND IN SUPPORT OF DISCOVERY<br><br>DATE: February 22, 2008<br>TIME: 1:30 p.m.<br>PLACE: Courtroom 2, 17th Floor<br>JUDGE: Hon. Jeffrey S. White |

## SUMMARY OF ARGUMENT

Visa's opposition brief largely ignores or glosses over important factual information pertaining to Visa's conduct and the issue of whether Maritz was fraudulently induced into agreeing to arbitrate. Indeed, Visa's opposition is most notable for what Visa does *not* say or dispute. Visa does not deny, for example, that it knew or believed that Maritz was unaware that Visa was claiming that Maritz owed Visa tens of millions of dollars and that Visa deliberately and specifically failed to disclose its damages information precisely so that Visa could induce Maritz into agreeing to arbitrate.

Under the pertinent legal authorities, and in view of Visa's specific contractual obligation to act in good faith in attempting to resolve disputes, Visa owed Maritz a duty to disclose that Visa was seeking tens of millions of dollars before inducing Maritz into agreeing to arbitrate. The discovery sought by Maritz goes to the heart of Maritz's fraudulent inducement claim and is necessary in order for Maritz to fully develop and present its claim.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A. Visa Had a Duty To Disclose That It Was Claiming Maritz Owed Tens of Millions of Dollars ............................................................................................... 2

    B. Visa's Remaining Arguments Are Meritless, and Maritz Should Be Allowed to Conduct Discovery in Order to Fully Develop and Present Its Fraudulent Inducement Claim ............................................................................. 8

III. CONCLUSION ............................................................................................................. 10

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

# TABLE OF AUTHORITIES

**Page**

### CASES

*Cohen v. Wedbush, Noble, Cooke, Inc.*,
    841 F.2d 282 (9th Cir. 1988) .................................................................................................. 4, 5

*Copeland v. Baskin Robbins U.S.A.*,
    96 Cal. App. 4th 1251, 117 Cal. Rptr. 2d 875 (Cal. App. 2002) ............................................. 4

*Creager v. Yoshimoto*,
    2007 U.S. Dist. LEXIS 77309, *6 (N.D. Cal. 2007) ............................................................ 3, 4

*Doctor's Assocs. v. Stuart*,
    107 F.3d 126 (2d. Cir. 1997) ................................................................................................... 9

*Garbacz v. A.T. Kearney, Inc.*,
    2006 U.S. Dist. LEXIS 20135 *5-6 (N.D. Cal. 2006) ............................................................ 8

*Guz v. Bechtel Nat'l Inc.*,
    24 Cal. 4th 317, 8 P.3d 1089 (Cal. 2000) ............................................................................... 3

*Householder Group LLLP v. Fuss*,
    2007 U.S. Dist. LEXIS 44220 (N.D. Cal. 2007) .................................................................... 5

*McCarthy v. Providential Corp.*,
    1994 U.S Dist. LEXIS 10122 (N.D. Cal. 1994) ..................................................................... 9

*Nidds v. Schindler Elevator Corp.*,
    113 F.3d 912 (9th Cir. 1996) .................................................................................................. 9

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
    11 Cal. App. 4th 1026, 14 Cal. Rptr. 2d 335 (Cal. App. 1992) .............................................. 4

*Television Events & Marketing, Inc. v. AMCON Distrib. Co.*,
    488 F. Supp. 1071 (D. Hawaii 2006) ...................................................................................... 5

*Warner Construction v. City of Los Angeles*,
    2 Cal. 3d 285 (Cal. 1970) .................................................................................................... 6, 8

*Zabit v. Ferretti Group, USA*,
    2007 U.S. Dist. LEXIS 78399 **15-19 (N.D. Cal. 2007) .............................................. 6, 9, 10

### STATUTES

Cal. Civ. Code § 1572 ................................................................................................... 1, 5, 6, 9

Cal. Civ. Code § 1572.3 ............................................................................................................ 8

Cal. Civ. Code § 1572.5 ............................................................................................................ 8

Cal. Civ. Code § 1573 ................................................................................................... 1, 5, 6, 9

Cal. Civ. Code § 1709 ................................................................................................... 1, 5, 6, 9

Cal. Civ. Code § 1710 ................................................................................................... 1, 5, 6, 9

Restatement (2d) of Contracts § 161 ......................................................................................... 6

Restatement (2d) of Contracts § 160 ......................................................................................... 6

