1  MANATT, PHELPS & PHILLIPS, LLP
   RONALD S. KATZ (California Bar No. 085713)
2  E-mail: rkatz@manatt.com
   RYAN S. HILBERT (California Bar No. 210549)
3  E-mail: rhilbert@manatt.com
   1001 Page Mill Road, Building 2
4  Palo Alto, CA 94304-1006
   Telephone: (650) 812-1300
5  Facsimile: (650) 213-0260

6  Attorneys for Defendant/Counterclaim and
   Third-Party Plaintiff Maritz Inc.

7

8                          UNITED STATES DISTRICT COURT

9                             NORTHERN DISTRICT

10                         SAN FRANCISCO DIVISION

11

12

13 VISA U.S.A. INC.,                        CIVIL ACTION NO. C 07-5585 JSW

14         Plaintiff/Counterclaim           RESPONSE OF DEFENDANT/
           Defendant,                       COUNTERCLAIM PLAINTIFF MARITZ INC.
                                            TO VISA U.S.A. INC.'S EVIDENTIARY
15     v.                                   OBJECTIONS TO STEVE GALLANT
                                            DECLARATION
16 MARITZ INC., d/b/a MARITZ
   LOYALTY MARKETING,
17
           Defendant/Counterclaim
18         and Third-Party Plaintiff,

19     v.

20 CARLSON MARKETING GROUP, INC.

21         Third-Party Defendant.

22

23

24

25

26

27

28
   2796124.1

1

**INTRODUCTION**

2      The evidentiary objections of plaintiff/counterclaim defendant Visa U.S.A. Inc. ("Visa")

3   to the Declaration of Steve Gallant of Maritz Inc. ("Maritz") should be denied.  Visa's objections

4   are meritless, and the statements in Mr. Gallant's Declaration are relevant and proper.

5      Before addressing the specifics of Visa's objections, some preliminary points are

6   pertinent.

7      1.      Mr. Gallant's Declaration needs to be considered in light of all of the elements of

8   Maritz's fraudulent inducement claim.  Visa tries to limit the relevance of particular statements

9   in Mr. Gallant's Declaration by focusing on only certain elements of Maritz's fraudulent

10   inducement claim.

11      2.      The Gallant Declaration should also be considered in light of the facts that (a) this

12   litigation is in the very early stages of the proceeding, (b) Maritz has not had been provided any

13   discovery by Visa, (c) Visa's key employees are unavailable to Maritz, and (d) Visa's Motion to

14   Stay the Action and to Compel Arbitration is akin in some respects to a preliminary injunction

15   proceeding, and the Court therefore should apply a relaxed evidentiary standard.  *See generally,*

16   *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984).  As this Court observed in *Arthur J.*

17   *Gallagher & Co. v. Edgewood Partners Ins. Center*, 2008 U.S. Dist. LEXIS 8924, *7 n. 3 (N.D.

18   Cal. 2008):

19                    The parties have submitted multiple evidentiary objections.  However, on
                     an application for TRO or preliminary injunction; affidavits need not meet
20                    the standards set forth in Federal Rule of Evidence 56(e) or the Federal
                     Rules of Evidence.  *Bracco v. Lackner*, 462 F. Supp. 436, 442 (N.D. Cal.
21                    1978); *see also Flynt Dist. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th
                     Cir. 1984) (district court may give inadmissible evidence some weight in
22                    consideration of a motion for preliminary injunction "when to do so serves
                     the purpose of preventing irreparable harm before trial").  Therefore, the
23                    Court will not sustain any of the parties' objections.  Rather, the Court has
                     given weight to the evidence presented based on the Court's discretion, and
24                    upon consideration of the competence, personal knowledge and credibility
                     of the affiants.
25

26      3.      To the extent Visa's objections suggest or indicate a need to "fill in the gaps" or

27   to lay more of a foundation, such objections support Maritz's position that Maritz should be

28

1  allowed to pursue discovery as set forth in Maritz's Brief Pursuant to Court Order dated

2  January 17, 2008 and in Support of Discovery ("Maritz's Discovery Brief").

3      4.    Many of Visa's objections go to the weight of the evidence rather than its

4  admissibility.

5      5.    Visa's objections also need to be considered in light of what Visa has <u>not</u>

6  disputed.  Visa argues, for example, that certain of Mr. Gallant's statements in his Declaration

7  are not relevant because there is no evidence he communicated them to Visa.  This argument

8  misses the point.  The statements could be relevant for any number of reasons, including to show

9  Mr. Gallant and Maritz's state of mind, and/or that Maritz was acting reasonably in believing

10  certain things based upon what Visa had and had not disclosed as well as based upon what Visa's

11  conduct did or did not indicate.  Moreover, regardless of whether Mr. Gallant communicated to

12  Visa what he believed or understood, Maritz believes the evidence will show Visa was well

13  aware of what it was doing, and that Visa was deliberately attempting to induce Maritz into

14  agreeing to arbitrate before Maritz realized Visa was claiming Maritz owed tens of millions of

15  dollars.  Therefore, regardless of whether Mr. Gallant communicated his understanding to Visa,

16  if Visa understood or believed Maritz did not realize what Visa would be claiming, and Visa

17  deliberately concealed its intentions in order to take advantage of the situation, Visa acted

18  improperly, especially in light of its obligation under the Master Services Agreement (the

19  "MSA") to act in good faith in resolving disputes under the MSA.  *See generally* Maritz's

20  Discovery Brief; *see also* Maritz's Reply Brief Pursuant to Court Order Dated January 17, 2008

21  and in Support of Discovery.

