1    MANATT, PHELPS & PHILLIPS, LLP
     RONALD S. KATZ (California Bar No. 085713)
2    E-mail:  rkatz@manatt.com
     RYAN S. HILBERT (California Bar No. 210549)
3    E-mail:  rhilbert@manatt.com
     1001 Page Mill Road, Building 2
4    Palo Alto, CA  94304-1006
     Telephone:  (650) 812-1300
5    Facsimile:  (650) 213-0260

6    Attorneys for Defendant/Counterclaim and
     Third-Party Plaintiff Maritz Inc.
7

8                        UNITED STATES DISTRICT COURT

9                           NORTHERN DISTRICT

10                        SAN FRANCISCO DIVISION

11

12
     VISA U.S.A. INC.,                    CIVIL ACTION NO. C 07-5585 JSW
13
                Plaintiff/Counterclaim    RESPONSE OF DEFENDANT/
14              Defendant,                COUNTERCLAIM PLAINTIFF MARITZ INC.
                                          TO EVIDENTIARY OBJECTIONS OF
15        v.                              PLAINTIFF/COUNTERCLAIM DEFENDANT
                                          VISA RELATING TO THE DECLARATIONS
16   MARITZ INC., d/b/a MARITZ            OF MARK PETERMAN, KELVIN TAYLOR
     LOYALTY MARKETING,                   AND DORIS LYONS
17
                Defendant/Counterclaim
18              and Third-Party Plaintiff,

19        v.

20   CARLSON MARKETING GROUP, INC.

21
                Third-Party Defendant.
22

23

24

25

26

27

28

     2796427.1                                      RESPONSE TO VISA'S EVIDENTIARY
                                                    OBJECTIONS RE PETERMAN ET AL.
                                                    CASE NO. C07-5585 JSW

Defendant/Counterclaim Plaintiff Maritz Inc. ("Maritz"), for its responses to the objections of Plaintiff/Counterclaim Defendant Visa U.S.A., Inc. ("Visa") to the Declarations of Mark Peterman, Kelvin Taylor and Doris Lyons, states as follows:

## DECLARATION OF MARK PETERMAN

1.    **Evidence to Which Visa Objects:  Paragraph 5 (2:24-3: 5):**  "More specifically, when I called Mr. Fordyce on July 20, 2007, I told him that we (Maritz) wanted to make sure that our expectations were set correctly for the meeting on July 24, that I wanted to confirm that he had our invoices and the detailed back-up to our invoices (relating to the approximately $5.2 million that Maritz was owed), and to let him know that we would be prepared to discuss the invoices.  He confirmed that he had our invoices and the back-up, and that was what they were coming to discuss.  He indicated that Visa did not share our perspective as to the amount owed on the invoices, but never said anything indicating that Visa believed that Maritz should pay anything or that Maritz owed tens of millions of dollars.  My clear understanding based on my conversation with Mr. Fordyce was that Visa was willing to pay Maritz something, but not the full amount that Maritz believed Visa owed."

**Maritz's Response:**  The evidence is relevant; FRE 402.  The evidence provides further support for Maritz's position that Visa was concealing from Maritz that Visa never intended to pay Maritz any money and, instead, was claiming Maritz owed tens of millions of dollars.

In addition, this July 20, 2007 conversation is further relevant because it took place the day after Visa's counsel Mr. Thompson sent Mr. Gallant a letter, dated July 19, 2007, in which Mr. Thompson enclosed Visa's proposed "Alternative Dispute Resolution Protocol" (See Gallant Decl. ¶ 23, *see also* Exh. E to the Declaration of Ryan S. Hilbert in Support of Maritz's Motion to Stay Arbitration (containing a copy of the July 19 letter and the proposed Protocol)).  Visa's July 19 proposed Protocol stated that "discovery should be minimized" and, more specifically, did not provide for any fact witness deposition discovery or any document requests.  Visa's proposed Protocol thus reflected a further effort by Visa to severely restrict Maritz's rights at a time when Visa was still concealing its claim that Maritz owed tens of millions of dollars.

Mr. Gallant was out of the office on vacation and therefore did not review

2

1   Mr. Thompson's July 19 proposed Protocol until July 23, 2007.  Upon reviewing the proposed

2   Protocol, Mr. Gallant noticed it provided that "[e]ach Party claims the other should make a

3   payment to resolve the dispute" (Gallant Decl. ¶¶ 23-25).  That surprised Mr. Gallant and

4   prompted him to follow up (*Id.*).  Only then did Visa finally reveal it was claiming Maritz owed

5   tens of millions of dollars (*Id.*).  As a result, Mr. Gallant never signed Visa's Protocol.

6   **2.**   **Evidence to Which Visa Objects:  Paragraph 7 (3:9-15):**  "I had had numerous

7   discussions with Tad Fordyce and other Visa personnel in late 2006 through Visa's termination

8   of the Agreement in the Spring of 2007.  At no time had anyone from Visa told me that Visa

9   believed or was claiming that Maritz owed Visa tens of millions of dollars or that liquidated

10   damages were accruing.  In fact, I knew in the first part of November 2006 that Visa had agreed

11   to waive liquidated damages and that the parties had agreed, in light of the numerous problems,

12   difficulties and delays encountered in connection with the Visa project, that Maritz was

13   proceeding on a 'best efforts' basis."

