Westlaw.

Slip Copy  
Slip Copy, 2007 WL 4754772 (N.D.Cal.)  
**(Cite as: Slip Copy)**

Page 1

**H**Santana Row Hotel Partners, LP v. Zurich America Ins. Co.  
N.D.Cal.,2007.  
Only the Westlaw citation is currently available.  
United States District Court, N.D. California, San Jose Division.  
**SANTANA ROW HOTEL PARTNERS, LP,**  
Plaintiff,  
v.  
ZURICH AMERICA INSURANCE COMPANY, et al., Defendants.  
**No. C 05-00198 JW.**

Sept. 13, 2007.

Named Expert: Mark Newton, Matthew Nuss

Allen Ruby, Glen William Schofield, Steven A. Ellenberg, Ruby & Schofield, San Jose, CA, for Plaintiff.  
Curtis Richard Ogilvie, Gary Robert Selvin, Selvin, Wraith, Halman, LLP, Oakland, CA, Steven Donald Turner, Jones Turner, LLP, Irvine, CA, for Defendants.

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT; MOTION TO DISMISS; MOTION TO COMPEL ARBITRATION; AND MOTIONS IN LIMINE**

JAMES WARE, District Judge.

*I. INTRODUCTION*

*1 Santana Row Hotel Partners ("Plaintiff" or "SRHP") brings this diversity suit against Defendants Zurich American Insurance Company ("Zurich"), Gallagher-Pipino, Inc., and Arthur J. Gallagher & Co. ("Gallagher") (collectively, "Defendants") alleging, *inter alia,* breach of contract and fraud. Plaintiff alleges that Zurich failed to pay losses resulting from a fire, which were covered by an insurance policy. Presently before the Court are the following motions:

(1) Defendant Zurich American Insurance Company's Motion for Partial Summary Judgment (hereafter, "Zurich's Motion," Docket Item No. 120);

(2) Defendants Gallagher-Pipino, Inc. and Arthur J. Gallagher & Co.'s Motion for Summary Judgment (hereafter, "Gallagher's Motion," Docket Item No. 146);

(3) Defendants Gallagher-Pipino, Inc. and Arthur J. Gallagher & Co.'s Motion to Dismiss (hereafter "Motion to Dismiss," Docket Item No. 306);

(4) Defendants Gallagher-Pipino, Inc. and Arthur J. Gallagher & Co.'s Renewed Motion to Compel Arbitration; Request for Stay (hereafter, "Arbitration Motion," Docket Item No. 315);

(5) Plaintiff's Motion Exclude Portions of Expert Opinion of Mark Newton (hereafter, "Newton's Motion," Docket Item No. 272);

(6) Defendant Zurich's Motion to Exclude Testimony of SHRP's Expert Matthew Nuss (hereafter, "Nuss' Motion," Docket Item No. 275).

The Court conducted a hearing on June 7, 2007. Based on the papers submitted to date, and the arguments of counsel at the hearing, the Court rules as follows below.

*II. BACKGROUND*

Plaintiff built and operates the Hotel Valencia at the Santana Row development in San Jose, California.[FN1] The Hotel is located in Building 5 of the development, which Plaintiff leases from Federal Realty Investment Trust ("FRIT").(*Id.* ¶ 2.) FRIT develops large commercial and residential properties in the United States. Between 1993 and June 2004, FRIT employed Gallagher-Pipino, Inc. ("Gallagher-Pipino") as its insurance broker for the purpose of procuring insurance coverages with respect to FRIT's construction projects, including Santana Row.[FN2]

> FN1. (Declaration of Stanley Woelfel in Support of Plaintiff's Opposition to Defendant Gallagher's Motion for Summary Judgment ¶ 1, hereafter, "Woelfel Decl. 2," Docket Item No. 192.)

> FN2. (Declaration of Dawn Becker in Support of Defendant Zurich's Motion for Partial Summary Judgment ¶ 3, hereafter, "Becker Decl.," Docket Item No. 123.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                     Page 2
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

FRIT directed Gallagher-Pipino to prepare a proposal for builders risk insurance on the Santana Row Project.[FN3] Gallagher-Pipino, in turn, engaged the services of Arthur J. Gallagher ("AJG") to assist in placing that coverage. Gallagher-Pipino and AJG ultimately selected Defendant Zurich to provide the builders risk coverage, which issued a policy (the "Policy") to FRIT effective May 15, 2000. (Turner Decl., Ex. 36, hereafter, "Policy".)

> FN3. (Becker Decl. ¶¶ 3-4; Declaration of Steven D. Turner in Support of Defendant Zurich's Motion for Partial Summary Judgment, hereafter, "Turner Decl.," Ex. 5 at 85:5-86:7, 87:8-88:19, Docket Item No. 121.)

**A. *The Policy***

The declarations page of the Policy identifies FRIT as the named insured, and "general contractors and sub contractors as their interest may appear" as additional insureds. (Policy at 1.)

The Policy provides coverage for, among other things, permanent works, as follows:
All materials, supplies, equipment, machinery, and other property of a similar nature, being property of the INSURED or of others for which the INSURED may be contractually responsible, the value of which has been included in the estimated value of the INSURED PROJECT in the declarations
...

**\*2** (Policy at 5). Under the Policy, FRIT agreed to report the total installed value of all property that was expended in the project or became a part of it; that value was estimated in the Policy as $250,000,000. (*Id.* at 5-6.) The premium due would be adjusted according to the estimated total installed values as reported. (*Id.* at 6.)