Restatement (2d) of Torts § 551 ............................................................................................ 5, 9

Restatement (2d) of Torts § 551(2)(a) ...................................................................................... 1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

# TABLE OF AUTHORITIES
### (continued)

Page

Restatement (2d) of Torts § 551(2)(b) .................................................................................... 1, 6
Restatement (2d) of Torts § 551(2)(e) .................................................................................... 1, 6, 8

**RULES**

Rule 30(b)(6) ............................................................................................................................ 10

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

iii

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

## I. INTRODUCTION

As demonstrated in Maritz's opening brief filed January 25, 2008 (the "Brief"), Visa improperly failed to disclose – and indeed appears to have deliberately concealed – that it was claiming Maritz owed Visa tens of millions of dollars, until after Visa induced Maritz into agreeing to arbitrate. Visa's duty to disclose rests upon a variety of facts (such as Visa's partial, incomplete and/or misleading statements and/or conduct summarized in pages 1-5 of Maritz's Brief and the related Declarations of Doris Lyons, Kelvin Taylor, Mark Peterman and Steve Gallant) and substantial legal authority (as summarized in Maritz's Brief, pp. 6-10, including the Restatement (2d) of Torts § 551(2)(a), (b) and (e) and Cal. Civ. Code §§ 1572-73, and 1709-10). In accordance with the January 17 Order, Maritz identified the discovery needed to fully develop and demonstrate that the agreement to arbitrate was fraudulently induced (Brief, pp. 11-15).

Visa's February 4, 2008 opposition brief (the "Opposition") does not even mention Cal. Civ. Code §§ 1572-73 or 1709-10, nor does Visa address much of the misleading, partial and/or incomplete conduct and statements of Visa described in Maritz's Brief. In fact, Visa's Opposition is most notable largely for what Visa does *not* say or dispute. More specifically, Visa has **not** disputed in its Opposition that:

1. it knew prior to April 20, 2007 that it was going to claim that Maritz owed Visa tens of millions of dollars;

2. Visa deliberately failed to disclose this information until July 23, 2007 − two weeks after Visa induced Maritz into agreeing to arbitrate;

3. Visa deliberately failed to disclose this information to Maritz so that Visa could induce Maritz into agreeing to arbitrate before Maritz realized the magnitude of what Visa would be claiming;

4. Visa failed to disclose this information even though it was obligated under the Master Services Agreement ("MSA") to act in good faith in resolving disputes;

5. no one told Maritz, in the January/February 2007 timeframe in which the parties agreed upon a new timeline and a new target launch date of July 2, 2007, that liquidated damages would continue to accrue, which was consistent with the November 8-9, 2006 emails in which Visa agreed to waive liquidated damages and agreed that Maritz was proceeding on a best efforts basis;

6. in mid-June of 2007, Visa's David Shepard told Maritz's Mark Peterman that Visa would come to St. Louis in mid-July 2007 to discuss Maritz's invoices relating to the $5.2 million that Maritz said Visa owed, without Visa ever mentioning that (a) Visa was going to claim that Maritz owed Visa tens of millions of dollars, or (b) regardless

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

of the $5.2 million, Visa would not pay Maritz a dime, since Visa's undisclosed claims would dwarf Maritz's by ten times or more;

7. on July 20, 2007, just a few days before Visa was to meet with Maritz in St. Louis, Visa again confirmed it was coming to meet with Maritz in St. Louis to discuss Maritz's invoices, and again without disclosing that Visa was going to claim that regardless of the $5.2 million Maritz believed it was owed, Visa would not pay a dime and, instead, would claim Maritz owed tens of millions of dollars; and

8. no one from Visa ever told Maritz, prior to July 23, 2007 that: (a) the liquidated damages clock had been running since the Fall of 2007; (b) liquidated damages had been accruing notwithstanding the November 8-9, 2006 communications in which Visa agreed to waive liquidated damages and to proceed on a best efforts basis; or (c) Maritz allegedly owed Visa tens of millions of dollars.

Visa's silence on these points and/or its failures to provide any affidavits refuting the evidence contained in Maritz's Declarations may be very telling. Although Visa now admits that it knew, before sending the July 9, 2007 letter ("July 9 Letter") containing the agreement to arbitrate to Maritz's Gallant, that Visa had tens of millions of dollars in claims (Opposition, p. 5, n. 3), Maritz believes discovery will show the fraudulent conduct began earlier and extends beyond this limited admission. For example, Visa has **not** denied that it knew or believed that Maritz was unaware of Visa's multi-million dollar claims and that Visa deliberately and specifically withheld its damages information precisely so it could induce Maritz into agreeing to arbitrate. Maritz needs discovery to uncover the full extent of Visa's duplicity.