22      6.    Visa's objections are contained in a filing captioned "Evidentiary Objections to

23  the Declaration of Steve Gallant Filed in Support of Maritz, Inc.'s Opposition to Visa's Motion

24  to Stay Action and to Compel Arbitration."  Maritz's Declarations, however – all of which were

25  filed on January 18, 2008 – relate not only to Maritz's Opposition to Visa's Motion to Stay but

26  also to Maritz's January 18, 2008 Reply in Support of Maritz's Motion to Stay Arbitration

27  Pending Determination of Arbitrability ("Maritz's Reply in Support of Motion to Stay") and

28

3

1   Maritz's Discovery Brief.  Visa has not objected to Maritz's Declarations as they relate to

2   Maritz's Reply in Support of Motion to Stay and/or Maritz's Discovery Brief.

3   **MARITZ'S SPECIFIC RESPONSES TO VISA'S OBJECTIONS**
**TO STEVE GALLANT DECLARATION**

4

5       **1.**    **Evidence to Which Visa Objects:  Paragraph 4 (2:17-19):** "Since Visa was not

6   terminating the Agreement based upon any alleged default or material breach but instead under

7   Section XII.A.2(b), I considered Visa's termination to be a termination for convenience."

8       **Maritz's Response:**  Mr. Gallant's statement is relevant and proper under F.R.E. 402 and

9   701.  Mr. Gallant's understanding with respect to Visa's termination of the agreement – i.e., that

10  Visa's termination was not because of any alleged material breach or default of Maritz but rather

11  for Visa's convenience – and the consequences of a termination  for something other than breach

12  or default – is both relevant and proper.  His understanding is relevant in that, *inter alia*, it shows

13  why he reasonably believed (a) Visa was not making claims against Maritz for breach of contract

14  or default damages, much less claiming Maritz owed Visa tens of millions of dollars for such

15  damages; (b) the only issue was how much Visa was going to pay of the $5.2 million it owed to

16  Maritz; and (c) why he was willing to agree to arbitrate.  His statement also ties into his other

17  testimony that he would not have agreed to arbitrate in the July 9 Letter had he known Visa was

18  claiming entitlement to tens of millions of dollars.

19      Mr. Gallant's statement also has to be considered in light of the overall context of the

20  fraud perpetrated by Visa.  Maritz is entitled to show why (a) the information concealed by Visa

21  was material, and (b) Mr. Gallant reasonably believed Visa was not and would not be making

22  claims for tens of millions of dollars.  Notably, Visa has not claimed it did not realize that Maritz

23  was under a misimpression, and Maritz believes discovery will show Visa knew and took

24  advantage of Maritz's misimpression by concealing Visa's true intentions in order to induce

25  Maritz into agreeing to arbitrate.  The issue is not limited to what Mr. Gallant told Visa about his

26  understanding; the issues instead include what did Visa know, understand and/or believe, and

27

28

1  was Visa concealing information regarding its multi-million dollar claims in order to induce

2  Maritz into agreeing to arbitrate.

3      **2.    Evidence to Which Visa Objects:  Paragraph 6 (2:24-26):**  "I considered

4  Ms. Buse's "reservation of rights" language in her April 20 letter to be simply standard language

5  to preserve Visa's ability to object to the amount that Visa would have to pay to Maritz in light

6  of Visa's "for convenience" termination."

7      **Maritz's Response**:  Mr. Gallant's testimony is proper under FRE 402 and 701 and

8  Visa's objections should be overruled.  Visa's "best evidence" objection is meritless; Mr. Gallant

9  is not purporting to "summarize" Ms. Buse's letter.  Mr. Gallant's testimony as to his

10  understanding is relevant for essentially the same reasons as in Maritz's previous response.  His

11  testimony is also proper under Rule 701 in that it is rationally based on his perceptions and

12  helpful to a clear understanding of his testimony and/or to the determination of a fact in issue

13  with respect to Maritz's fraudulent inducement claim.

14      **3.    Evidence to Which Visa Objects:  Paragraph 8 (3:3-8):**  "Maritz's May 7 letter

15  contains a very brief reservation of rights sentence.  Maritz anticipated, quite simply, that Visa

16  might attempt to pare down the $5.2 million that Visa owed, and Maritz therefore was simply

17  reciprocally reserving its rights to the extent it might be relevant to do so.  I thought that Visa

18  might disagree, for example, with Maritz's percentage completion estimates for partially

19  completed Milestones and thus attempt to reduce the amount that Visa would have to pay

20  Maritz."

21      **Maritz's Response**:  Visa's FRE 402 and 1002 relevance and best evidence objections

22  should be denied for the same reasons as in the preceding paragraphs.  First, Mr. Gallant is not

23  purporting to "summarize" the May 7 letter.  Second, Mr. Gallant is entitled to explain why

24  Maritz's May 7 letter includes a brief "reservation" sentence.  Visa has suggested in an earlier

25  filing that the reservation language in the May 7 letter is significant; Mr. Gallant therefore is

26  entitled to explain why the sentence is in the letter.  The evidence is also relevant because it

27  supports Maritz's position as to what it understood/believed at the time, which in turn ties into

28

1  Maritz's claim that it acted reasonably under the circumstances in view of what Visa did – and

2  more importantly did not – disclose.