14   **Maritz's Response:**  Visa's objections should be overruled.  The evidence is relevant in

15   several respects and admissible under FRE 401 and 402.  The evidence helps demonstrate why

16   Maritz reasonably believed, prior to signing the July 9, 2007 letter, that Visa was not making

17   claims against Maritz for tens of millions of dollars.  The evidence is further relevant (a) because

18   it suggests Visa was deliberately concealing this information from Maritz, and/or (b) in light of

19   Mr. Gallant's Declaration in which he states that if such claims had been made by Visa, he

20   would have been made aware of them (See Gallant Declaration, ¶ 36(a)).

21   Visa's remaining objections are also without merit.  Mr. Peterman's Declaration

22   establishes he was heavily involved in the Visa Extras Rewards Program project from

23   approximately August 2006 until after Visa terminated the MSA in Spring of 2007.  His

24   statement that he "knew in the first part of November 2006 that Visa had agreed to waive

25   liquidated damages and that the parties had agreed, in light of the numerous problems,

26   difficulties and delays encountered with the Visa project, that Maritz was proceeding on a 'best

27   efforts' basis," is tied into his statement in paragraph 6 of his Declaration that he "was very

28   surprised" to learn on July 23, 2007 that Visa was claiming Maritz owed tens of millions of

3

1  dollars and is proper under FRE 701 and 704.  There is no requirement that the Declaration

2  contain the additional detail Visa seeks.  Visa's objections go to the weight of the evidence rather

3  than admissibility, and Visa can pursue additional detail through discovery.

4  ### DECLARATION OF KELVIN TAYLOR

5  **1.**    **Evidence to Which Visa Objects:  Paragraph 5 (2:17-20):**  Visa has objected to

6  the second sentence in Paragraph 5 of the Declaration of Kelvin Taylor.  To put the evidence into

7  proper perspective, set forth below are Paragraphs 4 and 5 of the Taylor Declaration:

8  "4.    On July 23, 2007, I learned that Visa's lawyer, Rod Thompson, had told

9  Steve Gallant of Maritz earlier that day that Visa was claiming Maritz owed Visa tens of

10  millions of dollars.  I was very surprised to hear this.

11  5.    To my knowledge, no one from Visa had previously made any such claim.

12  In addition, such a claim seemed inconsistent with the facts that (a) Visa and Maritz had

13  been proceeding on a best efforts basis since at least the Fall of 2006 and (b) I understood

14  in November of 2006 that Visa had agreed to waive liquidated damages under the

15  Agreement."

16  **Maritz's Response:**  Visa's objections to the second sentence of paragraph 5 should be

17  overruled.  The evidence is relevant because it reflects the understanding of Mr. Taylor – who

18  was then the President of Maritz Loyalty Marketing – that the parties had been proceeding on a

19  best efforts basis since at least the Fall of 2006 and that Visa had agreed in November 2006 to

20  waive liquidated damages under the Master Services Agreement.  This, in turn, helps to show

21  that Maritz reasonably believed, as of July 9, 2007 – when Visa was inducing Maritz into

22  agreeing to arbitrate – that Visa was not and would not be claiming that Maritz owed Visa tens of

23  millions of dollars and/or that liquidated damages had supposedly been accruing since the Fall of

24  2006.

25  Paragraph 5 of the Taylor Declaration, viewed in light of the other evidence contained in

26  the Taylor Declaration, as well as in the Gallant, Lyons and Peterman Declarations, provides the

27  factual backdrop indicating that Visa deliberately concealed that it would be seeking tens of

28  millions of dollars from Maritz and/or claiming that liquidating damages were continuing to

4

1  accrue.  Other evidence (if necessary) will show  that Doris Lyons, the Chief Operating Officer

2  of the Maritz Loyalty Marketing Division, advised Mr. Taylor on November 9, 2006 of the

3  agreement with Visa to proceed on a best efforts basis and for Visa not to impose the penalty

4  clause (i.e., the liquidated damage provision) as the parties had mutually agreed in the

5  November 8-9, 2006 emails, thus corroborating Mr. Taylor's Declaration.  Visa's objections go

6  to the weight of the evidence rather than admissibility, and to the extent Visa wants additional

7  detail, it can seek such information through discovery.

8         Mr. Taylor's statements are also proper under FRE 701 and 704.

9                      **DECLARATION OF DORIS LYONS**

10        **1.      Evidence to Which Visa Objects: Paragraph 2 (2:4-8):**  "In the Fall of 2006,

11  both I and others at Maritz had various discussions and communications with Visa relating to the

12  Visa Extras Rewards Program project.  One topic discussed was what the parties (i.e., Maritz and

13  Visa) should do in light of the many difficulties, problems, and delays in connection with the

14  project, including difficulties caused by Visa and its then-current vendor, Carlson Marketing

15  ("Carlson")."