The Policy precludes coverage for consequential loss, including delay in completion, except as granted through the Delay in Completion Endorsement (Endorsement No. 2). (Policy at 10.) Endorsement No. 2 provides as follows:

**DELAY IN COMPLETION ENDORSEMENT**

**DECLARATIONS PAGE**

FOR THE PURPOSE OF THIS ENDORSEMENT ONLY, THE NAMED INSURED, IF DIFFERENT FROM THAT SHOWN ON THE POLICY DECLARATIONS, SHALL BE AS SHOWN ON THE DECLARATIONS OF THIS ENDORSEMENT. THERE SHALL BE NO ADDITIONAL INSUREDS HEREUNDER.
NAMED INSURED: Federal Realty Investment Trust

(Policy at 24.)

**B. *The Fire***

On August 19, 2002, there was a fire at Santana Row, which caused extensive damage to Building 7 in the development. (Turner Decl., Ex 19. at 209:22-211:13.) The exterior of Building 5, where the Hotel is located, was also damaged. *Id.* The Hotel opening was also significantly delayed, although the extent to which this delay is attributable to the fire is in dispute.[FN4]

> FN4. (Declaration of Stanley Woelfel in Support of Plaintiff's Opposition to Motion for Partial Summary Judgment ¶ 2, hereafter, "Woelfel Decl. 1," Docket Item No. 139.)

**C. *Certificates of Insurance***

Following the fire, Plaintiff sought to establish their coverage for fire-related losses, and requested proof of such coverage from Gallagher and AJG.[FN5]

> FN5. (Declaration of Doyle Graham in Support of Plaintiff's Opposition to Zurich's Motion for Partial Summary Judgment ¶¶ 2-4, Docket Item No. 137.)

On August 29, 2002, ten days after the fire, and January 8, 2003, Defendants issued two Certificates of Insurance ("Certificates") which certify that the Hotel was insured at the time of the fire. (Turner Decl., Exs. 1, 32.) The Certificates, entitled "Evidence of Property Insurance," state at the top: "THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                            Page 3
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY."(*Id.*) The effective date of the Policy on the Certificates is May 15, 2000, preceding the fire by two years. (*See id.*)Both certificates list Gallagher-Pipino as the producer of the document and Zurich as the insurance company. The Certificates identify FRIT as the insured and show that the Hotel Valencia at Santana Row is covered by the Policy under the "Property Information" section. The Certificates specify the amount of insurance for each type of coverage, as well as the deductibles required by the Policy. In addition, under the section for special conditions, the Certificates state that the Policy does cover delay in completion damages for a period of one year. (*See id.*)Both Certificates list Plaintiff as an Additional Insured; however, the second Certificate indicates that Plaintiff was added to the Policy on July 15, 2001. (Turner Decl., Ex. 1.)

**D. *Claim Dispute***

Following a lengthy dispute regarding coverage of the claim made for damage to the Hotel property, Zurich paid Plaintiff $717,263 in September 2004. (Woelfel Decl. 1 ¶ 4, Ex. A.) On December 24, 2004, however, Zurich denied that Plaintiff was covered under the Policy or the Delay in Completion Endorsement. (Declaration of Steven A. Ellenberg in Support of Plaintiff's Opposition to Zurich's Motion for Partial Summary Judgment, Ex. 162, hereafter, "Ellenberg Decl.," Docket Item No. 238.)

**E. *Procedural History***

*3 Plaintiff filed this action on January 12, 2005. (*See* Docket Item No. 1.) On May 5, 2006, Plaintiff filed its Second Amended Complaint, alleging seven causes of action: (1) breach of contract against Zurich; (2) bad faith breach of contract against Zurich; (3) promissory estoppel against Zurich; (4) breach of third party beneficiary contract against Zurich; (5) breach of third party beneficiary contract against all Defendants; (6) fraud against all Defendants; and (7) breach of duty against the Gallagher Defendants. (Declaration of Steven A. Ellenberg in Support of Plaintiff's Motion for Leave, Ex. A, hereafter, "SAC," Docket Item No. 103.)

On April 6, 2007, Zurich filed an Amended Cross-Claim against the Gallagher Defendants, alleging causes of action for: (1) breach of contract; (2) contractual indemnity; (3) equitable contribution; (4) negligent misrepresentation; and (5) fraud. (Defendant Zurich American Insurance Company's Amended Cross-Claim, hereafter, "Amended Cross-Claim," Docket Item No. 297.)

Before the Court are the parties' motions and cross-motions for, *inter alia,* partial summary judgment.

*III. STANDARDS*

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment." As with a motion under Rule 56(c), partial summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The purpose of partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses."*Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact."*Id.* at 323.The nonmoving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. *See, e.g. Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 4

facts, are such that a reasonable jury might return a verdict for the non-moving party. *T.W. Elec. Serv.,* 809 F.2d at 631. In such a case, partial summary judgment is inappropriate. *Anderson, 477 U.S. at 248.* However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).*

*4 The filing of cross-motions for partial summary judgment or summary judgment does not necessarily mean that the material facts are, indeed, undisputed. The denial of one motion does not necessarily require the grant of another. See *Atlantic Richfiled Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1147 (10th Cir.2000).* The motions must be evaluated in accordance with the claim or defense which is the subject of the motion and in accordance with the burden of proof allocated to each party.