## II. ARGUMENT

### A. Visa Had a Duty To Disclose That It Was Claiming Maritz Owed Tens of Millions of Dollars.

The facts and circumstances described in Maritz's Brief and in the Introduction above, combined with the legal authority described in the Brief, provide ample bases for concluding that Visa had a duty to disclose its claim that it was owed tens of millions of dollars before it induced Maritz into agreeing to arbitrate. Visa's arguments to the contrary fail.

Visa's arguments fail in part because of Visa's failure to properly consider all of the facts that make its conduct and statements incomplete, misleading and/or ambiguous. Visa focuses, for example, almost exclusively on the limited correspondence between Visa's Elizabeth Buse and Maritz's Kelvin Taylor, and then the communications between Visa's counsel Rod Thompson

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

and Maritz's Steve Gallant between July 2 and July 10, 2007. In doing so, Visa ignores or glosses over important factual information.

Visa largely ignores, *inter alia*, the effect and consequences of: the November 8-9, 2006 emails between Maritz's Lyons and Visa's Fordyce regarding the agreement to waive liquidated damages and proceed on a best efforts basis; Visa's never mentioning in the January/February 2007 timeframe that liquidated damages either had been accruing or would continue to do so through the new July 2007 target launch date; Visa's termination of the MSA in Spring 2007 for convenience rather than for any alleged material breach or default by Maritz; and the indication from Visa's David Shepard in mid-June 2007 that Visa would meet with Maritz in mid-July to discuss the $5.2 million in invoices Maritz had provided, without Shepard ever mentioning that Visa had no intention of paying anything because Visa was going to assert claims ten times or more greater than Maritz's. These factors all played a role in Maritz's pre-July 9 understanding as to what was and was not in issue, and the importance of this information cannot be discounted.

Maritz has provided the Court four Declarations containing substantial factual support for Maritz's position that, based upon Visa's conduct, Maritz was induced into believing Visa was not and would not be claiming that Maritz should pay Visa anything, much less tens of millions of dollars (See Maritz's Brief, pp. 1-5, and the Lyons, Taylor, Peterman and Gallant Declarations). Visa, in response, failed to provide a single affidavit from a single Visa employee.

Visa attempts to brush aside the consequences of its contractual obligation under the MSA to act in good faith (Opposition, pp. 9-10). Visa cites, for example, *Creager v. Yoshimoto*, 2007 U.S. Dist. LEXIS 77309, *6 (N.D. Cal. 2007), in arguing that all contracts have an implied covenant of good faith and fair dealing and yet all contracts do not create fiduciary relationships. This argument is a red herring. According to the court in *Creager*, the implied covenant of good faith and fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Id.* (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349, 8 P.3d 1089 (Cal. 2000)). One party thus cannot put up

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1  roadblocks preventing the other party's performance and then refuse to pay because the other party did not perform due to the roadblocks. [1/]

Visa's contractual duty to act in good faith, in contrast, is tied specifically to "resolving any disputes" under the MSA. This obligation extends beyond the mere performance of the contract and, more specifically, encompasses attempts to resolve disputes. This good faith duty therefore imposes obligations beyond those typically associated with the implied covenant of good faith and fair dealing, in particular where two business entities are dealing with one another. Visa's misleading and less-than-candid conduct thus needs to be viewed in light of the specific contractual obligation it undertook and owed to Maritz to act in good faith in attempting to resolve disputes. *Cf. Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1260, 117 Cal. Rptr. 2d 875, 883 (Cal. App. 2002) (noting that "[o]nly when the parties are under a contractual compulsion to negotiate does the covenant of good faith and fair dealing attach …. In … [such] situation the implied covenant of good faith and fair dealing has the salutory effect of creating a disincentive for acting in bad faith in contract negotiations."); *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1034-35 (Cal. App. 1992). [2/]