3      **4.      Evidence to Which Visa Objects:  Paragraph 9 (3:9-17):**  "Ms. Buse

4  subsequently sent letters to Mr. Taylor dated June 5 and July 2, 2007 in which Ms. Buse again

5  mentioned Visa's reservation of rights.  As of those dates, I had no reason to believe that Visa

6  was claiming that Maritz should pay it any money, much less the tens of millions of dollars that

7  Mr. Thompson subsequently revealed on July 23, 2007.  To my knowledge, no one from Visa

8  had made any such claims to Maritz, and I am confident I would have been told had such claims

9  been made.  Such claims would also have been completely inconsistent with Visa's termination

10  of the Agreement which was based on convenience rather than default and as such I considered

11  the "reservation of rights" language to be redundant to that of the April 20 letter."

12      **Maritz's Response**:  Visa's objections should be overruled.  The evidence is relevant

13  under FRE 401 and 402 to show Mr. Gallant was acting reasonably in light of what he was and

14  was not told.  The evidence is also relevant regardless of whether Mr. Gallant "expressed" what

15  he understood or believed to Visa.  Visa could have been well aware, for example, that by

16  concealing key information it was lulling Maritz into agreeing to arbitrate.  If so, it does not

17  matter whether Mr. Gallant told Visa what it already knew, i.e., that Maritz did not know or

18  believe Visa was claiming Maritz owed tens of millions of dollars.

19      Similarly, Mr. Gallant's testimony that such claims by Visa would have been completely

20  inconsistent with Visa's termination of the MSA for convenience is proper under FRE 701 and

21  704 in that it is rationally based on Mr. Gallant's perception and is helpful to a clear

22  understanding of his testimony and the determination of various facts in issue, including those

23  pertaining to Maritz's belief and the reasonableness of Maritz's reliance based upon what Visa

24  did and did not do and/or did or did not say.

25      Mr. Gallant's testimony also does not violate the best evidence rule.  He is not purporting

26  to summarize the language in the letters.

27

28

2796124.1

6

1        **5.**      **Evidence to Which Visa Objects:  Paragraph 10 (3:18-27)**:  "On Monday,

2  June 18, 2007, Mark Peterman of Maritz told me that he had spoken with David Shepard of Visa

3  on Friday, June 15, 2007.  According to Mr. Peterman, Mr. Shepard, Tad Fordyce and Tim

4  Attinger of Visa were available to meet with Maritz in mid-July 2007 to discuss Maritz's

5  invoices, which was consistent with what I believed we were going to discuss with Visa.  (I

6  understood that Mssrs. [sic] Fordyce, Attinger and Shepard all had leading roles for Visa in

7  connection with the Rewards Program project, as did Mr. Peterman for Maritz.)  To my

8  knowledge no one from Visa told Mr. Peterman that Visa considered Maritz to be in default, or

9  that Visa was looking for any payment from Maritz, much less that Visa believed that Maritz

10  owed Visa tens of millions of dollars.  If Visa had so informed Mr. Peterman, I would have been

11  informed."

12        **Maritz's Response**:  The evidence is relevant and admissible under FRE 402, 406, 701,

13  704, 801(d)(2), 803(1) and (3), and 807.  The evidence is relevant because it reflects Mr.

14  Gallant's state of mind prior to July 9, 2007; shows the reasonableness of his belief as to what

15  was and was not in issue; and reflects the materiality of that which was not disclosed (i.e., the

16  difference between thinking that Visa was going to pay some but not all of the $5.2 million it had

17  been billed and Visa instead claiming it was owed tens of millions of dollars).

18        Mr. Shepard's statement to Mr. Peterman is not hearsay and is admissible under FRE

19  801(d)(2).  Mr. Peterman's statement to Mr. Gallant, in addition to being relevant to and

20  admissible for purposes of showing Mr. Gallant's state of mind, is admissible under FRE 803(1)

21  or 807.  Mr. Peterman has also provided a Declaration (filed on January 18, 2008) in which he

22  describes what he told Mr. Gallant, thereby corroborating Mr. Gallant's statements and

23  eliminating the hearsay concern.

24        Mr. Gallant's testimony that "to my knowledge no one from Visa told Mr. Peterman that

25  Visa considered Maritz to be in default" is not (as Visa contends) "impermissible speculation"; it

26  is fact.

27        Similarly, Mr. Gallant's statement that "If Visa had so informed Mr. Peterman [i.e., that

28  Visa considered Maritz to be in default, or was looking for any payment from Maritz, much less

7

1   tens of millions of dollars], I would have been informed" is not "inadmissible speculation."

2   Mr. Gallant's opinion is based on his position, duties and responsibilities at Maritz and his

3   involvement in the Visa matter.  *See* FRE 701; *cf.* FRE 406.

4          **6.**     **Evidence to Which Visa Objects:  Paragraph 13 (4:9-14):**  "As of July 2, 2007,

5   my belief and understanding was that we were going to negotiate how much of the $5.2 million

6   referenced in Mr. Taylor's May 7 letter Maritz was entitled to receive from Visa pursuant to the

7   termination for convenience portion of the Agreement.  To my knowledge, as of July 2, 2007,

8   Visa had not told Maritz that Visa considered Maritz to be in default, or that Visa expected

9   Maritz to pay anything, much less that Visa would claim that Maritz owed tens of millions of

10  dollars."