16        **Maritz's Response:**  Visa's objections on foundational, FRE 104(b) and "vague and

17  conclusory" grounds all go to the weight of the evidence rather than admissibility.  There is no

18  requirement that the Declaration contain the amount of detail that Visa seems to want, and Visa

19  can seek the additional detail through discovery if it so chooses.

20        Ms. Lyons' statements are proper under FRE 401, 402 and 701; *see also* FRE 801(d)(2),

21  803(1) and (3), 804(b)(3), and 807.  It is not necessary for the Lyons Declaration to itemize each

22  of the difficulties, problems and delays in connection with the Visa project.

23        **2.      Evidence to Which Visa Objects: Paragraph 4 (2:13-22):**[1/]  "Maritz was

24  concerned because of the many problems, delays and difficulties being encountered and made

25  clear to Visa that Maritz would need assurances that Visa would not hold Maritz accountable if

26  Maritz was going to continue to proceed under Visa's tight timeframe.  Both I and others at

---

[1/]  Although Visa indicates it objects to "Paragraph 4 (2: 13-22)" of the Lyons Declaration, Visa's objections appear to be limited only to Paragraph 4 (2: 13-17).

2796427.1

RESPONSE TO VISA'S EVIDENTIARY
OBJECTIONS RE PETERMAN ET AL.
CASE NO. C07-5585 JSW

1  Maritz conveyed our concerns to (among others) Mr. Edward "Tad" Fordyce of Visa.  Mr.

2  Fordyce was a management-level Visa employee who was operating as a program manager for

3  Visa with respect to Visa's Rewards Program project.  As set forth in Section VI.J. of the Master

4  Services Agreement dated April 17, 2006 (the "Agreement"),  Maritz was entitled to rely on

5  communications from Mr. Fordyce with respect to the project, as well as from any of his superior

6  officers (one of whom was Visa's Tim Attinger).  A copy of Section VI.J. of the Agreement is

7  attached to my Declaration as Exhibit 1."

8       **Maritz's Response:**  Each of Visa's objections should be denied.  Ms. Lyons' statements

9  are proper under FRE 401, 402 and 701; *see also* FRE 803(1) and (3), and 807.  Visa's

10  objections go to the weight of the evidence rather than admissibility.  There is no requirement

11  that Maritz include in a written declaration the amount of detail that Visa claims is necessary.

12  There is, for example, no requirement that the Lyons Declaration describe precisely how she

13  conveyed certain concerns to Mr. Fordyce of Visa, or that she describe specifically what she said

14  in her conversations with him.  Visa can seek additional detail through discovery if it so chooses.

15       Visa's "best evidence" objection is also without merit.  Ms. Lyons' Declaration is not

16  purporting to summarize any particular document.

17       **3.**    **Evidence to Which Visa Objects: Paragraph 5 (2:23-3: 2):**  "As a result of

18  Maritz's concerns and the delays, problems and difficulties encountered in connection with the

19  project, Maritz and Visa agreed on November 8-9, 2006, that the parties would proceed on a best

20  efforts basis and that the penalty clause (i.e., the "liquidated damages" provision) of the parties'

21  Agreement would not be imposed….  These emails reflect the parties' agreement to proceed on a

22  best efforts basis and that Visa waived its right to liquidated damages in connection with the

23  parties' Agreement."

24       **Maritz's Response:**  Ms. Lyons' statements in Paragraph 5 of her Declaration are

25  proper.  The Declaration need not lay out each and every fact upon which Ms. Lyons bases her

26  statements, and her testimony is proper under FRE 701 and 704.  If Visa wants to flesh out the

27  underlying details, it should do so through discovery.

28

1   Visa's objections also conveniently omit the reference to Exhibit 2 that is attached to the

2 Lyons Declaration.  More specifically, Visa has omitted from its quotation of Paragraph 5 of the

3 Lyons Declaration the sentence that says "a true and accurate copy of the emails exchanged

4 between Mr. Fordyce and me dated November 8 and 9, 2006 are attached hereto as Exhibit 2."

5 The Lyons Declaration thus attaches the "best evidence" as Exhibit 2.  Ms. Lyons is permitted to

6 testify as to both her understanding of the November 8-9, 2006 emails and the concerns, delays

7 and problems which resulted in the agreement contained in the November 8-9, 2006 emails.  See

8 FRE 402, 701, 704, 801(d)(2), 803(1), 804(b)(3) and 807.

9           Respectfully submitted,

10

11 Dated: February 19, 2008     MANATT, PHELPS & PHILLIPS, LLP

12           By:____/s/  Ryan S. Hilbert_____
             Ronald S. Katz (SBN 085713)

13             Ryan S. Hilbert (SBN 210549)
             MANATT, PHELPS & PHILLIPS, LLP

14             1001 Page Mill Road, Building 2
             Palo Alto, CA  94304-1006

15             Telephone:  (650) 812-1300
             Facsimile:   (650) 213-0260

16             *Attorneys for Defendant and Counter-Claimant*
             MARITZ INC.

17

18

19

20

21

22

23

24

25

26

27

28