*IV. DISCUSSION*

**A. *Zurich's Motion for Partial Summary Judgment***

Zurich moves for summary judgment as to Plaintiff's First and Second Claims for: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. The Court addresses each claim in turn.

**1. Breach of Contract**

Zurich moves for summary judgment on Plaintiff's First Claim for Breach of Contract on the ground that Plaintiff was not insured under the Policy at the time of the fire. (Zurich's Motion at 21-27 .)

In California, the insured bears the burden of proving that its claim falls within the basic scope of the policy's coverage. *Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 16, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995).* Insurance policies are subject to the ordinary rules of contract interpretation. *Bank of the West v. Superior Court, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).* The fundamental goal of interpretation is to effectuate the mutual intent of the contracting parties. *Id.* This is accomplished first by looking to the language of the policy to ascertain its plain meaning. *Waller, 11 Cal.4th at 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.* Absent evidence a term was used in a special or technical sense, the clear meaning of that language controls. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal.4th 854, 866, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993).*

Further, if a written provision is capable of one or more reasonable interpretations, the court may look to extrinsic evidence to ascertain the intended meaning. To the extent that ambiguities exist in the policy language, they are to be resolved in favor of the insured to protect reasonable expectations of coverage. *Producers Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986).* However, a court should not engage in a forced construction of coverage provisions to create an ambiguity or bring an event within the policy's terms. *Waller, 11 Cal.4th at 16, 18-19, 44 Cal.Rptr.2d 370, 900 P.2d 619.*

Plaintiff's claim for breach of contract rests on the theory that Zurich breached the Policy by failing to pay Plaintiff for damages sustained as a result of the fire. A direct route to establishing this claim would be for Plaintiff to demonstrate that it was insured under the Policy at the time of the fire. However, the parties do not dispute that at the time of the fire, Plaintiff was not listed as an insured or additional insured on either the Policy itself or the Delay in Completion Endorsement. (*See* Policy; Zurich's Motion at 22; Plaintiff's Opposition to Zurich's Motion for Partial Summary Judgment at 2, 20, hereafter, "SRHP Opposition to Zurich's Motion," Docket Item No. 236.) Thus, Plaintiff instead relies on two other theories of coverage under the Policy. The Court considers these in turn.

*5 First, Plaintiff contends that with respect to coverage under the language of the Policy itself, Plaintiff's losses are covered under a provision entitled "Property Insured," which provides:

all materials, supplies, equipment, machinery, and other property of a similar nature, being property of the INSURED, or others for which the INSURED may be contractually responsible ...

(Policy at 7.) On its face, the provision does not state that it modifies the list of insureds or additional insureds as provided in the Policy's declarations. (*See* Policy at 3.) The provision merely purports to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy	Page 5
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

describe what property is covered by the Policy.[FN6] This distinction is crucial, because, assuming that FRIT, as a named insured was "contractually responsible" for SRHP's property and that being so would bring the SRHP's *property* itself within the scope of coverage, the "Property Insured" provision is not a basis for finding that SRHP is itself a named insured. See *Russell v. Williams*, 58 Cal.2d 487, 490, 24 Cal.Rptr. 859, 374 P.2d 827 (1962); *Ziello v. Superior Court*, 36 Cal.App.4th 321, 329, 42 Cal.Rptr.2d 251 (1995).

> FN6. Plaintiff does not contend that it is a general contractor or sub-contractor, identified in the Policy as additional insureds "as their interest may appear." (*See* Policy at 3.)

Pursuant to Fed.R.Civ.P. 56(d), in considering a motion for summary judgment, the Court is required to specify facts which are without substantial controversy. On the evidence presented in this case, the Court finds without substantial controversy that SRHP was not a named insured by virtue of its property being covered under the "Property Insured" provision of the Zurich Policy. However, for reasons which will be discussed, there is an alternative basis for which SRHP could demonstrate that it was covered by the Policy.

Under California law, a person who is not listed as a named insured on an issued policy, nevertheless, may be entitled to coverage under certain conditions. If there is evidence that an insurance carrier or its authorized representative agrees to provide coverage to a person before a loss has occurred and the person fulfills all obligations on his or her part, a duty arises to provide coverage. See *Kazanteno v. California-Western States Life Ins. Co.*, 137 Cal.App.2d 361, 370, 290 P.2d 332 (1955). After an agreement to provide coverage to a person has been made by a carrier, if due to no fault by the person, the insurance carrier issues a policy without naming the person as an insured, upon proof that the carrier has failed to pay a claim for a covered loss, the person may recover against the carrier for breach of contract. *Id.*

Plaintiff has presented evidence which raises a genuine issue of fact as to whether prior to the loss, Zurich agreed to provide coverage, including: (1) Sworn testimony that Zurich agreed to add SRHP to the Policy prior to the fire; and (2) Certificates of Insurance issued by Gallagher.[FN7] Accordingly, the Court denies Zurich's motion for summary judgment on Plaintiff's First Claim for Breach of Contract.

> FN7. The Court overrules Zurich's evidentiary objections to the Certificates of Insurance.

**2. Implied Covenant of Good Faith**

Zurich moves for summary judgment on Plaintiff's Second Claim for Bad Faith on two grounds: (1) there was no contract between the parties; and (2) even if a contract existed in that Plaintiff was insured under the Policy, the existence of a genuine dispute regarding coverage precludes a bad faith claim as a matter of law. (Zurich's Motion at 28-34.)