Visa relies heavily on *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir. 1988), in arguing Visa had no duty to disclose. The fraud perpetrated by Visa, however, is much different from that in issue in *Cohen*, and the *Cohen* facts are much different than those herein. In *Cohen*, plaintiffs essentially did not understand the meaning and effect of the arbitration clause. Maritz, in contrast, understood the meaning and effect of the arbitration clause (e.g., as to whether or not there is a right to a jury trial in arbitration), but was not told tens of millions of dollars were at stake and that it supposedly owed Visa approximately $66 million. In *Cohen* the court stated

---

[1/] Notably, in *Creager* the court **denied** defendants' motion for summary judgment on the implied covenant, fraud and breach of contract claims because of various factual disputes, including as to whether defendants intended to mislead plaintiff, intended to induce plaintiff's reliance to plaintiff's detriment, and/or acted in bad faith in frustrating the purpose of the contract. Similar factual disputes exist here with respect to Visa's conduct resulting in the agreement to arbitrate.

[2/] Article XXIII of the MSA does not negate Visa's obligation under Article XXII of the MSA to act in good faith in resolving disputes. Article XXIII essentially provides that no employer/employee or joint venture relationship is established between Maritz and Visa by virtue of the MSA. It does not change the fact that Visa was obligated to act in good faith in resolving disputes, and Visa therefore owed a duty not to conceal material information from Maritz in order to deceive Maritz into agreeing to arbitrate.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

that plaintiffs "do not state a claim for fraudulent failure to disclose any material facts." *Id*. at 287. In contrast, Maritz claims that Visa fraudulently failed to disclose that it was claiming Maritz owed tens of millions of dollars, that very substantial liquidated damages had been accruing daily for months, and that Visa's November 8-9, 2006 waiver of liquidated damages was not a waiver – all of which would have been material to Maritz in deciding whether to arbitrate.[3/]

Further, in *Cohen*, the defendant was not contractually obligated to act in good faith in resolving disputes; just the opposite is true as to Visa. Indeed, **none** of the cases upon which Visa relies involved a party who was contractually obligated to act in good faith in resolving disputes and who nonetheless deliberately withheld material information regarding tens of millions of dollars in claims in order to induce the other party into agreeing to arbitrate.

Visa surprisingly cites *TV Events & Marketing, Inc. v. AMCON Distrib. Co.*, 488 F. Supp. 1071 (D. Hawaii 2006), in arguing it had no duty to disclose it was claiming Maritz owed tens of millions of dollars. In *TV Events*, however, the court held the counter-claimants had properly pled a fraud by omission claim and had asserted adequate grounds under Restatement (2d) of Torts § 551 to support their claim that a duty to disclose existed. *Id.*, 488 F. Supp. at 1081-82.

Visa's reliance on *Householder Group LLLP v. Fuss*, 2007 U.S. Dist. LEXIS 44220 (N.D. Cal. 2007), for the proposition that Visa is not a "fiduciary" is similarly misplaced (Opposition, p. 10). *Householder Group* was decided under Arizona rather than California law; it therefore does not mention the previously-cited California Civil Code sections dealing with fraud and deceit, nor does it discuss Restatement (2d) of Torts § 551. In addition, Householder Group was not contractually obligated to act in good faith in attempting to resolve disputes; Visa was. Finally, under Restatement (2d) of Torts § 551, a party does not have to be "a fiduciary" in order to have a duty to disclose; Visa's duty to disclose can be predicated upon a variety of grounds under Section 551, as well as under Cal. Civ. Code §§ 1572, 1573, 1709 and 1710 and the Restatement

---

[3/] Visa denies "that any such waiver occurred" (Opposition, p. 13, n. 11). However, Visa has not provided a single affidavit either to support its claim or to refute the Declarations of Doris Lyons, Kelvin Taylor and Mark Peterman filed by Maritz, nor has Visa supplied any evidence as to what Visa's Tad Fordyce was agreeing to in the November 8-9, 2006 emails (attached as Exhibit 2 to the Lyons Declaration) if it was not to waive liquidated damages.

1    (2d) of Contracts §§ 160 and 161 (See Maritz's Brief, pp. 6-11). *See generally Zabit v. Ferretti Group, USA*, 2007 U.S. Dist. LEXIS 78399, at *15-*19 (N.D. Cal. 2007).

Visa's arguments based upon the "reservation of rights" language in Buse's letters do not save Visa. Buse's "reservation" must be considered against the broader factual backdrop, including Visa's prior conduct in waiving liquidated damages in November 2006; its non-mention of any such damages in January/February 2007 when the parties were discussing an extended timeline and a July 2007 launch; its termination for convenience rather than for breach or default; and its indication it was going to pay Maritz, just not the full $5.2 million Maritz had billed.