11         **Maritz's Response:**  The evidence is relevant and admissible.  Mr. Gallant's statements

12  are relevant to his state of mind and the reasonableness of his conduct in light of what Visa had

13  done/said/indicated and/or had not done/said/indicated.  As previously indicated, the issue is not

14  limited to what Mr. Gallant communicated to Visa about his belief and understanding; instead,

15  the issues include what Visa knew, understood and/or believed about what Maritz did or did not

16  know.

17         **7.**     **Evidence to Which Visa Objects:  Paragraph 15 (4:16-23):**  "Nothing that

18  Mr. Thompson said to me suggested that Visa had or was making any claim for money from

19  Maritz.  Based on our conversations, I was led to believe that we were trying to devise a process

20  for determining the amount of compensation that Maritz was owed by Visa under the Agreement

21  in light of Visa's termination for convenience."

22         **Maritz's Response:**  Mr. Gallant's statements are relevant and admissible.  FRE 402, 701

23  and 704.  Visa's objections go to the weight, not the admissibility, of the evidence, and Visa can

24  seek additional detail through discovery.

25         **8.**     **Evidence to Which Visa Objects:  Paragraph 16 (4:24-27):**  "I believe it was

26  reasonable for me to expect that, if Visa intended to make a default claim exceeding the amount

27  of Maritz's invoices by ten times or more and to resolve that claim in binding arbitration,

28

Mr. Thompson would tell me.  He did not, nor to my knowledge did Visa convey any such information to anyone else at Maritz."

**Maritz's Response:**  Mr. Gallant's statements are relevant and admissible under FRE 402, 701 and 704.  His statements go directly to the question of whether Visa should have disclosed its multi-million dollar claims and the reasonableness of his conduct in believing Visa was not making such claims.  Again, the issue is not limited to what Mr. Gallant told Mr. Thompson; the issues also include what Visa (including Mr. Thompson) knew/understood/believed about what Maritz did or did not know or realize.

**9.**    **Evidence to Which Visa Objects:  Paragraph 17 (5:1-9):**  "I also knew that under Section XXII.A. of the Agreement, the parties were obligated to act in good faith and reasonably in resolving any disputes that arose under the Agreement (See Exhibit 2).  More specifically, Section XXII.A. of the Agreement provides:

> "DISPUTE RESOLUTION.
> **A.**    **Good Faith.**  The Parties shall act in good faith and reasonably in interpreting this Agreement and the Related Agreements and resolving any disputes that arise thereunder."

If Visa was claiming that Maritz owed it tens of millions of dollars, then Visa/Mr. Thompson should have disclosed this information before inducing me to agree to an arbitration."

**Maritz's Response:**  Visa objects only to the third sentence (i.e., beginning "If Visa was claiming ….").  Mr. Gallant's statement, however, is admissible under FRE 402, 701 and 704.  Mr. Gallant is stating why he believes Visa and/or its counsel should have disclosed Visa's multi-million dollar claims before inducing him into agreeing to arbitrate.  His statement reflects both his state of mind, and the reasonableness of his belief and understanding, prior to his being induced into agreeing to arbitrate.

**10.**    **Evidence to Which Visa Objects:  Paragraph 20 (5:20-26):**  "The agreement to arbitrate in the July 9 letter provides that the arbitration "will allow for only limited discovery" and that the hearing must be commenced within 90 days after the mediation process ends.  I would never have agreed to such an expedited schedule or to limited discovery had Visa revealed that it would be seeking tens of millions of dollars from Maritz.  I would not have been willing to

9

1   arbitrate under these conditions a default claim against Maritz for tens of millions of dollars

2   (which is a vastly different claim than one in which Maritz was seeking to recover $5 million in

3   termination for convenience compensation)."

4       **Maritz's Response:**  Mr. Gallant's testimony is not "inadmissible speculation," as Visa

5   contends.  His testimony is factual, is based on his experience and common sense, and is

6   admissible under FRE 402 and 701.

7       **11.**     **Evidence to Which Visa Objects:  Paragraph 21 (6:1-8):**  "My objection all

8   along has been only with the agreement to arbitrate.  Although Visa and Mr. Thompson had

9   misled Maritz and me, and their conduct raised serious questions in mind as to whether either

10  negotiations or mediation would be successful, Maritz and I nonetheless were still willing to

11  meet with Visa and also to attempt to mediate our differences, and Maritz in fact did meet with

12  Visa and did participate in the mediation.  However, we were not and are not willing to give up

13  (among other things) Maritz's right to a jury trial, Maritz's right to conduct discovery that is

14  critical to getting to the bottom of Visa's belatedly-revealed claims for tens of millions of dollars,

15  or to limit Maritz's possible rights on appeal."

16      **Maritz's Response:**  Mr. Gallant's testimony is both relevant and admissible under FRE

17  402, 701 and 704.  Visa's arguments (at best) go to the weight, not the admissibility, of the

18  evidence.