*6 Insurance contracts include an implied covenant of good faith and fair dealing, which requires that each contracting party refrain from interfering with the right of the other party to receive the benefits of the agreement. *Egan v. Mutual of Omaha Ins. Co.* 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). When an insurer unreasonably withholds payment of an insured's claim, it breaches this covenant. *Id.* at 818-19, 169 Cal.Rptr. 691, 620 P.2d 141. The question of whether an insurer's conduct was reasonable is typically a question of fact. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 346, 108 Cal.Rptr.2d 776 (1995). However, an insurer withholding payment on the basis of a genuine dispute with respect to coverage cannot be held liable for bad faith. *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000). The existence of a genuine dispute may be decided as a question of law on undisputed facts. *Century Surety Co. v. Polisso*, 139 Cal.App.4th 922, 948, 43 Cal.Rptr.3d 468 (2006). An insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1162 (9th Cir.2002); *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 921, 148 Cal.Rptr. 389, 582 P.2d 980 (1978).

The Court has denied summary judgment with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 6

respect to Plaintiff's breach of contract claim; the question of whether an insurance contract between Plaintiff and Zurich exists has not been determined. Therefore, summary judgment cannot be granted on the bad faith claim based on the absence of a contract. The Court also finds it inappropriate to grant summary judgment on the basis of the existence of a genuine dispute. Plaintiff has offered evidence of delay [FN8] and conflicting communications [FN9] on the part of Zurich which, when viewed in a light most favorable to Plaintiff, could support a finding that Zurich acted in bad faith, and did not merely assert reasonable factual and legal positions as part of a genuine dispute. Accordingly, the Court denies Zurich's motion for summary judgment on Plaintiff's Second Claim for Bad Faith Breach of Contract.

> FN8. (*Compare* Declaration of Harvey Goodman in Support of Zurich's Opposition to Motion for Partial Summary Judgment ¶ 3, Ex. 2, hereafter, "Goodman Decl.," Docket Item No. 138; Ellenberg Decl. Ex. 170; Woelfel Decl. 1 ¶ 4, Ex. A.)

> FN9. (*E.g.*, Turner Decl. Ex. 41; Goodman Decl. ¶ 3, Ex. 2; Woelfel Decl. 1 ¶¶ 3, 4.)

**B.** *Gallagher's Motion for Summary Judgment*

The Gallagher Defendants move for summary judgment on Plaintiff's Fifth, Sixth, and Seventh claims for: (1) breach of contract; (2) fraud; and (3) breach of duty. The Court addresses each claim in turn.

**1. Breach of Contract**

The Gallagher Defendants move for summary judgment on Plaintiff's Fifth Claim for Breach of Third Party Beneficiary Contract on the ground that SRHP cannot establish that it was an intended third party beneficiary of the agreement among FRIT, Zurich, and the Gallagher Defendants. (Gallagher's Motion at 8-11.)

A third party may enforce the terms of a contract where the contracting parties: (1) intended to benefit the third party; and (2) such intent appears in the express terms of the agreement. Cal. Civ.Code § 1559; *Johnson v. Superior Court,* 80 Cal.App.4th 1050, 1064, 95 Cal.Rptr.2d 864 (2000); *Ascherman v. General Reinsurance Corp.,* 183 Cal.App.3d 307, 311, 228 Cal.Rptr. 1 (1986). Whether or not the third party is named in the contract or would benefit by its performance is not determinative of third party beneficiary status. *Alling v. Universal Manufacturing Corp.,* 5 Cal.App.4th 1412, 1440, 7 Cal.Rptr.2d 718 (1992); *Southern Cal. Gas Co. v. ABC Construction Co.,* 204 Cal.App.2d 747, 750, 22 Cal.Rptr. 540 (1962). Whether a third party qualifies as an intended beneficiary instead "involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered."*Jones v. Aetna Casualty & Surety Co.,* 26 Cal.App.4th 1717, 1725, 33 Cal.Rptr.2d 291 (1994).

*7 As an alternative to its claim that it was a named insured, Plaintiff alleges that the Gallagher Defendants, FRIT, and Zurich entered into a contract under which Gallagher agreed to procure insurance for Plaintiff's benefit. (SAC ¶ 43.) Plaintiff alleges that the Gallagher Defendants and Zurich breached their contract with FRIT by failing to provide insurance for Plaintiff, causing damages to Plaintiff as the intended third-party beneficiary. (SAC ¶¶ 41-44; Opposition to Gallagher's Motion for Summary Judgment at 14, Docket Item No. 197.) In their moving papers, the Gallagher Defendants do not dispute that they agreed with FRIT to secure coverage for Plaintiff, they only dispute its scope, i.e., whether it included delay in completion. (Gallagher's Motion at 3-4.) By admitting that they agreed to secure coverage for Plaintiff, the Gallagher Defendants do not challenge an essential factual basis for Plaintiff to recovery as a third party beneficiary. A genuine factual dispute exists over whether the insurance, which they agreed to provide, included delay in completion coverage.

The Gallagher Defendants provide, *inter alia,* the following evidence:
In June of 2002, Gallagher sent SRHP correspondence (received by SRHP as acknowledged by, [Plaintiff's] President, Doyle Graham and his Assistant, Charlotte Rogers) confirming that Gallagher was not the agent of record for the builder's risk policy. This transmission included documentation revealing that SRHP was not on the policy *two months* before the fire, refutes SRHP's allegation that FRIT intended to provide Delay in

Slip Copy
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 7

Completion coverage.