In addition, Buse's "reservation of rights" is simply that, i.e., a "reservation." Buse did **not** say in her April 20, June 5 or July 2, 2007 letters that Maritz would have to pay anything, much less that Maritz owed tens of millions of dollars. There is a very significant difference between reserving any rights one may have, and affirmatively stating that the other party owes tens of millions of dollars. Buse's letters were incomplete or partial at best; were misleading or ambiguous when viewed in the overall context of the parties' relationship; and may well have been the product of a deliberate effort by Visa to conceal its true intent of seeking tens of millions of dollars until after it had induced Maritz into agreeing to arbitrate. Such conduct falls within both Restatement (2d) of Torts § 551(2)(b) as well as Cal. Civ. Code §§ 1572-73 and 1709-10 and *Warner Construction v. City of Los Angeles*, 2 Cal. 3d 285 (Cal. 1970) (See Brief, pp. 6-10).

Visa also argues it had no duty to disclose under Restatement (2d) of Torts § 551(2)(e) because Maritz must have known of Visa's damages. Visa asserts, for example, that Visa terminated Maritz because of "months of unacceptable performance" and that Maritz "cannot deny that it knew its serious breaches of the MSA caused Visa damages" (Opposition, pp. 2, 12). Visa, however, has provided no factual support – affidavit or otherwise – for these claims, and Maritz in fact does deny such unsupported assertions (see Taylor Decl. ¶¶ 4-5; Peterman Decl. ¶¶ 3-9; Gallant Decl. ¶¶ 3-6, 9-20, 22-26, 29, 36; *see also* Maritz's Answer ¶¶ 19, 34-49, and Maritz's Affirmative Defenses Nos. 3-6, 8-11, 14, 16-17, 23-25; *see also* Maritz's Counterclaim). As a result, even if Visa had provided affidavits to support these claims, they would merely create

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1  factual disputes with respect to whether Maritz's beliefs in connection with its fraudulent
2  inducement claim were reasonable, and this fact issue would need to be decided by a jury.

3       Visa also suggests that Buse's July 2 letter somehow shows that Visa "could not have had
4  a duty to disclose the magnitude of its damages" prior to Maritz signing the July 9 Letter.  Visa's
5  argument rests in part on its unsupported factual assertion that the phrase in the July 2 letter "to
6  protect both parties" supposedly "refers to the need to have an agreement in place that such
7  discussions would be covered by the protections of California's mediation protections"
8  (Opposition, p. 7).  Buse's July 2 letter says no such thing, and Visa has failed to provide an
9  affidavit from Buse or anyone else at Visa to support its interpretation.  In addition, Visa's
10 suggestion that its damages information was being withheld to protect confidentiality until after
11 an agreement was signed on July 24, 2007 (Opposition, p. 7) is belied by the Declaration of Steve
12 Gallant.  Mr. Thompson told Maritz's Gallant **on July 23** that Maritz owed Visa tens of millions
13 of dollars (Gallant Decl. ¶¶ 23-25), and no confidentiality protection was then in place.[4]

14      In arguing that Mr. Thompson did not mislead Mr. Gallant, Visa asserts Mr. Gallant had
15 no reason for believing that he and Mr. Thompson were trying to devise a process for determining
16 the amount Visa owed Maritz because neither Mr. Thompson nor Mr. Gallant discussed the size
17 of their clients' claims (Opposition, p. 11 n. 9).  Mr. Gallant, however, did not have to mention
18 Maritz's $5.2 million claim since Maritz had already provided this information to Visa both in the
19 May 7, 2007 letter from Maritz's Kelvin Taylor and in the related back-up Maritz subsequently
20 sent to Visa (*See* Brief, pp. 3, 5; Taylor Decl. ¶ 1; Taylor Exh. 1; Peterman Decl. ¶¶ 4-6, 9).
21 Maritz thus disclosed its information; Visa did not; and Mr. Gallant therefore reasonably believed
22 that the issue was how much of the $5.2 million Visa would pay.