19      His statement about his objection being "only with the agreement to arbitrate" is relevant

20  in light of the question of whether Maritz is contesting the validity of the entire July 9 Letter or

21  just the agreement to arbitrate contained in the July 9 Letter.  His statement about being misled is

22  relevant because (among other things) it reflects Mr. Gallant's state of mind and puts into

23  perspective his willingness to proceed with the negotiation and mediation aspects of the July 9

24  Letter but not the agreement to arbitrate.  His testimony about what Maritz was and was not

25  willing to give up (e.g., the right to a jury trial and to conduct discovery) is relevant to Maritz's

26  claim that the information concealed by Visa was material to the  question of whether Maritz

27  would have agreed to arbitrate if Visa had disclosed its claim that Maritz owed tens of millions of

28  dollars.

1      **12.    Evidence to Which Visa Objects:  Paragraph 23 (6:11-28):** "More

2      specifically, on Monday, July 23, 2007, I returned to the office after having been on vacation.

3      That morning, I read the proposed "Alternative Dispute Resolution Protocol" that Mr. Thompson

4      had sent me by letter dated July 19, 2007.  The proposed Protocol stated that "Each Party claims

5      the other should make a payment to resolve the dispute."  My immediate reaction was that the

6      sentence was probably a mistake that resulted from a carry-over from a "form" protocol that

7      Mr. Thompson or Visa had used in the past.  Shortly thereafter, I met with Mark Peterman and

8      Stu Vincent of Maritz, both of whom had been intimately involved in the Visa project.  The

9      purpose of the meeting with Mr. Peterman and Mr. Vincent (which had been previously

10     scheduled) was to prepare for a meeting that had been scheduled in St. Louis with Visa or the

11     next day, July 24, 2007, at which we were going to discuss the $5.2 million that Visa owed as

12     referenced in the May 7 letter.  I showed Mssrs. Peterman and Vincent the sentence in the

13     proposed Protocol and asked them if they knew of any claim by Visa that Maritz should pay Visa

14     money to resolve the dispute.  They told me that they did not.  In fact, they told me that

15     Mr. Peterman had spoken with Mr. Fordyce the previous Friday, July 20, 2007, and had

16     discussed with him how the negotiations on July 24 would proceed, and that Fordyce had

17     confirmed Peterman's understanding and expectation that the purpose of the July 24 meeting was

18     to cover Maritz's invoices.  Mr. Fordyce had said nothing, according to Mr. Peterman, about

19     Visa having any claim that Maritz should pay money."

20     **Maritz's Response:**  Mr. Gallant's testimony is relevant and admissible under FRE 402

21     and 701.  First, his testimony is relevant in that it shows neither he, Mr. Peterman nor Mr. Vincent

22     were aware as of July 23, 2007 of any claim by Visa that Maritz should make a payment to Visa,

23     and if there was no awareness of any such claim as of July 23, it follows there was also no such

24     awareness as of July 9 when Visa sent the July 9 Letter containing the agreement to arbitrate.

25     Second, the evidence is further relevant because it shows how quickly Mr. Gallant reacted

26     after he learned Visa was seeking a payment from Maritz, which in turn shows the materiality of

27     Visa's concealing its claim it was owed tens of millions of dollars.

28

1    Visa's hearsay objections should also be overruled. Fordyce's comments to Peterman are

2    not hearsay and are admissible under FRE 801(d)(2). In addition, even if Fordyce's comments

3    were hearsay, they should be admitted under either FRE 807 or in light of the lesser evidentiary

4    standard that should be in effect at this preliminary stage of the litigation (especially since

5    discovery has not yet begun).

6    Mr. Peterman's and/or Mr. Vincent's statements to Mr. Gallant about not being aware of

7    any claim by Visa that Maritz should pay Visa money to resolve the dispute are also admissible

8    on several grounds. First, they reflect Mr. Gallant's state of mind – i.e., that he did not know of

9    any claim by Visa that Maritz should pay money to resolve the dispute – as late as July 23. In

10   addition, these comments to Mr. Gallant are also admissible under FRE 803(3), FRE 807 and/or

11   in view of the lesser evidentiary standard that should apply at this preliminary stage of the

12   litigation.

13   Visa's hearsay objection as to Mr. Peterman's statements should also be overruled

14   because Maritz has also filed, on January 18, 2008, Mr. Peterman's Declaration with the Court in

15   which he describes what he told Mr. Gallant (see Peterman Decl. ¶ 2-5).

16   **13.    Evidence to Which Visa Objects:  Paragraph 25 (7:6-10):** "I essentially told

17   him that this was news to me and that I was very surprised. Mr. Thompson then claimed that our

18   business people had known about this for many months. I knew his statement was untrue, since

19   Mr. Peterman and Mr. Vincent of Maritz had told me less than two hours earlier that they did not

20   know that Visa was claiming that Maritz should pay Visa anything, much less that Maritz

21   supposedly owed Visa tens of millions of dollars."

22   **Maritz's Response:** Visa objects only to the third sentence, claiming it is argumentative

23   and irrelevant. To the contrary, it is admissible under FRE 402 and 701.

24   Mr. Gallant's comment is proper under FRE 701 because it is rationally based on his

25   perception and is helpful to a clear understanding of his testimony and/or to the determination of

26   a fact in issue. The evidence is relevant because, *inter alia*, (a) it shows a pattern of deceit and

27   duplicity on Visa's part, and (b) it ties into the next sentence in Mr. Gallant's Declaration in

28   which he explains his reaction upon realizing he had been duped and deceived. Mr. Gallant's

12

1    testimony may prove to be further relevant depending upon what Visa's documents and/or

2    witnesses reveal.  If (for example) Visa's documents reflect that Visa (a) knew Maritz's business

3    people were not aware Visa was claiming entitlement to tens of millions of dollars and (b) was

4    using this lack of information to induce Maritz into agreeing to arbitrate, then Mr. Thompson's

5    role in Visa's misconduct will become even more central to the fraudulent inducement issue.