(Gallagher's Motion at 9.) [FN10]

> FN10. The Court notes that the Gallagher Defendants failed to cite to any declarations or exhibits to support these contentions.

Plaintiff provides, *inter alia,* the following evidence:
Gallagher's post-fire actions confirm that it agreed to procure the insurance for SRHP requested by FRIT. It assured [P]laintiff that it had such coverage. Graham Dec., ¶ s 2-4. Gallagher issued two certificates that show it procured this insurance. Ellenberg Dec., Exhs 1, 32. Its lawyer wrote a letter stating that it obtained such coverage. Ellenberg Dec., Exhs. 173. Gallagher admitted that it procured delay coverage. Ellenberg Dec., ¶ 2, Exh. A, Request Nos. 5 and 15.

(Opposition to Gallagher's Motion for Summary Judgment at 15-16.)

Examining the evidence supporting the two conflicting positions, the Court finds that there are material questions of fact as to the parties' intentions and actions.[FN11] Accordingly, the Court denies Gallagher's motion for summary judgment with respect to Plaintiff's Fifth Claim for Breach of Contract.

> FN11. In its opposition, Zurich offers testimony from FRIT that Zurich was not a party to any agreement prior to the fire to procure builder's risk insurance for the Hotel. (Declaration of Steven D. Turner in Support of Memorandum in Opposition, Ex. 2 at 321:13-322:2, Docket Item No. 199.) Since Zurich has not moved for summary judgment with respect to this claim, the Court does not address the question of whether a reasonable jury could find that Zurich was party to an agreement of the type alleged.

**2. Fraud**

The Gallagher Defendants move for summary judgment on Plaintiff's Sixth Claim for Fraud on the ground that Plaintiff cannot establish reliance on any misrepresentations made by the Gallagher Defendants. (Gallagher's Motion at 11-13.)

Demonstration of fraud requires a showing that the plaintiff justifiably relied on the defendant's misrepresentations. *Slakey Brothers Sacramento, Inc. v. Parker,* 265 Cal.App.2d 204, 207, 71 Cal.Rptr. 269 (1968). "A party cannot be defrauded by misrepresentation which never reached him and of which he had no knowledge at the time of the loss." *Id.* at 208, 71 Cal.Rptr. 269.

*8 Plaintiff's fraud claim is based on the following representations:
(1) a statement by Chuck Petrosky, Gallagher-Pipino's Account Manager on the FRIT account, during a meeting on August 27, 2002 to the effect that SRHP had delay in completion coverage under the Policy (*See* Graham Decl. ¶¶ 2-4; Ellenberg Decl., Ex 76),[FN12]

> FN12. Gallagher objects to this declaration testimony as contradicting Mr. Graham's sworn deposition testimony. (Objections to Evidence at 3-4, Docket Item No. 206) As noted in Gallagher's objection, during a subsequent deposition, Mr. Graham recanted this testimony and offered testimony consistent with the declaration. (Declaration of Curtis R. Ogilvie In Support of Objections to Evidence, Ex. B, 113:7-115:9, Docket Item No. 207.) Therefore, Court overrules this objection.

(2) the Certificate of Insurance issued on August 29, 2002; and
(3) the Certificate of Insurance issued on January 8, 2003.

(*See* SAC at 8-10.) The Court finds that each of these representations was made after the date of the fire; therefore, Plaintiff could not have relied on them in failing to secure their own insurance.

However, Plaintiff offers evidence that it relied on those representations with respect to decisions it made subsequent to the fire. Specifically, Plaintiff would not have made certain financing arrangements, or consented to FRIT's redirection of construction efforts from the hotel to more severely damaged

buildings. (Woelfel Decl. 2 ¶ 7.) In response, the Gallagher Defendants dispute that the subsequent financing arrangements were related to the fire or Plaintiff's perception about its insured status, and that the shift of construction resources by FRIT would not have happened absent Plaintiff's consent. (Gallagher's Reply to Oppositions to Motion for Summary Judgment at 10-12, Docket Item No. 205.) The Court finds these are matters of factual dispute that are not appropriately resolved on summary judgment. If this evidence is accepted by the jury, and the remaining elements of fraud are proved, Plaintiff would be entitled to damages it sustained in taking actions subsequent to the fire. Gallagher's concerns regarding any losses incurred from Plaintiff's failure to procure their own insurance coverage are more appropriately addressed by motions in limine for limiting instructions.

Accordingly, the Court denies Gallagher's motion for summary judgment with respect to Plaintiff's Sixth Claim for Fraud.

**3. Breach of Duty**

The Gallagher Defendants move for summary judgment with respect to Plaintiff's Seventh Claim for Breach of Duty on the ground that they owed no duty to Plaintiff to secure coverage. (Motion at 15-17.)