23      The real question – and the one Visa coyly avoids answering – is whether Visa concealed
24 its damages to help it induce Maritz into being locked into arbitration.  Maritz stated on page 8 of
25 its Brief that "Maritz believes discovery will show Visa knew that Maritz did not realize Visa was

---

[4] Visa also makes the spurious argument that its "estimate of damages" was its attorneys' work product and therefore not subject to disclosure.  First, Visa has provided no affidavit support for this assertion.  Second, regardless of what Visa's counsel may have "estimated," unless the damages claim was completely fabricated, Visa itself certainly must have known it was claiming entitlement to tens of millions of dollars.  Visa has not denied knowing this and, in fact, admits it knew its damages "were in the tens of millions of dollars" (Opposition, p. 5 n. 3).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

1  claiming Maritz owed tens of millions of dollars." Visa's Opposition is glaringly silent on this
2  issue, suggesting Visa in fact did know, and deliberately took advantage of, Maritz's mistake or
3  misimpression – conduct falling squarely within Restatement (2d) of Torts § 551(2)(e) as well as
4  within *Warner Construction, supra*. (*See* Brief, pp. 6, 8-10).

5  Maritz also stated in its Brief that "Maritz believes, and the evidence indicates, that Visa
6  deliberately withheld that it was planning to seek tens of millions of dollars from Maritz **so that**
7  **Visa could induce Maritz into agreeing to arbitrate**" (Brief, p. 14; emphasis added). Again,
8  Visa's Opposition is conspicuously silent on this point, as Visa does **not** deny that it withheld this
9  information **for precisely this reason**.[5/]

### B. Visa's Remaining Arguments Are Meritless, and Maritz Should Be Allowed to Conduct Discovery in Order to Fully Develop and Present Its Fraudulent Inducement Claim.

12  Visa's Opposition raises a number of other arguments. All are meritless. Visa argues, for
13  example, there are no genuine issues of material fact relating to Maritz's fraud claim and to
14  whether Visa owed a duty to disclose (Opposition, pp. 1, 8). Is Visa admitting that Visa (a) knew
15  Maritz was unaware that Visa was claiming entitlement to tens of millions of dollars and yet
16  (b) deliberately concealed that information from Maritz in order to induce Maritz into agreeing to
17  arbitrate? If so, Visa's conduct falls squarely within Restatement (2d) Torts § 551(2)(e) and Cal.
18  Civ. Code §§ 1572.3 and .5, as well as *Warner Construction*, *supra*. If Visa is not admitting this,
19  then there is a genuine issue of material fact as to why Visa concealed this information.

20  In an attempt to avoid a trial and discovery, Visa cites this Court's decision in *Garbacz v.*
21  *A.T. Kearney, Inc.*, 2006 U.S. Dist. LEXIS 20135 *5-6 (N.D. Cal. 2006), in asserting that "[a]
22  standard similar to that on a motion for summary judgment is applied to a motion to compel
23  arbitration" (Opposition, pp. 4-5). Visa neglects to mention, however, that this Court also stated:

> "If there is doubt as to whether such [arbitration] agreement exists, the matter should be resolved through an evidentiary hearing or a mini-trial …. When

---

[5/] Visa asserts in its Opposition that it is "essentially" undisputed that Visa knew the nature and magnitude of its damages (including that its damages were in the tens of millions of dollars) prior to sending the July 9 Letter and had decided not to disclose that material information to Maritz before the July 9 Letter was executed (Opposition, p. 5 and n. 3). Visa fails, however, to provide the reason(s) why it failed to disclose this information, and specifically whether it concealed the information in order to induce Maritz into agreeing to arbitrate.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

considering a motion to compel arbitration which is opposed on the ground that there is no binding agreement to arbitrate, the district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise."

*Id.* (quoting *McCarthy v. Providential Corp.*, 1994 U.S Dist. LEXIS 10122 (N.D. Cal. 1994)). Clearly such "doubt" exists here in view of Visa's duplicitous misconduct, the full extent of which has not been revealed. When combined with the fact that Maritz is entitled to the benefit of all reasonable doubts and inferences, there is ample basis for requiring an evidentiary hearing.