6        **14.    Evidence to Which Visa Objects:  Paragraph 26 (7:11-19):**  "When

7    Mr. Thompson revealed that Visa was claiming that Maritz owed Visa tens of millions of dollars,

8    I was incensed and immediately felt as if we (i.e., Maritz and I) had been duped, deceived and

9    lied to.  Although I may have indicated at the time that I was not "accusing" Mr. Thompson of

10   certain things, that was largely because accusing him at that point of fraud and improper conduct

11   would not have accomplished anything and probably would have led to some very harsh and

12   uncomplimentary things being said.  Moreover, I wanted to try to keep the discussion on a

13   professional level and did not want my emotions to get the better of me.  He had clearly deceived

14   me, but I did not want his deceitful conduct to result in my stooping to a similar level."

15       **Maritz's Response:**  Mr. Gallant's statements are relevant, proper and admissible under

16   FRE 402 and 701.  His testimony that he was incensed and felt as if he and Maritz had been

17   duped and deceived (among other things) (a) shows how strongly he felt that he had been

18   deceived, which in turn underscores the importance and materiality of the information Visa

19   concealed; and (b) is an opinion and inference rationally based on his perception and helpful to a

20   clear understanding of just how much importance he placed on the information that had been

21   withheld and whether or not he would have agreed to arbitrate had it been disclosed.

22       Mr. Gallant's testimony about why he did not immediately accuse Mr. Thompson of

23   certain things is relevant for several reasons.  For example, Visa has attached significance to

24   Mr. Gallant's not immediately accusing Mr. Thompson of misconduct; Mr. Gallant is entitled to

25   explain why he did not do so.  Second, Mr. Gallant's comments are not "argumentative"; they

26   are factual and explain why he refrained from making some very pointed comments to

27   Mr. Thompson.

28

15.     **Evidence to Which Visa Objects:  Paragraph 29 (8:1-10):**  "I believe I had a right to expect that Mr. Thompson and Visa were acting in good faith; indeed, Visa  was obligated to do so under Section XXILA of the Agreement (See paragraph 17 above).  It is now apparent they were not doing so.  With the benefit of 20/20 hindsight, I can see how Mr. Thompson and Visa set things up.  Visa indicated both to Maritz's business people and me that, upon the completion of the transition from Maritz to Carlson, we would meet to discuss Maritz's invoices containing the amounts that Visa owed to Maritz.  Visa never indicated in connection with these conversations or communications that it was claiming that Maritz was in default, or that Visa was entitled to any payment from Maritz, much less a payment of tens of millions of dollars.  Nor did Mr. Thompson say anything to me about it, until two weeks after I had signed the July 9 letter containing the agreement to arbitrate."

**Maritz's Response:**  Mr. Gallant's testimony is relevant, proper and admissible under FRE 402, 701 and 704.  His statements are relevant in that they relate to the reasonableness of his belief based on what Visa did and did not disclose, say and/or indicate.  His opinions and inferences are rationally based on his perception and are helpful to a clear understanding of his testimony and also to the determination of one or more facts in issue (e.g., whether Visa misled Maritz – including through partial, incomplete or misleading actions, conduct and/or statements, through half-truths, etc.).

Visa also objects on foundational and "conclusory" grounds regarding the fourth sentence of paragraph 29 of Mr. Gallant's Declaration.  There is no requirement, however, that paragraph 29 contain the detail that Visa seems to request.  Visa's objections go to the weight rather than the admissibility of the evidence, especially in light of the lesser evidentiary standard that should apply at this preliminary stage of the litigation.

16.     **Evidence to Which Visa Objects:  Paragraph 31 (8:25-9:10):**  "On August 16, Mr. Weiss and I had a telephone call with Mr. Thompson wherein we discussed proceeding with negotiation and mediation.  Mr. Thompson, as he had in several other telephone conversations with me, began to discuss the dispute over the arbitration issue, but since I had made it clear in several telephone conversations that Maritz objected to the arbitration, I told Mr. Thompson that

1    since both of us recognize that we have a disagreement over the arbitration, let us agree to

2    disagree on this issue and use our time to plan the negotiation and mediation.  We then discussed

3    proceeding with the negotiation and possible dates and places and also proceeding with a

4    mediation if the negotiation was not successful.  Mr. Thompson expressed some reluctance in

5    going forward, noting that he had engaged in such negotiations in the past only to learn that

6    during the negotiation process the other party surprised him by filing suit.  We discussed whether

7    the parties could resolve that concern by simply agreeing to some type of agreement wherein the

8    parties would agree not to file suit while the negotiation and mediation were going on.  He said

9    he would think about it.  Maritz made it clear that it was willing to proceed with the negotiation

10   and mediation but not the arbitration."

11        **Maritz's Response:**  Visa's objection to the "entire paragraph" on the ground it is

12   "impermissibly vague" should be overruled.  Paragraph 31 of Mr. Gallant's Declaration provides

13   ample detail; nothing more is required.