Negligent failure to perform a voluntarily assumed undertaking may give rise to liability in tort, even in absence of a contractual duty to perform.*Artiglio v. Corning*, 18 Cal.4th 604, 76 Cal.Rptr.2d 479, 957 P.2d 1313 (1998); *Valdez v. Taylor Automobile Co.*, 129 Cal.App.2d 810, 817, 278 P.2d 91 (1954). A broker's failure to procure adequate insurance despite volunteering to do so is one such situation. *Business to Business Markets, Inc. v. Zurich Specialties*, 135 Cal.App.4th 165, 37 Cal.Rptr.3d 295 (2005); *Aim Insurance Co. v. Culcasi*, 229 Cal.App.3d 209, 215-16, 280 Cal.Rptr. 766 (1991). Determination of whether a broker owed a duty to procure insurance involves consideration of the following factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of the harm; (3) the certainty of plaintiff's injury; (4) the closeness of the relationship between the defendant's conduct and the injury suffered; (5) the moral blameworthiness of defendant's conduct; and (6) the policy of preventing future harm. *Business to Business*, 135 Cal.App.4th at 168, 37 Cal.Rptr.3d 295 (citing *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958)).[FN13]

> FN13. Additionally, the court in *Business to Business* stated that, in the context of professional services, it is also appropriate to consider: (1) the degree to which clients and third parties ordinarily relinquish control to the professional; (2) the existence of professional standards of conduct, maintained by the profession; (3) a defendant's ability to spread its costs by raising fees or insuring against risk; (4) the expected and customary reliance by clients and others on the skill of the professional. *Id.* at 172, 37 Cal.Rptr.3d 295. Although the *Business to Business* case dealt with the procurement of insurance by a broker, the court explicitly limited its analysis of these factors to the particular niche of the insurance market at issue. *Id.* at 172 n. 4, 37 Cal.Rptr.3d 295. In this case, neither party has offered evidence directed to these factors; accordingly, they are not considered on this motion.

*9 The *Business to Business* case is instructive. There, the plaintiff contracted with an Indian company, Tricon, to write software. 135 Cal.App.4th at 167, 37 Cal.Rptr.3d 295. The contract between the parties required Tricon to secure insurance to cover loss caused by any failure to deliver the software to the plaintiff. *Id.* The plaintiff informed a broker of Tricon's need; the broker in turn informed an intermediary broker PLIS, and ultimately a policy was secured. *Id.* The policy, however, notably excluded coverage for any claims arising from work done in India. *Id.* Despite the fact that the parties had "no direct contact, were not in privity of contract, and [the plaintiff] was not named on the policy," the court concluded that intermediary broker, PLIS, owed a duty to the plaintiff to secure adequate coverage. *Id. at 168, 37 Cal.Rptr.3d 295.* Although the insurance policy was directed to Tricon, the contract between the plaintiff and Tricon required that Tricon carry the policy, and the policy was intended to cover losses incurred by the plaintiff in the event of Tricon's breach. *Id. at 169, 37 Cal.Rptr.3d 295.* This made the harm to the plaintiff foreseeable. *Id.* PLIS breached when it voluntarily undertook to secure coverage, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

then failed to meet that responsibility. *Id.* at 170, 37 Cal.Rptr.3d 295.

In this case, the contract terms between FRIT and Plaintiff required Plaintiff to insure itself. Nevertheless, FRIT purportedly instructed Gallagher to obtain coverage for the Plaintiff. The benefit of the insurance would inure directly to the Plaintiff, as opposed to a third party as in the *Business to Business* case. Since Plaintiff was the intended beneficiary of the voluntary undertaking, a stronger inference arises here that Plaintiff was owed a duty.

In addition, the Gallagher Defendants contend that only Arthur J. Gallagher, and not Gallagher-Pipino, was the broker of record on the policy. (Gallagher's Motion at 17.) Plaintiff's theory, however, is based on a voluntary undertaking by both entities to secure coverage, a suggestion that is supported in the record. (*E.g.*, Declaration of Steven A. Ellenberg in Support of Plaintiff's Opposition, Ex. 8 at 16:21-25; Ex. 15 at 19:21-20:3, Docket Item No. 196.) The Gallagher Defendants offer no authority for the proposition that only the broker of record can be held liable on a professional negligence claim.

Accordingly, the Court denies Gallagher's motion for summary judgment with respect to Plaintiff's Seventh Claim for Breach of Duty.

**C. *Motion to Dismiss***

The Gallagher Defendants move to dismiss Zurich's cross-claim for fraud on the ground that it fails to state a claim and that it fails to comply with the requirements of Federal Rule of Civil Procedure 9(b). (Motion to Dismiss at 1-6.) The motion is directed solely to the question of whether Zurich has adequately pled facts that would support a claim that the Arbitration Agreement entered into by the parties was fraudulently induced. *See id.*The Gallagher Defendants do not contend that Zurich has wholly failed to state a claim for fraud. The Court finds that the issues raised by this motion are more properly addressed in the context of Gallagher's renewed motion to compel arbitration. Accordingly, Defendant Gallagher's motion to dismiss Zurich's cross-claim for fraud is denied as moot.

**D. *Motion to Compel Arbitration***

*10 The Gallagher Defendants move for an order compelling arbitration and staying litigation of Zurich's cross-claims. (Arbitration Motion at 14.)

"A party to a valid arbitration agreement may petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir.2004) (quoting 9 U.S.C. § 4). The district court must only determine whether an arbitration agreement exists and whether it encompasses the dispute at issue. *See id.* at 1012;*see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000)."[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, arbitration should only be denied where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."*AT & T Technologies, Inc. v. Communication Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior Gulf Navigation Corp.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

The Gallagher Defendants previously moved to compel arbitration on January 4, 2007. (*See* Docket Item No. 167.) On March 20, 2007, the Court denied that motion. (Order Denying Motion to Compel Arbitration, Docket Item No. 283.) Although the Court found the disputes at issue fell within the scope of the parties' arbitration agreement, it denied the motion based on Zurich's representations that the agreement had been fraudulently induced. *Id.* at 5. Zurich was given leave to file an amended cross-claim to properly allege such fraudulent inducement. *Id.* at 6. Zurich filed its Amended Cross-Claim on April 6, 2007 (Docket Item No. 297), and the Gallagher Defendants' renewed motion to compel arbitration followed.