Visa then cites *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996), in arguing Maritz should not be given discovery (Opposition, pp. 5, 13). *Nidds* does not support Visa's position. In *Nidds*, the party opposing summary judgment (Nidds) had been provided ample time to conduct full discovery; Nidds had conducted "extensive discovery," had well in excess of a year to do so, and had also been given time to take three additional depositions (which Nidds then did not take). 113 F.3d at 916, 920. In contrast, Maritz has been given no discovery, and the time for commencing discovery under the Federal Rules has not even started. *Cf. Zabit v. Ferretti Group USA*, 2007 U.S. Dist. LEXIS 78399 **15-19 (N.D. Cal. 2007) (denying summary judgment on fraudulent inducement claim to allow further development of the record).[6]

Visa's suggestion that since "Maritz has already submitted four detailed declarations" to the Court, this "is … strong proof that Maritz needs no discovery …" (Opposition, p. 5), is absurd. Three of the four Declarations submitted by Maritz are very short; only the Gallant Declaration is lengthy. More importantly, in view of Restatement (2d) of Torts § 551, Cal. Civ. Code §§ 1572-73 and 1709-10, much of the evidence relevant to Maritz's fraudulent inducement claim is available only to Visa.

Only Visa can provide answers, for example, to the following questions: What did Visa discuss/consider internally as to what Maritz should or should not be told, and why? When did Visa first decide not to reveal its multi-million dollar claim to Maritz, and why? Was Visa concerned that if it disclosed to Maritz (a) that Visa would be seeking tens of millions of dollars and/or (b) that its multi-million dollar damage claim might be predicated upon liquidated or cover

---

[6] Visa also relies upon *Doctor's Assocs. v. Stuart*, 107 F.3d 126 (2d. Cir. 1997), in arguing that Maritz is not entitled to a jury trial. However, in *Doctor's Associates*, the franchisees had been allowed to conduct discovery on their defenses; Maritz, in contrast, has not.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

9

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW

damages despite (among other things) the November 8-9, 2006 liquidated damages waiver and the agreement that Maritz was proceeding on a best efforts basis, Maritz might not agree to arbitrate?  Such information is relevant to (and necessary for full development of) Maritz's fraudulent inducement claim; and Maritz should be allowed to pursue it through discovery.[7] *Cf. Zabit*, 2007 U.S. Dist. LEXIS 78399, at *18-*19 (reflecting this Court having ordered discovery in connection with fraudulent inducement/concealment claim).

Finally, Visa professes bewilderment as to why Maritz is seeking the requested discovery.  Although the reasons should be clear from Maritz's Brief and Maritz's other pleadings filed with the Court, they can be briefly summarized:

- Visa's Tad Fordyce and his boss, Tim Attinger, and Elizabeth Buse are expected to have discoverable information relating to most (if not all) of the topics described on pages 13-14 of Maritz's Brief, and each of these topics is relevant to Maritz's fraudulent inducement claim in view of the facts and legal authorities cited in Maritz's Brief and this Reply Brief;

- John McCarthy is expected to have information relevant to (among other things) the reason(s) Visa terminated the MSA (including whether technology played any role in the decision) as well as whether or not Visa told or indicated to Maritz in 2007 that liquidated damages were or were not accruing, both of which go to Maritz's state of mind during the period in which the fraud occurred;

- Visa's Rule 30(b)(6) corporate representatives need to be deposed so that Visa cannot play "hide the ball" factually.  Maritz needs and is entitled to learn what Visa knows regarding each of the topics listed on pages 13-14 of Maritz's Brief; and

- the documents relating to the topics described on pages 13-14 of the Brief are critical because they should provide evidence necessary to ferret out the truth as to precisely why Visa did not disclose material information and, more specifically, whether such information was withheld in order to induce Maritz into agreeing to arbitrate.

### III.  CONCLUSION

Visa fraudulently induced Maritz into agreeing to arbitrate.  At a bare minimum, a number of genuine issues of material fact need to be decided.  Maritz should be allowed to pursue the discovery described in its Brief so it can fully develop its fraudulent inducement claim and then a jury can decide whether or not Maritz has to arbitrate in light of how it was misled.

---

[7] The discovery "offered" by Visa (i.e., a deposition of Mr. Thompson) is far too limited, would undoubtedly be further limited due to privilege issues, and would prevent Maritz from obtaining key documents and deposing the key Visa personnel who have significant knowledge directly relevant to Maritz's fraudulent inducement claim.

| | |
|---|---|
| Dated: February 11, 2008 | Manatt, Phelps & Phillips, LLP |

By: /s/ Ryan S. Hilbert
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260
*Attorneys for Defendant and Counter-Claimant*

20196598.2

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11

REPLY BRIEF OF MARITZ PURSUANT TO COURT
ORDER DATED JANUARY 17, 2008
CASE NO. C07-5585 JSW