14        Visa's objection on FRE 402 grounds to the discussion "regarding filing suit" should

15   similarly be overruled.  The discussion tied directly into the discussions about negotiating,

16   mediating and/or arbitrating, which in turn tie into the fact that Maritz was willing to negotiate

17   and mediate and was objecting only to having to arbitrate.  (Visa's objection to this part of the

18   conversation is also inconsistent with its other objection that the "entire paragraph" is too

19   vague.).

20        **17.    Evidence to Which Visa Objects:  Paragraph 33 (9:16-24):**  "The attached e-

21   mail from Mr. Thompson to Mr. Weiss and me dated August 21, 2007 (attached hereto as

22   Exhibit 6) makes it clear that Maritz agreed that it was willing to proceed with the first two

23   stages of the dispute resolution process outlined in the July 9 letter agreement, namely

24   negotiation and mediation, but reserved its position on arbitration.  Contrary to what Mr.

25   Thompson described in the first sentence of the e-mail, it was not Maritz's position that the July

26   9, 2000 letter agreement as a whole was unenforceable, but only that the arbitration provision in

27   the letter was unenforceable.  As acknowledged by Mr. Thompson in the following sentences of

28

1   his e-mail, Maritz had said it was willing to proceed with negotiation and mediation but not with

2   arbitration."

3         **Maritz's Response:**  Mr. Gallant's statements are proper and admissible.  He is entitled

4   to highlight the significant aspect of the referenced email as it pertains to the issues in dispute,

5   and his statements are proper under FRE 701.  He is also entitled to note his disagreement with

6   Mr. Thompson's statement in the first sentence of the email.  There is no "best evidence"

7   problem because the referenced August 21, 2007 email was attached to Mr. Gallant's

8   Declaration.

9         **18.**    **Evidence to Which Visa Objects:  Paragraph 35 (10:3-7):**  "Thus, contrary to

10  the assertions of Visa's response to Maritz's motion to stay arbitration, I consistently and

11  continually, from the first time that Mr. Thompson disclosed to me that Visa had claims of tens

12  of millions of dollars and sought money from Maritz, made it clear to Mr. Thompson that Maritz

13  had no issue with the negotiation and mediation steps outlined in the July 9 letter, but Maritz

14  objected to and did not believe that the arbitration provision was valid."

15        **Maritz's Response:**  Mr. Gallant's testimony is proper under FRE 701 and 704.

16        **19.**    **Evidence to Which Visa Objects:  Paragraph 36 (10:8-12:18):**  "At least

17  several other background facts are important in attempting to put things into perspective.

18        a.    I knew that Maritz and Visa had agreed in January or February of 2007 to a

19  new target launch date of early July 2007.  No one had ever told or indicated to me that

20  liquidated damages of any amount were or somehow would be accruing during that

21  timeframe and I am confident I would have been told if a claim for liquidated damages

22  had been made against Maritz.  In addition, if Maritz had known that Visa would be

23  claiming that liquidated damages were accruing, it is inconceivable to me that Maritz

24  would have agreed to postpone the launch date for such a lengthy period of time without

25  first reaching agreement with respect to the liquidated damages.  The first time that I

26  heard that Visa was claiming that liquidated damages had been accruing for many months

27  was on July 23 or 24, 2007, when Mr. Thompson said it."

28

RESPONSE TO VISA'S EVIDENTIARY
OBJECTIONS RE GALLANT
CASE NO. C07-5585 JSW

b.    I understood in approximately March or April 2007 (prior to Visa's April 20, 2007 termination notice) that Maritz and Visa had been discussing one or more other possible joint business opportunities.  Such discussions would have been inconsistent with the notion that Visa was seeking tens of millions of dollars in damages from Maritz.

c.    Visa was terminating the Agreement for convenience rather than based upon any alleged default or material breach.  Had Visa been seeking to terminate due to an alleged material breach, Visa would have been obligated to give Maritz notice and an opportunity to cure, which Visa had not done.  Therefore, it did not occur to me that Visa would be seeking damages as if it were terminating for a default or material breach since that was not the basis for the termination.

d.    As Mr. Thompson is well aware, my objection has always been that he misled me into agreeing to arbitrate. . . .  My complaint is and has been that we (Maritz) were fraudulently induced into agreeing to arbitrate.

e.    Indeed, both Maritz and I were still willing to meet on July 24, 2007 – the day after Mr. Thompson revealed his multi-million dollar surprise.  Both I and Charlie Weiss (Maritz's outside counsel who became involved after Mr. Thompson revealed Visa's claims) repeatedly made clear to Mr. Thompson in August 2007 that Maritz was willing to meet and also to mediate, but that Maritz was not obligated to arbitrate.

f.    Although my July 23, 2007 email to Mr. Thompson is not worded as artfully as in retrospect I would have preferred, my reference to "our previous agreement" was directed to the agreement to arbitrate.

g.    Similarly, my August 8, 2007 email to Mr. Thompson focuses on the agreement "to arbitrate."  The last sentence in the third paragraph of that email again reflects that the arbitration aspect was the issue in dispute.  My reference to the "agreement to mediate" in the previous sentence of the email merely reflects somewhat loose language on my part.  As previously stated, both I and Maritz's outside counsel, Charlie Weiss, made very clear to Mr. Thompson in August 2007 that Maritz was willing to mediate and that Maritz's concerns tied to the arbitration agreement.