The issues presented to the Court by the renewed motion are limited to: (1) whether Zurich has sufficiently pled fraudulent inducement of the Arbitration Agreement to merit a trial on that issue; and (2) whether the Gallagher Defendants waived

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 10

their arbitration rights through their participation in the litigation. (*See* Zurich American Insurance Company's Opposition to Motion to Compel Arbitration, hereafter "Opposition to Arbitration Motion," Docket Item No. 321.) The Court addresses these in turn.

**1. Fraudulent Inducement**

The Gallagher Defendants contend that Zurich fails to plead fraudulent inducement of the Arbitration Agreement such that a trial on that issue is required as a prerequisite to enforcement. (Arbitration Motion at 5-9.)

Rule 9(b) provides, "In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."Fed.R.Civ.P. 9(b). The heightened pleading requirement applies to claims for which fraud is an essential element and to claims in which the plaintiff relies on the fraudulent conduct as the basis for the claim. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.2003). Under California law, fraud and misrepresentation claims require (1) a false representation (2) made with knowledge of its falsity and (3) intent to defraud, (4) the victim's justifiable reliance on the misrepresentation, and (5) damages. *Anthony v. Yahoo! Inc.,* 421 F.Supp.2d 1257, 1260 (N.D.Cal.2006) (quoting *Stansfield v. Starkey,* 220 Cal.App.3d 59, 72-73, 269 Cal.Rptr. 337 (1990)). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Vess,* 317 F.3d at 1103 (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)). Specifically, the plaintiff must "set forth what is false or misleading about a statement and why it is false."*Id.* (citing *Decker v. Glenfed, Inc.,* 42 F.3d 1541, 1548 (9th Cir.1994)).

*11 The Amended Cross-Claim identifies specific representations that form the basis of the fraudulent inducement claim, including details as to who made the representation, when it was made, its content, and its form. (Amended Cross-Claim ¶¶ 38, 39, 43, 64.) Further, it alleges that these representations were made with knowledge of their falsity (*Id.* ¶ 67), that they were made with intent to defraud (¶ 70), that Zurich reasonably relied on the representations in entering the Arbitration Agreement (¶ 68), and that Zurich suffered damages. (¶ 69.) The substance of Zurich's claim is that it agreed to arbitrate in reliance on the Gallagher Defendants' representations that coverage was bound for SRHP under the Policy prior to the fire.

The Gallagher Defendants contend that Zurich must allege further details regarding reliance beyond the mere fact that it relied on the alleged misrepresentations. (Arbitration Motion at 7). However, Rule 9(b) applies only to the misrepresentations themselves; the notice pleading requirements of Rule 8 apply to the elements of damages, reliance, and state of mind.*Anthony,* 421 F.Supp.2d at 1264. Accordingly, no further detail is required. Further, evidence submitted by Gallagher in support of its contention that Zurich did not, in fact, rely on the alleged misrepresentations is not relevant as the Court does not assess the merits of the claim at this time. (*See* Arbitration Motion at 9-13.)

The Court finds that Zurich adequately alleges a claim that the Arbitration Agreement was fraudulently induced. However, it is not clear that, as alleged, Zurich's fraudulent inducement claim entitles it to a trial on that issue under 9 U.S.C. § 4. As discussed in the Court's previous order, the Supreme Court distinguishes claims that an entire contract was fraudulently induced from claims that the arbitration provision in an otherwise valid contract was fraudulently induced. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). A fraudulent inducement claim that runs to the entire contract must be adjudicated by the arbitrator, while the court itself must first consider a fraudulent inducement claim specific to the arbitration provision. *Buckeye Check Cashing,* 126 S.Ct. at 1209;*Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1268-69 (9th Cir.2006).

The Court's previous order also noted that the Arbitration Agreement between Zurich and Gallagher should not present the severability issue of *Buckeye Check Cashing* and *Prima Paint,* as it is a stand-alone agreement and not a clause in a broader contract. However, the substance of Zurich's fraudulent inducement claim makes it clear that the issue has not been avoided. First, the conclusion that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Arbitration Agreement is a wholly separate contract is incorrect, as the Amended Cross-Claim characterizes the Arbitration Agreement and Zurich's 2004 payment to SRHP as forming part of a single agreement. (Amended Cross-Claim ¶ 68.) Second, as alleged, the basis of the fraud claim is identical to the underlying fraud dispute that the parties agreed would be subject to arbitration.[FN14]

> FN14. The Amended Cross-Claim does not differentiate between the manner in which Zurich was induced to enter the Arbitration Agreement and in which it was induced to take the other detrimental actions forming its fraud claim, and the same misrepresentations form the basis of both claims. Zurich alleges:

In reasonable reliance on Gallagher-Pipino's misrepresentations or omissions of material facts, Zurich was induced to measure SRHP's alleged losses; to enter into an arbitration agreement with Gallagher-Pipino and AJG in February 2004, and based on and pursuant to that agreement to make payments to SRH P that were not owed under the Policy; and to otherwise act to its detriment.