h.      In my email to Mr. Thompson dated August 22, 2007 at 9:17 a.m., I state at the end of the email that "[a]lthough I suppose it goes without saying, we do disagree with your view of the binding effect of the letter you attached.  I have typed these thoughts quickly so I apologize if they are incomplete but there are merely meant to be a thought starter for our conversation."  As indicated, I had typed my thoughts quickly and therefore noted specifically that they might be incomplete.  The "binding effect of the letter" mentioned in my August 22 email pertains only to the arbitration.  As the rest of my email reflects, and as Mr. Thompson was told a number of times by Mr. Weiss and me, Maritz was willing to participate in the business meeting/negotiations and the mediation as set forth in the July 9 letter.  In fact, by early September of 2007, the parties had agreed that the business meeting and mediation would take place and were working to secure dates, locations and a mediator.

i.      In my mind there was a clear distinction between the business negotiations and the mediation on the one hand, and the arbitration on the other.  Only the arbitration could result in a unilaterally-imposed binding decision.  The other two required a mutual agreement between the parties.  Despite Visa's duplicity, we were willing to proceed with the informal efforts to resolve the parties' disputes.  We were not willing, however, to give up our rights to a jury trial, to conduct full discovery, etc., in connection with an arbitration.

j.      I never agreed that any claim as to whether Visa had fraudulently induced Maritz into arbitrating could be decided by an arbitrator.  I had no idea that Maritz had such a claim, since I also had no idea that Mr. Thompson and Visa had been concealing that it planned to seek tens of millions of dollars from Maritz."

**Maritz's Response:**  Visa's objections to Paragraph 36(a) of the Gallant Declaration should be overruled; Mr. Gallant's testimony is relevant and admissible under FRE 402 and 701.

There is no need for Mr. Gallant's Declaration to state <u>how</u> he knew of the new target date of early July 2007; what he knew/understood is the key issue for purposes of his mental state, not how he learned it.

1   Similarly, his testimony that it is inconceivable to him that Maritz would agree to

2   postpone the launch date for such an extended period if Maritz had known that Visa would be

3   claiming that liquidated damages were accruing is proper because it is (1) relevant to showing

4   his state of mind as to what was and was not in issue prior to signing the July 9 Letter; and (2)

5   proper under FRE 701.  In addition, Mr. Gallant's testimony in paragraph 36(a) is relevant

6   regardless of whether he told it to Visa before July 9.

7   Visa's objections to Paragraph 36(b) of Mr. Gallant's Declaration should also be

8   overruled.  There is no requirement that Mr. Gallant's Declaration contain any additional detail,

9   especially at this stage of the proceeding.  The additional detail can be obtained through

10  discovery.  Mr. Gallant's testimony in Paragraph 36(b) is proper under FRE 701.

11  Visa's objections to Paragraph 36(c) are also meritless.  Mr. Gallant's testimony is proper

12  under FRE 701 and, among other things, is relevant to his state of  mind and the reasonableness

13  of his beliefs prior to July 9, 2007, as well as to the materiality of the mega-million dollar

14  damage information Visa concealed – all of which are relevant to the fraudulent inducement

15  claim.  And, as previously noted, this holds true regardless of whether Mr. Gallant told Mr.

16  Thompson of his belief.

17  Mr. Gallant's statements in Paragraph 36(d) of his Declaration to which Visa objects are

18  proper under FRE 402 and 701.  Mr. Gallant's comment about Mr. Thompson being "well

19  aware" that Mr. Gallant's objection "has always been that he misled me into agreeing to

20  arbitrate" is proper under FRE 701 and is relevant in light of Visa's incorrect claim that Maritz is

21  challenging the entire July 9 Letter rather than just the agreement to arbitrate contained therein.

22  Mr. Gallant certainly can testify that Mr. Thompson was aware of Maritz's position since Mr.

23  Gallant was the person making Mr. Thompson aware of it.

24  Visa also objects generally to Paragraphs 36(e)-(j), claiming they are "argumentative"

25  and "contain no admissible evidence."  Visa's objections are meritless and should be denied.

26  **20.** __Evidence to Which Visa Objects:  Paragraph 37 (12:19-24)__:  "Notwithstanding

27  the discussion with Mr. Thompson in mid-August of 2007 that the parties could enter into an

28  agreement in which the parties would agree not to file suit, Visa unexpectedly could enter into suit against

1    Maritz in federal court in California on Friday, November 2, 2007 and commenced arbitration

2    proceedings against Maritz in California that same day, just five days before the parties'

3    mediation was scheduled to commence the following Wednesday, November 7, 2007."

4         **Maritz's Response:**  Visa objects to Paragraph 37 of Mr. Gallant's Declaration on

5    relevance grounds.  However, Visa's filing of this lawsuit and the related arbitration provide

6    further evidence that Visa has not acted in good faith in attempting to resolve disputes under the

7    MSA.

8
     Dated: February 19, 2008                    MANATT, PHELPS & PHILLIPS, LLP
9
                                                 By:____/s/  Ryan S. Hilbert_____
10                                                    Ronald S. Katz (SBN 085713)
                                                     Ryan S. Hilbert (SBN 210549)
11                                                   MANATT, PHELPS & PHILLIPS, LLP
                                                     1001 Page Mill Road, Building 2
12                                                   Palo Alto, CA  94304-1006
                                                     Telephone:      (650) 812-1300
13                                                   Facsimile:      (650) 213-0260
                                                     *Attorneys for Defendant and Counter-Claimant*
14                                                   MARITZ INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28