(Amended Cross-Claim ¶ 68.)

*12 Accordingly, the Court finds the entirety of Zurich's fraud claim subject to arbitration. Zurich and the Gallagher Defendants are ordered to submit their claims to arbitration.

**2. Waiver**

Zurich contends that the Gallagher Defendants have waived their right to arbitration based on their participation in the litigation to date. (Opposition to Arbitration Motion at 2-11.)

Waiver of a contractual right to arbitrate is disfavored; accordingly, "any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir.1986) (internal quotation marks and citations omitted). A constructive waiver requires proof of the following elements: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with those rights; and (3) prejudice to the party opposing arbitration resulting from the inconsistent acts. *United Computer Sys. v. AT & T Info. Sys.*, 298 F.3d 756, 765 (9th Cir.2002). In this case, the Gallagher Defendant concedes knowledge of its right to arbitrate. (*See* Reply at 8.) The parties dispute the remaining two elements of the *United Computer Sys.* test.

The Ninth Circuit has required relatively extensive participation in the litigation to support a finding of waiver, although the precise amount sufficient to support a finding is unclear. Compare *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir.1989); with *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir.1984) (overruled on other grounds). In *Lake Communications*, for example, the court found no waiver despite defendant's filing a motion to dismiss and failure to seek arbitration for more than a year.

Zurich identifies a number of factors which it believes support a finding of waiver: (1) the Gallagher Defendants have engaged in extensive discovery, taking sixteen depositions where, absent cause, in arbitration they would be limited to three; (2) they have delayed to gain the benefit of Zurich's discovery responses to SRHP; (3) and they have made and opposed dispositive motions. With the exception of the delay, however, such participation by Gallagher is not necessarily inconsistent with the arbitration right. As only Zurich's cross-claims are subject to arbitration, the Gallagher Defendants were obligated to defend against SRHP's claims in the litigation. Those claims share common issues with the cross-claims, making some overlap inevitable.

With respect to the Gallagher Defendant's delay in moving to compel, Zurich's cross-claim was initially filed in June 2005. The Gallagher Defendants represent that they first insisted on arbitration in October 2006, and that the first motion to compel arbitration was filed January 4, 2007. Although this delay is not insignificant, Zurich has failed to identify any affirmative prejudice that it will suffer as a result. The Court finds the Gallagher Defendants have not waived their right to arbitration.

*13 In sum, the Court grants the Gallagher Defendants' motion to compel arbitration.

**3. Stay of Litigation**

The remaining issue concerns the timing of

Slip Copy
Slip Copy, 2007 WL 4754772 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 12

arbitration relative to the litigation and the scope of the stay that will be imposed.

Section 3 of the Federal Arbitration Act directs that litigation of arbitrable issues be stayed pending arbitration. 9 U.S.C. § 3. The court has discretion whether to stay litigation for non-arbitrating parties when the case includes both arbitrable and non-arbitrable claims. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); United States v. Neumann Caribbean International, Ltd., 750 F.2d 1422, 1426 (9th Cir.1985).

Zurich contends that the Court should stay the arbitration itself pending resolution of SRHP's claims. However, the Federal Arbitration Act does not grant the Court discretion to issue such a stay. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209-1210 (9th Cir.1998). Zurich has not identified an alternative basis for that course of action. The Court finds no reason to preclude SRHP from proceeding on its claims pending the outcome of arbitration between Zurich and Gallagher. Accordingly, the Court stays litigation with respect to Zurich's cross-claims against the Gallagher Defendants only.

**E.  *In Limine Motions Regarding Opinion Testimony of Experts***

The Court has ruled on the motions for summary judgment without relying on any of the challenged opinion testimony of experts. Accordingly, a ruling on these motions is unnecessary at this time and the Court withdraws these motions from its docket. To the extent they are relevant, the parties may renew these motions as part of their in limine motions before the Final Pretrial Conference.

*V. CONCLUSION*

For the reasons stated above, the Court rules as follows:
(1) Defendant Zurich American Insurance Company's Motion for Partial Summary Judgment is DENIED;
(2) Defendants Gallagher-Pipino, Inc. and Arthur J. Gallagher & Co.'s Motion for Summary Judgment is DENIED;
(3) Defendants Gallagher-Pipino, Inc. and Arthur J. Gallagher & Co.'s Motion to Dismiss DENIED as moot;
(4) Defendants Gallagher-Pipino, Inc. and Arthur J. Gallagher & Co.'s Renewed Motion to Compel Arbitration is GRANTED. The Court STAYS the litigation of Zurich's cross-claims against the Gallagher Defendants only. Zurich and the Gallagher Defendants are ordered to submit their claims to arbitration within thirty (30) days from the date of this Order. The Court sets a Status Conference for Zurich and the Gallagher Defendants on **November 19, 2007 at 11 AM.** The parties shall submit a Joint Status Statement ten (10) days before the date of the conference to inform the Court of their status;
(5) Plaintiff's Motion to Exclude Portions of Expert Opinion of Mark Newton is withdrawn;
(6) Defendant Zurich Motion to Exclude Testimony of SHRP's Expert Matthew Nuss is withdrawn.

*14 The parties shall appear for a Preliminary Pretrial Conference on **September 17, 2007 at 11 AM.**

N.D.Cal.,2007.
Santana Row Hotel Partners, LP v. Zurich America Ins. Co.
Slip Copy, 2007 WL 4754772 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.